No. 18-10953-A

**In The United States Court Of Appeals
For The Eleventh Circuit**

**CROWLEY MARITIME CORPORATION**

*Plaintiff-Appellant,*

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,**

*Defendant-Appellee.*

On Appeal From The Judgment Of The
United States District Court For The Middle District Of Florida
At Civil Action No. 3:16-cv-01011-TJC-JBT

**BRIEF OF APPELLANT CROWLEY MARITIME CORPORATION**

John D. Shugrue
Thomas A. Marrinson
Emily E. Garrison
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jshugrue@reedsmith.com
tmarrinson@reedsmith.com
egarrison@reedsmith.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Crowley Maritime Corporation hereby makes the following statements pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1.

### <u>Certificate of Interested Persons</u>

The following persons and business entities have an interest in the outcome of this appeal:

1. Bloom, Jason B., counsel for Appellee

2. Corrigan, Timothy J., the Honorable District Court Judge

3. Crowley Holdings, Inc., parent corporation of Appellant

4. Crowley Maritime Corporation, Appellant

5. Duffy, Michael P., counsel for Appellee

6. Garrison, Emily E., counsel for Appellant

7. Johnson, Stephen Hunter, counsel for Appellee

8. Law Office of Charles B. Lembcke, PA, counsel for Appellant

9. Lembcke, Charles B., counsel for Appellant

10. Marrinson, Thomas A., counsel for Appellant

11. National Union Fire Insurance Company of Pittsburgh, PA, Appellee

12. Peabody & Arnold LLP, counsel for Appellee

13. Rajbanshi, Scarlett M., counsel for Appellee

14. Reed Smith LLP, counsel for Appellant

15. Shugrue, John D., counsel for Appellant

16. Toomey, Joel B., the Honorable District Court Magistrate Judge

## <u>Corporate Disclosure Statement</u>

Appellant Crowley Maritime Corporation is a privately held corporation and is not publicly traded. Appellant Crowley Maritime Corporation is wholly owned by Crowley Holdings, Inc. No publicly-held corporation owns 10% or more of Appellant Crowley Maritime Corporation. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant respectfully requests oral argument. This insurance coverage action involves, among other issues, an interpretation of the express terms of an insurance policy to determine when a "Claim" (as defined in the subject policy) is made and reported by the insured to the insurer. Given the unusual circumstances presented by this case, Plaintiff-Appellant believes that oral argument would be helpful to the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUES................................................................................1

STATEMENT OF THE CASE...................................................................................2

I.    Course Of Proceedings. ...................................................................................2

II.   Statement Of Facts..........................................................................................3

      A.    The Policy....................................................................................3

      A.    The Department Of Justice Criminal Antitrust Investigation. ..............5

      B.    National Union's Coverage Position And The Arbitration...................7

      C.    Thomas Farmer's Indictment And Acquittal. ......................................8

      D.    The Search Warrant Affidavit Becomes Available, But National
           Union Continues To Refuse To Pay Defense Costs. ...........................9

      E.    The Proceedings In The District Court. .............................................10

III.  Standard Of Review.......................................................................................12

SUMMARY OF THE ARGUMENT ....................................................................13

ARGUMENT ...........................................................................................................17

I.    The District Court Erred By Ignoring Rules Of Contract Construction,
     Failing To Consider Crowley's Argument That A Claim Was Made
     Against Mr. Farmer And Reported to National Union In 2008,
     Without Reference To The Notice Of Circumstances Clause, And By
     Confusing An Insured's Demand For Payment From The Insurer With
     A "Claim" Against An Insured Person........................................................17

A.  A Claim Was Made Against An Insured Person During The Policy Period. ....................................................................................19

B.  The District Court Erred In Holding That Expiration Of The Run-Off Endorsement's Discovery Period In November 2013 Barred Coverage Because The District Court's Own Recitation Of The Facts Shows That National Union Was Notified Of A Claim Against Mr. Farmer No Later Than February 2013. ................25

C.  The Claim Against Mr. Farmer Was Reported During The Policy Period. ....................................................................................26

D.  Industry Custom And Practice And National Union's Own Conduct Demonstrate That National Union Did Not Intend The Run-Off Endorsement To Bar Consideration of New Evidence Of An Existing Claim, Even If Such Evidence Only Became Available After The Run-Off Endorsement's Reporting Deadline...............................................................................29

II.  The District Court Erred In Its Alternative Finding That *Res Judicata* Bars Crowley's Causes Of Action................................................33

A.  The District Court Correctly Determined That The Search Warrant Affidavit Was New Evidence. ...........................................33

B.  Having Found That There Were New Facts, The District Court Erred In Holding That The Arbitration Decision Precludes This Action. ....................................................................................36

CONCLUSION ....................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aeacus Real Estate Ltd. v. 5th Ave. Real Estate Dev.*,
  948 So. 2d 834 (Fla. 4th DCA 2007)................................................................40

*\*AmerisourceBergen Corp. v. Ace American Ins. Co.*,
  100 A.3d 283 (Pa. Super. 2014) ..................................................20, 21, 22, 23

*Buckley Towers Condo, Inc. v. QBE Ins. Corp.*,
  395 F. App'x 659 (11th Cir. 2010) ..........................................................24, 27

*Davis v. Williams*,
  451 F.3d 759 (11th Cir. 2006) ......................................................................13

*Doe v. Allied-Signal, Inc.*,
  985 F.2d 908 (7th Cir. 1993) ........................................................................35

*Empire Fire & Marine Ins. Co. v. J. Transp., Inc.*,
  880 F.2d 1291 (11th Cir. 1989) ....................................................................39

*\*HealthSmart Benefit Solutions, Inc. v. Principia Underwriting*,
  2015 WL 339524 (W.D.La. Jan. 23, 2015) ...........................................20, 21, 22

*Hegel v. First Liberty Ins. Corp.*,
  778 F.3d 1214 (11th Cir. 2015) ....................................................................13

*\*Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n.*,
  210 So.2d 750 (Fla. 4th DCA 1968), *aff'd,* 245 So.2d 625 (Fla.
  1971) ..................................................................................................34, 36

*\*HR Acquisition I Corp. v. Twin City Fire Ins. Co.*,
  547 F.3d 1309 (11th Cir. 2008) ....................................................................23

*Hyman v. Nationwide Mut. Fire Ins. Co.*,
  304 F.3d 1179 (11th Cir. 2002) ....................................................................19

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
  749 F.3d 962 (11th Cir. 2014) ......................................................................19

iv

*Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*,
133 So. 3d 494 (Fla. 2014) ...................................................................24

*Larimore v. State of Florida*,
76 So.3d 1121 (Fla. 1st DCA 2012) ......................................................34

*\*Lozman v. City of Riviera Beach, Fla.*,
713 F.3d 1066 (11th Cir. 2013) ......................................................34, 35

*Manning v. City of Auburn*,
953 F.2d 1355 (11th Cir. 1992) ...........................................................13

*\*Medical Depot, Inc. v. RSUI Indemnity Company*,
2016 WL 5539879 (Del. Super. Sept. 29, 2016) ......................20, 21, 22

*Monahan v. Paine Webber Grp., Inc.*,
724 F. Supp. 224 (S.D.N.Y. 1989) .......................................................34

*Saadeh v. Stanton Rowing Found.*,
912 So.2d 28 (Fla. 1st DCA 2005) ........................................................34

*Sierra Club, Inc. v. Leavitt*,
488 F.3d 904 (11th Cir. 2007) .............................................................12

*Southeast Florida Cable, Inc. v. Martin Cty., Fla.*,
173 F.3d 1332 (11th Cir. 1999) ...........................................................34

*State Farm Fire & Cas. Co. v. CTC Dev. Corp.*,
720 So.2d 1072 (Fla. 1998) ................................................................19

*\*State St. Bank & Trust Co. v. Badra*,
765 So.2d 251 (Fla. 4th DCA 2000).......................................34, 35, 36

*Tyson v. Viacom, Inc.*,
890 So. 2d 1205 (Fla. 4th DCA 2005)...................................................34

*\*Universal Const. Co. v. City of Fort Lauderdale*,
68 So. 2d 366 (Fla. 1953) ...................................................................40

**Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332(a) ..............................................................................1

## Other Authorities

Fed. R. Civ. P. 56(c)....................................................................................................12

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this case under 28 U.S.C. § 1291. The District Court entered a judgment for Appellee National Union[1] on February 9, 2018. Appellant Crowley appealed on March 8, 2018. The action is between citizens of different states, and the amount in controversy exceeds $75,000. The District Court had jurisdiction under 28 U.S.C. § 1332(a).

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in ruling that Crowley's insurance claim under a claims-made policy was untimely, even though a Claim against an Insured Person, as defined by the policy, was first made and reported to National Union during the initial policy period, which expired in November 2008, and the District Court itself recognized that a Claim against an Insured Person was made and reported to National Union within the Discovery Period of the policy's Run-Off Endorsement, which ended in November 2013.

2. Whether the District Court erred in ruling, in the alternative, that *res judicata* barred Crowley's causes of action because of an earlier arbitration between Crowley and National Union, even though the District Court held that "the essential facts between the arbitration and this action differ," and that a search

---

[1] "National Union" refers to Appellee National Union Fire Insurance Company of Pittsburgh, PA. "Crowley" refers to Appellant Crowley Maritime Corporation.

1

warrant affidavit, which was unsealed and made available to the parties after the arbitration, "is more like newly discovered evidence because neither party had a reasonable ability to discover its content," (Doc. 53 at 15-16)[2] and even though application of *res judic*ata here would lead to an inequitable result.

## STATEMENT OF THE CASE

This insurance coverage case arises from National Union's refusal to reimburse Crowley for approximately $2.5 million in defense costs it paid in response to a criminal investigation of Thomas Farmer, a former employee of a Crowley subsidiary, who ultimately was exonerated of any wrongdoing after a full trial. (Doc. 1 at 1, 7.)

## I. Course Of Proceedings.

On August 8, 2016, Crowley filed this action to obtain reimbursement from National Union for certain defense costs Crowley had incurred in connection with a criminal investigation conducted by the United States Department of Justice's Antitrust Division. (Doc. 1 at 1.) National Union filed a motion to dismiss Crowley's complaint on October 14, 2016 (Doc. 16), to which Crowley responded by arguing that the motion should be converted to a motion for summary judgment and denied. (Doc. 20 at 4.) On December 21, 2016, the District Court converted National Union's motion into one for summary judgment and directed the parties

---

[2] Citations to page numbers are the electronic (ECF) numbers at the top of the page.

to proceed with discovery and to file supplemental briefing after completing such discovery. (Doc. 28.) The parties' supplemental briefs (and replies thereto) were filed in April and May 2017, respectively. (Docs. 36, 37, 40, 43.) The District Court heard oral argument on the motion on June 20, 2017. (Doc. 49.) The District Court entered its Order granting the motion on February 8, 2018 and judgment in favor of National Union on February 9, 2018. (Docs. 53, 54.) Crowley timely filed its notice of appeal on March 8, 2018. (Doc. 55.)

## II.    Statement Of Facts.

### A.    The Policy.

National Union sold Crowley an Executive and Organization Liability Insurance Policy, number 061-36-48 (the "Policy"), with an initial Policy Period of November 1, 2007 to November 1, 2008.[3] (Doc. 1-1 at 2.) The Policy's relevant insuring agreement provides that "with respect to Claims first made against an Insured during the Policy Period or Discovery Period," National Union "shall pay the Loss of an Organization arising from a Claim made against an Insured Person … for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person." (*Id.* at 7.) Thomas Farmer is an Insured Person under the Policy, and Crowley and each of its subsidiaries are

---

[3] Unless otherwise noted, capitalized terms herein have the same meaning as set forth in the Policy.

Organizations under the Policy.  (*Id.* at 10, 11.)

Where there is a Claim against an Insured Person, the Policy includes coverage for Defense Costs and requires National Union to "advance … covered Defense Costs no later than ninety (90) days after the receipt by the Insurer of … defense bills."  (*Id.* at 7, 10, 16.)  The Policy also allows National Union to recoup its advancement of defense costs "in the event and to the extent that any … Insured … shall not be entitled under this policy to payment of such Loss."  (*Id.* at 16.)

Section 2(b) of the Policy defines the term "Claim" to include:

> (1)  a written demand for monetary, non-monetary or injunctive relief;
>
> (2)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt of a notice of filing of charges; or
>
> (3)  a civil, criminal, administrative or regulatory investigation of an Insured Person:
>> (i)  once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; …

(*Id.* at 8.)

The Notice / Claim Reporting Provisions of the Policy (in relevant part) further require that an Insured:

> give written notice to the Insurer of a Claim made against an Insured

… as soon as practicable:...,  but in all events no later than …:
> (1) the end of the Policy Period or the Discovery Period (If applicable); ….

(*Id.* at 15.)

Lastly, the Policy's Run-Off Endorsement #14 provides:

> The Named Entity shall have the right to a period of SIX of [sic] 6 years following the Effective Date [November 1, 2007] (herein referred to as the Discovery Period) in which to give written notice to the Insurer of any Claim first made against any Insured during said 6 year period for any Wrongful Act occurring on or prior to the Effective Date and otherwise covered by this policy.

(*Id.* at 59.)

Under these provisions, a Claim in the form of a criminal investigation against an Insured Person exists once that Insured Person is identified in writing by an investigating authority as a person against whom a criminal proceeding may be commenced.  There is no requirement that the Insured Person be served with or receive a copy of the writing.  Moreover, under these provisions, an Insured has complied with its reporting obligations when it gives the insurer notice of the existence of a Claim.  An Insured cannot be deemed to have failed to comply with its notice obligations because it did not provide a document it did not have.

## A.    The Department Of Justice Criminal Antitrust Investigation.

On April 17, 2008, Crowley Liner Services, Inc. ("Crowley Liner"), a wholly owned subsidiary of Crowley, was served with a search warrant issued by the United States District Court for the Middle District of Florida – Jacksonville

Division, in connection with a federal antitrust criminal investigation (the "DOJ Investigation"). (Doc. 36-21 at 7.) The search warrant allowed the seizure of certain property, including notes, memoranda, and other documents, from four specifically identified individuals, including Thomas Farmer, who was then a vice president of Crowley Liner. (*Id*. at 12-13.)

As plainly stated on its face, the search warrant was issued based on facts "establish[ing] probable cause" that were contained in an Affidavit of an FBI Special Agent (the "Search Warrant Affidavit") that was presented to the court. (*Id.* at 7.) However, pursuant to regular practice and an *in camera* request from the Department of Justice ("DOJ"), the court issuing the search warrant sealed the Search Warrant Affidavit from public disclosure. (Docs. 36-4 at 8; 36-17.) Neither Mr. Farmer nor Crowley had access to the Search Warrant Affidavit for any purpose. (*Id.*) Upon execution of the search warrant, Mr. Farmer retained his own counsel to defend and protect his interests in the DOJ Investigation, and Crowley indemnified Mr. Farmer for his defense costs. (Doc. 1 at 5, ¶ 19.)

Although both Crowley and National Union knew a Search Warrant Affidavit existed since April 2008, the Search Warrant Affidavit remained unavailable to Crowley until April 2015, after it was unsealed by the court and introduced into evidence during Mr. Farmer's criminal trial in the United States District Court, District of Puerto Rico. (Docs. 36-4 at 8-9; 36-3 at 45:18-47:21.)

**B.     National Union's Coverage Position And The Arbitration.**

On April 25, 2008, Crowley provided National Union with a written notice of Claim, including and attaching the search warrant, which advised National Union of the existence of the under-seal Search Warrant Affidavit, and sought National Union's reimbursement of Mr. Farmer's defense costs for the DOJ Investigation.  (Doc. 36-5.)  Crowley's notice of Claim also specifically stated that the "charges that may have lead to the search warrant are sealed at this time…" (*Id.* at 4.)   National Union acknowledged that Crowley had submitted these materials as a "Claim" (as defined by the Policy), but refused to provide coverage because according to National Union "based solely upon the documentation currently available," the materials submitted did not constitute a Claim, and instead informed Crowley that it would "accept this matter as a notice of circumstances." (Doc. 36-6 at 3, 4.)  National Union also told Crowley that "[s]hould you wish to submit further information or documentation that you feel would be relevant to a determination as to coverage for this matter, please feel free to forward such information to [National Union]."  (*Id.* at 5.)

In light of mounting costs and National Union's continuing refusal to pay, Crowley instituted an arbitration proceeding against National Union on March 7, 2012 (the "Arbitration").  (Doc. 36-1 at 2, ¶ 9.)  Through no fault of the parties, neither Crowley nor National Union was able to obtain a copy of the still-sealed

Search Warrant Affidavit to use as evidence during the Arbitration. (Doc. 36-7 at 3.) In light of the unavailability of the Search Warrant Affidavit, the Arbitration panel framed the "decisive issue" it addressed as whether the documents that had been made available to Crowley and presented to National Union at the time of the Arbitration were "sufficient to constitute a 'Claim' as that term is defined" in the Policy. (Doc. 36-7 at 6.) Likewise, National Union itself explicitly recognized and argued to the Arbitration panel that the Arbitration was narrowly limited to the issue of whether the documents that Crowley had submitted to National Union as of the time of the Arbitration, which did not include the Search Warrant Affidavit, qualified as a Claim under the Policy. (Docs. 36-8 at 7-8; 36-9 at 624:8-625:12, 628:5-13, 660:15-19.)

The Arbitration panel issued its Award on January 13, 2013, finding that the specific documents that had been submitted to National Union as of the time of the Arbitration did not constitute a Claim. (Doc. 36-7.) The Search Warrant Affidavit, which remained under seal, was not addressed as part of the Award. (*Id.* at 10.)

## C. Thomas Farmer's Indictment And Acquittal.

One month after the Award, DOJ prosecutors presented Mr. Farmer with a written offer to enter into a plea agreement. (Doc. 1 at 6, ¶ 24.) Mr. Farmer declined to plead guilty and subsequently was indicted for alleged participation in an antitrust conspiracy. (*Id.*) Based on the DOJ plea offer, which National Union

recognized to be a writing that identified Mr. Farmer as a person against whom a criminal proceeding might be commenced, National Union acknowledged that the DOJ Investigation of Mr. Farmer was "a Claim" covered by the Policy and that notice of the Claim had been made "within the six year Discovery Period granted by [Run-Off] Endorsement 14." (Doc. 36-11.) Accordingly, National Union agreed to advance Mr. Farmer's defense costs starting on the date it received notice of the plea offer, February 18, 2013. (*Id.*) But National Union persisted in refusing to cover the more than $2.5 million in defense costs that had been paid by Crowley and that had been incurred prior to February 18, 2013. (*Id.*) On May 8, 2015, Mr. Farmer was acquitted after a full trial in the United States District Court, District of Puerto Rico. (36-32 at 2.)

### D. The Search Warrant Affidavit Becomes Available, But National Union Continues To Refuse To Pay Defense Costs.

After Mr. Farmer's acquittal, the Search Warrant Affidavit was provided to Crowley for the first time. (*Id.*) The Search Warrant Affidavit plainly identifies Mr. Farmer in writing as a person against whom a criminal proceeding may be commenced. (Docs. 36-2; 36-4 at 9; 36-14 at 14-16.) Although Crowley could not prove it at that time, it is clear that a Claim was made against Mr. Farmer as of April 2008, when the Search Warrant Affidavit was prepared and filed with the court. (*Id.*) In July 2015, Crowley tendered the Search Warrant Affidavit to National Union, establishing that a Claim had been made against Mr. Farmer in

April 2008. (Doc. 36-32 at 2.) Although National Union had invited such a submission in response to Crowley's first notice of the matter, and later accepted notice of the DOJ's plea offer as proving that the DOJ Investigation was a Claim against Mr. Farmer, it nevertheless refused to pay defense costs incurred prior to February 18, 2013. (Doc. 36-33.)

### E. The Proceedings In The District Court.

In light of National Union's refusal to pay defense costs even though newly available evidence established that the DOJ Investigation against Mr. Farmer in fact commenced in April 2008, Crowley instituted this action. (Doc. 1.) National Union moved to dismiss, arguing that: (1) Crowley's action was barred by *res judicata* in light of the earlier Arbitration between the parties; and (2) the statute of limitations barred Crowley's action. (Doc. 16 at 1.) After the motion to dismiss was converted to a motion for summary judgment, National Union also raised the argument that the Policy's Run-Off Endorsement barred coverage on the purported basis that Crowley had not given notice of a Claim until after the November 1, 2013 end of the Discovery Period established by that endorsement. (Doc. 36 at 17-18.)

In response, Crowley argued that *res judicata* did not apply because, among other things, the causes of action asserted in its complaint relied on evidence that became available only after the parties' earlier Arbitration. (*Id.* at 9-13.) Crowley

also argued that the statute of limitations was not a bar because, among other things, its causes of action did not accrue until the criminal proceedings against Mr. Farmer had concluded. (*Id.* at 13-17.) As for the Run-Off Endorsement, Crowley maintained that the endorsement did not foreclose coverage because a Claim had been made against an Insured Person in 2008, when the Search Warrant Affidavit came into existence, and written notice of this Claim had been given in 2008. (*Id.* at 9, 17-19.) Alternatively, Crowley argued that National Union had asserted that Section 7(c) of the Policy (the "Notice of Circumstances clause") applied. (*Id.*) Under that clause, if an insured gives Notice of Circumstances during the Policy Period that may give rise to a Claim, any Claim that later arises from related circumstances is deemed to "relate back" and to have been made during the Policy Period, even if the Claim is made after the Policy Period. (*Id.*) Crowley thus took the position that if, as National Union argued, there was only a Notice of Circumstances in 2008 and no notice of a Claim against an Insured Person until 2015, the 2015 Claim nevertheless "related back" to 2008 and was deemed made during the Policy Period under the Notice of Circumstances clause, such that the Run-Off Endorsement would not bar coverage. (*Id.*)

The District Court ruled in favor of National Union. (Doc. 53.) The District Court held that Crowley could not rely on the 2008 notice it provided to National Union as a Notice of Circumstances, that there thus was no Claim until 2015, and

that Crowley accordingly had not met the November 1, 2013 deadline for reporting under the Run-Off Endorsement, even though the District Court simultaneously recognized that: (1) Mr. Farmer had been "identified … in writing as a target of a government investigation" in February 2013, when the DOJ offered him a plea deal; and (2) National Union agreed at that time to cover Mr. Farmer's defense costs "because the plea deal materialized before the end of the Discovery Period." (*Id.* at 5.) Alternatively, the District Court ruled, *res judicata* barred Crowley's causes of action because Crowley could not simultaneously argue that that the Search Warrant Affidavit was "new evidence" that rendered *res judicata* inapplicable and that the Search Warrant Affidavit "related back" to 2008 under the Notice of Circumstances clause. (*Id.* at 17-22.)[4]

## III.    Standard Of Review.

This Court reviews a grant of summary judgment *de novo*, applying the same legal standards as the district court. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007). Summary judgment is proper only if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)). In assessing whether a genuine factual dispute exists,

---

[4] The District Court held that it need not resolve National Union's statute of limitations defense in light of its other rulings. (Doc. 53 at 18.)

the court views the evidence in the light favorable to the non-moving party, draws all reasonable inferences in the non-moving party's favor, and will reverse if there is evidence that would allow a reasonable factfinder to rule in favor of the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

A District Court's conclusions on *res judicata* and interpretation of insurance policy language also are a matter of law, subject to *de novo* review. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015) (policy interpretation subject to *de novo* review); *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992) (*res judicata* decision subject to *de novo* review).

## SUMMARY OF THE ARGUMENT

The District Court's conclusion that Crowley's reporting of a Claim[5] against Thomas Farmer was somehow "untimely" under the Policy is erroneous because it ignores fundamental rules of policy interpretation, imposes on Crowley requirements outside of the bargained-for coverage expressly provided in the Policy, and ignores National Union's admissions and the District Court's own findings establishing that a Claim was made and reported to National Union within the Discovery Period of the Run-Off Endorsement.

Under the Policy, a Claim exists "once an Insured Person is identified in

---

[5] For avoidance of doubt, the term "Claim," when capitalized, refers to the term "Claim" as it is expressly defined in the Policy.

writing" by an investigating authority as a person against whom a criminal proceeding "may be commenced," and the Policy does not impose any requirement that an Insured is served with or receives a copy of the writing in order for there to be a Claim. (Doc. 1-1 at 8.) In addition, an Insured satisfies its reporting obligations under the Policy when it notifies National Union of the existence of a Claim, even if it cannot forward the writing that identifies an individual as a person against whom a criminal proceeding may be commenced at the time it provides such notice. (*Id.* at 15.) The undisputed facts show that the Claim at issue here – the DOJ Investigation – was both made and reported in 2008, during the Policy Period. The Policy required nothing more, and the District Court erred in holding otherwise.

Moreover, the District Court's holding that no Claim had been made and reported to National Union before the November 2013 cut-off established by the Run-Off Endorsement cannot be reconciled with the District Court's own findings of fact. The District Court itself recognized that when Mr. Farmer became the subject of a DOJ plea offer in February 2013, before the end of the Discovery Period, he had been identified as a person against whom a criminal proceeding might be commenced, that the DOJ plea offer had been reported to National Union, and that National Union had explicitly accepted this report as being timely notice of a Claim within the Discovery Period of the Run-Off Endorsement.

The District Court's alternative ruling, based on the doctrine of *res judicata*/claim preclusion[6] is also incorrect because it: (1) ignored Crowley's primary coverage argument; (2) relied on the creation of a false "Catch-22" for Crowley with respect to a secondary coverage argument; and (3) ignored the requirement that *res judicata* not be applied if doing so would produce an inequitable result.

The District Court's *res judicata* holding ignored Crowley's argument that the 2008 notice to National Union was a notice of "Claim" and instead skipped directly to the subsidiary argument that Crowley's 2008 notice could be treated as a Notice of Circumstances. In deciding this subsidiary argument, the District Court held that if a "Claim for payment of Farmer's defense costs based on the Affidavit" was "made in 2008, then Crowley is precluded from relitigating the issue; if it was in 2015, Crowley's demand is barred by the plain text of the Policy's Discovery Period." (Doc. 53 at 7.)

There is, however, no such "Catch-22" under the facts or law here because there is nothing inconsistent about Crowley's arguments that: (1) there indeed was a Claim made against Mr. Farmer and reported to National Union in 2008, rather than 2015, without regard to the Notice of Circumstances provision in the Policy;

---

[6] National Union moved to dismiss Crowley's complaint based on the doctrine of *res judicata*. In its Order, the District Court explained that it would "use the more precise terminology adopted by the Supreme Court: claim preclusion." (Doc. 53 at 6.)

and (2) *res judicata* does not bar Crowley's action here because it relies on evidence that was unavailable at the time of the Arbitration, in the form of the Search Warrant Affidavit.

Indeed, the District Court recognized that the Search Warrant Affidavit was new evidence that should have prevented any application of *res judicata*, finding that:

- "As Crowley was unable to submit the sealed Affidavit to National Union, it could not have been considered by the arbitration panel." (Doc. 53 at 15.)

- "National Union itself argued to the panel that the Affidavit should not be considered as part of the evidence" in the Arbitration. (*Id.*)

- "[T]he Affidavit is more like newly discovered evidence because neither party had a reasonable ability to discover its content." (*Id.* at 16.)

- "[T]he two actions [the Arbitration and the present case] would be separate breach of contract claims alleging separate wrongful acts by National Union: (1) not paying Farmer's defense costs based on what Crowley had submitted to National Union at the time of the arbitration; and (2) not paying Farmer's defense costs based on Crowley's 2015 submission of the Affidavit." (*Id.* at 15.)

As importantly, the District Court ignored the requirement that *res judicata* not be applied if doing so would produce an inequitable result, insofar as there is nothing equitable about the result it reached in denying coverage to a blameless insured seeking payment of precisely the type of criminal investigation defense costs the Policy was designed to cover.

For the above reasons, the District Court's rulings should be reversed.

# ARGUMENT

**I.    The District Court Erred By Ignoring Rules Of Contract Construction, Failing To Consider Crowley's Argument That A Claim Was Made Against Mr. Farmer And Reported to National Union In 2008, Without Reference To The Notice Of Circumstances Clause, And By Confusing An Insured's Demand For Payment From The Insurer With A "Claim" Against An Insured Person.**

The District Court erred in holding that notice was untimely under the Policy's Run-Off Endorsement, which allowed Crowley a Discovery Period stretching from  November 1, 2007 to November 1, 2013 to provide written notice of "any Claim made" during that period.  Crowley argued below that newly available evidence – the Search Warrant Affidavit – established that there was a Claim made in 2008 and that Crowley had provided written notice of the existence of the Claim to National Union in 2008, when it first told National Union about the Search Warrant Affidavit, even if it could not then provide National Union with a copy of that Search Warrant Affidavit.  (Doc. 36 at 9, 17-19.)

The District Court's Order, however, ignored this straightforward argument, instead erroneously asserting that "Crowley relies on Section 7(c) of the Policy, which allows a subsequent Claim to relate back to an earlier filed notice of circumstances" to "allege[] that the July 22, 2015 disclosure of the content of the Affidavit relates back to the April 25, 2008 Notice of Circumstances."  (Doc. 53 at 19.)  The District Court's failure to consider Crowley's primary argument for coverage, which did not rely on the Notice of Circumstances clause, was a critical

error that resulted in the District Court's failure to consider or apply the Policy language that directly controls the outcome here and that mandates rejection of National Union's defenses to coverage.

The District Court compounded this error by conflating the issue of when an insured makes a demand for payment (a "claim") with the Policy's requirements that there be a Claim against an Insured Person within the Policy Period. The District Court framed the issue as "when Crowley reported a Claim for payment of Farmer's defense costs based on the [Search Warrant] Affidavit." (*Id.* at 7.) But the Policy does not condition coverage on when the Insured makes a "claim" for payment, let alone when it does so based on a specific document (particularly one unavailable to the Insured during the Policy Period). The Policy covers "Claims first made against an Insured during the Policy Period," if the Insured gives notice of the Claim during the Policy Period, and here the Claim was made against Mr. Farmer in 2008 and notice of this Claim was given to National Union in 2008. There was no new or separate Claim in 2015 "based on the Affidavit," as the District Court's opinion seems to suppose. Rather, in 2015, as National Union had invited Crowley to do, Crowley provided National Union with newly available evidence to show that there had indeed been a Claim against an Insured Person since 2008. Put simply, there was no new, "untimely" Claim made or reported in 2015. Rather, there was a Claim made in 2008, notice of which was given in 2008,

with supplemental information regarding the Claim provided in 2015, along with a new demand for coverage based on the previously unavailable Search Warrant Affidavit.  The Policy does not bar coverage under these facts.

### A. A Claim Was Made Against An Insured Person During The Policy Period.

A court interpreting an insurance contract must start with the plain language of the policy, as bargained for by the parties.  *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002).  The policy must be viewed as a whole with every provision given its full meaning and operative effect.  *Id.*  "[C]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014).  Principles governing the construction of insurance contracts also dictate that "[w]hen construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*."  *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1074–75 (Fla.1998) (citation omitted).

Here, a straightforward application of the plain language of the Policy and its definition of Claim makes clear that there was a Claim against Mr. Farmer in 2008 (*i.e.*, during the Policy Period).  The Policy defines Claim to include a criminal investigation of an Insured Person once such Insured Person is "identified in writing" by an investigating authority as a person against whom a criminal

proceeding "may be commenced." (Doc. 1-1 at 8.) And it is the language of the Policy that dictates when a Claim is deemed made against an Insured. *See, e.g., HealthSmart Benefit Solutions, Inc. v. Principia Underwriting*, 2015 WL 339524 (W.D.La. Jan. 23, 2015); *Medical Depot, Inc. v. RSUI Indemnity Company*, 2016 WL 5539879 (Del. Super. Sept. 29, 2016); *AmerisourceBergen Corp. v. Ace American Ins. Co.,* 100 A.3d 283, 287 (Pa. Super. 2014). Critically, the Policy imposes no requirement that the Insured Person (or anyone else) be served with or receive a copy of the writing that identifies such Insured Person as an individual against whom a criminal proceeding may be commenced. It is enough that such a writing exists, regardless of whether it is in the Insured's or National Union's possession.

Other courts have applied such clear language precisely in the manner that Crowley urged the District Court to apply it. In *Medical Depot*, for example, a complaint was filed against, but not served upon, an insured. 2016 WL 5539879 at *1. Although the insured was aware of the unserved complaint, it did not give notice to its insurer under a claims-made directors and officers insurance policy until after the subject policy period, when it was served with an amended complaint. *Id.* The court in *Medical Depot* agreed with the insurer that the original complaint, although unserved, constituted a Claim as that term was defined in the policy, because a Claim included a "written demand" against the

insured, regardless of whether that "written demand" was served on the insured. *Id.* at **9-10.

The court in *HealthSmart* reached a similar result. In that case, the insured plaintiff sought coverage for an underlying lawsuit from its professional liability insurer under a claims-made policy that expired on December 31, 2013. 2015 WL 339524 at *1. The insured was added to the underlying lawsuit on December 18, 2013, but not served until January 15, 2014, after the policy expired. *Id.* The court held that the Claim was made on December 18, 2013, when the insured was added to the lawsuit, even though the insured had not yet received a copy of the lawsuit. *Id.* at *3. In so holding, the court rejected the insurers' argument that the policy required "as a precondition" that the insured "must be aware of a claim," because the policy defined the term Claim to include a "written demand" against an insured, but did not "include a requirement that such a 'written demand' be discovered by, received by, served upon or otherwise provided to the insured." *Id.*

Along similar lines, in addressing the question of what it means for litigation to be "filed" or commenced" against an entity, the court in *AmerisourceBergen* concluded that even a sealed document may be considered in making this determination. Applying the plain language of the policy, the court found that "[n]othing in the ordinary meaning of these terms requires service of original process *or unsealing of the complaint* in order for an action to be 'filed' or

'commenced.'" 100 A.3d at 288 (emphasis added). The same result should obtain here. There is nothing in the Policy or the ordinary meaning of the term "identified" that requires the unsealing of a Search Warrant Affidavit before the Search Warrant affidavit can be said to identify in writing an Insured Person as an individual against whom a criminal proceeding "may be commenced."

The decisions in *Health Smart*, *Medical Depot* and *AmerisourceBergen* do precisely what the District Court failed to do here – give a straightforward application to the definition of Claim, when that definition does not require that a Claim be served upon or otherwise received by the Insured in order to constitute a Claim.

The District Court also violated the rules of contract interpretation by failing to consider the Policy as a whole in determining whether the subpart of the Claim definition on which Crowley relied required that the writing at issue be received by the Insured. In this regard, the District Court failed to credit (or even discuss) Crowley's argument that there are other portions of the Claim definition that ***do*** require a document to be served upon or received by an Insured Person before such a document can constitute a Claim. For example, the subpart of the Claim definition that relates to complaints states that Claim means a "civil … proceeding … commenced by … service of a complaint." (Doc. 1-1 at 8.)

There is no such requirement in the portion of the Claim definition on which

Crowley relies, and this distinction is critical. In *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, when the insurance policy at issue did not expressly contain a service requirement, this Court held that service of a lawsuit was not required for such lawsuit to be "existing against" or "pending against" the insured. 547 F.3d 1309, 1317-18 (11th Cir. 2008). In so holding, this Court explained that it "must read each phrase in an insurance contract 'in the context of all other provisions' to determine the parties' intent," and noted that the policy, in a separate section, provided that a lawsuit cannot constitute a "Claim" unless it is "commenced by the service of a complaint." *Id.* at 1318 (citation omitted). Given that the parties included this "service" language in another section of the policy, this Court noted that "[c]learly, the Policy drafters knew how to specify when service of a complaint was required – and such an express service requirement is noticeably *absent* from the 'prior litigation' exclusion." *Id.* (emphasis in original). *See also AmerisourceBergen*, 100 A.3d at 288 ("the explicit service requirement" in other sections of the policy "demonstrates that the parties knew how to include a service requirement when they so desired.").

As these cases demonstrate, where an insurer includes receipt or service requirements in one part of the policy, but not the part of the policy under consideration, a court cannot read receipt or service requirements into the part of the policy that does not contain them. The District Court should not have read

such requirements into the Policy here. Other parts of the Claim definition in the Policy here, such as subpart (2), demonstrate that National Union knew how to include a "service" or "receipt" requirement when it wanted to do so. (Doc. 1-1 at 8.) Likewise, another insurance policy issued to Crowley by National Union, on which National Union mistakenly relied in initially denying coverage to Crowley after Crowley submitted the Search Warrant Affidavit, did contain a provision stating that "[a] Claim shall be considered to have been first made against an Insured when written notice of such Claim ***is received*** by any Insured, by the Company on behalf of any Insured or by the Insurer, whichever comes first." (Docs. 36-14 at 17-18; 36-33 at 3.) (emphasis added). Critically for contract interpretation purposes, there is no such provision in the Claim definition subpart at issue here. National Union drafted the Policy and chose not to include any such requirement in the subpart of the Claim definition that applies here, and the District Court erred by violating the rules of contract interpretation and adding into the Policy a "service" or "receipt" requirement that does not appear in the actual wording of the relevant policy language. *See Buckley Towers Condo, Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 663 (11th Cir. 2010) ("Under Florida's binding law, … courts are not free to rewrite the terms of an insurance contract."); *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (court should not rewrite an insurance policy).

The 2008 Search Warrant Affidavit, even though it was not served on Mr. Farmer or Crowley or otherwise received by them, is a document that, during the Policy Period, identified Mr. Farmer in writing as a person against whom a criminal proceeding may be commenced. Applying the plain language of the Policy, there thus was a Claim against Mr. Farmer in 2008.

**B.    The District Court Erred In Holding That Expiration Of The Run-Off Endorsement's Discovery Period In November 2013 Barred Coverage Because The District Court's Own Recitation Of The Facts Shows That National Union Was Notified Of A Claim Against Mr. Farmer No Later Than February 2013.**

The District Court's holding that National Union was not notified of a Claim before the November 2013 expiration of the Discovery Period provided by the Run-Off Endorsement cannot be reconciled with the facts on which the District Court relied in making its holding. The District Court recognized that in February 2013, ***before*** the expiration of the Run-Off Endorsement's Discovery Period, Mr. Farmer was identified in writing as a person against whom a criminal proceeding might be commenced, that National Union was notified of this fact, and that National Union agreed to provide coverage:

> [I]n February, 2013 the government offered Farmer a plea deal, which identified him in writing as a target of a government investigation. (Doc. 36-11 at 2-3). Consequently, beginning in February, 2013, National Union agreed to cover Farmer's subsequent defense costs because the plea deal materialized before the end of the Discovery Period. (Doc. 36-11 at 3).

(Doc. 53 at 5.) The District Court's recognition that the plea offer was a writing

that identified Mr. Farmer as a person against whom a criminal proceeding might be brought – the *sine qua non* of a Claim – in February 2013, and that National Union recognized as such in agreeing to cover Mr. Farmer's defense costs from February 2013 forward is flatly – and fatally – incompatible with the District Court's erroneous conclusion that there was no Claim or reporting of a Claim until after the Discovery Period ended in November 2013. The record evidence cited by the District Court establishes that the DOJ Investigation had been recognized and accepted as a Claim by National Union in March 2013, after being timely reported pursuant to the terms of the Run-Off Endorsement. Crowley's submission of the Search Warrant Affidavit in 2015 does not alter or undo this fact. Submission of the Search Warrant Affidavit simply provided National Union with evidence confirming that the same DOJ Investigation Claim that later resulted in a plea offer in fact had first identified Mr. Farmer as a person against whom a criminal proceeding may be commenced in April 2008.

C.      **The Claim Against Mr. Farmer Was Reported During The Policy Period.**

Because the District Court inexplicably focused solely on the Notice of Circumstances clause of the Policy, it failed to analyze or apply the other, more material reporting provisions of the Policy, which contain no requirement that Crowley's notice "of a Claim" actually include a copy of the document that identifies the Insured Person as a person against whom a criminal proceeding may

be commenced.  The express language of the Policy only requires "written notice to the Insurer of a Claim made against an Insured…." (Doc. 1-1 at 15.)  There is no requirement in the Policy that the Insured forward the document that constitutes the evidence that a Claim has been made, let alone a requirement that such evidence be included with notice when it is under court seal and hence unavailable through no fault of the Insured.  As with the absence of a "service" requirement in the definition of Claim, other parts of the Policy demonstrate that National Union knew how to include a requirement that such evidence be included with a notice of Claim.  Indeed, the Notice of Circumstances clause, unlike the notice of Claim provision, requires that an Insured "shall give written notice to the Insurer of the circumstances, the Wrongful Act allegations anticipated and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved." (*Id.* at 16.)  No such specific requirements are contained in the notice of Claim provision of the Policy.  Florida's rules of insurance policy construction prohibit rewriting the terms of the Policy to insert such requirements in the face of the broad, vague notice provision that National Union chose to include in the Policy with respect to reporting of Claims.  *Buckley Towers Condo,* 395 F. App'x at 663.

Crowley satisfied its reporting obligations under the Policy when it provided notice of the DOJ Investigation as a notice of Claim in April 2008 and informed

National Union that one of the documents evidencing that Claim – the Search Warrant Affidavit – was unavailable and filed under seal.  Crowley's April 25, 2008 notice included a copy of the search warrant, which explicitly identified the sealed Search Warrant Affidavit submitted by an FBI Special Agent as supporting a finding of probable cause to search the contents of Mr. Farmer's office, and, in addition, explained that "[t]he charges that may have lead to the subpoena and search warrant are sealed…."  (Docs. 36-5 at 4; 36-21 at 7.)  In responding to Crowley's April 25, 2008 notice, National Union itself expressly admitted that the DOJ Investigation was "submitted to National Union as [a] Claim[] under the Policy."  (Doc. 36-6 at 3.)  In later correspondence to National Union, both Crowley and Mr. Farmer's counsel reiterated to National Union that a Claim had been made against Mr. Farmer. (Docs. 36-18 at 3; 36-21 at 2.)  There can be no dispute that, under these facts, National Union was given notice "of a Claim." which is all that is required by the Policy's reporting provisions.  Crowley's inability to provide the Search Warrant Affidavit until 2015, through no fault of its own, is not the same as failing to report the *existence* of the Claim until 2015.[7]

_____

[7] To the extent that the District Court believed that the Arbitration Award somehow foreclosed Crowley from arguing that its 2008 notice was notice of a Claim there is no support for such a result.  The Arbitration panel merely held that the documents submitted to National Union by the time of Arbitration were not enough to establish that there was a writing that identified Mr. Farmer as a person against whom a criminal proceeding might be brought, not that Crowley's notice had to be treated as something other than a notice of a Claim.  (Doc. 36-7 at 10.)

There is no language in the Policy that dictates the result sought by National Union here, and the District Court erred in not crediting (or even considering) Crowley's arguments on this point.

> **D.** **Industry Custom And Practice And National Union's Own Conduct Demonstrate That National Union Did Not Intend The Run-Off Endorsement To Bar Consideration of New Evidence Of An Existing Claim, Even If Such Evidence Only Became Available After The Run-Off Endorsement's Reporting Deadline.**

For the reasons set forth above, the November 1, 2013 deadline for reporting Claims set by the Run-Off Endorsement does not bar coverage here because a Claim was both made against an Insured Person and reported by Crowley in 2008 or, as the District Court found, no later than February 2013. National Union's own conduct and industry custom and practice further support the conclusion that the Run-Off Endorsement's reporting deadline does not bar coverage here, even if additional evidence of an existing Claim could only be provided to National Union after the Discovery Period of the Run-Off Endorsement.

**First,** if National Union actually believed that the Run-Off Endorsement's deadline applied to bar coverage here, it would have raised the argument early on. Tellingly, however, in responding to Crowley once it was able to provide National Union with a copy of the Search Warrant Affidavit in 2015, National Union did not even mention the Run-Off Endorsement (Doc. 36-33), and in fact did not even devise the Run-Off Endorsement argument until it filed its reply brief in support of

its motion to dismiss.  (Doc. 36 at 17-18.)

**Second,** National Union's failure to raise the Run-Off Endorsement is consistent with industry custom and practice because a Run-Off Endorsement such as that contained in Crowley's Policy is "intended to expand coverage beyond what would exist in the absence of such an endorsement."  (Doc. 36-14 at 24-25.) It is "inconsistent with industry custom and practice, and the very purpose of the run-off endorsement… to use the Run-Off endorsement as a way of eliminating coverage."  (*Id.*)  National Union's failure to raise the argument until the eleventh-hour demonstrates its agreement with industry-wide recognition that the Run-Off Endorsement is not intended to eliminate coverage.

**Third,** National Union itself accepted Crowley's April 25, 2008 notice of the DOJ Investigation as a Notice of Circumstances pursuant to Section 7(c) of the Policy, which provides that if Crowley gives notice under Section 7(c), then a "subsequently made" Claim is "arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to… such circumstances, shall be considered made at the time such notice of such circumstances was given."  (Doc. 1-1 at 16.)  On this point, contrary to the District Court's erroneous assertion, Crowley did not, and does not, contend that reliance on Section 7(c) is necessary to find in its favor here.  However, by acknowledging that Crowley had given notice of a Claim but choosing instead to treat Crowley's

April 25, 2008 notice as a Notice of Circumstances, National Union agreed that even if the unsealing of the Search Warrant Affidavit could somehow be considered a subsequent Claim, it would still be "considered made when the notice of circumstances was given," no matter when it was unsealed. (Doc. 36-14 at 24.) The reporting deadline set by the Run-Off Endorsement does not apply in such a circumstance. (*Id.*)

National Union's "about face" on its willingness to treat the 2008 notice as a valid Notice of Circumstances demonstrates the unreasonableness of the policy interpretation it seeks. Even though it was National Union that first asserted that the DOJ Investigation triggered the Notice of Circumstances clause, National Union later proffered an expert who asserted that the Notice of Circumstances did not apply to the Search Warrant Affidavit because the Search Warrant Affidavit dated April 16, 2008 "was dated prior to the [April 25, 2008] notice of circumstances, so … it clearly is not a Claim subsequently made." (Doc. 36-15 at 17.) This shift highlights National Union's "heads I win, tails you lose" interpretation, under which the Affidavit could never trigger coverage under the Policy because: (1) during the Policy Period, the contents were unavailable so it could not be a Claim made and reported during the Policy Period; and (2) after the Policy Period, the Notice of Circumstances provision would not apply because the Affidavit was dated before Crowley's first notice on April 25, 2008. National

Union's argument attempts to twist the Policy language to deny coverage under any circumstances for a Claim that the Policy clearly is designed to cover.

**Fourth,** National Union expressly recognized that additional evidence of the Claim against Mr. Farmer could be presented at any time when it invited Crowley to submit additional documents and told Crowley that "[w]e remain willing to reevaluate coverage" and that if "you have additional information you would like to provide, we continue to welcome you to ***do so at any time.***" (Doc. 36-26 at 2) (emphasis added.) National Union's own statement that Crowley could provide additional information "at any time" is inconsistent with its later assertion that just because the Affidavit was unsealed after the end of the Discovery Period, Crowley somehow failed to comply with the reporting deadline for a Claim Crowley reported to National Union with all information available to it in 2008.

In sum, the evidence demonstrates that, consistent with industry custom and practice, National Union did not intend for the Run-Off Endorsement's deadline to bar consideration of new evidence, once initial notice had been provided, and that National Union instead intended to keep its books "open" on its Policy by allowing Crowley to later supplement its notice with additional information and evidence of the Claim against Mr. Farmer as it became available.

**II.    The District Court Erred In Its Alternative Finding That *Res Judicata* Bars Crowley's Causes Of Action.**

Once the District Court correctly found that the Search Warrant Affidavit was new evidence that was not available during the Arbitration, it should have rejected National Union's *res judicata* defense and stopped there.   Curiously, however, the District Court somehow decided that if Crowley was arguing that it had provided notice of a Claim to National Union in 2008 and wanted its provision of the Search Warrant Affidavit to be considered in connection with that argument, it was somehow giving up its ability to argue that the Search Warrant Affidavit was new evidence and thus must lose its argument based on *res judicata*.   There is no basis in the facts or the law for the District Court's ruling on this point.

**A.    The District Court Correctly Determined That The Search Warrant Affidavit Was New Evidence.**

The only way for National Union to succeed on its motion for summary judgment as to its *res judicata* defense was to show that "no genuine issue of material fact exists concerning the identity of the cause of action" between the Arbitration and this action.  (Doc. 53 at 9.)  The District Court correctly held that National Union failed to meet its burden to show that the causes of action in the two proceedings were the same because the Search Warrant Affidavit was new evidence that was unavailable to the parties at the time of the Arbitration.  (*Id.* at 8-17.)

Under Florida law, in order to show the required "identity of the cause of action" to support a claim of *res judicata*, a moving party must establish that "the facts or evidence necessary to maintain the suit are the same in both actions." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066 (11th Cir. 2013); *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005). If, by contrast, there has been a "modification of significant facts creating new legal conditions, *res judicata* is no defense." *Southeast Florida Cable, Inc. v. Martin Cty., Fla.*, 173 F.3d 1332, 1336 (11th Cir. 1999). In this regard, Florida law is clear that *res judicata* does not apply "[w]hen other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties." *State St. Bank & Trust Co. v. Badra,* 765 So.2d 251, 254 (Fla. 4th DCA 2000); *see also Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n.,* 210 So.2d 750, 753-54 (Fla. 4th DCA 1968), *aff'd,* 245 So.2d 625 (Fla. 1971) ("the applicability of [*res judicata*] in each case turns on the particular facts alleged in each action and the particular disposition of the allegations in the first action"); *Larimore v. State of Florida*, 76 So.3d 1121, 1123 (Fla. 1st DCA 2012); *Saadeh v. Stanton Rowing Found.*, 912 So.2d 28, 31 (Fla. 1st DCA 2005). Courts across the country are in accord and decline to apply *res judicata* when a party asserts claims based on facts that could not have been pleaded at the time of the prior claim. *See Monahan v. Paine Webber Grp., Inc.*, 724 F. Supp. 224, 226 (S.D.N.Y. 1989) (*res*

*judicata* not a bar to second complaint based on facts that could not have been pleaded at the time of prior arbitration); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) ("If the plaintiff is unaware of facts when filing a complaint, *res judicata* will not bar subsequent litigation").

In applying these principles, the Eleventh Circuit has recognized that *res judicata* is especially inappropriate where, as here, the second complaint involves facts that took place after resolution of the first complaint.  In such circumstances, the second complaint "involve[s] different facts and evidence than the causes of action alleged in the [first] action," such that "the causes of action are not identical." *Lozman*, 713 F.3d at 1075.

Recognizing this established law, the District Court correctly held that the causes of action asserted by Crowley in this lawsuit are not precluded by the Arbitration.  (Doc. 53 at 8.)  As the District Court explained, "the two actions would be separate breach of contract claims alleging separate wrongful acts by National Union: (1) not paying Farmer's defense costs based on what Crowley had submitted to National Union at the time of the arbitration; and (2) not paying Farmer's defense costs based on Crowley's 2015 submission of the Affidavit." (Doc. 53 at 15.)

In so holding, the District Court likened this case to the decision in *State St. Bank & Trust Co. v. Badra*, where a Florida appeals court held that *res judicata* did

not apply where the first action relied on notices of acceleration dated in 1992 and 1993, while the second action relied on a 1997 notice, after the first action concluded. 765 So.2d at 254. As the court in *State St. Bank* explained, "[s]ince the first and second actions involved different notices of acceleration and such letters were essential to the maintenance of each action, there existed essential facts between the two cases which differed." *Id.* The District Court explained that the circumstances here are similar to those in *State St. Bank* because "the documents submitted to the arbitration panel did not include the Affidavit" and therefore "the essential facts between the arbitration and this action differ." (Doc. 53 at 15.)

The District Court also rejected National Union's assertion that the Affidavit is "just the later discovery of an old fact[,]" (*id.* at 16) (emphasis in original), explaining instead that "the Affidavit is more like newly discovered evidence because neither party had a reasonable ability to discover its content." (*Id.*) (*citing Hialeah Race Course*, 245 So. 2d at 628).

### B. Having Found That There Were New Facts, The District Court Erred In Holding That The Arbitration Decision Precludes This Action.

Notwithstanding its correct finding that the causes of action in this case and the Arbitration are different because new, intervening facts (the availability of the Search Warrant Affidavit) came into being between the Arbitration Award and the filing of this action, the District Court held, in the alternative, that *res judicata*

nevertheless would apply "because Crowley cannot contend that the Affidavit was included in the 2008 Notice of Circumstances, making it timely under the Policy, but was not part of the 2008 materials for preclusion purposes." (Doc. 53 at 19.) The Court's holding on this point is wrong for a number of reasons, each of which independently supports reversal of this holding.

**First**, as an initial matter, there was no reason to bring the Notice of Circumstances clause into the analysis. Crowley's primary argument was not that the Notice of Circumstances clause applied, but that its 2008 notice was a notice of a Claim, and Crowley never argued – in form or in substance – that "the Affidavit was included in the 2008 Notice of Circumstances." As explained in detail above, Crowley did not need to rely on the Notice of Circumstances clause or any concept of "relation back" in order to establish that it provided notice within the deadline established by the Run-Off Endorsement. To the contrary, Crowley argued – correctly – that its 2008 notice to National Union was a notice of a Claim, not a Notice of Circumstances. The District Court simply overlooked this aspect of Crowley's argument. The fact that Crowley gave notice of the DOJ Investigation Claim in 2008 does not change the fact that the Affidavit was unavailable at that time, and that its availability and submission to National Union in 2015 created new facts and circumstances, rendering *res judicata* inapplicable.

**Second,** apart from that, any alleged reliance on the Notice of Circumstances

clause would not be inconsistent with avoidance of *res judicata*. The Notice of Circumstances clause results in a post-policy Claim relating back to the Policy Period for timeliness purposes so long as the later Claim involves facts that are *related* to those encompassed by the timely Notice of Circumstances. By contrast, the issue presented by *res judicata* is not whether facts are related, but whether there are new, intervening facts between the two actions, such that there is no identity of the causes of action in the two proceedings. That is clearly the case here, because the availability of the Search Warrant Affidavit is a new, intervening fact. The fact that the Search Warrant Affidavit established that there was a Claim against Mr. Farmer in 2008 also has no relevance to whether the unsealing of the Search Warrant Affidavit was newly available evidence under the established *res judicata* case law that applies in this case, as set out above in Section II.A.

The test for determining "relation back" for purposes of the Notice of Circumstances provision simply is not the same as the test for determining whether there is an identity of causes of action between two proceedings, and there is nothing inconsistent about arguing that an event, such as the unsealing of a Search Warrant Affidavit, is a new, intervening fact, even if it "relates to" a circumstance or Wrongful Act that was the subject of a prior Notice of Circumstances.

**Third**, the Arbitration was in the nature of a declaratory proceeding, and thus could not give rise to *res judicata*. Crowley filed the Arbitration before the

underlying criminal proceeding against Mr. Farmer was concluded and it could get access to the Search Warrant Affidavit. The law has long recognized that both insurers and insureds seek declarations of insurance policy rights and obligations before final disposition of an underlying claim and has limited how *res judicata* applies to such proceedings. *See Empire Fire & Marine Ins. Co. v. J. Transp., Inc.,* 880 F.2d 1291, 1296 (11th Cir. 1989) ("ordinary principles of *res judicata* cannot be applied automatically to declaratory judgments").

Here, faced with Mr. Farmer's mounting legal bills during a long-running criminal investigation, National Union's refusal to pay, and no certainty as to when the Search Warrant Affidavit would be unsealed and made available to Crowley, it was entirely appropriate for Crowley to try to obtain relief against National Union when it did, based on the documents available at the time. To prevent an unfair application of *res judicata* in the analogous scenario of a declaratory judgment action, the Eleventh Circuit has held that re-litigation will be barred only as to issues "actually litigated and necessary to the judgment rendered." *Id.* Here, the actual issue litigated in the Arbitration was whether the documents presented ***at that time***, not including the Search Warrant Affidavit, evidenced that a Claim had been made against an Insured Person. Indeed, the Award expressly held that the "triggering event" establishing the existence of a Claim had "not yet" been presented to National Union – a holding that merely made a declaration as to the

sufficiency of the materials presented to date, but ***not*** excluding the possibility that Crowley could later prove the existence of a Claim by presenting other documents.

**Fourth**, the District Court's alternative decision is also in error for the independent reason it does not take into account that the doctrine of *res judicata* is an equitable one that will not be applied where it will "inflict pernicious results." *Universal Const. Co. v. City of Fort Lauderdale*, 68 So. 2d 366, 369 (Fla. 1953); *Aeacus Real Estate Ltd. v. 5th Ave. Real Estate Dev*., 948 So. 2d 834, 835 (Fla. 4th DCA 2007). Although the District Court recognized this principle at the hearing on National Union's motion for summary judgment (Doc. 49 at 28:25-29:8), it does not even mention the established Florida law on this issue in its Order.

Crowley seeks only to have National Union do what its Policy was intended to do: pay the reasonable defense costs of an Insured Person after he was identified by a prosecuting agency in writing as a person against whom a criminal proceeding may be brought. There is nothing "equitable" about depriving Crowley of coverage for defense costs that the Policy was written and designed to cover, especially in light of the unusual circumstances of this case. Any analysis of whether Crowley's request for coverage in this action is precluded by the Arbitration should also have considered whether application of the doctrine of *res judicata* would lead to an inequitable result. The District Court failed to conduct this analysis, and its decision should be reversed for this reason also.

# CONCLUSION

For the foregoing reasons, Crowley respectfully requests that the Court reverse the District Court's summary judgment in favor of National Union and remand the case.

Dated: May 23, 2018          Respectfully Submitted,

/s/ John D. Shugrue
John D. Shugrue
Thomas A. Marrinson
Emily E. Garrison
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7507
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400
jshugrue@reedsmith.com
tmarrinson@reedsmith.com
egarrison@reedsmith.com

*Attorneys for Plaintiff-Appellant Crowley Maritime Corporation*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,990 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman with 14 point type for text and 12 point type for footnotes.

/s/ John D. Shugrue
**Counsel for Appellant,**
**Crowley Maritime Corporation**

Dated:  May 23, 2018

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY service by UPS, postage prepaid, and CM/ECF a true and correct copy of the foregoing along with 6 copies upon the following clerk of court, this 23rd day of May, 2018:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

I HERBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will serve a Notice of Docket Activity on this 23rd day of May, 2018 to the following:

Michael P. Duffy
Scarlett M. Rajbanshi
Peabody & Arnold, LLP, 6th Floor
600 Atlantic Ave.
Boston, MA 02210-2261
Email: mduffy@peabodyarnold.com
        srajbanshi@peabodyarnold.com

Stephen Hunter Johnson
Jason Benjamin Bloom
Lydecker Diaz
1221 Brickell Ave 19th Flr
Miami, FL 33131-3240
Email: shj@lydeckerdiaz.com
        jbloom@lydeckerdiaz.com

*/s/ Emily E. Garrison*
**Counsel for Appellant,**
**Crowley Maritime Corporation**

43