No. 18-10953-A

## In The United States Court Of Appeals
## For The Eleventh Circuit

## CROWLEY MARITIME CORPORATION

*Plaintiff-Appellant,*

v.

## NATIONAL UNION FIRE INSURANCE
## COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellee.*

On Appeal From The Judgment Of The
United States District Court For The Middle District Of Florida
At Civil Action No. 3:16-cv-01011-TJC-JBT

## APPENDIX OF APPELLANT
## VOLUME I of IV

John D. Shugrue
Thomas A. Marrinson
Emily E. Garrison
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jshugrue@reedsmith.com
tmarrinson@reedsmith.com
egarrison@reedsmith.com

*Counsel for Plaintiff-Appellant*

# INDEX TO APPELLANT'S APPENDIX

**Document Description**                                    **Docket/ Tab #**

## VOLUME I

Civil Docket Sheet for Case No. 3:16-cv-01011 ............................... A

Crowley's Complaint ........................................................................ 1

Executive and Organization Liability Insurance Policy Number
061-36-48 ........................................................................................ 1-1

National Union's Memorandum in Support of its Motion to
Dismiss ............................................................................................ 16

Crowley's Opposition to National Union's Motion to Dismiss ........ 20

Declaration of Steven Ficon in Support of Crowley's Opposition
to National Union's Motion to Dismiss ............................................ 20-1

July 22, 2015 Letter from Crowley to National Union (Ex. A to
Doc. 20-1) ........................................................................................ 20-2

August 3, 2015 Letter from National Union to Crowley (Ex. B to
Doc. 20-1) ........................................................................................ 20-3

Declaration of Emily Garrison in Support of Crowley's
Opposition to National Union's Motion to Dismiss .......................... 20-4

April 24, 2015 Order Denying Thomas Farmer's Motion to
Suppress (Ex. A to Doc. 20-4) .......................................................... 20-5

Excerpts from the April 24, 2015 Transcript in the Trial of
Thomas Farmer  (Ex. B to Doc. 20-4) ............................................... 20-6

December 6, 2012 Email from E. Garrison to M. Duffy (Ex. I to
Doc. 20-4) ........................................................................................ 20-13

Reply of National Union In Support of Its Motion to Dismiss ......... 25

National Union's Answer and Affirmative Defenses ........................ 35

Certificate of Service (Volume I)

## **VOLUME II**

Crowley's Supplemental Memorandum in Opposition to National
Union's Motion to Dismiss / For Summary Judgment ..................... 36

Declaration of Emily Garrison in Support of Crowley's
Supplemental Memorandum ............................................... 36-1

Search Warrant Affidavit (Ex. A to Doc. 36-1)................................ 36-2

Excerpts from the March 16, 2017 Deposition of S. Ficon (Ex. B
to Doc. 36-1) ..................................................... 36-3

Expert Witness Report of William F. Jung (Ex. C to Doc. 36-1)...... 36-4

April 25, 2008 Notice Letter (Ex. D to Doc. 36-1)........................... 36-5

May 27, 2008 Letter from M. Conboy to S. Ficon (Ex. E to Doc.
36-1) ................................................................ 36-6

Arbitration Decision and Award (Ex. F to Doc. 36-1) ..................... 36-7

National Union's Motion for Summary Disposition in the
Arbitration (Ex. G to Doc. 36-1)........................................ 36-8

Excerpts from the Transcript of Proceedings in the Arbitration
(Ex. H to Doc. 36-1).......................................... 36-9

March 29, 2013 Order in *In the Matter of Search Warrant for
Crowley Liner Services Inc.* (Ex. I to Doc. 36-1) ............................. 36-10

Certificate of Service (Volume II)

# VOLUME III

March 5, 2013 Letter from M. Duffy to T. Reed (Ex. J to Doc. 36-1) ..................................................................................... 36-11

December 9, 2011 Order in *In the Matter of Search Warrant for Crowley Liner Services Inc.* (Ex. K to Doc. 36-1)............................ 36-12

National Union's Responses to Crowley's First Set of Requests for Admission (Ex. L to Doc. 36-1)..................................................... 36-13

Expert Witness Report of Ty Sagalow (Ex. M to Doc. 36-1)............ 36-14

Expert Witness Report of Thomas R. Newman (Ex. N to Doc. 36-1) ..................................................................................... 36-15

April 16, 2008 Order in *In the Matter of Search Warrant for Crowley Liner Services Inc.* (Ex. P to Doc. 36-1) ............................ 36-17

June 30, 2008 Letter from T. Reed to M. Conboy (Ex. Q to Doc. 36-1) ..................................................................................... 36-18

Nov. 26, 2008 Letter from S. Ficon to D. Sweeney (Ex. R to Doc. 36-1) ..................................................................................... 36-19

Feb. 2, 2009 Letter from M. Conboy to S. Ficon (Ex. S to Doc. 36-1) ..................................................................................... 36-20

Sept. 30, 2009 Letter from S. Ficon to M. Conboy, including attachments (Ex. T to Doc. 36-1)........................................................ 36-21

July 18, 2012 Letter from T. Reed to M. Conboy (Ex. U to Doc. 36-1) ..................................................................................... 36-22

May 7, 2008 Email from S. Ficon to E. Conlon (Ex. V to Doc. 36-1) ..................................................................................... 36-23

June 30, 2008 Letter from T. Reed to M. Conboy (Ex. W to Doc. 36-1) ..................................................................................... 36-24

May 22, 2008 email from E. Conlon to M. Conboy (Ex. X to Doc. 36-1) ................................................................................. 36-25

June 9, 2010 Letter from E. Joseph O'Neil to C. Dolan (Ex. Y to Doc. 36-1) ....................................................................... 36-26

Aug. 12, 2010 Letter from E. Joseph O'Neil to S. Ficon (Ex. Z to Doc. 36-1) ....................................................................... 36-27

Aug. 28, 2012 Letter from M. Duffy to R. Reed (Ex. AA to Doc. 36-1) ................................................................................. 36-28

Excerpts from the March 3, 2017 Deposition of M. Conboy (Ex. BB to Doc. 36-1) ................................................................. 36-29

Excerpts from the March 17, 2017 Deposition of M. Graffeo (Ex. CC to Doc. 36-1) ............................................................... 36-30

Oct. 16, 2015 Letter from M. Duffy to T. Reed (Ex. DD to Doc. 36-1) ................................................................................. 36-31

Certificate of Service (Volume III)

## VOLUME IV

July 22, 2015 Letter from S. Ficon to M. Graffeo (Ex. EE to Doc. 36-1) ................................................................................. 36-32

Aug. 3, 2015 Letter from M. Graffeo to S. Ficon (Ex. FF to Doc. 36-1) ................................................................................. 36-33

Aug. 12, 2013 Order from *United States of America v. Thomas Farmer* (Ex. GG to Doc. 36-1) ............................................. 36-34

Excerpts from the March 8, 2017 Deposition of W. Jung (Ex. HH to Doc. 36-1) ..................................................................... 36-35

National Union's Supplemental Memorandum in Support of its Converted Motion for Summary Judgment ....................................... 37

Crowley's Response to National Union's Supplemental
Memorandum ...................................................................................... 40

Declaration of Emily Garrison in Support of Crowley's Response
to National Union's Supplemental Memorandum ............................ 40-1

Excerpts from the March 14, 2017 Deposition of Ty Sagalow (Ex.
A to Doc. 40-1) ................................................................................. 40-2

National Union's Response to Crowley's Supplemental
Memorandum in Opposition to National Union's Motion for
Summary Judgment............................................................................ 43

Transcript of June 20, 2017 Motion Hearing..................................... 49

February 8, 2018 Order...................................................................... 53

February 9, 2018 Judgment................................................................ 54

Certificate of Service (Volume IV)

# EXHIBIT A

APPEAL, CLOSED

# U.S. District Court
## Middle District of Florida (Jacksonville)
### CIVIL DOCKET FOR CASE #: 3:16-cv-01011-TJC-JBT

Crowley Maritime Corporation v. National Union Fire
Insurance Company of Pittsburg, PA.
Assigned to: Judge Timothy J. Corrigan
Referred to: Magistrate Judge Joel B. Toomey
Case in other court: 18-10953-A
Cause: 28:1331 Fed. Question: Insurance Contract

Date Filed: 08/08/2016
Date Terminated: 02/09/2018
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

| | | |
|---|---|---|
| **Crowley Maritime Corporation** | represented by | **Charles B. Lembcke** |

Law Office of Charles B. Lembcke, PA
Suite 605
1300 Riverplace Blvd
Jacksonville, FL 32207
904/355-5467
Fax: 904/633-9328
Email: cbl@cbllaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily E. Garrison**
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-3917
Fax: 312-207-6400
Email: egarrison@reedsmith.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John D. Shugrue**
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-2459
Fax: 312-207-6400
Email: jshugrue@reedsmith.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Thomas A. Marrinson
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312/207-3868
Fax: 312/207-6400
Email: tmarrinson@reedsmith.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**National Union Fire Insurance**　　　represented by　**Michael P. Duffy**
**Company of Pittsburg, PA.**　　　　　　　　　　　　　Peabody & Arnold, LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　6th Floor
　　　　　　　　　　　　　　　　　　　　　　　　　　600 Atlantic Ave.
　　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210-2261
　　　　　　　　　　　　　　　　　　　　　　　　　　617/951-2002
　　　　　　　　　　　　　　　　　　　　　　　　　　Email: mduffy@peabodyarnold.com
　　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　　**Scarlett M. Rajbanshi**
　　　　　　　　　　　　　　　　　　　　　　　　　　Peabody & Arnold, LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　6th Floor
　　　　　　　　　　　　　　　　　　　　　　　　　　600 Atlantic Ave.
　　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210-2261
　　　　　　　　　　　　　　　　　　　　　　　　　　617/951-2011
　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 617/951-2125
　　　　　　　　　　　　　　　　　　　　　　　　　　Email: srajbanshi@peabodyarnold.com
　　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　　**Stephen Hunter Johnson**
　　　　　　　　　　　　　　　　　　　　　　　　　　Lydecker Diaz
　　　　　　　　　　　　　　　　　　　　　　　　　　1221 Brickell Ave 19th Flr
　　　　　　　　　　　　　　　　　　　　　　　　　　Miami, FL 33131-3240
　　　　　　　　　　　　　　　　　　　　　　　　　　305-416-3180
　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: 305-416-3190
　　　　　　　　　　　　　　　　　　　　　　　　　　Email: shj@lydeckerdiaz.com
　　　　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

　　　　　　　　　　　　　　　　　　　　　　　　　　**Jason Benjamin Bloom**
　　　　　　　　　　　　　　　　　　　　　　　　　　Lydecker Diaz
　　　　　　　　　　　　　　　　　　　　　　　　　　19th Floor

1221 Brickell Ave
Miami, FL 33131
305/416-3180
Email: jbloom@lydeckerdiaz.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/08/2016 | 1 | COMPLAINT against National Union Fire Insurance Company of Pittsburg, PA. with Jury Demand (Filing fee $400 receipt number Jax021170) filed by Crowley Maritime Corporation. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(AMM) (Entered: 08/09/2016) |
| 08/08/2016 | 2 | SUMMONS issued as to National Union Fire Insurance Company of Pittsburg, PA. (AMM) (Entered: 08/09/2016) |
| 08/10/2016 | 3 | CORPORATE Disclosure Statement by Crowley Maritime Corporation identifying Corporate Parent Crowley Holdings, Inc. for Crowley Maritime Corporation.. (Lembcke, Charles) (Entered: 08/10/2016) |
| 08/16/2016 | 4 | **NOTICE of designation under Local Rule 3.05 - track 2. Signed by Deputy Clerk on 8/16/2016. (Attachments: # 1 Case Management Report form, # 2 Consent to US Magistrate Judge Jurisdiction letter and form)(MD)** (Entered: 08/16/2016) |
| 08/17/2016 | 5 | MOTION for John d. Shugrue, Thomas A. Marrinson and Emily E. Garrison to appear pro hac vice by Crowley Maritime Corporation. (Lembcke, Charles) Motions referred to Magistrate Judge Joel B. Toomey. (Entered: 08/17/2016) |
| 08/17/2016 | 6 | Written designation and consent to act by Charles B. Lembcke on behalf of Crowley Maritime Corporation. Local Counsel: Charles B. Lembcke. Non-Resident Counsel: John D. Shugrue. (Lembcke, Charles) (Entered: 08/17/2016) |
| 08/17/2016 | 7 | Written designation and consent to act by Charles B. Lembcke on behalf of Crowley Maritime Corporation. Local Counsel: Charles B. Lembcke. Non-Resident Counsel: Thomas A. Marrinson. (Lembcke, Charles) (Entered: 08/17/2016) |
| 08/17/2016 | 8 | Written designation and consent to act by Charles B. Lembcke on behalf of Crowley Maritime Corporation. Local Counsel: Charles B. Lembcke. Non-Resident Counsel: Emily E. Garrison. (Lembcke, Charles) (Entered: 08/17/2016) |
| 08/18/2016 | 9 | **ENDORSED ORDER granting 5 Motion for Permission to Appear Pro Hac Vice. If John D. Shugrue, Esq., Thomas A. Marrinson, Esq., and Emily E. Garrison, Esq., have not already done so, they each shall immediately pay the admission fee and register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Joel B. Toomey on 8/18/2016. (TSP)** (Entered: 08/18/2016) |

| | | |
|---|---|---|
| 08/18/2016 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Forms filed by attorney JOHN D. SHUGRUE, THOMAS A. MARRINSON AND EMILY E. GARRISON, appearing on behalf of Crowley Maritime Corporation (Filing fee $450 receipt number JAX021259.) Related document: 5 MOTION for John d. Shugrue, Thomas A. Marrinson and Emily E. Garrison to appear pro hac vice. (AEJ) (Entered: 08/18/2016) |
| 09/02/2016 | 10 | NOTICE of Appearance by Stephen Hunter Johnson on behalf of National Union Fire Insurance Company of Pittsburg, PA. (Johnson, Stephen) (Entered: 09/02/2016) |
| 09/08/2016 | 11 | MOTION for Extension of Time to File Answer re 1 Complaint by National Union Fire Insurance Company of Pittsburg, PA.. (Johnson, Stephen) Motions referred to Magistrate Judge Joel B. Toomey. (Entered: 09/08/2016) |
| 09/09/2016 | 12 | **ENDORSED ORDER granting 11 Defendant, National Union Fire Insurance Company of Pittsburgh, PA's Unopposed Motion for Enlargement of Time to Respond to Plaintiff's Complaint. Defendant shall have up to and including October 14, 2016 to respond to the Complaint for Breach of Contract 1 . Signed by Magistrate Judge Joel B. Toomey on 9/9/2016. (TSP)** (Entered: 09/09/2016) |
| 10/12/2016 | 13 | CASE MANAGEMENT REPORT. (Garrison, Emily) (Entered: 10/12/2016) |
| 10/14/2016 | 14 | CERTIFICATE of interested persons and corporate disclosure statement by National Union Fire Insurance Company of Pittsburg, PA.. (Johnson, Stephen) (Entered: 10/14/2016) |
| 10/14/2016 | 15 | MOTION for Summary Judgment by National Union Fire Insurance Company of Pittsburg, PA. (Johnson, Stephen) Modified on 12/22/2016 (PAM). Motion Converted See Order Doc. 28 (Entered: 10/14/2016) |
| 10/14/2016 | 16 | MEMORANDUM in support re 15 Motion to dismiss filed by National Union Fire Insurance Company of Pittsburg, PA.. (Attachments: # 1 Exhibit)(Johnson, Stephen) (Entered: 10/14/2016) |
| 10/25/2016 | 17 | Unopposed MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss complaint by Crowley Maritime Corporation. (Lembcke, Charles) Motions referred to Magistrate Judge Joel B. Toomey. (Entered: 10/25/2016) |
| 10/26/2016 | 18 | **ENDORSED ORDER granting 17 Unopposed Motion for an Extension of Time to File Response to National Union's Motion to Dismiss (Doc. 15 & 16). Plaintiff shall have up to and including November 7, 2016 to file its response. Signed by Magistrate Judge Joel B. Toomey on 10/26/2016. (TSP)** (Entered: 10/26/2016) |
| 11/02/2016 | 19 | **CASE MANAGEMENT AND SCHEDULING ORDER: Parties to select mediator by 11/11/16 and conduct mediation hearing by 12/5/2016; Discovery deadline is 3/6/2017; Dispositive and Daubert motions due by 4/3/2017; Pretrial statement due by 8/17/2017; Final Pretrial Conference set for 8/23/2017 at 10:00 AM in Courtroom 10 D before Judge Timothy J.** |

| | | |
|---|---|---|
| | | **Corrigan; and, Jury Trial set for trial term commencing 9/5/2017 at 9:00 AM in Courtroom 10 D before Judge Timothy J. Corrigan. Signed by Deputy Clerk on 11/2/2016.** (MD). (Entered: 11/02/2016) |
| 11/07/2016 | 20 | MEMORANDUM in opposition re 15 Motion to dismiss filed by Crowley Maritime Corporation. (Attachments: # 1 Affidavit Declaration of Steven Ficon, # 2 Exhibit A to Ficon Declaration, # 3 Exhibit B to Ficon Declaration, # 4 Affidavit Declaration of Emily E Garrison, # 5 Exhibit A to Garrison Declaration, # 6 Exhibit B to Garrison Declaration, # 7 Exhibit C to Garrison Declaration, # 8 Exhibit D to Garrison Declaration, # 9 Exhibit E to Garrison Declaration, # 10 Exhibit F to Garrison Declaration, # 11 Exhibit G to Garrison Declaration, # 12 Exhibit H to Garrison Declaration, # 13 Exhibit I to Garrison Declaration)(Garrison, Emily) (Entered: 11/07/2016) |
| 11/11/2016 | 21 | NOTICE by Crowley Maritime Corporation *of Mediator Selection* (Garrison, Emily) (Entered: 11/11/2016) |
| 11/15/2016 | 22 | **ORDER appointing Michael G. Tanner as mediator in this action. Mediation to occur no later than 12/15/16. Signed by Judge Timothy J. Corrigan on 11/15/2016. (Attachments: # 1 Mediation Report form, # 2 docket sheet)(MD)** (Entered: 11/15/2016) |
| 11/15/2016 | 23 | CASE REFERRED to Mediation. (AMM) (Entered: 11/15/2016) |
| 11/16/2016 | 24 | **ORDER directing defendant to, no later than 12/9/16, file a reply (of no more than 10 pages) to include discussion of whether the Court ought to convert 15 defendant's Motion to Dismiss to a motion for summary judgment. Signed by Judge Timothy J. Corrigan on 11/16/2016. (MD)** (Entered: 11/16/2016) |
| 12/09/2016 | 25 | REPLY to Response to Motion re 15 MOTION to Dismiss complaint filed by National Union Fire Insurance Company of Pittsburg, PA.. (Johnson, Stephen) (Entered: 12/09/2016) |
| 12/14/2016 | 26 | MEDIATION report Hearing held on December 13, 2016. Hearing outcome: Continued.. (Tanner, Michael) (Entered: 12/14/2016) |
| 12/14/2016 | 27 | REQUEST for oral argument re 16 Memorandum in support, 15 MOTION to Dismiss complaint by Crowley Maritime Corporation. (Lembcke, Charles) (Entered: 12/14/2016) |
| 12/21/2016 | 28 | **ORDER converting Motion to Dismiss 15 to Motion for Summary Judgment, directing parties to undertake additional discovery and file supplemental briefs, limited to 15 pages (exclusive of exhibits), plaintiff's brief is due 4/3/2017, defendant's brief is due 4/25/2017; Setting Hearing on 15 motion for summary judgment and any other pending motions: Motion Hearing set for 6/20/2017 at 10:00 AM in Jacksonville Courtroom 10D before Judge Timothy J. Corrigan. Signed by Judge Timothy J. Corrigan on 12/21/2016. (SRW)** (Entered: 12/21/2016) |
| 01/23/2017 | 29 | MOTION for Michael P. Duffy to appear pro hac vice by National Union Fire Insurance Company of Pittsburg, PA.. (Johnson, Stephen) Motions referred to |

| | | |
|---|---|---|
| | | Magistrate Judge Joel B. Toomey. (Entered: 01/23/2017) |
| 01/23/2017 | 30 | Unopposed MOTION to extend time to Disclose Expert Reports by Crowley Maritime Corporation. (Attachments: # 1 Text of Proposed Order)(Garrison, Emily) Motions referred to Magistrate Judge Joel B. Toomey. Modified on 1/24/2017, notified counsel of proper filing procedures regarding proposed orders (TMC). (Entered: 01/23/2017) |
| 01/24/2017 | 31 | **ENDORSED ORDER granting 30 Unopposed Motion to Extend Expert Report Deadlines. The Case Management and Scheduling Order 19 is amended as follows: Deadline for Plaintiff to disclose expert reports is extended to February 10, 2017, and deadline for Defendant to disclose expert reports is extended to February 24, 2017. The granting of this Motion shall not serve as a basis for seeking to extend any other deadlines in the Case Management and Scheduling Order. Signed by Magistrate Judge Joel B. Toomey on 1/24/2017. (TSP) (Entered: 01/24/2017)** |
| 01/24/2017 | 32 | **ENDORSED ORDER granting 29 Unopposed Motion to Appear Pro Hac Vice, Special Admission to Practice. If Michael P. Duffy, Esq., has not already done so, he shall immediately pay the admission fee and register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Joel B. Toomey on 1/24/2017. (TSP) (Entered: 01/24/2017)** |
| 02/01/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Michael P. Duffy, appearing on behalf of National Union Fire Insurance Company of Pittsburg, PA. (Filing fee $150 receipt number JAX022885.) Related document: 29 MOTION for Michael P. Duffy to appear pro hac vice. (AFC) (Entered: 02/01/2017) |
| 02/22/2017 | 33 | MOTION to modify Case Management and Scheduling Order by National Union Fire Insurance Company of Pittsburg, PA.. (Bloom, Jason) (Entered: 02/22/2017) |
| 02/22/2017 | 34 | **ENDORSED ORDER granting 33 Motion to modify to the extent that the deadline for defendant to disclose its expert reports is extended until 3/3/2017; the discovery deadline is extended until 3/20/2017; the Court sua sponte extends the supplemental briefing deadlines as follows: plaintiff's is due 4/17/2017; defendant's is due 5/9/2017 (the motion hearing remains set for 6/20/2017 at 10:00 a.m.). Signed by Judge Timothy J. Corrigan on 2/22/2017.(SRW) (Entered: 02/22/2017)** |
| 03/15/2017 | 35 | ANSWER and affirmative defenses to 1 Complaint by National Union Fire Insurance Company of Pittsburg, PA..(Bloom, Jason) Modified on 3/16/2017, Counsel advised of correct caption for future pleadings. (TMC) (Entered: 03/15/2017) |
| 04/17/2017 | 36 | Supplemental MEMORANDUM in Opposition to 15 Motion to Dismiss / for Summary Judgment, by Crowley Maritime Corporation. (Attachments: # 1 Affidavit Emily E. Garrison, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 |

| | | |
|---|---|---|
| | | Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH)(Garrison, Emily) Modified on 4/18/2017 to edit text. (TMC) (Entered: 04/17/2017) |
| 05/09/2017 | 37 | MEMORANDUM in support re 15 Motion for summary judgment filed by National Union Fire Insurance Company of Pittsburg, PA.. (Attachments: # 1 Affidavit Mike Duffy, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Bloom, Jason) (Entered: 05/09/2017) |
| 05/17/2017 | 38 | MOTION for leave to file Response to 37 Memorandum in Support by Crowley Maritime Corporation. (Garrison, Emily) Modified on 5/18/2017 to edit docket text. (AMM) (Entered: 05/17/2017) |
| 05/18/2017 | 39 | **ENDORSED ORDER granting 38 Motion for Leave to File Reply: Crowley's reply, limited to 5 pages, must be filed no later than 5/23/2017; at its option, National Union may file a sur-reply, also limited to 5 pages, no later than 6/7/2017. Signed by Judge Timothy J. Corrigan on 5/18/2017. (SRW) (Entered: 05/18/2017)** |
| 05/23/2017 | 40 | REPLY to 37 MEMORANDUM in support re 15 Motion for summary judgment, filed by Crowley Maritime Corporation. (Attachments: # 1 Affidavit of Emily E Garrison, # 2 Exhibit A)(Garrison, Emily) Modified on 5/24/2017 to edit text and create docket entry relationship. (TMC) (Entered: 05/23/2017) |
| 05/30/2017 | 41 | Unopposed MOTION for Scarlett M. Rajbanshi to appear pro hac vice by National Union Fire Insurance Company of Pittsburg, PA.. (Attachments: # 1 Exhibit)(Bloom, Jason) Motions referred to Magistrate Judge Joel B. Toomey. Modified on 5/31/2017 - counsel contacted regarding correct case caption. (TMC) (Entered: 05/30/2017) |
| 05/31/2017 | 42 | **ENDORSED ORDER granting 41 Unopposed Motion to Appear Pro Hac Vice, Special Admission to Practice. If Scarlett M. Rajbanshi, Esq., has not already done so, she shall immediately pay the admission fee and register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Joel B. Toomey on 5/31/2017. (TSP) (Entered: 05/31/2017)** |
| 06/07/2017 | 43 | RESPONSE to 40 REPLY to 37 MEMORANDUM, filed by National Union Fire Insurance Company of Pittsburg, PA. (Bloom, Jason) Modified on 6/8/2017 to edit text and create docket entry relationships. Counsel Bloom advised via phone to correct case caption template to include 'Jacksonville Division' on all future pleadings. Counsel confirmed. (TMC) (Entered: 06/07/2017) |
| 06/20/2017 | 44 | MINUTE ENTRY. Proceedings held before Judge Timothy J. Corrigan: Hearing re: 15 Defendant's Motion to Dismiss held on 6/20/2017. Joint notice re: mediation/settlement conference due by 7/7/17. Court Reporter: Shannon |

| | | Bishop. (MD) (Entered: 06/20/2017) |
|---|---|---|
| 06/23/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Scarlett Rajbanshi, appearing on behalf of National Union Fire Insurance Company of Pittsburg, PA. (Filing fee $150 receipt number JAX024445.) Related document: 41 Unopposed MOTION for Scarlett M. Rajbanshi to appear pro hac vice. (TMC) (Entered: 06/23/2017) |
| 07/07/2017 | 45 | NOTICE by Crowley Maritime Corporation *Joint Statement Regarding Mediation* (Garrison, Emily) (Entered: 07/07/2017) |
| 07/10/2017 | 46 | **ORDER re 45 Joint Statement Regarding Mediation: referring the parties to a settlement conference with the Honorable Joel B. Toomey, United States Magistrate Judge; directing the Clerk to administratively close the file while the parties focus their efforts on settlement discussions. Signed by Judge Timothy J. Corrigan on 7/10/2017. (SRW)** (Entered: 07/10/2017) |
| 07/18/2017 | 47 | **ORDER Setting Hearing: Settlement Conference set for 8/22/2017 at 09:00 AM in Jacksonville Courtroom 5 A before Magistrate Judge Joel B. Toomey. See Order for Details. Signed by Magistrate Judge Joel B. Toomey on 7/18/2017. (TSP)** Modified on 7/18/2017 (TSP). (Entered: 07/18/2017) |
| 07/19/2017 | 48 | NOTICE to the parties that in light of the administrative closure and the upcoming settlement conference, any remaining settings in the Case Management and Scheduling Order 19 (including the 8/17/2017 filing of a pretrial statement, the 8/23/2017 Final Pretrial Conference, and the 9/5/2017 trial term setting) are vacated and will be reset if necessary by future Order. Signed by Deputy Clerk.(SRW) (Entered: 07/19/2017) |
| 08/11/2017 | 49 | TRANSCRIPT of Motion Hearing held on June 20, 2017 before Judge Timothy J. Corrigan. Court Reporter/Transcriber Shannon M. Bishop, RDR, CRR; dsmabishop@yahoo.com,Telephone number (904)549-1307. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter.. Redaction Request due 9/1/2017, Redacted Transcript Deadline set for 9/11/2017, Release of Transcript Restriction set for 11/9/2017. (SB) (Entered: 08/11/2017) |
| 08/11/2017 | 50 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Shannon Bishop, RDR, CRR; dsmabishop@yahoo.com; (904)549-1307. (SB) (Entered: 08/11/2017) |
| 08/22/2017 | 51 | Minute Entry. Proceedings held before Magistrate Judge Joel B. Toomey: |

| | | |
|---|---|---|
| | | SETTLEMENT CONFERENCE held on 8/22/2017. (Digital) (TSP) (Entered: 08/23/2017) |
| 08/29/2017 | 52 | **Declaration of Impasse: As reflected in 51 the Clerk's Minutes, the parties had until August 28, 2017 to contact the Court. They have not done so. Therefore, the Court declares an impasse in settlement negotiations. Signed by Magistrate Judge Joel B. Toomey on 8/29/2017. (TSP)** (Entered: 08/29/2017) |
| 02/08/2018 | 53 | **ORDER granting 15 Motion for summary judgment. The Clerk shall enter judgment in favor of Defendant and against Plaintiff, terminate all pending motions and deadlines, and close the file. Signed by Judge Timothy J. Corrigan on 2/8/2018. (JJB)** (Entered: 02/08/2018) |
| 02/09/2018 | 54 | **JUDGMENT that pursuant to this Court's Order, entered on February 8, 2018, Judgment is hereby entered in favor of Defendant, National Union FireInsurance Company of Pittsburgh, Pa., and against Plaintiff, Crowley Maritime Corporation. Signed by Deputy Clerk on 2/9/2018. (TMC)** (Entered: 02/09/2018) |
| 03/08/2018 | 55 | NOTICE OF APPEAL as to 54 Judgment, 53 Order on motion for summary judgment by Crowley Maritime Corporation. Filing fee paid. Receipt number JAX027018. (Garrison, Emily) Modified text on 3/13/2018 (EAM). (Entered: 03/08/2018) |
| 03/09/2018 | | USCA appeal fees received $ 505 receipt number JAX027018 re 55 Notice of appeal filed by Crowley Maritime Corporation (AFC) (Entered: 03/09/2018) |
| 03/13/2018 | 56 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 55 Notice of appeal. Eleventh Circuit Transcript information form available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (Attachments: # 1 Docket Sheet, # 2 Notice of Appeal, # 3 USDC Order, # 4 USDC Judgment)(EAM) (Entered: 03/13/2018) |
| 03/14/2018 | | ACKNOWLEDGMENT by USCA of receiving Notice of Appeal on 3/14/2018 re 55 Notice of appeal. USCA number: 18-10953-A. (EAM) (Entered: 03/14/2018) |
| 03/21/2018 | 57 | TRANSCRIPT information form filed by Crowley Maritime Corporation re 55 Notice of appeal. USCA number: 18-10953. (Garrison, Emily) (Entered: 03/21/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/25/2018 10:18:58 | | | |
| **PACER Login:** | sw0035:2641731:3941791 | **Client Code:** | 885581/00001/011838 |
| | | **Search** | 3:16-cv-01011-TJC- |

| Description: | Docket Report | Criteria: | JBT |
|---|---|---|---|
| Billable Pages: | 7 | Cost: | 0.70 |

# Doc. 1

FILED

IN THE UNITED STATES DISTRICT COURT 2016 AUG -8 PM 2: 26
FOR THE MIDDLE DISTRICT OF FLORIDA CLERK, US DISTRICT COURT
JACKSONVILLE DIVISION   MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

CROWLEY MARITIME CORPORATION,          )
                                       )
            Plaintiff,                 )
                                       )   Civil Action No. 3:16-CV-1011-J-32JBT
      v.                               )
                                       )   **DEMAND FOR JURY TRIAL**
NATIONAL UNION FIRE INSURANCE          )
COMPANY OF PITTSBURGH, PA.,            )
                                       )
            Defendant.                 )
                                       )

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff Crowley Maritime Corporation ("Crowley"), through undersigned counsel, with

knowledge as to its own acts and on information and belief as to the acts of all others, for its

Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National

Union"), alleges as follows:

### NATURE OF ACTION

1.      By this action, Crowley seeks to recover from breach of contract damages against

National Union for its failure to reimburse defense costs incurred as a result of a criminal

investigation conducted by the United States Department of Justice, Antitrust Division relating to

a former employee of Crowley.

### THE PARTIES

2.      Crowley is a Delaware corporation with its principal place of business in Jacksonville,

Florida.

3.     National Union is a Pennsylvania corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that, among other things, a substantial part of the events or omissions giving rise to the cause of action asserted herein took place in this judicial district.  Venue also is proper in this Court pursuant to 28 U.S.C. § 1391 insofar as National Union does substantial business and is subject to personal jurisdiction in this judicial district.

## THE INSURANCE POLICY

6.     National Union issued to Crowley an Executive and Organization Liability Insurance Policy bearing policy number 061-36-48 (the "Policy") with an initial policy period from November 1, 2007 to November 1, 2008 and an aggregate liability limit of $10 million.  A true and correct copy of the Policy is attached hereto as Exhibit A.  Pursuant to Endorsement No. 14 of the Policy, the "Run-off Endorsement," the Policy provides coverage for Claims made against any Insured and reported to National Union during the period from November 1, 2007 to November 1, 2013 (the "Run-Off Period") for any Wrongful Acts that took place on or before November 1, 2007, which Wrongful Acts are otherwise covered by the Policy.

7.     The insuring agreements of the Policy provide, in relevant part, that National Union:

(a)     "shall pay the Loss of any Insured Person arising from a Claim made against such Insured Person or any Wrongful Act of such Insured Person, except when and to the extent that an Organization has indemnified such Insured Person"; and

(b)     "shall pay the Loss of an Organization arising from a Claim made against an Insured Person ... for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person."

8.      The Policy defines "Loss" to include Defense Costs, which are defined by the Policy to include "reasonable and necessary fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured." The Policy requires that National Union advance "any covered Defense Costs no later than ninety (90) days after the receipt by the Insurer of ... defense bills."

9.      The Policy defines "Insured" to include any "Insured Person" or "Organization."

10.     Crowley and each of its subsidiaries are an "Organization" as that term is defined by the Policy.

11.     The Policy defines the term "Insured Person" to include any Employee of an Organization.

12.     The Policy defines the term "Employee," in relevant part, as "any past, present or future employee, other an Executive of an Organization, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee."

13.     The Policy defines the term "Claim" to include:

(1)     a written demand for monetary, non-monetary or injunctive relief;

(2)     a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i)

3

service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt of a notice of filing of charges; or

(3) a civil, criminal, administrative or regulatory investigation of an Insured Person:

   (i) once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; ...

14. The Policy defines "Wrongful Act" to include "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act ..." by an Employee "in his or her capacity as such."

## THE DEPARTMENT OF JUSTICE, ANTITRUST CRIMINAL INVESTIGATION

15. On or about April 17, 2008, Crowley Liner Services, Inc. ("Crowley Liner"), a wholly owned subsidiary of Crowley, was served with a Search Warrant that was issued by the United States District Court for the Middle District of Florida – Jacksonville Division (the "Search Warrant"), in connection with a federal antitrust criminal investigation (the "Department of Justice Investigation"). Crowley Liner is within the Policy definition of "Organization."

16. The Search Warrant demanded and ordered that certain property, including but not limited to notes, memoranda, correspondence, reports, telephone records and address books, be seized from four specifically identified individuals, including Thomas Farmer, who at the time was a vice president of Crowley Liner and thus was an "Employee" of Crowley Liner, as that term is defined by the Policy.

17. The Search Warrant was issued based upon an affidavit executed by an agent of the Federal Bureau of Investigation and filed under seal (the "Search Warrant Affidavit"). Although both Crowley and National Union were generally aware of the existence of the Search Warrant

4

Affidavit since April 2008, the Search Warrant Affidavit was filed under seal, ordered by the issuing Court to be sealed, and undiscoverable until it was unsealed by the Court. The Court did not unseal the Search Warrant Affidavit until April 24, 2015, during the criminal trial of Thomas Farmer. Only then was the Search Warrant Affidavit available to Crowley and National Union.

18.     Crowley gave timely notice of the Department of Justice Investigation to National Union during the Run-Off Period.   In its notice letter, Crowley informed National Union that the charges that may have led to the Department of Justice Investigation "are sealed at this point in time."

19.     Thomas Farmer retained his own counsel to defend and protect his individual interests against the Department of Justice Investigation and Crowley indemnified Mr. Farmer for Defense Costs he incurred that should have been advanced or paid to his counsel by National Union under the Policy. Crowley timely sought reimbursement of the Defense Costs advanced to Mr. Farmer's counsel and due and owing Crowley under the Policy.

## THE PARTIES' ARBITRATION

20.     Although Crowley provided National Union with the Search Warrant and advised National Union of the existence of the under-seal Search Warrant Affidavit, National Union refused to provide coverage based on the Search Warrant alone and denied coverage for Mr. Farmer's Defense Costs. Instead, National Union informed Crowley that "based upon the materials submitted to date, National Union will accept this matter as a notice of circumstances" and "[s]hould you wish to submit further information or documentation that you feel would be relevant to a determination as to coverage for this matter, please feel free to forward such information to my attention."

21.     Due to National Union's refusal to advance or otherwise pay the Defense Costs

5

incurred by Mr. Farmer, on March 7, 2012 Crowley was forced to institute an arbitration action against National Union (the "Arbitration").

22.    Through no fault of the parties, neither Crowley nor National Union was able to obtain a copy of the under-seal Search Warrant Affidavit during the Arbitration.   National Union thus explicitly recognized that the issue in the Arbitration was narrowly limited to the question of whether the documents that Crowley submitted to National Union in 2008, which did not include the Search Warrant Affidavit, qualified as a Claim under the Policy.

23.    On January 13, 2013, the three-member panel in the Arbitration issued its Award. In its January 2013 Award, the panel found that the *specific documents* that were submitted to National Union prior to the issuance of the Award did not constitute a Claim as that term is defined in the Policy.  The Search Warrant Affidavit was under the Court's sealing order and not available at the time of the panel's January 2013, Award, and therefore was not one of the *specific documents* considered by the panel in the Arbitration or in the panel's January 2013 Award.

### THOMAS FARMER'S INDICTMENT AND ACQUITTAL

24.    In February 2013, after the panel issued its January 2013 Award in the Arbitration, Mr. Farmer was presented with a written offer to enter into a plea agreement in connection with the Department of Justice Investigation, which was followed by an indictment returned March 21, 2013 by a federal grand jury in San Juan, Puerto Rico charging Mr. Farmer with alleged participation in an antitrust conspiracy.

25.    Although National Union agreed to treat the Department of Justice Investigation as a Claim under the Policy as of February 18, 2013, and to advance Mr. Farmer's Defense Costs incurred after that date, National Union has persisted in refusing to reimburse Mr. Farmer's Defense

6

Costs incurred prior to February 18, 2013, which were paid by Crowley and total more than $2.5 million (after satisfaction of the applicable retention).

26.     On May 8, 2015, after a three week trial, Mr. Farmer was acquitted of the criminal antitrust charges brought against him by the Department of Justice.

### THE SEARCH WARRANT AFFIDAVIT IS MADE AVAILABLE AND NATIONAL UNION CONTINUES TO REFUSE TO REIMBURSE DEFENSE COSTS

27.     Following Mr. Farmer's acquittal, the Search Warrant Affidavit was made available to Crowley for the first time and Crowley then provided National Union with a copy of the Search Warrant Affidavit.

28.     The Search Warrant Affidavit, which is dated April 16, 2008, plainly establishes that a Claim was made against Mr. Farmer as of April 16, 2008.

29.     Although the recent availability of the Search Warrant Affidavit establishes that the facts and conditions have changed since the Arbitration, National Union nevertheless wrongfully refuses to reimburse Crowley for the Defense Costs paid in connection with Mr. Farmer's individual defense against the Department of Justice Investigation prior to February 18, 2013.

### COUNT I
### (BREACH OF CONTRACT)

30.     Crowley incorporates by reference and re-alleges paragraphs 1 through 29 of this Complaint as if set forth fully herein.

31.     National Union owes Crowley in excess of $2.5 million in Defense Costs that Crowley paid on behalf of Mr. Farmer in connection with his individual defense, which National Union refused to pay or otherwise wrongfully withheld under the Policy.

7

32.     Pursuant to the Policy, National Union is required to reimburse Mr. Farmer's Defense Costs incurred in connection with his defense of the Department of Justice Investigation.

33.     National Union has breached its contractual obligations by virtue of its failure to reimburse Defense Costs.

34.     As a direct and proximate result of National Union's breach, Crowley has been denied the benefits of the insurance coverage that it purchased pursuant to the Policy and has incurred damages in an amount exceeding $2.5 million.

35.     National Union unreasonably withheld its written consent to the Defense Costs paid by Crowley and/or has waived or is estopped or is otherwise precluded by operation of law from asserting any right to consent to Defense Costs.

36.     Crowley has satisfied its obligations under the Policy, including but not limited to the payment of premiums, timely notice, and payment of any required retention, except insofar as performance of such obligations has been excused and/or waived by National Union or is otherwise subject to avoidance by operation of law.

37.     Crowley is entitled to recovery of its attorneys' fees and costs incurred herein pursuant to Fla. Stat. §627.428.

WHEREFORE, Crowley respectfully prays that this Court:

A.      Award Crowley its damages in an amount to be proven at trial;

B.      Award Crowley prejudgment and post-judgment interest on its damages in the full amount permitted by law;

C.      Award Crowley its attorneys' fees and costs in this action in an amount to be proven at trial, pursuant to Fla. Stat. §627.48 or other law; and

D.   Award Crowley such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Crowley hereby demands trial by jury as to all issues in this action so triable.


Dated: August 8, 2016

John D. Shugrue (Pro Hac Vice to be filed)
Email: jshugrue@reedsmith.com
Thomas A. Marrinson (Pro Hac Vice to be filed)
Email: tmarrinson@reedsmith.com
Emily E. Garrison (Pro Hac Vice to be filed)
Email: egarrison@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7507
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400

Attorneys for Crowley Maritime Corporation


LAW OFFICES OF CHARLES B. LEMBCKE, P.A.

By: _____
Charles B. Lembcke
Florida Bar No. 140285
Email: cbl@cbllaw.com
1300 Riverplace Blvd., Suite 605
Jacksonville, Fl 32207
Telephone:  (904) 355-5467
Facsimile:  (904) 633-9328

Attorney for Crowley Maritime Corporation

# Doc. 1-1

# Exhibit A

# AIG AIG EXECUTIVE LIABILITY ℠

Insurance provided by the following member of American International Group, Inc.

## National Union Fire Insurance Company of Pittsburgh, Pa. ®

A capital stock company

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

**POLICY NUMBER:** *061-36-48*          **REPLACEMENT OF POLICY NUMBER:** *N/A*

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | NAMED ENTITY: *CROWLEY MARITIME CORPORATION* (herein "Named Entity") | |
| 1(a) | MAILING ADDRESS: *9487 REGENCY SQUARE BLVD JACKSONVILLE, FL 32225-8126* | |
| 1(b) | STATE OF INCORPORATION/FORMATION: *Delaware* | |
| 2 | POLICY PERIOD: From: *November 1, 2007*   To: *November 1, 2008* 12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | POLICY AGGREGATE LIMIT OF LIABILITY (herein "Limit of Liability") For all **Loss**, in the aggregate, under this policy including **Defense Costs**: | *$10,000,000* |
| 4 | RETENTION: Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** – (See Clause 6 for details.) | |
| 4(a) | **Securities Claims:** *$500,000* | 4(b) **Employment Practices Claims:** *$500,000* |
| 4(c) | **All other Claims:** *$500,000* | |

*1194703*

| | ITEMS (continued) | | |
|---|---|---|---|
| **5**<br>**5(a)** | **CONTINUITY DATE (herein "Continuity Date")**<br>Coverages A and B, other than<br>**Outside Entity Executive**<br>coverage:          *August 22, 1985* | **5(b)** | **Outside Entity**<br>**Executive coverage,**<br>including Coverage C:<br><br><br><br> The date on which<br>the  **Insured Person**<br>first served as an<br>**Outside Entity**<br>**Executive** of such<br>**Outside Entity.** |
| **5(c)** | Coverage D:   *November 1, 2007* | | |

| **6** | **PREMIUM:**  *$68,612        +           $3,362 FL Surcharge*<br><br>    *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $612 included in policy premium.*<br>*Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows:  85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*<br>    *A copy of the TRIA disclosure sent with the original quote is attached hereto.* |
|---|---|

| **7**<br>**7(a)** | **CRISISFUND** SM limit:<br>**Crisis Loss:** *$0* | **7(b)** | Additional **CRISISFUND** SM<br>for Delisting Crisis Loss: *$0* |
|---|---|---|---|

| **8** | **NAME AND**<br>**ADDRESS OF INSURER (herein "Insurer"):**<br>*National Union Fire Insurance Company of Pittsburgh, Pa.*<br>*175 Water Street*<br>*New York, NY 10038*<br><br>This policy is issued only by the insurance company<br>indicated in this Item 8. |
|---|---|

*1194703*

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 85% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *CROWLEY MARITIME CORPORATION*

Policy Number: *061-36-48*
Policy Period Effective Date From: *November 1, 2007*     To: *November 1, 2008*

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.


_Elizabeth M. Tuck_
SECRETARY

_[signature]_
PRESIDENT

_[signature]_
AUTHORIZED REPRESENTATIVE


COUNTERSIGNATURE & DATE                COUNTERSIGNED AT


*AON RISK SERVICES , INC.*
*1 PIEDMONT CTR NE # 700*
*3565 N PIEDMONT ROAD NE*
*ATLANTA, GA 30305*


*1194703*

75010 (2/00)

## FLORIDA ADDENDUM TO THE DECLARATIONS

**If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:**

**American International Companies®**
**70 Pine Street**
**New York, NY 10270**
**(212) 770-7000**

74825 (02/01)

# AIG AIG EXECUTIVE LIABILITY ᔆᴹ

**Insurance provided by the following member of American International Group, Inc.**

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

### 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

#### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

#### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability:* This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person:* This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

#### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

#### COVERAGE D: CRISISFUND ᔆᴹ INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund** ᔆᴹ, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

### 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

the Insurer, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

(1) a written demand for monetary, non-monetary or injunctive relief;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

(ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund**<sup>SM</sup>" means:

(1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

(2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation**.

(i) "**Employment Practices Violation**" means any actual or alleged:

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, "**Employment Practices Violation**" shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) "**Executive**" means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(k) "**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

(l) "**Foreign Policy**" means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "**Foreign Policy**" means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

(m) "**Indemnifiable Loss**" means Loss for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n)  "**Insured**" means any:

    (1)  **Insured Person**; or

    (2)  **Organization**, but only with respect to a **Securities Claim**.

(o)  "**Insured Person**" means any:

    (1)  **Executive** of an **Organization**;

    (2)  **Employee** of an **Organization**; or

    (3)  **Outside Entity Executive**;

(p)  "**Loss**" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs and Crisis Loss**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

(q)  "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r)  "**No Liability**" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s)  "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(t) "Organization" means:

   (1) the **Named Entity**;

   (2) each **Subsidiary**; and

   (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(u) "**Outside Entity**" means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy.

(v) "**Outside Entity Executive**" means any: (1) **Executive** of an **Organization** who is or was acting at the specific written request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(w) "**Policy Period**" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) "**Securities Claim**" means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

   (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

      (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

      (b) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

   (2) brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

(z) "**Subsidiary**" means: (1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has **Management Control** ("**Controlled Entity**") on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**; and (2) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an **Organization**.

(aa) "**Wrongful Act**" means:

   (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**;

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1–4, 9–13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non–renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

   (1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

   (2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

   (3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

   (4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

   (5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive of an Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-indemnifiable Loss**, other than **Non-indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

5.  **LIMIT OF LIABILITY (FOR ALL LOSS–INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund** SM shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund** SM. The **CrisisFund** SM shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.*

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i) Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii) Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Insurer** named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1) the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organiza-tion** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

9. **PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS**

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

10. **DISCOVERY CLAUSE**

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to requestan offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

**12. ORGANIZATIONAL CHANGES**

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

(1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

(2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "**Auto–Subsidiary Period**");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto–Subsidiary Period** if during such **Auto–Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives*: Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An Organization ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the Insurer effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the Insurer exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("ADR") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of ADR process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, in which case such **Insured's** choice of ADR process shall control.

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item .1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**ALASKA**

**Davis Wright Tremaine**
*David W. Oesting*
701 W. Eighth Avenue, Suite 800, Anchorage, AK 99501–3468 (907)257–5300
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer*
1007 W. Third Ave., Ste. 100, Anchorage, AK 99501 (907)222–7100
Class Action Approved

**CALIFORNIA**

**Bingham McCutchen, LLP**
*David M. Balabanian / Dale E. Barnes*
3 Embarcadero Center, San Francisco, CA 94111 (415)393–2626
Class Action Approved

*Mary T. Huser*
1900 University Avenue, East Palo Alto, CA 94303–1212 (650)849–4914
Class Action Approved

*Susan L. Hoffman*
355 South Grand Avenue, Los Angeles, CA 90071–1560 (213)680–6416
Class Action Approved

**Cooley Godward Kronish, LLP**
*William E. Grauer (858)550-6050 / Philip C. Tencer (858)550-6068 / Koji F. Fukumura (858)550-6008*
4401 Eastgate Mall, San Diego, CA 92121–1909 (858)550–6000
Class Action Approved

*Stephen C. Neal (650)843-5182 / William S. Freeman (650)843-5037 / John C. Dwyer (650)843-5228*
3175 Hanover Street, Palo Alto, CA 94304–1130 (650)843–5000
Class Action Approved

*Paul A. Renne (415)693-2073 / John C. Dwyer (650)843-5228*
One Maritime Plaza, 20th Floor, San Francisco, CA 94111–3580 (415)693–2000
Class Action Approved

**Davis Wright Tremaine**
*Martin Fineman*
One Embarcadero Center, Suite 600, San Francisco, CA 94111–3834 (415)276–6500
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Shirli Fabbri Weiss / David Priebe*
2000 University Avenue, East Palo Alto, CA 94303 (650)833–2000
Class Action Approved

Revised (9/07)                          Page 1

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

*Shirli Fabbri Weiss / Robert Brownlie*
4365 Executive Drive, Suite 1100, San Diego, CA 92121 (858)677-1400
Class Action Approved

**Fenwick & West, LLP**
*Susan S. Muck*
Embarcadero Center West, 275 Battery Street, San Francisco, CA 94111 (415)875-2300
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*Dean J. Kitchens (213)229-7413*
333 S. Grand Avenue, Los Angeles, CA 90071-3197 (213)229-7413
Class Action Approved

*Wayne W. Smith / Meryl L. Young*
Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, CA 92614-8557 (949)451-3800
Class Action Approved

**Heller, Ehrman, White & McAuliffe**
*Douglas M. Schwab / M. Laurence Popofsky / Michael J. Shepard*
333 Bush Street, San Francisco, CA 94104-2878 (415)772-6000
Class Action Approved

*Darryl L. Snider / Jerry L. Marks*
601 South Figueroa Street, 40th Floor, Los Angeles, CA 90017-5758 (213)689-0200
Class Action Approved

*Norman J. Blears*
275 Middlefield Road, Menlo Park, CA 94025-3506 (650)324-7000
Class Action Approved

*David E. Kleinfeld*
4350 La Jolla Village Drive, 7th Floor, San Diego, CA 92122-1246 (858)450-8400
Class Action Approved

**Irell & Manella, LLP**
*David Siegel / Daniel P. Lefler*
1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276 (310)277-1010
Class Action Approved

**Katten Muchin Rosenman, LLP**
*Bruce Vanyo (310)788-4401*
2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012 (310)788-4400
Class Action Approved

**Latham & Watkins**
*Paul H. Dawes (650)463-2626 / John C. Tang (650)328-4600*
135 Commonwealth Drive, Menlo Park, CA 94025-1105 (650)328-4600
Class Action Approved

Revised (9/07)                    Page 2

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

*Miles N. Ruthberg (213)891-8754 / Pamela S. Palmer (213)891-8435 / Mark W. Rappel (213)891-8156 / Peter W. Devereaux (213)891-8622 / Charles W. Cox (213)891-8178 / Jamie L. Wine (213)485-1234*
**633 West Fifth Street, Suite 4000, Los Angeles, CA 90071 (213)485-1234**
**Class Action Approved**

*Michael J. Weaver (619)238-3012 / Peter H. Benzian (619)236-1234 / Julia E. Parry (619)236-1234*
**600 West Broadway, Suite 1800, San Diego, CA 92101-3375 (619)236-1234**
**Class Action Approved**

*Paul H. Dawes (650)463-2626 / Peter A. Wald (415)395-8006 / Darius C. Ogloza (415)391-0600 / James K. Lynch (415)395-8265 / Michele F. Kyrouz*
**505 Montgomery Street, Suite 1900, San Francisco, CA 94111-2562 (415)391-0600**
**Class Action Approved**

*Miles N. Ruthberg (213)891-8754 / Peter W. Devereaux (213)891-8622 / Pamela S. Palmer (213)891-8435 / Jon D. Anderson (714)755-8217 / Virginia S. Grogan (714)755-8206*
**650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626 (714)540-1235**
**Class Action Approved**

**Morrison & Foerster, LLP**
*Melvin R. Goldman (415)268-7311 / Paul T. Friedman (415)268-7444 / Jordan D. Eth (415)268-7176 / Darryl P. Rains (650)813-5866*
**425 Market Street, San Francisco, CA 94105 (415)268-7000**
**Class Action Approved**

*Robert S. Stern (213)892-5484 / Mark R. McDonald (213)892-5810*
**555 West 5th Street, Suite 3500, Los Angeles, CA 90013 (213)892-5200**
**Class Action Approved**

**Munger, Tolles & Olson**
*John W. Spiegel (213)683-9152 / George M. Garvey (213)683-9153*
**355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 (213)683-9100**
**Class Action Approved**

**O'Melveny & Myers, LLP**
*Seth Aronson (213)430-7486 / Amy J. Longo (213)430-8351*
**400 South Hope St., 15th Floor, Los Angeles, CA 90071-2899 (213)430-6000**
**Class Action Approved**

*Michael G. Yoder (949)823-7936 / Phillip R. Kaplan*
**610 Newport Center, 17th Floor, Newport Beach, CA 92660 (949)760-9600**
**Class Action Approved**

*Daniel H. Bookin (415)984-8786 / Michael F. Tubach*
**275 Battery Street, San Francisco, CA 94111 (415)984-8700**
**Class Action Approved**

**Revised (9/07)**                    **Page 3**

**Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.**

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Orrick Herrington & Sutcliffe, LLP**
*W. Reece Bader*
1000 Marsh Road, Menlo Park, CA 94025 (650)614-7400
Class Action Approved

*William F. Alderman / Michael D. Torpey (415)773-5932 / James E. Burns, Jr. (415)773-5935*
Old Federal Reserve Bank Building, 400 Sansome Street, San Francisco, CA 94111 (415)392-1122
Class Action Approved

**Paul, Hastings, Janofsky & Walker, LLP**
*Howard M. Privette / William F. Sullivan / John A. Reding / Peter M. Stone / Christopher H. McGrath*
515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (213)683-6000
Class Action Approved

**Pillsbury Winthrop Shaw Pittman, LLP**
*Bruce A. Ericson (415)983-1560*
50 Fremont Street, San Francisco, CA 94105 (415)983-1000
Class Action Approved

*Bruce A. Ericson (415)983-1560*
2475 Hanover Street, Palo Alto, CA 94304-1114 (650)233-4500
Class Action Approved

725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017 (213)488-7100
Class Action Approved

*Richard M. Segal*
101 West Broadway, Suite 1800 (SBC Building), San Diego, CA 92101 (619)234-5000
Class Action Approved

**Shearman & Sterling**
*Jeffrey S. Facter (415)616-1205 / Stephen D. Hibbard (415)616-1174*
555 California Street, San Francisco, CA 94104 (415)616-1100
Class Action Approved

**Simpson Thacher & Bartlett**
*Chet Kronenberg / Seth A. Ribner*
1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067 (310)407-7500
Class Action Approved

*George M. Newcombe / James G. Kreissman*
3373 Hillview Avenue, Palo Alto, CA 94304 (650)251-5000
Class Action Approved

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*James E. Lyons (415)984-6470*
Four Embarcadero Center, San Francisco, CA 94111 (415)984-6400
Class Action Approved

Revised (9/07)                    Page 4

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Sullivan & Cromwell**
*Robert A. Sacks*
1888 Century Park East, Los Angeles, CA 90067-1725 (310)712-6600
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Boris Feldman / Steven M. Schatz / Jerome Birn (650)320-4858 / Nicki Locker (650)320-4888 /*
*Douglas Clark (650)320-4824 / Keith Eggleton (650)320-4893*
650 Page Mill Road, Palo Alto, CA 94304-1050 (650)493-9300
Class Action Approved

**COLORADO**

**Cooley Godward Kronish, LLP**
*James E. Nesland*
380 Interlocken Crescent, Suite 900, Broomfield, CO 80021-8023 (720)566-4000
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*George Curtis*
1801 California Street, Suite 4100, Denver, CO 80202 (303)298-5700
Class Action Approved

**Hogan & Hartson**
*Daniel F. Shea*
One Tabor Center, 1200 Seventeenth St., Suite 1500, Denver, CO 80202 (303)899-7300
Class Action Approved

**DELAWARE**

**Blank Rome, LLP**
*Thomas P. Preston / Neal C. Belgam*
Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801 (302)425-6473
Class Action Approved

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Barry Klayman*
Wilmington Trust Center, 1100 N. Market Street, Suite 1001, Wilmington, DE 19801
(302)777-5860
Class Action Approved

**DISTRICT OF COLUMBIA**

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000
Class Action Approved

**Cahill Gordon & Reindel**
*Donald J. Mulvihill*
1990 K Street, N.W., Suite 950, Washington, DC 20006 (202)862-8900
Class Action Approved

Revised (9/07)                    Page 5

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**DLA Piper Rudnick Gray Cary US, LLP**
*David Clarke, Jr. (202)861-6300 / Robert J. Mathias (410)580-4209 / James D. Mathias / Mark Muedeking (202)861-3900 / Deborah R. Meshulam (202)861-6470*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900
Class Action Approved

**Fulbright & Jaworski, LLP**
*Stephen M. McNabb*
Market Square, 801 Pennsylvania Ave., NW, Washington, DC 20004-2623 (202)662-0200
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*F. Joseph Warin / John C. Millian*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500
Class Action Approved

**Greenberg Traurig, LLP**
*Joe R. Reeder / Alan Foster*
800 Connecticut Avenue, NW, Suite 500, Washington, DC 20006 (202)331-3100
Class Action Approved

**Hogan & Hartson**
*Ty Cobb*
555 Thirteenth Street, NW, Washington, DC 20004 (202)637-5600
Class Action Approved

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / William R. Baker, III (202)637-1001 / Everett C. (Kip) Johnson, Jr. (202)637-2260 / Christian Word (703)456-5226*
555 Eleventh Street, NW, Suite 1000, Washington, DC 20004-1304 (202)637-2200
Class Action Approved

**LeBoeuf, Lamb, Greene & MacRae, LLP**
*Ralph C. Ferrara (202)986-8020 / Lyle Roberts (202)986-8029*
1875 Connecticut Avenue, NW, Suite 1200, Washington, DC 20009-5715 (202)986-8000
Class Action Approved

**O'Melveny & Myers, LLP**
*Jeffrey Kilduff (202)383-5383*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300
Class Action Approved

**Shearman & Sterling**
*Jonathan L. Greenblatt (202)508-8070 / Thomas S. Martin (202)508-8040*
801 Pennsylvania Ave., N.W., Washington, DC 20004-2604 (202)508-8000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Thomas C. Green (202)736-8069 / Mark D. Hopson (202)736-8188 / Michael D. Warden (202)736-8080*
1501 K Street, N.W., Washington, DC 20005 (202)736-8000
Class Action Approved

Revised (9/07)                              Page 6

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Sullivan & Cromwell**
*Daryl A. Libow / Margaret K. Pfeiffer*
1701 Pennsylvania Avenue, N.W., Washington, DC 20006–5805 (202)956–7500
Class Action Approved

**Williams & Connolly, LLP**
*John K. Villa*
725 Twelfth Street, N.W., Washington, DC 20005 (202)434–5000
Class Action Approved

**Willkie Farr & Gallagher**
*Kevin B. Clark (202)303-1105*
1875 K Street, N.W., Washington, DC 20006–1238 (202)303–1000
Class Action Approved

**WilmerHale**
*Andrew Weissman (202)663-6612 / John Valentine (202)663-6131*
2445 M Street, N.W., Washington, DC 20037 (202)663–6000
Class Action Approved

**FLORIDA**

**Akerman Senterfitt & Eidson, PA**
*Brian P. Miller (305)982-5626*
SunTrust International Center, 28th Floor, Miami, FL 33131 (305)374–5600
Class Action Approved

*J. Thomas Cardwell*
CNL Center II at City Commons, 420 South Orange Avenue, Suite 1200, Orlando, FL 32801
(407)423–4000
Class Action Approved

**Carlton Fields**
*Steven J. Brodie (305)539-7302 / Nancy H. Henry*
4000 International Place, 100 S.E. 2nd Street, Suite 4000, Miami, FL 33131 (305)530–0050
Class Action Approved

*Gary L. Sasso*
One Progress Plaza, 200 Central Avenue, Suite 2300, St. Petersburg, FL 33701–4352
(727)821–7000
Class Action Approved

*Steven J. Brodie (305)539-7302*
4221 West Boy Scout Boulevard, 10th Floor, Tampa, FL 33607 (813)223–7000
Class Action Approved

**Greenberg Traurig, LLP**
*Bradford D. Kaufman*
777 South Flagler Drive, Suite 300, East, West Palm Beach, FL 33401 (561)650–7900
Class Action Approved

Revised (9/07)                                    Page 7

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

*Hilarie Bass, Esq.*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500
Class Action Approved

**Holland & Knight, LLP**
*Tracy A. Nichols / George E. Schulz, Jr.*
50 North Laura Street, Suite 3900, Jacksonville, FL 32202 (904)353-2000
Class Action Approved

*Tracy A. Nichols / Mitchell Eliot Herr / Gregory A. Baldwin / Louise Brais*
701 Brickell Avenue, Suite 3000, Miami, FL 33131 (305)374-8500
Class Action Approved

*Tracy A. Nichols / Michael L. Chapman*
100 North Tampa Street, Suite 4100, Tampa, FL 33602 (813)227-8500
Class Action Approved

*Robert R. Feagin, III / Elizabeth L. Bevington*
315 South Calhoun Street, Suite 600, Tallahassee, FL 32301 (850)224-7000
Class Action Approved

*Tracy A. Nichols / Scott Newman*
625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401 (561)833-2000
Class Action Approved

*William Wilson*
200 South Orange Avenue, Suite 2600, Orlando, FL 32801 (407)425-8500
Class Action Approved

**McGuireWoods, LLP**
*David M. Wells / Stephen D. Busch (804)775-4378*
Bank of America Tower, 50 North Laura Street, Jacksonville, FL 32202 (904)798-3200
Class Action Approved

**Squire Sanders & Dempsey, LLP**
*Lewis F. Murphy (305)577-2957 / Wendy Leavitt (305)577-2894*
200 South Biscayne Boulevard, Suite 4000, Miami, FL 33131-2398 (305)577-7000
Class Action Approved

**White & Case, LLP**
*Charles C. Kline, Esq.*
Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4900, Miami, FL 33131-2352
(305)371-2700
Class Action Approved

**GEORGIA**

**Alston & Bird, LLP**
*Peter Q. Bassett (404)881-7343 / Todd R. David (404)881-7357*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000
Class Action Approved

Revised (9/07)                              Page 8

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**King & Spalding**
*M. Robert Thornton / Michael R. Smith*
1180 Peachtree Street, Atlanta, GA 30309 (404)572-4600
Class Action Approved

**Paul, Hastings, Janofsky & Walker, LLP**
*J. Allen Maines*
600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308-2222 (404)815-2400
Class Action Approved

**Smith, Gambrell & Russell, LLP**
*John G. Despriet*
Promenade II, Suite 3100, 1230 Peachtree Rd., N.E., Atlanta, GA 30309-3592 (404)815-3730
Class Action Approved

**Womble, Carlyle, Sandridge & Rice**
*Robert R. Ambler, Jr. (404)879-2424 / Nisbet S. Kendrick (404)888-7488*
One Atlantic Center, 1201 West Peachtree, Suite 3500, Atlanta, GA 30309 (404)872-7000
Class Action Approved

**ILLINOIS**

**DLA Piper Rudnick Gray Cary US, LLP**
*Samuel B. Isaacson / Michael S. Poulos*
203 North LaSalle Street, Suite 1900, Chicago, IL 60601-1293 (312)368-4000
Class Action Approved

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen Hennessy / Bonita L. Stone*
525 W. Monroe Street, Suite 1600, Chicago, IL 60661-3693 (312)902-5200
Class Action Approved

**Kirkland & Ellis**
*Robert J. Kopecky*
200 East Randolph Drive, Chicago, IL 60601 (312)861-2000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Hillie R. Sheppard / Eugene A. Schoon / Walter C. Carlson*
1 South Dearborn Street, Chicago, IL 60603 (312)853-7734
Class Action Approved

**Sonnenschein, Nath & Rosenthal**
*Christopher Q. King*
8000 Sears Tower, Chicago, IL 60606 (312)876-8224
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**MARYLAND**

**DLA Piper Rudnick Gray Cary US, LLP**
*Mark Muedeking (410)580-3000*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000
Class Action Approved

**MASSACHUSETTS**

**Bingham McCutchen, LLP**
*Jordan D. Hershman*
150 Federal Street, Boston, MA 02110-1726 (617)951-8000
Class Action Approved

**Edwards Angell Palmer & Dodge, LLP**
*John D. Hughes*
101 Federal Street, Boston, MA 02110-1800 (617)951-3373
Class Action Approved

**Foley Hoag, LLP**
*Nicholas C. Theodorou (617)832-1163 / Lisa C. Wood (617)832-1117*
Seaport World Trade Center West, 155 Seaport Boulevard, Boston, MA 02210-2600
(617)832-1000
Class Action Approved

**Goodwin Procter, LLP**
*Stephen D. Poss / Brian E. Pastuszenski / R. Todd Cronan / James S. Dittmar / Carl E. Metzger*
Exchange Place, 53 State Street, Boston, MA 02109-2881 (617)570-1000
Class Action Approved

**Ropes & Gray**
*John D. Donovan, Jr.*
One International Place, Boston, MA 02110-2624 (617)951-7566
Class Action Approved

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Thomas J. Dougherty*
One Beacon Street, Boston, MA 02108 (617)573-4820
Class Action Approved

**WilmerHale**
*Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson*
60 State Street, Boston, MA 02109 (617)526-6000
Class Action Approved

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Edward J. Pluimer / J. Jackson / Peter W. Carter (612)340-5635 / Roger J. Magnuson*
50 South Sixth Street, Suite #1500, Minneapolis, MN 55402-1498 (612)340-2600
Class Action Approved

Revised (9/07)                    Page 10

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Faegre & Benson, LLP**
*Robert L. Schnell / Thomas L. Kimer*
90 South Seventh Street, Minneapolis, MN 55402-3901 (612)336-3000
Class Action Approved

**Winthrop & Weinstine, PA**
*David P. Pearson (612)604-6692 / Thomas H. Boyd*
Suite 3500, 225 South 6th Street, Minneapolis, MN 55402-4629 (612)604-6400
Class Action Approved

**NEW YORK**

**Arnold & Porter**
*Kent A. Yalowitz / Scott B. Schreiber (202)942-5672*
399 Park Avenue, New York, NY 10022-4690 (212)715-1000
Class Action Approved

**Blank Rome, LLP**
*Robert J. Mittman (212)885-5555*
The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (212)885-5555
Class Action Approved

**Cadwalader, Wickersham & Taft**
*Gregory A. Markel / Howard R. Hawkins, Jr. / Jonathan M. Hoff*
One World Financial Center, New York, NY 10281 (212)504-6000
Class Action Approved

**Cahill Gordon & Reindel**
*Charles A. Gilman (212)701-3403 / David G. Januszewski (212)701-3352 / Thomas J. Kavaler (212)701-3406 / Jonathan D. Thier (212)701-3992*
Eighty Pine Street, New York, NY 10005 (212)701-3000
Class Action Approved

**Clifford Chance US, LLP**
*James B. Weidner / John K. Carroll / Mark Holland*
31 West 52nd Street, New York, NY 10019-6131 (212)878-8000
Class Action Approved

**Cravath, Swaine & Moore**
*Evan R. Chesler / Francis P. Barron / Julie A. North / Keith R. Hummel / Paul C. Saunders / Peter T. Barbur / Richard W. Clary / Robert H. Baron / Ronald S. Rolfe / Rory O. Millson / Thomas G. Rafferty*
Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475 (212)474-1000
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Joseph G. Finnerty, III / Keara M. Gordon / David E. Nachman / John J. Clarke*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Fried, Frank, Harris, Shriver & Jacobson**
*William G. McGuinness / Alexander R. Sussman / Debra M. Torres / Douglas H. Flaum / Gregg L. Weiner / John A. Borek*
One New York Plaza, New York, NY 10004-1980 (212)859-8000
Class Action Approved

**Fulbright & Jaworski, LLP**
*Robert D. Owen / Daniel R. Murdock (212)318-3385 / Philip M. Smith (212)318-3329*
666 Fifth Avenue, New York, NY 10103-3198 (212)318-3000
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*Wesley G. Howell / Robert F. Serio / Mitchell A. Karlan (212)351-3827*
200 Park Avenue, New York, NY 10166-0193 (212)351-4000
Class Action Approved

**Greenberg Traurig, LLP**
*Brian S. Cousin (212)801-9200 / Geoffrey Berman / Karen Bitar / William Briendel / Michael Burrows / Adam Cole / Roger Kaplan / Robert A. Horowitz / Ronald Lefton / Jeffrey Mann / Alan Mansfield / Stephen Saxl / Jeffrey Sklaroff / Toby Soli / Kenneth A. Lapatine*
200 Park Avenue, New York, NY 10022 (212)801-9200
Class Action Approved

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Robert W. Gottlieb / Joel W. Sternman*
575 Madison Avenue, New York, NY 10022-2585 (212)940-8800
Class Action Approved

**Kaye Scholer, LLP**
*Fredric W. Yerman (212)836-8663 / Phillip A. Geraci (212)836-8659*
425 Park Avenue, New York, NY 10022 (212)836-8663
Class Action Approved

**Kramer Levin Naftalis & Frankel, LLP**
*Gary P. Naftalis / Alan R. Friedman / Robert N. Holtzman / Jonathan M. Wagner*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100
Class Action Approved

**Mayer, Brown Rowe & Maw**
*Richard A. Spehr / Steven Wolowitz / Joseph DeSimone*
1675 Broadway, New York, NY 10019 (212)506-2500
Class Action Approved

**Milbank, Tweed, Hadley & McCloy**
*Michael L. Hirschfeld / Scott A. Edelman*
1 Chase Manhattan Plaza, New York, NY 10005 (212)530-5149
Class Action Approved

**Morrison & Foerster, LLP**
*Anthony M. Radice (212)468-8020 / Jack C. Auspitz (212)468-8046*
1290 Avenue of the Americas, New York, NY 10104 (212)468-8000
Class Action Approved

Revised (9/07)                          Page 12

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Paul, Hastings, Janofsky & Walker, LLP**
*Barry Sher / James D. Wareham*
Park Avenue Tower, 75 E. 55th Street, New York, NY 10022 (212)318-6000
Class Action Approved

**Paul, Weiss, Rifkind, Wharton & Garrison**
*Daniel J. Beller / Martin Flumenbaum / Claudia Hammerman / Brad S. Karp / Daniel J. Kramer /*
*Mark F. Pomerantz / Richard A. Rosen*
1285 Avenue of the Americas, New York, NY 10019-6064 (212)373-3000
Class Action Approved

**Proskauer Rose, LLP**
*Gregg M. Mashberg*
1585 Broadway, New York, NY 10036-8299 (212)969-3000
Class Action Approved

**Schulte Roth & Zabel, LLP**
*Betty Santangelo / Howard O. Godnick / Irwin J. Sugarman / Robert M. Abrahams*
919 Third Avenue, New York, NY 10022 (212)756-2000
Class Action Approved

**Shearman & Sterling**
*Jeremy G. Epstein (212)848-4169 / Steven F. Molo (212)848-7456 / Brian H. Polovoy*
*(212)848-4703 / Stuart J. Baskin (212)848-4974*
599 Lexington Avenue, New York, NY 10022 (212)848-8000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Theodore N. Miller (213)896-6646 / Barry W. Rashkover / Steven M. Bierman / Robert Pietrzak*
787 Seventh Avenue, New York, NY 10019 (212)839-5300
Class Action Approved

**Simpson Thacher & Bartlett**
*Bruce D. Angiolillo / Michael J. Chepiga / Paul C. Curnin / Roy L. Reardon*
425 Lexington Avenue, New York, NY 10017 (212)455-2000
Class Action Approved

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Jonathan J. Lerner*
Four Times Square, New York, NY 10036 (212)735-2550
Class Action Approved

**Stroock & Stroock & Lavan, LLP**
*Laurence Greenwald / Melvin A. Brosterman / Robert Lewin*
180 Maiden Lane, New York, NY 10038 (212)806-5400
Class Action Approved

**Sullivan & Cromwell**
*D. Stuart Meiklejohn / Gandolfo V. DiBlasi / John L. Hardiman / John L. Warden / Philip L. Graham,*
*Jr. / Richard H. Klapper*
125 Broad Street, New York, NY 10004-2498 (212)558-4000
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Wachtell, Lipton, Rosen & Katz**
*Paul Vizcarrondo (212)403-1208 / Ted Mirvis*
51 W. 52nd Street, 29th Floor, New York, NY 10019 (212)403-1000
Class Action Approved

**Weil, Gotshal & Manges, LLP**
*Greg A. Danilow / Irwin H. Warren / Joseph Allerhand / Jonathan D. Polkes (212)310-8881*
767 Fifth Avenue, New York, NY 10153 (212)310-8000
Class Action Approved

**Willkie Farr & Gallagher**
*Michael R. Young / Richard L. Posen / Stephen W. Greiner*
787 Seventh Avenue, New York, NY 10019-6099 (212)728-8000
Class Action Approved

**WilmerHale**
*Peter Vigeland / Robert B. McCaw*
520 Madison Ave., New York, NY 10022 (212)230-8800
Class Action Approved

**OHIO**

**Jones, Day, Reavis & Pogue**
*John M. Newman, Jr. / John W. Edwards, II*
North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (216)586-3939
Class Action Approved

**OREGON**

**Davis Wright Tremaine**
*John F. McGrory*
2300 First Interstate Tower, 1300 S.W. Fifth Avenue, Portland, OR 97201 (503)241-2300
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
101 S.W. Main Street, 15th Floor, Portland, OR 97204-3223 (503)221-0607
Class Action Approved

**Lane Powell Spears Lubersky, LLP**
*Milo Petranovich / Robert E. Maloney*
601 S.W. Second Avenue, Suite 2100, Portland, OR 97204 (503)778-2100
Class Action Approved

**Stoel Rives, LLP**
*Lois O. Rosenbaum*
900 SW 5th Avenue, Suite 2600, Portland, OR 97204 (503)224-3380
Class Action Approved

Revised (9/07)                    Page 14

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**PENNSYLVANIA**

**Blank Rome, LLP**
*Ian M. Comisky / Alan J. Hoffman*
One Logan Square, Philadelphia, PA 19103 (215)569-5500
Class Action Approved

**Buchanan Ingersoll & Rooney, PC**
*John R. Leathers*
One Oxford Centre, 20th Floor, 301 Grant Street, Pittsburgh, PA 15219-8800 (412)562-8800
Class Action Approved

**Dechert, LLP**
*Jeffrey G. Weil (215)994-2538 / Seymour Kurland (215)994-2235*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000
Class Action Approved

**Morgan, Lewis & Bockius, LLP**
*Marc Sonnenfeld (215)963-5572*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000
Class Action Approved

**Pepper Hamilton, LLP**
*Barbara W. Mather / Jon A. Baughman / Laurence Z. Shiekman (215)981-4347 / M. Duncan Grant /
Robert L. Hickok (215)981-4583 / Thomas E. Zemaitis*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799
(215)981-4000
Class Action Approved

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Jerome J. Shestack / M. Norman Goldberger / Mark L. Alderman*
1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097 (215)977-2058
Class Action Approved

**TEXAS**

**Akin, Gump, Strauss, Hauer & Feld, LLP**
*Paul R. Bessette (512)499-6250 / Edward S. Koppman / Orrin L. Harrison, III*
1700 Pacific Avenue, Suite 4100, Dallas, TX 75201 (214)969-2800
Class Action Approved

*Paul R. Bessette (512)499-6250*
1111 Louisiana Street, 44th Floor, Houston, TX 77002-5200 (713)220-5800

**Beirne, Maynard & Parsons, LLP**
*Jeffrey R. Parsons (713)960-7302*
1300 Post Oak Boulevard, Suite 2500, Houston, TX 77056-3000 (713)623-0887
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Carrington, Coleman, Sloman & Blumenthal, LLP**
*Fletcher L. Yarbrough / Bruce W. Collins / Tim Gavin*
901 Main Street, Suite 5500, Dallas, TX 75202 (214)855-3000
Class Action Approved

**Fulbright & Jaworski, LLP**
*Frank G. Jones / Robert S. Harrell / Gerard G. Pecht*
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151
Class Action Approved

*Karl G. Dial / Michael A. Swartzendruber*
2200 Ross Avenue, Suite 2800, Dallas, TX 75201 (214)855-8000
Class Action Approved

**King & Spalding**
*Mark K. Glasser*
1100 Louisiana, Suite 4000, Houston, TX 77002 (713)751-3212
Class Action Approved

**Locke Liddell & Sapp, LLP**
*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
2200 Ross Avenue, Suite 2200, Dallas, TX 75201-6776 (214)740-8000
Class Action Approved

*Charles R. Parker (713)226-1469*
3400 JPMorgan Chase Tower, 600 Travis, Houston, TX 77002 (713)226-1200
Class Action Approved

*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
100 Congress Avenue, Suite 300, Austin, TX 78701-4042 (512)305-4700
Class Action Approved

**Thompson & Knight, LLP**
*Timothy R. McCormick*
1700 Pacific Avenue, Suite 3300, Dallas, TX 75201 (214)969-1103
Class Action Approved

*Timothy R. McCormick*
98 San Jacinto Boulevard, Suite 1200, Austin, TX 78701 (512)469-6100
Class Action Approved

*Timothy R. McCormick*
333 Clay Street, Suite 3300, Houston, TX 77002 (713)654-8111
Class Action Approved

*Timothy R. McCormick*
Burnett Plaza, Suite 1600, 801 Cherry Street, Unit #1, Fort Worth, TX 76102-6881
(817)347-1700
Class Action Approved

Revised (9/07)                          Page 16

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Vinson & Elkins, LLP**
*Walter B. Stuart / N. Scott Fletcher*
First City Tower, 1001 Fannin St., Suite 2300, Houston, TX 77002-6760 (713)758-2222
Class Action Approved

**Weil, Gotshal & Manges, LLP**
*Ralph I. Miller*
100 Crescent Court, Dallas, TX 75201 (214)746-7700
Class Action Approved

*Ralph I. Miller*
700 Louisiana, Suite 1600, Houston, TX 77002 (713)546-5000
Class Action Approved

**VIRGINIA**

**Cooley Godward Kronish, LLP**
*Robert R. Vieth, Partner / Michael Klisch*
One Freedom Square, Reston Town Ctr., 11951 Freedom Dr., Reston, VA 20190-5656
(703)456-8000
Class Action Approved

**Greenberg Traurig, LLP**
*John Scalia (703)749-1300*
1750 Tysons Boulevard, 12th Fl., Tysons Corner, VA 22102 (703)749-1300
Class Action Approved

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / Christian Word (703)456-5226*
Two Freedom Square, 11955 Freedom Drive, Suite 500, Reston, VA 20190-5651 (703)456-1000
Class Action Approved

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378*
One James Center, 901 East Cary Street, Richmond, VA 23219 (804)775-1000
Class Action Approved

*Stephen D. Busch (804)775-4378 / Charles McIntyre*
1750 Tysons Boulevard, Suite 1800, McLean, VA 22102 (703)712-5000
Class Action Approved

**WilmerHale**
*Andrew Weissman (202)663-6612 / John Valentine (202)663-6131*
1600 Tysons Boulevard, 10th Floor, Tysons Corner, VA 22102 (703)251-9700
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Lyle Roberts / Trevor Chaplick (703)734-3100*
2 Fountain Square, Reston Town Ct., 11921 Freedom Drive, Suite 600, Reston, VA 20190-5634
(703)734-3100
Class Action Approved

Revised (9/07)                                   Page 17

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**WASHINGTON**

**Davis Wright Tremaine**
*Stephen M. Rummage / Ladd B. Leavens*
2600 Century Square, 1501 Fourth Avenue, Seattle, WA 98101-1688 (206)622-3150
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Stellman Keehnel*
701 Fifth Avenue, Suite 7000, Seattle, WA 98104 (206)839-4800
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
1111 Third Avenue, Suite 3400, Seattle, WA 98101-3299 (206)447-8998
Class Action Approved

**Heller, Ehrman, White & McAuliffe**
*George E. Greer*
701 Fifth Avenue, Suite 6100, Seattle, WA 98104-7098 (206)447-0900
Class Action Approved

**Lane Powell Spears Lubersky, LLP**
*James B. Stoetzer (206)277-9511 / Rudy A. Englund / Larry S. Gangnes / Christopher B. Wells*
1420 Fifth Avenue, Suite 4100, Seattle, WA 98101-2338 (206)223-7000
Class Action Approved

**Perkins Cole, LLP**
*Harry H. Schneider, Jr. / Ronald L. Berenstain*
1201 Third Avenue, Ste. 4800, Seattle, WA 98101-3099 (206)583-8888
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Barry M. Kaplan*
701 Fifth Avenue, Suite 5100, Seattle, WA 98104 (206)883-2500
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX B**

I. **DEFINITIONS**

(a)  "**Crisis**" means:

(1)  a **Delisting Crisis**; or

(2)  one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a "**Material Effect on an Organization's Common Stock Price** ":

(i)  *Negative earning or sales announcement*

The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

(ii)  *Loss of a patent, trademark or copyright or major customer or contract*

The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

(iii)  *Product recall or delay*

The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

(iv)  *Mass tort*

The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(v)  *Employee layoffs or loss of key executive officer(s)*

The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

(vi)  *Elimination or suspension of dividend*

The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

(vii)  *Write-off of assets*

The public announcement that an **Organization** intends to write off a material amount of its assets.

(viii)   *Debt restructuring or default*

The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix)   *Bankruptcy*

The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x)   *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)   *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**[SM] has been exhausted.

(b)   "**Crisis Firm**" means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)   "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)   the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)   the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)   travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)   "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e) **"Delisting Crisis"** means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange.**

(f) **"Exchange"** means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) **"Material Effect on an Organization's Common Stock Price"** means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.   EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i) any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants;** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants;** provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii) the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.   PRE-APPROVED CRISIS FIRMS

(a) For all **Crisis** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed in (1) – (7) below:

(1) ABERNATHY MACGREGOR
SCANLON
501 Madison Avenue
New York, NY 10022
(212) 371–5999
Contact: James T. M<sup>ac</sup>Gregor

(2) BURSON–MARSTELLER
230 Park Avenue South
New York, NY  10003–1566
(212) 614–5236
Contact: Michael Claes

(3) PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, D.C., 20037
(202) 457–6000
Contact: Thomas H. Boggs

(4) KEKST AND COMPANY
437 Madison Avenue
New York, NY 10022
(212) 593–2655
Contact: Andrew Baer

(5) ROBINSON LERER & MONTGOMERY
75 Rockefeller Plaza, 6th floor
New York, NY 10019
(212) 484–7721
Contact: Michael Gross

(6) SARD VERBINNEN & CO.
630 Third Avenue
New York, NY 10017
(212) 687–8080
Contact: Paul Verbinnen or George Sard

(7)   SITRICK & COMPANY
2029 Century Park East
Suite 1750
Los Angeles, CA 90067
(310) 788-2850
Contact: Michael Sitrick

(b)   Solely for **Delisting Crisis**, "**Crisis Firm(s)**" shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

ENDORSEMENT# *1*

This endorsement, effective *12:01 am*     *November 1, 2007*        forms a part of
policy number  *.061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERAGE TERRITORY ENDORSEMENT

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE

*END 001*

## ENDORSEMENT# 2

This endorsement, effective *12:01 am     November 1, 2007*     forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named insured", "First Named Insured", and "insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.     The insured shown in the Declarations may cancel this policy by mailing or delivering to the insurer advance written notice of cancellation.

B.1.   Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the insurer may cancel this policy by mailing or delivering to the insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

a)     Ten (10) days before the effective date of cancellation if the insurer cancels for nonpayment of premium; or

b)     Twenty (20) days before the effective date of cancellation if the insurer cancels for any other reason, except the insurer may cancel immediately if there has been:

1.     A material misstatement or misrepresentation; or
2.     A failure to comply with underwriting requirements established by the insurer.

B.2.   Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the insurer may cancel this policy only for one or more of the following reasons:

a)     Nonpayment of premium;

b)     The policy was obtained by a material misstatement;

c)     There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

d)     There has been a substantial change in the risk covered by the policy; or

e)     The cancellation is for all insureds under such policies for a given class of insureds.

## *END 002*

76105 (5/00)                              **Page 1 of 2**

### ENDORSEMENT# *2*   (continued)

If the Insurer cancels this policy for any of these reasons, the insurer will mail or deliver to the First Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

1. Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2. Forty-five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B 2(b), (c), (d) or (e) above.

The following is added:

C.1. Non-Renewal

a) If the insurer decides not to renew this policy the insurer will mail or deliver to the insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b) Any notice of nonrenewal will be mailed or delivered to the insured's last mailing address known to the insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2. Renewal

a) The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

**ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.**

_____

AUTHORIZED REPRESENTATIVE

*END 002*

## ENDORSEMENT# *3*

This endorsement, effective *12:01 am*   *November 1, 2007*        forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE – Florida State Surcharges

The "FL Surcharges" amount displayed on the Quote/Binder letter is comprised of the
following Florida State Surcharges (IF APPLICABLE):

**Florida Hurricane Catastrophe Fund (FHCF) Surcharge**
(APPLICABLE to policies effective 1/1/2007 thru 12/31/2007)

**Florida Insurance Guaranty Association (FIGA) Surcharge**
(APPLICABLE to policies effective 3/1/2007 thru 2/29/2008)

**Florida Insurance Guaranty Association (FIGA) *"EMERGENCY"* Surcharge**
(APPLICABLE to policies effective 5/1/2007 thru 4/30/2008)

The Surcharge percentages applied are as follows:

**Florida Hurricane Catastrophe Fund (FHCF) Surcharge – 1%**

**Florida Insurance Guaranty Association (FIGA) Surcharge – 1.95%**

**Florida Insurance Guaranty Association (FIGA) *"EMERGENCY"* Surcharge – 1.95%**

Please consult with your Underwriting contact for further detail/additional information.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©

*END 003*

**ENDORSEMENT# *4***

This endorsement, effective *12:01 am     November 1, 2007*          forms a part of
policy number    *061-36-48*
issued to *CROWLEY. MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**"NO LIABILITY" PROVISION DELETED**
**(SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS**
**ARISING OUT OF A SECURITIES CLAIM)**

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

(1)    The Definition of and all provisions referring to "No Liability" are hereby deleted in their entirety.

(2)    Clause 6 RETENTION CLAUSE is deleted in its entirety and replaced by the following:

**6.    RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i)    Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;

(ii)    Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii)    Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

(3)    Item 4 of the Declarations is hereby deleted in its entirety and replaced by the following:

| 4 | RETENTION:  Not applicable to **Non-Indemnifiable Loss** | | |
|---|---|---|---|
| 4(a) | Securities Claims: *$500,000* | 4(b) | Employment *$500,000* Practices Claims: |
| 4(c) | All other Claims:   *$500,000* | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 004*

ENDORSEMENT# *5*

This endorsement, effective *12:01 am     November 1, 2007*     forms a part of policy number    *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to the ownership, management, maintenance, operation and/or control by the **Organization** of any captive insurance company or entity including but not limited to any **Claim** alleging the insolvency or bankruptcy of an **Organization** as a result of such ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 005*

83516 (11/03)                                   Page 1 of 1

ENDORSEMENT# *6*

This endorsement, effective *12:01 am     November 1, 2007*     forms a part of policy number   *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to:

(i)     payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)    payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees or "Affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such **Affiliates**) of any customers of the **Organization** or any members of their family or any entity with which they are affiliated; or

(iii)   political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 006*

## ENDORSEMENT# 7

This endorsement, effective *12:01 am*      *November 1, 2007*      forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DOMESTIC PARTNER COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that such coverage as is afforded by this policy pursuant to Clause 20. **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION** to the lawful spouse of an **Insured Person** under this policy shall also extend to any **"Domestic Partner"** of such **Insured Person**, whether or not such person would be deemed a "spouse" under the applicable law.

**"Domestic Partner"** means any individual person legally recognized as a domestic or civil union partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the **Named Entity** or any **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©American International Group, Inc.  All rights reserved
*END 007*

91712 (6/07)                              Page 1 of 1

## ENDORSEMENT# 8

This endorsement, effective *12:01 am*    *November 1, 2007*    forms a part of policy number   *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (m) AMENDED
### (FAIR LABOR STANDARDS ACT)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS is hereby amended as follows:

1)    Exclusion (m) is hereby deleted in its entirety and replaced with the following:

   (m)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto;

2)    The following exclusion is hereby added to the thereof:

   (aa)    alleging, arising out of, based upon or attributable to, directly or indirectly, claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any **Employee** of an **Organization**, for improper payroll deductions or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

### END 008

90496 (2/06)    **Page 1 of 1**

**ENDORSEMENT# 9**

This endorsement, effective *12:01 am    November 1, 2007*        forms a part of
policy number    *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FINAL DETERMINATION WORDING

In consideration of the premium charged, it is hereby understood and agreed that
Exclusions (a) and (c) are deleted in their entirety and replaced by the following:

    (a)    arising out of, based upon or attributable to the gaining of any profit or
advantage to which a judgment or final adjudication or an alternative dispute
resolution proceeding adverse to the insured establishes the insured was not
legally entitled;

    (c)    arising out of, based upon or attributable to the committing of any deliberate
criminal or deliberate fraudulent act by the insured if a judgment or final
adjudication or an alternative dispute resolution proceeding adverse to the
insured(s) establishes that such deliberate criminal or deliberate fraudulent act
was committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 009*

90497 (2/06)                    **Page 1 of 1**

**ENDORSEMENT# *10***

This endorsement, effective *12:01 am     November 1, 2007*     forms a part of
policy number     *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED
### (SARBANES-OXLEY WHISTLEBLOWER)

In consideration of the premium charged, it is hereby understood and agreed that Clause
4. EXCLUSIONS is amended by adding the following subsection (6) to the end of Exclusion
(i):

(6)     any **Securities Claim**, provided that such **Securities Claim** is instigated and
        continued totally independent of, and totally without the solicitation of, or
        assistance of, or active participation of, or intervention of, any **Organization** or any
        **Executive** of an **Organization**; provided, however, solely with respect to this
        subsection (6):

      (a)     an **Executive's** engaging in any protected activity specified in 18 U.S.C.
            1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of
            2002) or any protected activity specified in any other "whistleblower"
            protection pursuant to any similar state, local or foreign securities laws; shall
            not be deemed to trigger this exclusion.

Notwithstanding the forgoing exception, this exclusion (i) shall apply where the actions of
any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily
participating in or voluntarily assisting (other than de minimis assistance) in the filing or
prosecution of any proceeding against an Insured relating to any violation of any rule or
regulation of the Securities and Exchange Commission or any similar provision of any
federal, state, local or foreign rule or law relating to fraud against shareholders, other
than such actions in connection with a proceeding that is brought by the Securities and
Exchange Commission, any similar state, local or foreign regulatory body that regulates
securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©American International Group, Inc.  All rights reserved
*END 010*

90639 (3/06)                              Page 1 of 1

ENDORSEMENT# *11*

This endorsement, effective *12:01 am*    *November 1, 2007*    forms a part of policy number  *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

PUNITIVE DAMAGES COVERAGE
(OTHER THAN EMPLOYMENT PRACTICES CLAIMS)

STATE OF FLORIDA

In consideration of the premium charged, it is hereby understood and agreed that Definition (p) "Loss" is hereby amended by deleting the second paragraph thereof and replacing it with the following:

Notwithstanding the foregoing paragraph, Loss shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any Insured Person pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B); and (2) with respect to Claims other than Employment Practices Claims, punitive, exemplary and multiplied damages imposed upon an Insured.

Punitive, exemplary and multiplied damages are only insurable to the extent (1) such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the Insureds, the Claim, the Insurer, or this policy and is most favorable to the insurability of such damages and (2) that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

It is further understood and agreed that solely in regard to the coverage provided by this endorsement the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured arising out of, based upon or attributable to the committing in fact of a dishonest act or any willful violation of any statute, rule or law. For the purpose of determining the applicability of the foregoing exclusion the facts pertaining to and knowledge possessed by any Insured Person shall not be imputed to any other Insured Person.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 011*

## ENDORSEMENT# *12*

This endorsement, effective *12:01 am      November 1, 2007*      forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RELIANCE UPON APPLICATION MADE TO
### ANOTHER CARRIER

1.  In granting this coverage, the **Insurer** has relied upon the **Competitor's Application**
    and the statements, warranties and representations contained therein as being
    accurate and complete as of the **Date Signed**. The **Insureds** extend any warranties
    and representations in the **Competitor's Application** to the **Insurer** and further
    warrant and represent to the **Insurer** that the statements and representations made
    in the **Competitor's Application** were accurate and complete on the **Date Signed**.
    All such statements and representations shall be deemed to be material to the risk
    assumed by the **Insurer**, are the basis of this policy and are to be considered as
    incorporated into this policy.

2.  "**Competitor's Application**" means the application of the **Named Applicant(s)** to the
    **Other Carrier** for the **Type of Coverage** reflected in the table below:

| Named Applicant(s) | Other Carrier | Type of Coverage | Date Signed |
|---|---|---|---|
| *CROWLEY MARITIME CORP* | *CHUBB GROUP OF INSURANCE* | *EXECUTIVE LIABILITY AND* | *November 16, 2007* |
| | *COMPANIES* | *ENTITY SECURITIES* | |
| | | *COVERAGE* | |
| | | | |

   If such application form was submitted to the **Other Carrier** in connection with a
   renewal of coverage, then "**Competitor's Application**" shall also mean all previous
   policy application forms submitted to that **Other Carrier** for any policy of which this
   policy is a renewal, replacement or succeeds in time. "**Competitor's Application**"
   also means all the materials submitted with or incorporated by reference into any of
   the application forms referenced above.

3.  "**Application**" shall also mean the **Competitor's Application.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©American International Group, Inc.  All rights reserved
**END 012**

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am*     *November 1, 2007*     forms a part of policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SEVERABILITY OF THE APPLICATION ENDORSEMENT**
**(FULL INDIVIDUAL SEVERABILITY; TOP 3 ORGANIZATION POSITIONS IMPUTED TO**
**ORGANIZATION; AND NON-RESCINDABLE A SIDE COVER)**

In consideration of the premium charged, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

**SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the policy, then this Policy shall be void *ab initio* solely with respect to any of the following **Insureds**:

(1)    solely with respect to **Loss** other than **Non-Indemnifiable Loss**, any **Insured Person** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the **Application**,

(2)    an **Organization**, under Clause 1. Insuring Agreements, COVERAGE B(ii), to the extent it indemnifies any **Insured Person** referenced in (1), above, and

(3)    an **Organization**, under Clause 1. Insuring Agreement, COVERAGE B(i), if any past or present chief executive officer, chief financial officer or chief operating officer of the **Organization** knew as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**,

whether or not such **Insured Person** knew that such facts were not accurately and completely disclosed in the **Application**.

Solely with respect to any **Non-Indemnifiable Loss** of any **Insured Person**, under no circumstances shall the coverage provided by this Policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the Policy.

It is understood and agreed that this endorsement supersedes any inconsistent language contained in the **Application**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**END 013**

89639 (7/05)                                        Page 1 of 1

ENDORSEMENT# *14*

This endorsement, effective *12:01 am*      *November 1, 2007*      forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RUN-OFF ENDORSEMENT**

In consideration of the additional premium of   , (which shall be fully earned at the
inception date of this endorsement) it is hereby understood and agreed that as of
*November 1, 2007* (hereinafter the "Effective Date") the policy is hereby amended as
follows:

I.

Clause 10 DISCOVERY CLAUSE is deleted in its entirety and replaced by the following:

10. **RUN-OFF COVERAGE CLAUSE**

The **Named Entity** shall have the right to a period of *SIX* of *6* years following
the **Effective Date** (herein referred to as the **Discovery Period**) in which to
give written notice to the **Insurer** of any **Claim** first made against any **Insured**
during said *6* year period for any **Wrongful Act** occurring on or prior to the
**Effective Date** and otherwise covered by this policy.

II.

Clause 11 CANCELLATION CLAUSE is deleted in its entirety and replaced by the following:

11. **CANCELLATION CLAUSE**

This policy may not be canceled by the **Named Entity**, any **Insured** or by the
**Insurer**, except as indicated below.

Notwithstanding the foregoing, this policy may be canceled by or on the
behalf of the **Insurer** only in the event of non-payment of premium by the
**Named Entity**. In the event of non-payment of premium by the **Named Entity**,
the **Insurer** may cancel this policy by delivering to the **Named Entity** or by
mailing to the **Named Entity**, by registered, certified, or other first class mail,
at the **Named Entity's** address as shown in item 1(a) of the Declarations,
written notice stating when, not less than 15 days thereafter, the cancellation
shall be effective. The mailing of such notice as aforesaid shall be sufficient
proof of notice. The **Policy Period** terminates at the date and hour specified in
such notice, or at the date and time of surrender.

If the period of limitation relating to the giving of notice is prohibited or made
void by any law controlling the construction thereof, such period shall be
deemed to be amended so as to be equal to the minimum period of limitation
permitted by such law. It is further understood and agreed that the premium
charged for this endorsement shall be fully earned as of the **Effective Date**.

III.

Clause 12(a) is deleted in its entirety.

IV.

It is further understood and agreed that notwithstanding any other provision of this

**END 014**

86487 (8/04)                                   Page 1 of 2

**ENDORSEMENT# *14*** (continued)

policy, this policy shall not provide coverage for any **Wrongful Act** occurring after the **Effective Date.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 014*

ENDORSEMENT# *15*

This endorsement, effective *12:01 am*      *November 1, 2007*        forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SUBSIDIARY – ADDITION TO THE DEFINITION OF "SUBSIDIARY"

In consideration of the additional premium of *$0*           , it is hereby understood
and agreed that the Definition of "Subsidiary" is amended to include the following
entity(ies), subject to such entity's respective **Continuity Date**.

| SUBSIDIARY | CONTINUITY DATE |
|---|---|
| *Clean Pacific Alliance, LLC* | *November 1, 1996* |
| *Marine Response Alliance, LLC* | *November 1, 1996* |

For the purpose of the applicability of the coverage provided by this endorsement, the
entities listed above and the **Organization** will be conclusively deemed to have
indemnified the **Insured Persons** of each respective entity to the extent that such entity
or the **Organization** is permitted or required to indemnify such **Insured Persons** pursuant
to law or contract or the charter, bylaws, operating agreement or similar documents of an
**Organization**. The entity and the **Organization** hereby agree to indemnify the **Insured
Persons** to the fullest extent permitted by law, including the making in good faith of any
required application for court approval.

Furthermore, for the purpose of the applicability of the coverage provided by this
endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim**,
made against any **Subsidiary** listed above or any **Insured(s)** thereof:

    (a)    alleging, arising out of, based upon or attributable to, as of the **Continuity
Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory
proceeding or investigation of which an **Insured** had notice, or alleging or
derived from the same or essentially the same facts as alleged in such
pending or prior litigation or administrative or regulatory proceeding or
investigation; or

    (b)    alleging any **Wrongful Act** occurring prior to the **Continuity Date** if an
**Insured**, as of the **Continuity Date** knew or could have reasonably foreseen
that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to a **Claim**
made against each respective entity listed above or any **Insured Person** thereof shall
only apply for **Wrongful Acts** committed or allegedly committed after the respective
entity's **Continuity Date** and prior to the time that the **Named Entity** no longer maintains

*END 015*

<u>ENDORSEMENT#</u> *15*   (Continued)

**Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries.**

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 015*

## ENDORSEMENT# *16*

This endorsement, effective *12:01 am      November 1, 2007*          forms a part of
policy number   *061-36-48*
issued to   *CROWLEY MARITIME CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED – CREDITOR'S COMMITTEE

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
EXCLUSIONS is amended as follows:

(1)     Subparagraph (3) is hereby deleted in its entirety and replaced with the following:
(3) in any bankruptcy proceeding  by or against an  **Organization**, any **Claim** brought
by the  examiner,  trustee,  receiver,  liquidator,  rehabilitator  or  creditors'
committee (or any assignee thereof) of such **Organization**, if any;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

(c) American International Group, Inc.  All rights reserved.

AUTHORIZED REPRESENTATIVE

*END 16*

**ENDORSEMENT# *17***

This endorsement, effective *12:01 am*    *November 1, 2007*        forms a part of
policy number    *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 7(a)(2) AMENDATORY
### ( *45* DAYS)

In consideration of the premium charged, it is hereby understood and agreed that Clause
7(a)(2) is hereby deleted in its entirety and replaced with the following:

    (2)   within *45* days after the end of the **Policy Period** or the **Discovery Period** (if
        applicable), as long as such **Claim** was first made against an **Insured** within
        the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 017*

**ENDORSEMENT# *18***

This endorsement, effective *12:01 am     November 1, 2007*        forms a part of
policy number   *061-36-48*
issued to   *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 21 AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause
21. **RENEWAL APPLICATION PROCEDURE** shall be deleted in its entirety and replaced with
the following:

### 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy
(providing similar coverage) issued by the Insurer, or any of its affiliates, then in
granting coverage under this policy it is agreed that the **Insurer** has relied upon the
**Application** as being accurate and complete in underwriting this policy. This Clause 21
together with the **Application** constitute the complete **Application** that is the basis of
this policy and form a part hereof. No written renewal application form need be
completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**,
although the **Insurer** reserves the right to require specific information upon renewal.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**END 18**

ENDORSEMENT# *19*

This endorsement, effective *12:01 am*     *November 1, 2007*      forms a part of
policy number    *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCEPTION TO POLLUTION EXCLUSION FOR SHAREHOLDER CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Exclusion (k) of the policy shall not apply to **Indemnifiable Loss** arising from a **Securities Claim**, other than **Indemnifiable Loss** constituting **Cleanup Costs** (as defined in Exclusion (k)), provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured** or the **Organization**.

**DEFINITIONS**

For the purpose of this endorsement the following definitions are hereby added to the policy:

(1)   "**Cleanup**" means to test for, monitor, clean up, remove, contain, treat, neutralize, detoxify or assess the effects of **Pollutants**.

(2)   "**Continuity Date**" means *August 22, 1985*   .

(3)   "**Environmental Audit**" means the process by which a site is reviewed to determine the presence of **Pollutants** in the land, the atmosphere or any watercourse or body of water (including ground water and surface water) through the use of: (i) investigative and other reports; (ii) a physical inspection of the site; (iii) interviews with persons at the site and otherwise; (iv) a review of the regulatory history and a review of the prior use of the site. Any audit which would fall into the category of a "Phase I Audit" as that term is commonly used in the industry shall be automatically considered an "**Environmental Audit**" for the purposes of this policy.

(4)   "**Governmental Authority**" means any federal, state or local authority, agency or body in the United States of America, its territories or possessions or any political subdivision thereof, including any sovereign nation within the geographical confines of the United States of America, other than the Securities and Exchange Commission, Commodities Futures Trading Commission or any other authority which regulates securities or commodities markets.

(5)   "**Pollution Condition**" means the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** into or upon, or the presence of **Pollutants** in or upon, the land, the atmosphere or any watercourse or body of water.

(6)   "**Potentially Liable Party**" means a person or entity legally liable for **Cleanup** and/or **Cleanup Costs**.

**EXCLUSIONS**

As respects the coverage provided by this endorsement, the **Insurer** shall also not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(1)   arising as a result of liability of others for a **Pollution Condition** assumed by the **Organization** or any **Insured** under any oral or written contract or agreement, unless such liability would attach to the **Insured** in the absence of such contract or agreement;

*END 019*

Page 1 of 3

<u>ENDORSEMENT#</u> *19*   (continued)

(2)    alleging, arising out of, based upon or attributable to: (1) asbestos or asbestos-containing materials, or (2) acid rain conditions;

(3)    alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

       (a)    any **Wrongful Act** occurring or **Pollution Condition** existing prior to the **Continuity Date** if as of the **Continuity Date**, the **Organization**, an **Insured** or any **Employee** of the **Organization** with managerial responsibilities over environmental affairs, control or compliance, knew or could reasonably have foreseen that such **Pollution Condition** or **Wrongful Act** could give rise to a **Claim** under this policy;

       (b)    any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was listed on the United States Environmental Protection Agency's Comprehensive Environment Response Compensation and Liability Information System or final or proposed National Priorities List or any similar system or list maintained by a **Governmental Authority**;

       (c)    any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was the subject of a direction, request or claim by any **Governmental Authority** or any other person or entity to investigate a **Pollution Condition**, or for **Cleanup Costs**;

       (d)    any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was the subject of a notification to the **Organization** or any **Executive** or **Employee** thereof by a **Governmental Authority** or any other person or entity that the **Organization** or any **Insured** is or may be a **Potentially Liable Party**;

(4)    for Cleanup of Pollutants or to recover **Cleanup Costs**, or for injury from oral or written publication of a libel or slander or of other defamatory or disparaging material or of material that violates a person's right of privacy;

(5)    arising out of, based upon or attributable to the committing in fact by the **Organization**, an **Organization** or any **Employee** of the **Organization** with managerial responsibilities over environmental affairs, control or compliance, of any intentional, knowing, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any **Governmental Authority**;

(6)    alleging, arising out of, based upon or attributable to any **Pollution Condition** at or originating from a site the **Organization** acquired, whether by direct purchase or by exercising control over, after October 17, 1986 and prior to the **Continuity Date**, if prior to such acquisition, lease or commencement of exercise of control no **Environmental Audit** of such site was performed by or on behalf of the **Organization**; or

(7)    alleging, arising out of, based upon or attributable to any **Pollution Condition** at or originating from a site the **Organization** acquired (whether by direct purchase or by purchase of the controlling stock of another **Organization**), leased, or commenced exercising control over, after the **Continuity Date** if as of the date of acquisition, lease or commencement of exercise of control, the **Organization**, an **Insured** or any **Employee** of the **Organization** with managerial responsibilities over environmental affairs, control or compliance, knew or should have known of the existence of a **Pollution Condition** existing with respect to such site; provided, however, that this

**ENDORSEMENT#** *19*   (continued)

exclusion shall not apply in the event the **Insurer** has added such site to this policy by written endorsement.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 019*

**Page 3 of 3**

ENDORSEMENT# *20*

This endorsement, effective *12:01 am     November 1, 2007*          forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT
**(For-Profit Entities other than Hi/Bio Tech)**

In consideration of the premium charged, it is hereby understood and agreed that each of
the following entities shall be deemed an "**Outside Entity**":

   OUTSIDE ENTITY

   1)   any not-for-profit organization;

   2)   any for-profit entity in which the **Organization** has an equity ownership
        interest greater than *50* %, other than a Hi-Tech Entity, **Financial Institution,
        Bio-Tech Entity** or a **Subsidiary.**

The term "**High-Tech Entity**" shall mean any organization involved in computer products
including but not limited to hardware, software, semi-conductors, microprocessors,
integrated circuits and other peripherals. "**High-Tech Entity**" shall also include any retail
or service organization, which incorporates the internet and/or internet applications into
its primary business platform.

The term "**Financial Institution**" means any entity that is a bank (including but not limited
to commercial banks and savings and loan institutions) or any entity which is a diversified
financial institution (including but not limited to insurance companies, brokerage firms and
investment companies).

The term "**Bio-Tech Entity**" means any entity involved in the use of microorganisms or
biological substances to perform industrial processes.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**AUTHORIZED REPRESENTATIVE**

*END 020*

ENDORSEMENT# *21*

This endorsement, effective *12:01 am      November 1, 2007*      forms a part of
policy number   *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INVESTIGATION COSTS
FOR DERIVATIVE DEMANDS**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   Clause 1  **INSURING AGREEMENTS** is amended to add the following new insuring
agreement:

**COVERAGE E: INVESTIGATION COSTS FOR DERIVATIVE DEMANDS**

This policy shall pay the **Investigation Costs** of the **Organization** arising from an
**Investigation** in response to a **Derivative Demand** first made upon the
**Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and
reported to the **Insurer** pursuant to the terms of this policy.

2.   Clause 5  **LIMIT OF LIABILITY (FOR ALL LOSS–INCLUDING DEFENSE COSTS)** is
amended to add the following:

The maximum limit of the **Insurer's** liability for **Investigation Costs** arising from all
**Investigations** combined occurring during the **Policy Period** or the **Discovery
Period** (if applicable), in the aggregate, shall be  *$50,000*          . This limit shall
be the maximum limit of the **Insurer** under this policy regardless of the number of
such **Investigations** occurring during the **Policy Period** or the **Discovery Period** (if
applicable), or the number of **Executives** subject to such **Investigations**. Provided,
however, that the **Investigation Costs** limit shall be part of and not in addition to
the **Limit of Liability** stated in the Declarations of this policy, which shall, in all
events, be the maximum liability of the **Insurer** for all **Loss** under this policy.

3.   There shall be no Retention amount applicable to **Investigation Costs**, and the
**Insurer** shall pay such **Loss** from first dollar, subject to the other terms, conditions
and limitations of this endorsement and this policy.

4.   It shall be the duty of the **Organization** and not the duty of the **Insurer** to conduct,
investigate, and evaluate any **Investigation** against its own **Executives**, provided
that the **Insurer** shall be entitled to effectively associate in the **Investigation** and in
the evaluation and negotiation of any settlement of any such **Investigation**.

5.   Nothing in this endorsement shall be construed to afford coverage under this policy
for any **Claim** brought by the **Organization** against one or more of its own
**Executives** other than **Investigation Costs** incurred in a covered **Investigation**.
Payment of any **Investigation Costs** under this policy shall not waive any of the
**Insurer's** rights under this policy or at law.

6.   The **Organization** shall be entitled to payment of its covered **Investigation Costs**
90 days after: (i) it has made its final decision not to bring a civil proceeding in a
court of law against any of its **Executives**, and (ii) such decision has been
communicated to the **Complaining Shareholders**. Such payment shall be subject to
an undertaking by the **Organization** , in a form acceptable to the **Insurer**, that the
**Organization** shall return to the **Insurer** such payment in the event any

©American International Group, Inc.  All rights reserved
*END 021*

**ENDORSEMENT#** *21*   (continued)

**Organization** or **Complaining Shareholders** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

7.    Solely for the coverage extended by this endorsement under Coverage E, the following shall apply:

"Claim" shall also mean any **Derivative Demand**.

"**Complaining Shareholder**" means any shareholder or shareholders, other than any **Insured**, that makes a **Derivative Demand**.

"**Derivative Demand**" means a written demand by shareholders upon the board of directors (or equivalent management body) of an **Organization** asking it to bring, on behalf of the **Organization**, a civil proceeding in a court of law against any **Executive** of the **Organization** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

"**Investigation**" means the investigation by the **Organization** or, on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Organization** should bring the civil proceeding demanded in the **Derivative Demand**.

"**Investigation Costs**" means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including . any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the **Executives** or **Employees** of the **Organization**) incurred by the **Organization** or its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), incurred solely in connection with an **Investigation**.

"**Loss**" shall also mean **Investigation Costs**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©American International Group, Inc.  All rights reserved
*END 021*

## ENDORSEMENT# *22*

This endorsement, effective *12:01 am     November 1, 2007*     forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECTION 11 OR 12 ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause 2. **DEFINITIONS**, paragraph (p) "Loss," is amended by deleting subparagraph (6) thereof in its entirety and replacing it with the following:

    (6)    matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (6), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss and shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

It is further understood and agreed that Clause 4. **EXCLUSIONS** is amended by adding the following at the end thereof:

Notwithstanding anything stated in Clause 4. **EXCLUSIONS** above, Exclusions (a) and (b) shall not apply, in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

®American International Group, Inc.  All rights reserved
*END 022*

95282 (8/07)                              Page 1 of 1

**ENDORSEMENT# *23***

This endorsement, effective *12:01 am      November 1, 2007* .      forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF EXCLUSIONS
### BROAD FORM

In consideration of the premium charged, it is hereby understood and agreed that Clause
4. **EXCLUSIONS** is amended by deleting the last two paragraphs thereof in their entirety
and replacing them with the following:

> For the purpose of determining the applicability of the foregoing Exclusions, except
> for Exclusions 4(d), 4(e) and 4(i): (1) the facts pertaining to and knowledge
> possessed by any **insured** shall not be imputed to any other **Insured Person**; and
> (2) only facts pertaining to and knowledge possessed by any past, present or future
> chairman of the board, president, chief executive officer, chief operating officer,
> chief financial officer or General Counsel (or equivalent position) of an **Organization**
> shall be imputed to an **Organization**.

> This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©American International Group, Inc.  All rights reserved
*END 023*

94304 (3/07)                          Page 1 of 1

ENDORSEMENT# *24*

This endorsement, effective *12:01 am     November 1, 2007*          forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TIE-IN OF LIMITS ENDORSEMENTS
### (ABSOLUTE)

In consideration of the premium charged, it is hereby understood and agreed that the combined **Limit of Liability** of the **Insurer** for all **Claims** both under this policy's **Limit of Liability**, as set forth in the Declarations of this policy, and also under policy No. *000665799* issued to *CROWLEY MARITIME CORPORATION* by *AIG EXECUTIVE LIABILITY* (or any renewal or replacement of such policy or which succeeds such policy in time) ("**Other AIG Policy**"), shall be     *$10,000,000.*

Accordingly, the **Limit of Liability** for **Loss** under this policy shall be reduced by **Loss** incurred under the **Other AIG Policy** because the **Limit of Liability** under the **Other AIG Policy** is now part of and not in addition to the **Limit of Liability** of this policy as set forth in the Declarations of this policy.

Finally, nothing in this endorsement shall be construed to increase the **Insurer's Limit of Liability** set forth in the Declarations of such **Other AIG Policy** which shall remain the maximum liability of the **Insurer** for all **Claims** under such **Other AIG Policy**, or the **Insurer's Limit of Liability** under this policy as set forth in the Declarations of this policy which shall remain the maximum liability of the **Insurer** for all **Loss** in the aggregate under this policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

**END 024**

**ENDORSEMENT# *25***

This endorsement, effective *12:01 am*      *November 1, 2007*        forms a part of
policy number    *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT
### OR ACT EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that, without
limiting the effectiveness of exclusions (d) or (e) of the policy, the Insurer shall not be
liable to make any payment for **Loss** in connection with: (i) any of the **Claim**(s), notices,
events, investigations or actions referred to in item (1) below; (hereinafter "**Events**"); (ii)
the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any
**Event**(s); or (b) any **Claim**(s) arising from any **Event**(s); or (iii) any **Wrongful Act**,
underlying facts, circumstances, acts or omissions in any way relating to any **Event**(s).

### EVENTS

*1. Franklin Balance Sheet Investment Fund v. Crowley (2004)*

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in
connection with:

    (A)    any restatement, retraction, amendment or revision of in part or in whole:

        (i)    any document or statement filed or submitted or required to be filed or
submitted with the Securities and Exchange Commission or any other
similar federal, state or local agency (including but not limited to any
10K's, 10Q's or annual reports); or

        (ii)    any written or oral statement made regarding the assets, revenues, sales
or financial condition of the **Organization**,

        resulting from, arising out, based upon or attributable to any **Event** or the
resolution of said **Events**; and

    (B)    any **Claim** alleging, arising out of, based upon, attributable to or in any way
related directly or indirectly, in part or in whole, to an **Interrelated Wrongful
Act** (as that term is defined below), regardless of whether or not such **Claim**
involved the same or different **Insureds**, the same or different legal causes of
action or the same or different claimants or is brought in the same or
different venue or resolved in the same or different forum.

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact,
circumstance, act or omission alleged in any **Event**(s) and/or (ii) any **Wrongful Act** which

*END 025*

<u>**ENDORSEMENT#**</u> *25*    (continued)

is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

*END 025*

83588 (11/03)                    **Page 2 of 2**

**ENDORSEMENT# 26**

This endorsement, effective *12:01 am      November 1, 2007*      forms a part of
policy number   *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT
#### (Certain Individuals)

In consideration of the premium charged, it is hereby understood and agreed that each of
the following entities shall be deemed an "Outside Entity."

<u>OUTSIDE ENTITY</u>

1)   any not-for-profit organization;

2)   *SIGNAL MUTUAL INDEMNITY ASSOCIATION LTD.*

3)

Solely in regard to the **Outside Entity Executive** coverage provided by this policy for any
**Executive of the Organization** serving as an Executive of an **Outside Entity** listed in
*2*      above, the term "**Outside Entity Executive**" is amended to include the following
listed individuals, but solely for **Wrongful Acts** committed by such individual(s) in his or
her capacity as an **Outside Entity Executive** of such **Outside Entity**.

<u>**INDIVIDUALS**</u>
*BILL VERDON*

*0*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

***END 026***

**ENDORSEMENT#** *27*

This endorsement, effective *12:01 am     November 1, 2007*          forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 75010 | 02/00 | D00200 Admitted - Dec |
| 81285 | 01/03 | Tria Dec Disclosure Form |
| 75011 | 02/00 | D00200 Admitted - Policy |
| APPMAN | 09/07 | SECURITIES CLAIM PANEL COUNSEL LIST (Please see www.briefbase.com for the current list of panel counsel firms.) |
| 75013 | 02/00 | APPENDIX B CRISISFUND |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 76105 | 05/00 | FLORIDA AMENDATORY - CANCELLATION/NONRENEWAL |
| FL-SUR | | NOTICE - Florida State Surcharges |
| 89371 | 05/05 | "NO LIABILITY" PROVISION DELETED (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS ARISING OUT OF A SECURITIES CLAIM) |
| 83516 | 11/03 | CAPTIVE INSURANCE COMPANY EXCLUSION |
| 83524 | 11/03 | COMMISSIONS EXCLUSION |
| 91712 | 06/07 | DOMESTIC PARTNER COVERAGE |
| 90496 | 02/06 | EXCLUSION (M) AMENDED (FLSA) |
| 90497 | 02/06 | FINAL DETERMINATION WORDING |
| 90639 | 03/06 | INSURED V. INSURED EXCLUSION AMENDED (SARBANES-OXLEY WHISTLEBLOWER) |
| 90128 | 11/05 | PUNITIVE DAMAGES COVERAGE (OTHER THAN EMPLOYMENT PRACTICES CLAIMS) STATE OF FLORIDA |
| 83572 | 06/07 | RELIANCE UPON APPLICATION MADE TO ANOTHER CARRIER |
| 89639 | 07/05 | SEVERABILITY TO THE APPLICATION ENDORSEMENT (FULL INDIVIDUAL SEVERABILITY; TOP 3 ORGANIZATION POSITIONS IMPUTED TO ORGANIZATION ; AND NON-RESCINDABLE A SIDE COVER) |
| 86487 | 08/04 | RUN-OFF ENDORSEMENT |
| 87432 | 02/05 | SUBSIDIARY - ADDITION TO THE DEFINITION OF "SUBSIDIARY" |

*END 027*

ENDORSEMENT# *27*

This endorsement, effective *12:01 am      November 1, 2007*          forms a part of
policy number   *061-36-48*
issued to *CROWLEY MARITIME CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | INSURED V. INSURED EXCLUSION AMENDED - CREDITOR'S COMMITTEE |
| 83522 | 11/03 | CLAUSE 7(a)(2) AMENDATORY |
| MNSCPT | | CLAUSE 21 AMENDED |
| 89421 | 06/05 | POLLUTION EXCLUSION EXCEPTION FOR SECURITIES CLAIMS |
| 83554 | 11/03 | OUTSIDE ENTITY ENDORSEMENT (FOR PROFITS OTHER THAN HIGH/BIO-TECH) |
| 89386 | 03/07 | INVESTIGATION COSTS FOR DERIVATIVE DEMANDS |
| 95282 | 08/07 | SECTION 11 OR 12 ENDORSEMENT |
| 94304 | 03/07 | SEVERABILITY OF EXCLUSIONS BROAD FORM |
| 89383 | 05/05 | TIE-IN OF LIMITS ENDORSEMENTS (ABSOLUTE) |
| 83588 | 11/03 | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION |
| 89407 | 06/05 | OUTSIDE ENTITY ENDORSEMENT (CERTAIN INDIVIDUALS) |
| 78859 | 10/01 | Forms Index Endorsement |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 027*

**ENDORSEMENT# *28***

This endorsement, effective *12:01 am*      *November 1, 2007*      forms a part of
policy number    *061-36-48*
Issued to *CROWLEY MARITIME CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ENDORSEMENT(S) DELETED**

In consideration of the premium charged, it is hereby understood and agreed that
Endorsement # *5*                    is deleted in its entirety.


ALL OTHER TERMS, CONDITIONS. AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE


*END 028*

**ENDORSEMENT# _29_**

This endorsement, effective _12:01 am      November 1, 2007_      forms a part of
policy number   _061-36-48_
issued to _CROWLEY MARITIME CORPORATION_

by      _National Union Fire Insurance Company of Pittsburgh, Pa._

## CAPTIVE INSURANCE COMPANY
## (WITH SPECIFIC CAPTIVE CARVE-OUT)

In consideration of the premium charged, it is hereby understood and agreed that the
insurer shall not be liable to make any payments for **Loss** in connection with any **Claim**
made against any **insured** alleging, arising out of, based upon, attributable to the
ownership, management, maintenance, operation and/or control by the **Organization** of
any captive insurance company or entity including but not limited to **Claim** alleging the
insolvency or bankruptcy of the **Organization** as a result of such ownership, management,
maintenance, operation and/or control.

Notwithstanding the above, this exclusion shall not apply to the captive insurance
company listed below (hereinafter "**Captive(s)**"):

CAPTIVE INSURANCE COMPANY

_BEACON INSURANCE COMPANY, LTD._

It is further understood and agreed that in regard to the **Captive(s)** listed above the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against the **Insureds** alleging, arising out of, based upon, or attributable to any
third party business performed by or contracted into by a **Captive**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## _END 029_

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

# Doc. 16

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CROWLEY MARITIME CORPORATION

Plaintiff,

NATIONAL   UNION   FIRE   INSURANCE
COMPANY OF PITTSBURGH, PA.

Defendants.

_____/

CASE NO. 16-cv-01011

### MEMORANDUM OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. IN SUPPORT OF ITS MOTION TO DISMISS

The Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), respectfully submits this memorandum of law in support of its motion to dismiss all claims against it in this action pursuant to Fed.R.Civ.P.12(b)(6).   As set forth in this memorandum, the Complaint fails to state a claim upon which relief can be granted because all claims by the plaintiff herein, Crowley Maritime Corporation ("Crowley"), are barred as a matter of law by the doctrine of *res judicata* and by the applicable statute of limitations.

### <u>INTRODUCTION</u>

From January 2006 until in or about April 2008, Crowley's wholly owned subsidiary, Crowley Liner Services, Inc. ("Crowley Liner"), participated with certain other shipping companies in a criminal conspiracy to fix prices charged for commercial freight shipping between Florida and Puerto Rico.  The conspiracy only came to an end after the FBI executed a search warrant at Crowley's premises in Jacksonville on or about April 17, 2008.  On June 5, 2012, Crowley Liner pleaded guilty in the United States District Court to one Count of conspiring to fix prices in violation of the Sherman Antitrust Act, 15 U.S.C. §1.  *United States of America v. Crowley Liner Services, Inc.*, Case No. 3:12-cr-00590-DRD (D.P.R., June 5, 2012).

Crowley's guilty plea is a binding admission of its criminal conduct. *Peterson v. Jones*, 2016 WL 873235 at *4 (N.D.Fla. Feb. 16, 2016); *Hammer v. Secretary, Dept. of Corrections*, 2015 WL 5877874 at *12 (M.D.Fla. Oct. 5, 2016) ("A guilty plea admits the elements of the offense"). Pursuant to its plea of guilty, Crowley Liner was ordered to pay a criminal fine of $17 million. *United States of America v. Crowley Liner Services, Inc.*, Case No. 3:12-cr-00590-DRD (D.P.R., July 31, 2012).

After the search warrant was executed in April 2008, various Crowley employees apparently panicked and retained their own legal counsel. Crowley then submitted invoices for the legal fees incurred by its employees to National Union for potential coverage under an insurance policy issued by National Union. In May 2008, National Union denied coverage for the submitted legal fees on the grounds that no Claim as defined in the Policy had been asserted against any of Crowley's employees or reported to National Union as required in order to trigger coverage under the Policy. The matter thereafter was submitted to arbitration pursuant to the terms of the Policy and, after a full hearing on the merits, on January 29, 2013 the arbitration panel entered an award in favor of National Union.

In this action, despite its admitted criminal conduct, Crowley now seeks a second bite at the apple. Specifically, Crowley now claims to have discovered a new piece of evidence which it believes might have caused the arbitration panel to reach a different conclusion in 2013. On that basis, Crowley now seeks to re-litigate the issue of coverage under the National Union Policy and to recover from National Union the same legal fees that it failed to recover in the arbitration. That is not how litigation works. Where Crowley has already litigated to a conclusion on the merits the issue of whether National Union was obligated to reimburse Crowley for legal fees incurred by its employees in 2008, the matter is *res judicata*. Under well-

2

established law, Crowley is not entitled to a "do over" just because it claims to have found a new piece of evidence.  In addition, it has now been over eight years since National Union denied coverage for the legal fees that Crowley is seeking.  For that reason, Crowley's current attempt to re-assert its breach of contract claim against National Union is also barred by the statute of limitations.

## OPERATIVE FACTS

The following facts appear either on the face of the Complaint filed in this action or in the Arbitration Award referred to therein and attached hereto:

1.     National Union issued Executive and Organization Liability Insurance Policy No. 061-36-48 (the "Policy") to Crowley with a Policy Period of November 1, 2007 to November 1, 2008.  Complaint, ¶6.

2.     Endorsement No. 14 to the Policy granted Crowley a six year Run-Off Period commencing November 1, 2007 in which to report Claims to National Union for potential coverage under the Policy.  Complaint, ¶6 and Ex. A attached thereto.

3.  Section 2(b) of the Policy defines a "Claim" as follows:

(1)     a written demand for monetary, non-monetary or injunctive relief;

(2)     a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) return or filing of a notice of charges; or

(3)     a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(i)     once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

3

       (ii)    in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

Complaint, ¶13.

4.      On or about April 17, 2008 Crowley Liner was served with a Search Warrant issued by the United States District Court for the Middle District of Florida – Jacksonville Division.  Complaint, ¶15.

5.      Crowley sought reimbursement from National Union under the Policy for legal fees incurred by its employees after service of the Search Warrant.  Complaint, ¶19.

6.      National Union denied coverage for the legal fees incurred by Crowley's employees by correspondence dated May 27, 2008.  Complaint, ¶20 and Arbitration Award at p. 3.[1]

7.      On March 7, 2012, Crowley filed a demand for arbitration under the terms of the Policy.  Complaint, ¶21.

8.      Crowley argued in the arbitration that Claims had been asserted against its employees and timely reported to National Union pursuant to Subpart (1) of the above definition and also pursuant to Subpart (3)(i) of the above definition.  Arbitration Award, at pp. 7- 8

9.      On January 29, 2013, after a full hearing on the merits, the arbitration panel rejected both of Crowley's arguments and it entered a final award in favor of National Union and against Crowley.  Complaint, ¶23 and Arbitration Award at p. 9.

## ARGUMENT

Crowley's claim fails as a matter of law and should be dismissed.  "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is plausible

---

[1] A true copy of the January 29, 2013 Arbitration Award is attached hereto as Exhibit A.  The attached copy of the Arbitration Award is slightly redacted to delete certain information that was produced by Crowley in the arbitration proceeding and designated by Crowley as Confidential.  The redacted information is not pertinent to this motion.

on its face."  *Goldberg v. National Union Fire Insurance Company of Pittsburgh, Pa.*, 143 F.Supp.3d 1283, 1290 (S.D.Fla. 2015).  For purposes of the motion to dismiss, actual allegations of the Complaint are assumed to be true.  *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371 (11th Cir. 2010).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."  *Leader Global Solutions, LLC v. Tradeco Infraestructura, S.A.*, 155 F.Supp.3d 1310, 1315 (S.D.Fla. 2016).

In ruling on a motion to dismiss, the court generally does not look beyond allegations of the pleadings.  *Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, 542 Fed.Appx. 844 (11th Cir. 2013).  "However, a district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged."  *Leader Global Solutions, LLC v. Tradeco Infraestructura, S.A.*, *supra*, 155 F.Supp.3d at 1315, citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Goldberg v. National Union Fire Insurance Company of Pittsburgh, Pa.*, *supra*, 143 F.Supp.3d at 1291 (under incorporation by reference doctrine, the court may consider extrinsic documents if those documents are central to the plaintiff's claim and their authenticity is not disputed); *Gonzalez v. Watermark Realty Inc.*, 2010 WL 1299740 at *2 (S.D.Fla. Mar. 30, 2010) (court properly considers additional document where contents are alleged in complaint).  Because the Complaint in this action specifically refers to the attached Arbitration Award, the Court in deciding this motion may properly consider the content of the award.

Based upon the facts as identified above, all claims against National Union in this action should now be dismissed.  Crowley has already litigated its alleged right to recover under the Policy for the legal fees incurred by its employees in 2008.  The arbitration panel has conclusively determined that as of January 2013 no Claims as defined in the Policy had been

reported to National Union.  Crowley is not entitled to a second chance to litigate the same

claim.  National Union's motion to dismiss should be allowed because the Complaint and from

the Arbitration Award attached hereto establish that Crowley's claim is barred by *res judicata*

and by the statute of limitation.

### 1. THE PLAINTIFF'S CLAIMS IN THIS ACTION ARE BARRED AS A MATTER OF LAW BY THE DOCTRINE OF RES JUDICATA.

The January 29, 2013 decision of the arbitrators has preclusive effect and it bars Crowley

from re-litigating the same cause of action.  The doctrine of *res judicata* is well established in

Florida law and it "is founded upon the sound proposition that there should be an end to

litigation and that in the interest of the State every justiciable controversy should be settled in

one action in order that the courts and the parties will not be bothered for the same cause by

interminable litigation." *Gordon v Gordon*, 59 So.2d 40, 44 (Fla. 1952).

> The doctrine of *res judicata* is a bedrock principle of our legal
> system that "applies to repetitious suits involving the same cause
> of action." *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715,
> 719, 92 L.Ed. 898 (1948).  As the Supreme Court explained, "it
> rests upon considerations of economy of judicial time and public
> policy favoring the establishment of certainty in legal relations."
> *Id.*  Traditionally, *res judicata* proclaims that "a valid, final
> judgment, rendered on the merits, constitutes an absolute bar to a
> subsequent action between the same parties, or those in privity
> with them, upon the same claim or demand." *Epperson v.
> Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001)
> (internal quotation omitted).

*Overview Books, LLC v. United States of America*, 755 F.Supp.2d 409, 415 (E.D.N.Y. 2010).

Although *res judicata* sometimes is considered an affirmative defense best raised by means of a

motion for summary judgment, Florida law recognizes an exception where, as here, the basis of

the defense appears on the face of the Complaint.  *Wildflower, LLC v. St. Johns River Water

Management District*, 179 So.3d 369, 373 (Fla. 5th DCA 2015).

It is of no consequence that the original decision in this case was rendered by an arbitration panel rather than by a court.  Numerous cases recognize that under Florida law a final arbitration award is afforded the same res judicata effect as a judgment entered by a court. *Freecharm Limited v. Atlas Wealth Holdings Corp*., 2011 WL 4591929 (S.D.Fla. Sept. 30, 2011) (final arbitration award has preclusive *res judicata* effect on subsequent litigation proceedings); *Nicor International Corp. v. El Paso Corp*., 292 F.Supp.2d 1357, 1375-1376 (S.D.Fla. 2003) (arbitrator's determination of breach of contract claim is conclusive and entitled to *res judicata* effect); *The Bradfordt Co. v. Hallmark Builders, Inc*., 205 B.R. 971, 973 (Bankr.M.D.Fla. 1996) (arbitration decision can have *res judicata effect* when the proceeding affords basic elements of adjudicatory procedure); *City of Gainsville, Fla. v. Island Creek Coal Sales Co*., 618 F.Supp. 513 (N.D.Fla. 1984) (valid arbitration decisions are accorded *res judicata* and collateral estoppel effect).  See, *Domke on Commercial Arbitration* §36:2 (2016) ("An arbitration award is accorded the benefits of the doctrine of *res judicata* in much the same manner as a judgment of a court").

The conditions necessary in order to establish the bar of *res judicata* under Florida law are well settled.  A matter is *res judicata* if the following conditions are met:

> (1) identity of the thing sued for; (2) identity of the cause of action;
> (3) identity of the parties and (4) identity in the person for or
> against whom the claim is made.

*AMEC Civil, LLC v. PTG Construction Services Company*, 106 So.3d 455, 456 (Fla. 1st DCA 2013); *Seaboard Coast Line Railroad Co. v. Industrial Contracting Co*., 260 So.2d 860, 862 (Fla. 4th DCA 1972).  The prior claim "having passed into judgment cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever."  *Wacaster v. Wacaster*, 220 So.2d 914, 915 (Fla.App. 1969).  All four of the necessary conditions are satisfied here.

First, the identity of the thing sued for is the same.  There should be no argument on this point.  The Complaint in this action seeks to recover legal fees incurred by Mr. Farmer starting in 2008.  The exact same fees were part of what Crowley unsuccessfully sought to recover in the arbitration.

Next, the present action and the prior arbitration assert the same cause of action.  "Claims are part of the same 'cause of action' when they 'arise out of the same transaction or series of transactions.'"  *Trustmark Ins. Co. v. ESLU, Inc*., 299 F.3d 1265, 1269-1270 (11th Cir. 2002), quoting *In re Piper Aircraft Corp*., 244 F.3d 1289, 1296 (11th Cir. 2001).  There can be no serious question about the fact that the present action and the former arbitration arise out of the same transaction or series of transactions.  Both proceedings assert breach contract claims against National Union seeking to recover the same fees under the same Policy.  See, *Trustmark Ins. Co. v. ESLU, Inc*., *supra*, 299 F.3d at 1270 (two lawsuits were part of same cause of action where both involved alleged breaches of the same contract, committed by the same party and involving the same general type of conduct).

The third and fourth conditions required in order to establish a *res judicata* defense are satisfied here as well.  The parties to the present action, i.e., Crowley and National Union, were the same parties involved in the prior arbitration.   In addition, National Union is the party against whom a claim is asserted in the present action and it also was the party against whom the same claim was asserted in the prior arbitration.

Where the above conditions are satisfied, *res judicata* acts as a complete bar to any further claims arising out of the same transaction.  It is settled that the *res judicata* bar applies to "all legal theories and claims arising out of the same operative nucleus of fact . . ."  *Pleming v. Universal-Rundle Corp*., 142 F.3d 1354, 1356-1357 (11th Cir. 1998).  "[T]he claim extinguished

includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Signo v. Florida Farm Bureau Cas. Ins. Co.*, 454 So.2d 3, 5 (Fla. 4th DCA 1984), quoting, *Restatement of the Law of Judgments, Second*, Section 24(1). Significantly, a second action arising out of the same transaction is precluded "*even though the plaintiff is prepared in the second action . . . [t]o present evidence* or grounds or theories of the case *not presented in the first action*." *Restatement of the Law of Judgments, Second*, Section 25 (emphasis added). See, *Statter v. Statter*, 163 N.Y.S.2d 13, 18 (N.Y.App. 1957) ("It is commonly held that the mere discovery of fresh evidence is no answer to the defense of *res judicata* when raised in a subsequent, separate cause of action.")

Crowley has argued in the past that *res judicata* does not apply to an entirely new cause of action based on facts which occurred after the date of the first decision. However, cases articulating that view have no relevance here. The claim that Crowley asserts here is not a new cause of action. In addition, the only "new fact" relied upon by Crowley is the fact that it claims to have recently discovered an *old* piece of evidence. The case therefore is fundamentally unlike cases such as *Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc.*, 210 S.2d 750 (Fla. 4th DCA 1968). In that case, a 1948 case unsuccessfully challenged the constitutionality of a 1947 statute. Twenty years later, a second action asserted a different challenge to the same statute. The second case was based on "no less than seventeen substantial changes which have occurred in the racing industry since 1947, as well as changes that have occurred in the state of Florida." *Id.*, at 754. The court concluded that *res judicata* did not apply because the second action was based on "changed conditions and *new facts which did not exist* at the time of the [first action] . . ." (emphasis added). Crowley's argument is without merit

because it fails to recognize the distinction between the occurrence of new facts and the mere belated discovery of *old* facts.  See, *Migdal Plumbing & Heating Corp. v. Dakar Developers, Inc.*, 662 N.Y.S.2d 106, 107-108 (App.Div.1st Dept. 1997) (citing "well-settled rule" that newly discovered evidence does not constitute a ground for challenging an arbitration award.").

### II.    THE PLAINTIFF'S CLAIMS IN THIS ACTION ARE BARRED AS A MATTER OF LAW BY THE STATUTE OF LIMITATIONS.

In addition, it has been more than eight years since National Union denied coverage for Crowley's claim under the Policy.  In addition to being barred by *res judicata*, this action also should be dismissed based on the statute of limitations.  "In Florida, the statute of limitations for a breach of contract action is five years.  Fla. Stat. 95.11(2)(b)."  *Barry v. Barry*, 2011 WL 5358750 at *2 (M.D.Fla. Oct. 31, 2011).  It is settled that a cause of action for breach of contract accrues as of the date of breach.  *Lion Life, LLC v. Regions Bank*, 2013 WL 2367823 at *2 (S.D.Fla. May 29, 2013).  "The plaintiff's awareness of the breach is immaterial."  *Id*.  In this case, as appears from the attached Arbitration Award, National Union denied coverage for Crowley's claim for reimbursement of its employees' attorneys' fees by correspondence dated May 31, 2008.  Any cause of action for breach of the Policy therefore accrued at that time and is now time barred.

Multiple decisions recognize that "[a] defendant may raise a limitation defense in a motion to dismiss for failure to state a claim 'when the complaint shows on its face that the limitation period has run.'"  *Cruz v. American Security Ins. Co.*, 2016 WL 5791245 at *3 (M.D.Fla. Oct. 4, 2016); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F.Supp. 1253, 1281 (M.D.Fla. 2009) (quoting *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *XP Global, Inc. v. AVM, L.P.*, 2016 WL 4987618 at *2 (S.D.Fla. Sept. 19, 2016) (same); *Barry v. Barry*, *supra* at *3 (allowing defendant's motion to dismiss based on

statute of limitations).  As is set forth above, the Court in this case may also consider the attached Arbitration Award rendered on January 29, 2013, which is specifically referred to in the Complaint.  It is clear from the face of the Award that National Union's denial of coverage was dated May 31, 2008.

Crowley's claim that it did not discover the contents of the Affidavit until 2015 is irrelevant, because Florida law does not recognize a discovery rule for breach contract actions. Under Florida law, the cause of action accrues as of the date of breach regardless of whether the plaintiff is aware at that time of the facts constituting the alleged breach and regardless of whether the plaintiff knows that it has a claim.  "The law in Florida is clear that the statute of limitations for breach of contract begins to run when the breach occurs *regardless of when it is discovered*."  *AS Management Services, Inc. v. Kendall Properties & Investments*, 2009 WL 1220346 at *6 (S.D.Fla., May 4, 2009) (emphasis added).  As stated by the Eleventh Circuit, "[t]he Florida Supreme Court held that there is no discovery rule in section 95.11(2)(b) and that actions for breach of contract are barred five years after the cause of action accrued *regardless of whether the plaintiff knew that it had a claim*."  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999), citing *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc.*, 707 So.22d 1119, 1122 (Fla. 1998); *Potiker v. Gasiunasen Gallery*, 2010 WL 249943 at *2 (S.D.Fla. July 26, 2010) (dismissing Florida breach of contract action filed more than five years after the breach occurred, despite plaintiff not becoming aware of the breach until 17 years later).

Crowley's argument, in effect, is an attempt to create a discovery rule which the Florida Supreme Court has expressly ruled is not available in breach of contract actions.  If the plaintiff's argument were accepted, it would effectively mean that there is no statute of limitations for claims of the type at issue here.  The same argument could be made if Crowley first discovered

the affidavit in 2017, or in 2020, or in 2025 or at any point.  Statutes of limitation serve an important societal purpose in allowing the parties finality and they "are not simply technicalities."  *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) (stating that statutes of limitation "have long been respected as fundamental to a well-ordered judicial system").  Where the Florida legislature failed to provide for any such tolling in enacting Section 95.11(2)(b) and the Florida Supreme Court has refused to create such a rule by implication, Crowley's attempt to create a discovery rule in this case is unfounded and should be rejected.

## **CONCLUSION**

For the foregoing reasons, National Union submits that its motion to dismiss should be allowed and that all claims against it in this action should be dismissed with prejudice.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.

By its attorneys,


LYDECKER | DIAZ
Attorneys for Defendants
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190

By: /s/ Stephen H. Johnson
　　 Stephen Hunter Johnson, Esq.
　　 Florida Bar Number: 12362
　　 shj@lydeckerdiaz.com

12

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on October 14th, 2016. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF and via U.S. Mail on all counsel or parties of record on the Service List below.

/s/  Stephen Hunter Johnson
Stephen Hunter Johnson, Esq.

## SERVICE LIST

Charles B. Lembcke
Law Office of Charles B. Lembcke, PA
Suite 605
1300 Riverplace Blvd
Jacksonville, FL 32207
904/355-5467
Fax: 904/633-9328
Email: cbl@cbllaw.com

Emily E. Garrison
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-3917
Fax: 312-207-6400
Email: egarrison@reedsmith.com

John D. Shugrue
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
3l2-207 -2459
Fax: 312-207-6400
Email: jshugme@reedsmith.com

Thomas A. Marrinson
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-1000
Fax: 312-207-6400

983670_1

13

# Doc. 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

---

| | |
|---|---|
| CROWLEY MARITIME CORPORATION, )  | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:16-cv-01011-TJC-JBT |
| v. ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| NATIONAL UNION FIRE INSURANCE ) | |
| COMPANY OF PITTSBURGH, PA., ) | |
| ) | |
| Defendant. ) | |

---

**CROWLEY MARITIME CORPORATION'S MEMORANDUM OF LAW IN**
**OPPOSITION TO NATIONAL UNION'S MOTION TO DISMISS**

Plaintiff Crowley Maritime Corporation ("Crowley"), through undersigned counsel,

submits this Memorandum of Law in Opposition to Defendant National Union Fire Insurance

Company of Pittsburgh, Pa.'s ("National Union") motion to dismiss ("Mem.") (Doc. #16).

National Union's motion seeks to apply an equitable doctrine to achieve a wholly unfair

result and twists the facts to support a statute of limitations defense totally lacking in any basis.

National Union does not contest that it has a duty to advance defense costs where, as here, an

Insured Person is named in writing as a person against whom a criminal proceeding may be

commenced.  Here, however, due to circumstances beyond Crowley's control, the writing that

triggered National Union's duty was sealed by the court and unavailable.  National Union thus

took the position that its duty had not yet been triggered.  Now that the triggering document *is*

available, National Union urges a different tack, and says that it is "too late" for the insured to

seek recovery.  There is nothing "fair" about the result that National Union seeks, and neither the

equitable doctrine of *res judicata* nor the statute of limitations has any application under the

unique facts and circumstances presented here.

This action seeks defense costs incurred in response to a criminal investigation conducted by the United States Department of Justice ("DOJ"), Antitrust Division focused on Thomas Farmer, a former employee of Crowley, who was ultimately acquitted of any wrongdoing. Improperly relying on a prior arbitration that involved different facts and conditions from those at issue here, National Union seeks the extraordinary remedy of resolving Crowley's Complaint at the pleadings stage. But National Union's motion ignores its own prior statements that the reason it was not providing coverage was because the triggering document was not available. That crucial fact has changed, and neither *res judicata* nor the statute of limitations applies.

The prior arbitration between the parties (the "Arbitration") and the January 2013 award that resulted (the "Award") involved only the limited issue of whether the documents that had been presented to National Union ***at the time of that Arbitration*** constituted a "Claim" as defined in National Union's policy (the "Policy"). Critically, since entry of the Award, the facts and circumstances have fundamentally changed. Specifically, a search warrant affidavit that had been filed under seal (the "Search Warrant Affidavit") was unsealed, first became available to Crowley, and was presented to National Union in 2015.

The Award is explicit that the Arbitration adjudicated on the merits ***only*** the issue of whether the materials Crowley had "submitted to National Union ***at that time***" qualified as a "Claim," concluding that the "triggering event specified in the Policy has ***not yet*** been presented to National Union." (Doc. #16-1 at 9, emphasis added.) The central basis of this lawsuit, however, is that the Search Warrant Affidavit – and not any of the documents considered in the Arbitration – constitutes a Claim under the Policy. Because the Search Warrant Affidavit was unavailable at the time of the Arbitration, ***the issue of whether the Search Warrant Affidavit is***

***a Claim was not finally adjudicated on the merits in the Arbitration***.

Even were this not the case, National Union's motion ignores the equitable nature of *res judicata*, and attempts to use that doctrine to achieve a manifestly unfair result.  Crowley is not to blame for the unavailability of the sealed Search Warrant Affidavit at the time of the Arbitration.  A rigid application of *res judicata* would not lead to a fair or proper administration of justice, as the doctrine requires, and should be rejected on that basis alone.

National Union's position that the statute of limitations bars Crowley's claim is equally off-base.  The statute of limitations on National Union's denial ***with respect to the Search Warrant Affidavit*** could not have started running (much less have ***expired***) before Crowley was able to obtain the Search Warrant Affidavit in 2015 and present it to National Union.  Indeed, National Union previously informed Crowley only that the documents submitted to National Union ***at the time of the Arbitration*** (which did not include the Search Warrant Affidavit) were not a Claim under the Policy, and invited Crowley to submit additional documents for consideration "at any time."  The Search Warrant Affidavit is that document.  National Union's argument also ignores Florida law establishing that the statute of limitations did not commence running until: (a) its defense obligations were completed, which did not occur until Mr. Farmer was acquitted in 2015; or (b) National Union refused to cover defense invoices submitted by Crowley in December 2012.  Under each of these bases, Crowley's suit was timely filed.  Further, Florida law equitably tolls the statute of limitations in cases like this, where the Search Warrant Affidavit was sealed and unavailable for 7 years through no fault of Crowley.  At minimum, National Union's motion cannot be granted because there is a disputed issue of fact as to whether the statute of limitations is statutorily or equitably tolled.

Finally, National Union's motion is procedurally defective as a motion to dismiss

because it improperly relies on a document extraneous to the complaint (the Award), even though the Award is not attached to or incorporated by reference in Crowley's Complaint, and is not central to Crowley's claim, but rather to National Union's defense.  Although this Court therefore could convert National Union's motion to a summary judgment motion, it should be denied either way.

## I.    FACTUAL BACKGROUND

### A.    The Policy and the DOJ Criminal Antitrust Investigation

National Union does not dispute that the Policy covers defense costs incurred after an insured individual is identified in writing as a person against whom a criminal proceeding may be started.  Nor could it.  The Policy defines "Claim" to include a "criminal investigation" of an Insured Person once such person is "identified in writing by [an] investigating authority" as a person against whom a criminal proceeding "may be commenced."  (Doc #1 at ¶¶ 7-8, 13.)

On or about April 17, 2008, Crowley Liner Services, Inc. ("Crowley Liner"), a wholly owned subsidiary of Crowley that is an "Insured" under the Policy, was served with a search warrant issued by the United States District Court for the Middle District of Florida – Jacksonville Division, in connection with a federal antitrust criminal investigation (the "DOJ Investigation").  (*Id.* at ¶ 15.)  The search warrant ordered, in part, that certain property, including notes, memoranda, and other documents, could be seized from four specifically identified individuals, including Thomas Farmer, who then was a vice president of Crowley Liner and is an "Insured Person" under the Policy.  (*Id.* at ¶ 16.)

The search warrant was issued based on the Search Warrant Affidavit, which was executed by an agent of the Federal Bureau of Investigation.  (*Id.* at ¶ 17.)  The Search Warrant Affidavit was filed under seal and ordered by the issuing court, the Middle District of Florida –

Jacksonville Division, to be sealed.  (*Id.*)   The Search Warrant Affidavit was not unsealed and made public until April 24, 2015, during the criminal trial of Mr. Farmer in the United States District Court for the District of Puerto Rico.  (*Id.*; *see also* Declaration of Emily E. Garrison ("Garrison Dec.") at ¶¶ 4-5, Exs. A, B.; Declaration of Steven Ficon ("Ficon Dec.") at ¶6.)[1] Although both Crowley and National Union knew a Search Warrant Affidavit existed since April 2008, the Search Warrant Affidavit and its contents were unavailable until April 2015, when it was unsealed by the court and introduced into evidence during the Farmer criminal trial.  (*Id.*)

Upon the execution of the search warrant, Mr. Farmer retained his own counsel to defend and protect his interests against the DOJ Investigation, and Crowley indemnified Mr. Farmer for his defense costs.  (*Id.* at ¶ 19.)[2]

### B.    National Union's Coverage Position and the Arbitration

Crowley provided National Union with the search warrant, advised National Union of the existence of the under-seal Search Warrant Affidavit and sought National Union's payment of Mr. Farmer's defense costs.  (*Id.* at ¶¶ 19-20; *see also* Garrison Dec. at ¶ 6, Ex. C.)  National Union, however, refused to provide coverage, and informed Crowley that "based upon the materials submitted to date, National Union will accept this matter as a notice of circumstances" and told Crowley that "[s]hould you wish to submit further information or documentation that you feel would be relevant to a determination as to coverage for this matter, please feel free to

---

[1] Crowley includes in this background additional facts that can be considered if the motion is converted to a motion for summary judgment, given National Union's attempt to use the Award on a motion to dismiss. If National Union's motion is converted to one for summary judgment, the motion should be denied.  If National Union is permitted to supplement the record, Crowley requests an opportunity to respond.

[2] National Union's gratuitous statement that "various Crowley employees apparently panicked" (Mem. at 2) is unsupported and inappropriate.  Equally impertinent are National Union's references to Crowley's own plea because this action involves coverage for Mr. Farmer's defense costs, not Crowley's defense costs.  It bears repeating that National Union's insured, Mr. Farmer, was acquitted of any wrongdoing.

forward such information to [National Union]." (Doc. #1 at ¶ 20; Garrison Dec. at ¶ 7, Ex. D.)

On March 7, 2012, Crowley instituted the Arbitration. (Doc. #1 at ¶ 21.) Through no fault of the parties, neither Crowley nor National Union was able to obtain a copy of the still under-seal Search Warrant Affidavit during the Arbitration. (*Id.* at ¶ 22; *see also* Award, Ex. A to National Union's Mem. (Doc. #16-1), at 2.) National Union explicitly recognized and argued to the Arbitration Panel that the Arbitration was narrowly limited to the issue of whether the documents that Crowley had submitted to National Union, which ***included the search warrant, but which did not include the Search Warrant <u>Affidavit</u>***, qualified as a Claim under the Policy. (Doc. #1 at ¶ 21; *see also* Garrison Dec. at ¶¶ 8-9, Exs. E, F.)

On January 13, 2013, the Panel issued the Award. The Arbitration Panel found that ***the specific documents*** that were submitted to National Union prior to the issuance of the Award did not constitute a Claim. (Doc. #1 at ¶ 23.) The Search Warrant Affidavit remained under seal, with its factual contents unavailable to the parties or the Panel, and thus was not addressed in the Award. (*Id.*) As the Panel explicitly recognized in the Award: "***The materials submitted to National Union*** did not constitute a Claim for Insured Persons as the term 'Claim' is defined in the Policy. ***The triggering event specified in the Policy has not yet been presented to National Union***." (Doc. #16-1 at 9, emphasis added.)

C.     <u>**Thomas Farmer's Indictment and Acquittal**</u>

In February 2013, after the panel issued its Award, DOJ prosecutors presented Mr. Farmer with a written offer to enter into a plea agreement. (Doc. #1 at ¶ 24.) On March 21, 2013, he was indicted for alleged participation in an antitrust conspiracy. (*Id.*) Based on the DOJ plea offer, National Union agreed to advance Mr. Farmer's defense costs from February 18, 2013. (*Id.*) National Union nevertheless persisted in refusing to cover Mr. Farmer's defense

costs from prior to February 18, 2013, which were paid by Crowley and total more than $2.5 million.  (Doc. #1 at ¶ 24.)  On May 8, 2015 Mr. Farmer was acquitted.  (*Id.* at ¶ 26.)

> **D.     The Search Warrant Affidavit Becomes Available, but National Union Continues to Refuse to Pay Defense Costs**

After Mr. Farmer's acquittal, the Search Warrant Affidavit was made available to Crowley and National Union for the first time.  (*Id.* at ¶ 27; *see also* Ficon Dec. at ¶¶ 4, 6-7, Ex. A.)  The Search Warrant Affidavit, dated April 16, 2008, plainly establishes that a Claim was made against Mr. Farmer as of that date.  (Doc. #1 at ¶ 28.)  Although the recent availability of the Search Warrant Affidavit is the critical fact that has changed since the Arbitration, National Union still refuses to pay defense costs incurred prior to February 18, 2013.  (*Id.* at ¶ 29; *see also* Ficon Dec. at ¶ 5, Ex. B.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all factual allegations in the complaint as true, construing the allegations and drawing all reasonable inferences in the light most favorable to the plaintiff.  *Karaali v. Wintrust Capital Mgmt., LLC,* 2011 WL 862328, at *1 (M.D. Fla. Mar. 10, 2011). To survive such a motion, a complaint need only state a plausible claim for relief.  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).  A court ordinarily cannot consider matters outside the pleadings on a Rule 12(b)(6) motion, but when it does so, the motion is converted to one for summary judgment. *Lockwood v. Beasley*, 211 F. App'x 873, 876–77 (11th Cir. 2006) (citation omitted); *Rease v. Walton*, 2014 WL 4185235, at *1, fn 1 (M.D. Fla. Aug. 22, 2014) (converting a motion to dismiss to a motion for summary judgment where documents pertaining to *res judicata* defense were attached to motion to dismiss).

Documents outside the pleadings (*i.e.*, those not attached to or incorporated by reference

in the complaint) can be considered on a motion to dismiss only if they are central to the plaintiff's claim.  The test for determining centrality is straightforward: "whether the plaintiff would have to offer the document to prove his case." *Lockwood*, 211 F. App'x at 877. Documents that are relevant to the defendant's affirmative defenses, rather than the plaintiff's claim, fail to meet this test. *Id.*

The Award on which National Union's motion is based is not attached to or incorporated by reference in the Complaint; nor is it "central" to Crowley's case.  Crowley does not need to offer the Award to prove that the Search Warrant Affidavit is a Claim under the Policy.  Rather, the Award comes into play only because of National Union's *res judicata* defense.  The Court thus cannot consider the Award on a motion to dismiss, but instead would have to convert National Union's motion to one for summary judgment.  Under the summary judgment standard, judgment is proper only if the pleadings and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Jackson v. Equifax Info. Servs., LLC.*, 167 F. App'x 144, 146 (11th Cir. 2006).  The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to Crowley as the non-moving party.  *Id.*  Regardless of whether National Union's motion is treated as a motion to dismiss or a motion for summary judgment, it should be denied.

## III.   <u>CROWLEY'S SUIT IS NOT BARRED BY *RES JUDICATA*</u>

National Union's motion should be denied because National Union does not and cannot meet its burden of establishing the elements of *res judicata* under Florida law: (1) "identity of the cause of action" in the Arbitration and this case; (2) a "clear-cut" former adjudication on the merits in the Arbitration; and (3) that application of *res judicata* would be equitable under the circumstances.  *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013); *see also Universal Const. Co. v. City of Fort Lauderdale*, 68 So. 2d 366, 369 (Fla. 1953).

-8-

A.     **Identity of the Cause of Action Cannot Establish**

   In order to show the required "identity of the cause of action," National Union must establish that "the facts or evidence necessary to maintain the suit are the same in both actions." *Lozman*, 713 F.3d at 1074; *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005). If, by contrast, there has been a "modification of significant facts creating new legal conditions, *res judicata* is no defense." *Southeast Florida Cable, Inc. v. Martin Cty., Fla.*, 173 F.3d 1332, 1336 (11th Cir. 1999).  In this regard, Florida law is clear that *res judicata* does not apply "[w]hen other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties" *State St. Bank & Trust Co. v. Badra,* 765 So.2d 251, 254 (Fla. 4th DCA 2000); *see also Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n.,* 210 So.2d 750, 753-54 (Fla. 4th DCA 1968), *aff'd,* 245 So.2d 625 (Fla. 1971) ("the applicability of [*res judicata*] in each case turns on the particular facts alleged in each action and the particular disposition of the allegations in the first action").[3]  That is exactly what happened here, as the facts regarding what documents were available to the parties changed completely.

   The Eleventh Circuit has recognized that application of *res judicata* is especially inappropriate where, as here, the second complaint involves facts that took place after resolution of the first complaint.  In such circumstances, the second complaint "involve[s] different facts and evidence than the causes of action alleged in the [first] action," such that "the causes of action are not identical." *Lozman*, 713 F.3d at 1075.  Florida state courts agree.  The Florida

---

[3] *See also Larimore v. State of Florida*, 76 So.3d 1121, 1123 (Fla. 1st DCA 2012); *Saadeh v. Stanton Rowing Found.*, 912 So.2d 28, 31 (Fla. 1st DCA 2005). Courts across the country are in accord and decline to apply *res judicata* when a party asserts claims based on facts that could not have been pleaded at the time of the prior claim. *See Monahan v. Paine Webber Grp., Inc.*, 724 F. Supp. 224, 226 (S.D.N.Y. 1989) (*res judicata* not a bar to second complaint based on facts that could not have been pleaded at the time of prior arbitration); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) ("If the plaintiff is unaware of facts when filing a complaint, *res judicata* will not bar subsequent litigation").

appeals court thus has held that *res judicata* did not apply where the first action relied on notices of acceleration dated in 1992 and 1993, while the second action relied on a 1997 notice, after the first action concluded. *State St. Bank,* 765 So.2d at 254. As the Florida appeals court explained, "[s]ince the first and second actions involved different notices of acceleration and such letters were essential to the maintenance of each action, there existed essential facts between the two cases which differed." *Id.* The same situation exists here because the second action – this one – involves different documents, with the critical document – the Search Warrant Affidavit – having become available only after the first action – the Arbitration – had concluded. The essential element of identity of causes of action thus is lacking here and dooms National Union's motion, whether it is treated as a motion to dismiss or for summary judgment.

> 1.   <u>Under the motion to dismiss standard, National Union cannot establish the "identity of cause of action" element</u>.

Under the motion to dismiss standard, the allegations in the Complaint control. Those allegations, set forth below, establish that *res judicata* does not apply.

In 2008, Crowley sought coverage from National Union on the grounds that certain documents, including the search warrant and two subpoenas, constituted a Claim. (Doc. #1 at ¶¶ 19-20; Doc. #16-1 at 3-4.) The Search Warrant Affidavit ***was not*** one of the documents presented to National Union because it was filed under seal and unavailable. (Doc. #1 at ¶ 22; Doc. #16-1 at 2.) National Union took the position that the documents then available did not constitute a Claim because none identified Mr. Farmer in writing as an individual against whom a criminal proceeding may be commenced. (Doc. #1 at ¶¶ 20-21.) National Union nevertheless invited Crowley to "submit further information or documentation that … would be relevant to a determination as to coverage for this matter." (Doc. #1 at ¶ 20; Doc. #16-1 at 3-4.) Crowley initiated the Arbitration to determine whether National Union wrongly declined to provide

coverage based on the specific documents then available.  (*Id.*)  The Search Warrant Affidavit

remained sealed during the Arbitration.  (Doc. #1 at ¶ 22; Doc. #16-1 at 2.)

In issuing its Award, the Panel narrowly ruled that the documents that had been presented

to National Union at that time (which did not include the Search Warrant Affidavit) did not

constitute a Claim.  (*Id.* at ¶ 23.)  The Award is explicitly limited to this specific issue:

- "[T]he decisive issue is whether or not the 'DOJ Investigation' (as evidenced by the search warrant, the Farmer subpoena, the Crowley subpoena, the [Crowley] Term Sheet, the [Crowley] Plea agreement, the [Crowley] Plea Agreement Supplement and the Investigation related thereto) is sufficient to constitute a 'Claim' as that term is defined under the Insurance Policy."

- "Given the facts in this case, the triggering event for a Claim … for the DOJ's criminal investigation is when the DOJ identifies in writing an Insured Person as one against whom a criminal proceeding may be commenced. This specified, objective triggering event ***has yet to occur***."

- "***Facially, none of the writings presented*** identifies an Insured Person 'as a person against whom a (criminal) ... may be commenced.' For example, the search warrant is a judicial writing devoid of any identification by the DOJ (or FBI) of any individual as a person against whom a covered proceeding may be commenced. The potential of such a proceeding … is only by inference derived from context beyond the four corners of the search warrant."

- "***The materials Crowley submitted to National Union*** did not constitute a Claim for Insured Persons as the term 'Claim' is defined in the Policy. ***The triggering event specified in the Policy has not yet been presented to National Union***."

(Doc. # 16-1 at 5, 7, 9, emphasis added.)

After the Award was issued, significant facts intervened.  In 2015, the Search Warrant

Affidavit was unsealed, introduced into evidence in the Farmer criminal trial and made available

for the first time to Crowley.  (Doc. #1 at ¶ 17.)  Crowley promptly presented the Search Warrant

Affidavit to National Union as a document showing that a Claim was made against Mr. Farmer

in 2008, which established coverage under the Policy.  (*Id.*)  Although National Union

previously had invited Crowley to submit further information relevant to a determination of

coverage (*id.* at ¶ 20), National Union refused to consider the Search Warrant Affidavit.  The basis of this lawsuit is that: (1) the Search Warrant Affidavit (and not any other document, including the documents addressed in the Arbitration) is a Claim that triggers National Union's obligations; and (2) National Union wrongfully denied coverage *after Crowley's submission of the Search Warrant Affidavit*.

As in *Lozman* and *State St. Bank*, there are new facts and new conduct by National Union *that occurred after the first action* (the Arbitration) and that thus were not, and could not have been, at issue in the first action.  The essential facts thus differ between the two actions, making *res judicata* inapplicable here.  The new facts and conditions since the Arbitration – the unsealing of the Affidavit and National Union's rejection of Crowley's presentation of the Affidavit as establishing a Claim – create new legal conditions and provide a new legal basis for Crowley's insurance claim, making *res judicata* improper here.

Against this backdrop, National Union argues that *res judicata* should apply because "Crowley claims to have recently discovered an *old* piece of evidence" (Mem. at 9).  But Crowley did not recently "discover" the Search Warrant Affidavit.  As alleged in the Complaint and acknowledged by the Arbitration Panel, the existence of the Search Warrant Affidavit was known, but the facts within it were not available during the Arbitration and could not be considered due to its court-ordered unavailability.[4]  Only the unsealing of the Search Warrant Affidavit post-Arbitration and its introduction in the Farmer criminal trial made it available to Crowley.  The allegations in Crowley's Complaint, taken as true, thus show a plausible claim against National Union.  Accordingly, National Union's motion should be denied.

---

[4] The circumstances here do not resemble those in *In re Migdal Plumbing & Heating Corp.*, 232 A.D.2d 62, 64, 662 N.Y.S.2d 106 (1997), a non-binding New York case.  That case did not even involve *res judicata*, and there was no evidence that the document at issue (which showed that the defendant was unlicensed) was either unavailable or under seal during a prior arbitration between the parties.

2.     Under the summary judgment standard, National Union cannot establish the "identity of cause of action" element.

National Union's motion also must be denied under the summary judgment standard because facts outside the Complaint and the Award render summary judgment in National Union's favor improper.  Specifically, the facts demonstrate that National Union itself admits that its refusal to provide coverage up through the time of the Arbitration was based on the contents of documents then available and presented at the time.  (*See, e.g.,* Garrison Dec. at ¶ 10, Ex. G ("***To date nothing has been submitted*** to show that there is any civil, criminal, administrative or regulatory investigation of an Insured Person"); ¶ 11, Ex. H ("No coverage is afforded because ***none of the materials submitted*** constitute Claims," emphasis added.)  Indeed, National Union's summary judgment motion in the Arbitration argued that "the ***Materials Submitted to National Union for Coverage***" did not constitute a Claim, and centered on the specific materials submitted to National Union at the time: (1) the April 16, 2008 search warrant; (2) the April 17, 2008 subpoena; and (3) the April 17, 2008 subpoena.  (*Id.* at ¶ 8, Ex. E, at  6-7, emphasis added.)  The Search Warrant Affidavit is glaringly absent from National Union's list of documents precisely because it was unavailable at the time of the Arbitration.

What's more, during the Arbitration, National Union explicitly argued that the Arbitration Panel ***should not*** consider the Search Warrant Affidavit because it was unavailable and its contents would merely be the subject of speculation:

> You could hypothesize various writings which might qualify [as a Claim]. That's irrelevant. ***The issue is whether these specific documents that were submitted to National Union in 2008 qualified***. And the answer to that, consistently from National Union, has always been that they do not, because they don't identify as a person who may be charged. … The problem here is that nobody has seen the [Search Warrant] [A]ffidavit, and nobody knows what it says. And everybody is guessing what they think it says, but nobody knows what it says.  That's the big problem here.

(*Id.* at ¶ 9, Ex. F, 628:5-13; 660:15-19, emphasis added.)   National Union's own statements to

the Panel establish precisely why *res judicata* cannot be applied here:  the question presented was whether the documents then available were a Claim and did not – at National Union's own urging – involve the issue of whether the unavailable Search Warrant Affidavit was a Claim.  In following National Union's lead, the Panel narrowly limited the Award to consideration of the documents that had been submitted to National Union, and did not consider the unavailable Search Warrant Affidavit.  (Doc. #16-1 at 9.)  These additional facts, at minimum, demonstrate an issue of disputed fact that makes summary judgment in favor of National Union improper.

Taken together, the unsealing of the Search Warrant Affidavit and National Union's refusal to reverse its coverage positions in the face of that unsealing constitute a significant change in the factual and legal conditions that prevailed at the time of the Award, and constitute an entirely new basis for Crowley's new action against National Union.  For that reason, National Union's motion must be denied.

**B.      *Res Judicata* Does Not Apply Because There was No "Clear-Cut" Former Adjudication on the Merits of the Issue Presented Here**

For the same reasons, National Union also fails to meet its burden to show that the Arbitration involved a "clear-cut former adjudication" on the merits of the issue presented here.  Again, all that was adjudicated in the Arbitration was whether the documents submitted up to the time of the Arbitration qualified as a Claim under the Policy.  This did not conclude – for all time – all issues under the Policy with respect to coverage for the DOJ Investigation, as demonstrated by the fact that  – *after* the Arbitration – National Union agreed to cover the defense expenses incurred after the DOJ prosecutors presented Mr. Farmer with a written plea agreement in February 2013.  (Doc. #1 at ¶ 24.)  This recognition of coverage is inconsistent with any argument that the Award fully and finally adjudicated all Policy rights with respect to the DOJ Investigation, regardless of any change in circumstances.  Because National Union cannot make

-14-

a "clear cut" showing that the claims at issue in this action are identical to those presented and adjudicated in the Arbitration, *res judicata* does not apply.  *See Lozman,* 713 F.3d at 1078 (reversing trial court's grant of motion to dismiss); *Hicks v. Hoagland*, 953 So.2d 695, 698 (Fla. 5th DCA 2007) (*res judicata* could not apply at summary judgment stage).

    **C.**    ***Res Judicata* Does Not Apply Because National Union Seeks an Inequitable Result**

    Regardless of whether National Union's motion is treated as a motion to dismiss or one for summary judgment, *res judicata* cannot not be applied here because it is an equitable principle "not to be invoked where it will inflict pernicious results," and caution must be taken in applying *res judicata* because courts are "more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation." *Universal Const. Co.*, 68 So. 2d at 369; *Aeacus Real Estate Ltd. P'ship v. 5th Ave. Real Estate Dev., Inc.*, 948 So. 2d 834, 835 (Fla. 4th DCA 2007).  For this reason, a court should decline to apply *res judicata* even if all elements of the doctrine have been met, if doing so would "defeat the ends of justice." *Id.*; *see also Chimerakis v. Sentry Ins. Mut. Co.*, 804 So. 2d 476, 477 (Fla. 3rd DCA 2001).  But that is precisely the result sought by National Union.  Crowley seeks only to have the Policy do what it was written by National Union to do in the first place: cover defense costs for a criminal investigation against a Crowley employee.  National Union, by contrast, seeks to avoid a duty it does not dispute it owes, based on a doctrine designed to achieve fairness.  This will not do.  National Union's motion is nothing less than an inequitable attempt at "heads I win, tails you lose." Having persuaded the Panel not to speculate about the contents of the Search Warrant Affidavit and to base its determination of whether there was a Claim against Mr. Farmer only on **other documents**, National Union now argues that the Panel's Award extends to the very document it told the Panel not to consider.  (Garrison Dec. at ¶ 9, Ex. F, 660:15-19.)  As

importantly, Crowley bears no fault for the unavailability of the Search Warrant Affidavit. Crowley provided the documents it could obtain to National Union, and promptly provided the Search Warrant Affidavit to National Union once it became available, in response to National Union's previous invitation to Crowley to "submit further information or documentation that [Crowley] feel[s] would be relevant to a determination as to coverage for this matter." (Doc. #1 at ¶ 20; Garrison Dec. at ¶ 6-7, 10-11, Exs. C, D, G, H.)  Ignoring its own arguments to the Panel and its own invitation to its insured to submit additional information for consideration, National Union seeks a rigid, formulaic application of *res judicata* to obtain for itself a manifestly inequitable outcome.  Florida law does not allow this result.[5]

## IV.   <u>**CROWLEY'S CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS**</u>

National Union's statute of limitations defense is factually and legally improper and should be rejected for the following reasons:

*First*, Crowley's Complaint is based on National Union's refusal to accept and recognize the Search Warrant Affidavit as establishing a Claim against Mr. Farmer.  The Search Warrant Affidavit was not available to be presented to National Union until 2015 and National Union did not decline to cover Mr. Farmer's defense costs based on the Search Warrant Affidavit until 2015.  (Doc. #1 at ¶¶ 26-29; *see also* Ficon Dec. at ¶ 5, Ex. B.)  The relevant breach for purposes of this Complaint occurred in 2015 and Crowley's Complaint, filed in 2016, was well within the five-year statute of limitations.  The Award recognized that at the time of the Arbitration, the document that triggered National Union's defense duties had "***not yet***" been presented to National Union.  (Doc. #16-1 at 9, emphasis added.)  Likewise, National Union recognized the narrowness of its coverage position when it informed Crowley in 2008 that "***based upon the***

---

[5] If the Court concludes that the Complaint fails to state sufficient facts to avoid dismissal, Crowley respectfully requests leave to amend to add additional facts, including those set forth herein.

*materials submitted to date*, National Union will accept this matter as a notice of circumstances" (Doc. #1 at ¶ 20, emphasis added) and again informed Crowley in 2010 that it remained "willing to reevaluate coverage based on any additional information" and invited Crowley to submit such additional information "*at any time*."  (Garrison Dec. at ¶ 11, Ex. H, emphasis added.)  Now, the Search Warrant Affidavit has been presented, and the statute of limitations for the breach of contract alleged in the Complaint could not have begun to run before that triggering event for coverage (the Search Warrant Affidavit) was presented to National Union and it denied coverage, all of which took place in 2015.

*Second*, National Union's argument ignores that when an insurer breaches its defense obligation, the time period for measuring a statute of limitations does not commence until the insured's "liabilities or rights have been finally and fully adjudicated" in the underlying matter.[6] *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1309–10 (Fla. 1st DCA 1992) (citation omitted); *see also Morales v. Zenith Ins. Co.*, 2010 WL 2293199, at *2 (M.D. Fla. June 8, 2010) (statute of limitations commences on "date when judgment was entered and the [underlying] litigation has come to an end").  This principle applies with special force here, because National Union had a continuing duty under the Policy to advance any covered Defense Costs no later than 90 days after its receipt of defense bills.  (Doc. #1 at ¶ 8.)  Florida courts view the duty to advance defense costs as equivalent to a duty to defend.  *Goldberg v. Nat'l Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1293 (S.D. Fla. 2015) (in case involving National Union D&O policy, holding "courts have 'viewed an insurer's duty to advance defense costs as an obligation

---

[6] National Union also is wrong that Florida's "discovery" rule somehow applies here.  This argument mischaracterizes Crowley's position.  Crowley does not assert that it just "discovered" that it has a claim against National Union but rather that the recent unsealing of the Search Warrant Affidavit finally has made that document and its contents available to present to National Union as a basis for coverage.  The cases on "discovery" cited by National Union (Mem. at 11-12) have no relevance here.

congruent to the insurer's duty to defend'" and "'there are no material differences between a duty to defend and a duty to advance Defense Expenses.'") (citation omitted); *MapleWood Partners, LP. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 601 (S.D. Fla. 2013) (same). Accordingly, National Union's duty to advance Mr. Farmer's defense costs was ongoing until Mr. Farmer's rights were "finally and fully adjudicated," which did not occur until his acquittal in 2015.  (Doc. #1 at ¶ 24.)[7]   Crowley's Complaint was filed in 2016, well within the five-year statute of limitations.

**Third**, Florida courts apply the "continuous breach" rule, providing that where an obligation is continuing in nature, a party's "ongoing nonperformance constitute[s] a continuing breach while the contract remain[s] in effect." *City of Quincy v. Womack*, 60 So. 3d 1076, 1078 (Fla. 1st DCA 2011); *see also Grove Isle Ass'n, Inc. v. Grove Isle Assocs. LLLP,* 137 So. 3d 1081, 1095 (Fla. 3rd DCA 2014) (reversing dismissal where contract required annual payment of fees and was continuing in nature).  National Union had a continuing obligation under the Policy to advance defense costs.  (Doc. #1 at ¶ 8.)  Crowley forwarded Mr. Farmer's defense costs to National Union for payment on a continuing basis through December 6, 2012.  (Garrison Dec. at ¶ 12, Ex. I.)  National Union's breach continued through at least its failure to pay invoices provided in December 2012 and Crowley's Complaint was filed within five years thereafter.

**Fourth**, even if National Union is correct that statute of limitations should be calculated from its May 27, 2008 correspondence, at minimum there is a fact question that cannot be decided on a motion to dismiss or a motion for summary judgment as to whether and for how

---

[7] Other provisions in the Policy also support Florida's approach to this timing issue.  The Policy contains a provision that would have allowed National Union to seek repayment of advanced defense costs if the facts had developed to show that  Mr. Farmer ultimately was not entitled to coverage (*e.g.*, if a final judgment triggered a Policy exclusion).  Given that National Union might have been able to clawback Mr. Farmer's defense costs at the conclusion of his trial in 2015, its coverage obligations could not have been finally determined until such time.

long the statute of limitations is statutorily or equitably tolled.  Florida statutorily tolls a statute

of limitations in the following two circumstances: (1) "[t]he pendency of any arbitral proceeding

pertaining to a dispute that is the subject of the action" (Fla. Stat. Ann. § 95.051(g)); and (2)

"[t]he payment of any part of the principal or interest of any obligation or liability founded on a

written instrument" (Fla. Stat. Ann. § 95.051(f)).  Crowley's Complaint alleges (and the

additional evidence submitted herewith shows) that the parties participated in an arbitration, and

that National Union paid in part under the Policy after Mr. Farmer received a plea offer in

February 2013, thus tolling the statute of limitations during these time periods.[8]

Florida also recognizes equitable tolling where a plaintiff has been "misled or lulled into

action" or "has in some extraordinary way been prevented from asserting his rights." *Machules*

*v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988).  Here, the unavailability of the Search

Warrant Affidavit based on it being sealed for over 7 years constitutes such an "extraordinary"

circumstance warranting the application of equitable tolling.  *See Starling v. R.J. Reynolds*

*Tobacco Co.*, 845 F. Supp. 2d 1215, 1236-40 (M.D. Fla. 2011) (statute of limitations tolled

during court-imposed stay of proceedings); *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061,

*6 (S.D. Fla. July 07, 2014) ("progression of rulings, appeals, remands, and further rulings

affecting a plaintiff's ability to sue an undisclosed … non-party" justified equitable tolling).

Moreover, National Union invited further consideration of its coverage position.  In 2008,

rather than deny coverage entirely and conclusively, National Union told Crowley that if it

"wish[ed] to submit further information or documentation … please feel free to forward such

information."  (Doc. #1 at ¶ 20.)  On June 9, 2010, National Union, through its counsel Peabody

and Arnold, again invited Crowley to submit additional documents, informing Crowley that

---

[8] National Union's final defense costs payment was not made to Mr. Farmer's counsel until October 24, 2015.
(Ficon Dec. at ¶ 8.)

"[w]e remain willing to reevaluate coverage ….[i]f you or the Insured have additional information you would like to provide, we continue to welcome you to do so *at any time*." (*See, e.g.,* Garrison Dec. at ¶ 11, Ex. H, emphasis added.)  These statements "lulled" Crowley into waiting until the Search Warrant Affidavit was unsealed to file any action against National Union, and toll the statute of limitations from at least the dates of these statements.

Finally, after the Search Warrant Affidavit was tendered in 2015 and National Union refused to accept that a Claim had been made and to cover the pre-February 2013 Farmer defense costs, the parties agreed to and did engage in several months of discussions in an attempt to resolve their differences, pursuant to a Confidentiality Agreement.  (*Id.* at ¶ 13.)  At minimum, based on the pleadings and materials submitted, an issue of fact exists as to whether National Union's representations and the parties' efforts to resolve their differences equitably tolls the statute of limitations, and National Union's motion should be denied for this reason as well.

Dated: November 7, 2016                              CROWLEY MARITIME CORPORATION


By:       /s/ John D. Shugrue__
                 One of Its Attorneys


Charles B. Lembcke                          *Admitted Pro Hac Vice:*
Florida Bar No. 140285                       John D. Shugrue
Email: cbl@cbllaw.com                        Thomas A. Marrinson
Law Offices of Charles B. Lembcke, P.A.      Emily E. Garrison
1300 Riverplace Blvd                         REED SMITH LLP
Suite 605                                    10 South Wacker Drive, 40th Floor
Jacksonville, FL 32207                       Chicago, IL  60606-7507
Telephone:  (904) 355-5467                   Telephone:  (312) 207-1000
Facsimile:  (904) 633-9328                   Facsimile:  (312) 207-6400

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document and all attachments thereto filed through the ECF system will be sent electronically to registered participants and paper copies will be sent to those indicated as non-registered participants on November 7, 2016.

<u>/s/ Emily E. Garrison</u>

**Attorney for Plaintiff**

**Doc. 20-1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| CROWLEY MARITIME CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:16-cv-01011-TJC-JBT |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF STEVEN FICON

I, Steven Ficon, declare as follows:

1.     My name is Steven Ficon. I reside in Ponte Vedra Beach, Florida and have personal knowledge regarding the matters asserted herein and, if called upon, could testify competently thereto.

2.     I submit this declaration in support of Crowley Maritime Corporation's ("Crowley") Memorandum of Law in Opposition to Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union") Motion to Dismiss in the above-captioned lawsuit.

3.     I am Vice President, Claims at Crowley.  I have continuously held senior Claims positions at Crowley since July 1990.  Among my other job duties and responsibilities, since May 2008 I have had responsibility for overseeing Crowley's efforts to pursue insurance coverage from National Union for the criminal investigation conducted by the United States Department of Justice, Antitrust Division relating to Thomas Farmer (the "DOJ Investigation").

4.      A true and correct copy of a letter I sent to Michele Graffeo of National Union on July 22, 2015 is attached hereto as Exhibit A.

5.      A true and correct copy of a letter I received from Michele Graffeo of National Union on August 3, 2015 is attached hereto as Exhibit B.

6.      The affidavit that was filed in connection with the search warrant that was executed on April 17, 2008 (the "Search Warrant Affidavit") was filed under seal and unavailable to Crowley until it was unsealed and introduced into evidence during the criminal trial of Mr. Farmer.  Following Mr. Farmer's acquittal on May 8, 2015, Mr. Farmer's counsel informed me that the Search Warrant Affidavit was unsealed during the trial and provided me a copy of the Search Warrant Affidavit.

7.      On November 10, 2015, after National Union agreed to sign a Confidentiality Agreement, I provided to National Union a copy of the Search Warrant Affidavit.

8.      Mr. Farmer received a written offer to enter into a plea agreement on February 18, 2013 and National Union subsequently agreed to advance Mr. Farmer's defense costs from February 18, 2013 forward.  National Union's last payment to Mr. Farmer's counsel pursuant to such agreement was made on October 24, 2015.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare the foregoing to be true and accurate to the best of my knowledge under the penalty of perjury.

Executed on November 7, 2016

Steven Ficon

# Doc. 20-2

# EXHIBIT A

## to

# Declaration of Steven Ficon



**CROWLEY**®
People Who Know®

July 22, 2015

Michele Graffeo
National Union Fire Insurance Company of Pittsburgh, PA
175 Water Street
New York, New York 10038

> **RE:**   *United States v. Thomas L. Farmer*, Claim No. 367-004291, Policy No. 061-36-48

Dear Ms. Graffeo:

I am writing with regard to recent developments in the above-referenced matter. On May 8, 2015, Tom Farmer was acquitted by a federal jury on charges brought against him by the United States Department of Justice in *United States v. Farmer*, No. 13-0162 (D.P.R.). Following Mr. Farmer's acquittal and dismissal of those charges, Crowley was provided with a copy of the FBI affidavit that was submitted prior to the issuance of the April 16, 2008 search warrant previously provided to National Union. This search warrant affidavit was submitted under seal and until Mr. Farmer's recent acquittal was unavailable to Crowley and National Union.

We have reviewed the search warrant affidavit, and it is clear from its contents that there was in fact a "Claim," as that term is defined in Policy No. 061-36-48 (the "Policy"), asserted with respect to Mr. Farmer as of the date of filing of the search warrant affidavit in April 2008. Because the search warrant affidavit makes clear there was a Claim against Mr. Farmer as of April 2008, Crowley should be reimbursed for all legal fees paid on behalf of Mr. Farmer – totaling $2,541,346.34 (net of the Policy deductible) – prior to National Union's acceptance of coverage in February 2013.

Crowley will be able to provide a copy of the search warrant affidavit to National Union when an appropriate confidentiality agreement is in place. The parties' existing confidentiality agreement is limited in scope to the parties' prior mediation and arbitration. Crowley suggests that rather than starting over with a new agreement, the parties execute an addendum to the existing agreement that covers the search warrant affidavit and our renewed discussions in connection with the search warrant affidavit. I have attached for your review a proposed addendum and a copy of the fully executed confidentiality agreement.

Please indicate National Union's acceptance of the confidentiality addendum by signing where indicated and returning at your earliest convenience.



crowley.com/social

9487 Regency Square Blvd.
Jacksonville, FL 32225
P: 904.727.2200

crowley.com

One last point, Crowley has received inquiries from two of the law firms representing Tom Farmer (Lankford & Reed, Mark Rosenblum, PA) asking when they can expect payment of outstanding invoices related to their trial and pre-trial work. Some of these invoices are over 90 days past due. Expert and trial witness fees, which National Union instructed be sent directly to National Union, are also outstanding. Your prompt payment of these charges would be appreciated.

Please contact me if you have any questions or would like to discuss this matter. Crowley continues to reserve all of its rights under the Policy and applicable law.  Thank you for your anticipated cooperation.

Very truly yours,

*Steve Ficon*

Steven  Ficon
VP, Claims
Crowley Maritime Corporation

Enc.

# Doc. 20-3

# EXHIBIT B

## to

# Declaration of Steven Ficon



AIG Claims, Inc.
32 Old Slip, 21st Floor
New York, NY 10005
www.aig.com

Michele Graffeo
Sr. Complex Claims Director
Directors & Officers
Financial Lines Claims

T  646 857 2169
F  866 878 7228
Michele.Graffeo@aig.com

Correspondence Address:
AIG Property Casualty
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Email new notices to
c-Claim@aig.com

Fax new notices to
866 227 1750

August 3, 2015

**Via Email at steve.ficon@crowley.com**

Mr. Steven Ficon
Vice President - Claims
Crowley Maritime Corporation
9487 Regency Square Blvd.
Jacksonville, FL 32225

Re:   **Insured:**        **Crowley Maritime Corporation ("Crowley")**
      **Matter:**         **DOJ/FBI Investigation**
      **Policy No.:**     **061-36-48**
      **Claim No.:**      **367-004291**

Dear Mr. Ficon:

As you know, AIG Claims, Inc. ("AIG") is the claims administrator handling Claims arising under Policy No. 061-36-48 (the "Policy") issued to Crowley Maritime Corporation ("Crowley") by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). We are writing to respond to your letter of July 22, 2015, in which you advise that Crowley has recently obtained a copy of an FBI Affidavit that was submitted to the court prior to the issuance of the April 16, 2008 search warrant previously provided to National Union. Based on this affidavit, you request that National Union reimburse Crowley for legal fees of $2,541,346.34 which it paid on behalf of Thomas Farmer prior to National Union's acknowledgement of potential coverage in or about February 2013.

National Union has carefully considered the issues raised in your letter. For the reasons stated below, however, we do not believe that National Union is obligated under the terms of the Policy to reimburse Crowley for the fees requested in your letter.

First, National Union and Crowley previously submitted to binding arbitration the question of whether National Union was obligated to reimburse Crowley for the same fees sought in your July 22, 2015 letter. The hearings took place in December 2012. In January 2013, a final award was rendered in favor of National Union, determining that National Union was not obligated to pay such fees. The January 2013 arbitration award has full *res judicata* effect and it precludes any further attempts by Crowley to recover such fees under the Policy.

In addition, an affidavit unsealed and submitted for the first time in 2015 is insufficient on the merits to establish coverage for fees that were incurred starting in 2008. National Union's determination of coverage in 2008 necessarily was based on the materials submitted at that time. Based on the materials submitted, National Union correctly denied coverage for the requested fees. At that time, the DOJ investigation was not a Claim against Mr. Farmer because neither Crowley nor Mr. Farmer was aware of any documents identifying Mr. Farmer as a person who might be charged with a crime and because no such documents were submitted to National Union.



Allowing subsequently revealed documents to retroactively convert a non-Claim into a Claim could potentially wreak havoc for insureds. For example, in the case of a search warrant served before the policy period that was not reported because it did not identify any individuals as persons who could be charged, the rule that you appear to advocate would allow an insurer to argue that the investigation was a Claim all along, *even though nobody knew it*, in which case the insurer could deny coverage on the grounds that the Claim was first made before the start of the policy period. We know of no legal support for such a result.

Basic considerations of fairness dictate that written notice to the Insured is essential to the existence of a Claim. Section 7 of the Policy, entitled Notice/Claim Reporting Provisions, further provides as follows:

> A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.

Therefore, there could have been no Claim against Mr. Farmer until such time as Mr. Farmer had written notice of the facts constituting the Claim. Based on our understanding of the evidence, this first occurred at or about the time of his indictment in 2013. Even assuming for present purposes that the affidavit says what you say it says, Mr. Farmer had no knowledge that such was the case until after his acquittal.

Please note that nothing herein is a waiver of any terms, conditions, exclusions, or other provisions of the Policy or any other policies of insurance issued by National Union or any of its affiliated companies. National Union expressly reserves all of its rights under the Policy, as well as at law and in equity, including the right to assert additional defenses to coverage as warranted by the circumstances. With respect to any outstanding bills from Mr. Farmer's defense counsel, those bills are under review and we expect any outstanding issues to be resolved shortly.

If you have any questions or concerns regarding the contents of this letter, please feel free to contact me. If there is any additional information or argument that you believe National Union should consider in its coverage analysis, please let me know. National Union will consider any such additional information or argument and respond accordingly.

Sincerely,



Michele Graffeo

# Doc. 20-4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| CROWLEY MARITIME CORPORATION,     ) <br><br> Plaintiff,     ) <br><br> v.     ) <br><br> NATIONAL UNION FIRE INSURANCE <br> COMPANY OF PITTSBURGH, PA.,     ) <br><br> Defendant.     ) | Case No. 3:16-cv-01011-TJC-JBT <br><br> **DEMAND FOR JURY TRIAL** |

## DECLARATION OF EMILY E. GARRISON

I, Emily E. Garrison, declare as follows:

1.      I have personal knowledge of the facts stated in this declaration.  I am over 18 years of age and could testify competently to the matters set forth herein if called upon to do so.

2.      I am an attorney at law duly licensed to practice before all courts in the State of Illinois, as well as the United States District Court for the Northern District of Illinois.  I am an attorney with the law firm Reed Smith LLP, attorneys of record for Crowley in this lawsuit.

3.      I submit this declaration in support of Crowley Maritime Corporation's ("Crowley") Memorandum of Law in Opposition to Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union") Motion to Dismiss in the above-captioned lawsuit.

4.      Attached hereto as Exhibit A is an Order dated April 24, 2015 denying Thomas Farmer's motion to suppress with respect to the Search Warrant Affidavit, which I obtained from Public Access to Court Electronic Records ("PACER") and which PACER identified as being a

true and correct copy of the records from the case captioned *United States of America v. Thomas Farmer,* Case No. 3:13-cr-00163 (District of Puerto Rico).

5.      Attached hereto as Exhibit B are excerpts from the April 24, 2015 transcript in the trial of Thomas Farmer, which transcript I obtained from PACER and which PACER identified as being a true and correct copy of a transcript from the case captioned *United States of America v. Thomas Farmer,* Case No. 3:13-cr-00163 (District of Puerto Rico).

6.      Attached hereto as Exhibit C is a true and correct of an April 25, 2008 Letter to AIG Domestic Claims, Inc., attaching an April 23, 2008 e-mail from Steve Ficon of Crowley that was marked as Joint Exhibit 9 in the parties' December 2012 arbitration (the "Arbitration").

7.      Attached hereto as Exhibit D is a true and correct copy of a May 27, 2008 letter from Maureen Conboy with AIG to Steve Ficon that was marked as Joint Exhibit 13 in the Arbitration.

8.      Attached hereto as Exhibit E is a true and correct copy of National Union's Motion for Summary Disposition submitted in the Arbitration.

9.      Attached hereto as Exhibit F are true and correct copies of excerpts from the transcript of the December 11, 2012 proceedings in the Arbitration.

10.      Attached hereto as Exhibit G is a true and correct copy of a February 3, 2009 letter from Maureen Conboy to Steve Ficon that was marked as Joint Exhibit 16 in the Arbitration.

11.      Attached hereto as Exhibit H is a true and correct copy of a June 9, 2010 letter from E. Joseph O'Neil, counsel for National Union to Catherine J. Dolan of Crowley's broker, Aon, that was marked as Joint Exhibit 18 in the Arbitration.

12.     Attached hereto as Exhibit I is a true and correct copy of a December 6, 2012 email that I sent to Michael Duffy, counsel for National Union, enclosing additional invoices incurred in connection with the Department of Justice's investigation of Thomas Farmer.

13.     After the Search Warrant Affidavit was tendered to National Union in 2015, the parties agreed to and did engage in several months of discussions for the purpose of attempting to resolve their differences, pursuant to a Confidentiality Agreement.


I declare the foregoing to be true and accurate to the best of my knowledge under the penalty of perjury.


Executed on November 7, 2016

_____
Emily E. Garrison

# Doc. 20-5

# EXHIBIT A

## to

# Declaration of Emily E. Garrison

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MINUTES OF PROCEEDINGS**                    DATE: April 24, 2015

**HONORABLE DANIEL R. DOMINGUEZ**          **CASE: 3:13-CR-0162 (DRD)**

COURTROOM DEPUTY: Ana M. Romero

COURT REPORTER: Donna Prather

---

|  | Attorneys: |
|---|---|
| UNITED STATES OF AMERICA | TA Craig Y. Lee |
|  | TA Jon B. Jacobs |
|  | TA Diane Kane |
| VS |  |
| 1- THOMAS FARMER | Joseph C. Laws |
|  | Terrance Reed |
|  | Melanie Matos |

---

### CASE CALLED FOR SUPPRESSION HEARING.

Defendant present in court O/B.

Outside of the presence of the jury, the Court heard the testimony of FBI Special Agent Byron Thompson on behalf of the government.

After having heard the testimony and the parties, the motion to suppress filed at docket entry 135 is denied.

s/ Ana M. Romero
Courtroom Deputy Clerk

Government's Exhibits: A, B.

# Doc. 20-6

# EXHIBIT B

## to

# Declaration of Emily E. Garrison

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                    FOR THE DISTRICT OF PUERTO RICO

6

THE UNITED STATES OF AMERICA, )
7                                )
                    Plaintiff,   )    Case No. 13-162
8                                )
vs.                              )
9                                )    JURY TRIAL - DAY 9
THOMAS FARMER,                   )
10                               )
                    Defendant.   )
11      ─────────────────────────────────────────────────

12

13                    TRANSCRIPT OF JURY TRIAL
                            HELD BEFORE
14      THE HONORABLE JUDGE DANIEL R. DOMINGUEZ
                       FRIDAY, APRIL 24, 2015

15      ─────────────────────────────────────────────────

16

17

18

19                    A P P E A R A N C E S

20      For the United States:

21              Craig Y. Lee, Trial Attorney
                Jon B. Jacobs, Trial Attorney
22              Diana Kane, Trial Attorney
                May Lee Heye, Trial Attorney.
23
        For the Defendant:
24
                Terrance Gilroy Reed, Esq.
25              Joseph C. Laws, Esq.
                Melanie Matos, Esq.

1                        I N D E X

2    WITNESSES                                              PAGE

3    ON BEHALF OF THE GOVERNMENT:

4    BYRON THOMPSON

5           Direct examination by Mr. Lee              4

6           Cross-examination by Mr. Reed              22

7           Redirect examination by Mr. Lee            38

8

9    EDWARD PRETRE

10          Direct examination by Mr. Lee              65

11          Cross-examination by Mr. Laws              93

12   JENNIFER WALTON

13          Direct examination by Ms. Kane             111

14          Cross-examination by Mr. Laws              145

15          Redirect examination by Ms. Kane           150

16

17

18

19

20

21

22

23

24

25

```
 1              (WHEREUPON, commencing at 8:01 a.m., the following

 2    proceedings were had, to wit:)

 3              DEPUTY COURTROOM CLERK:   United States of America

 4    versus Tom Farmer, criminal Case No. 13-162.   Jury trial.

 5              On behalf of the Government, AUSA -- Trial Attorney

 6    Craig Lee and Jon Jacobs present.

 7              MR. LEE:   Morning, Your Honor.

 8              MR. JACOBS:   Morning.

 9              THE COURT:   Good morning.

10              I opened up the courtroom at 8:01; that's what the

11    transcript reflects.   I've waited a little longer, but I'm

12    going to wait.   Traffic in Puerto Rico is sometimes bad.   All

13    right.

14              Joe, are we ready?

15              MR. LAWS:   We're still missing -- now we're ready.

16    Terry is not here yet.   He was here.

17              THE COURT:   Oh, Mr. Reed.

18              MS. MATOS:   Mr. Reed.

19              THE COURT:   Yes.

20              MR. LAWS:   Let me get him.

21              THE COURT:   Good morning.

22              MR. REED:   Morning, Your Honor.

23              THE COURT:   At 8:01, I opened the courtroom and this

24    is what I said:   "Good morning, United States of America

25    versus Tom Farmer.   On behalf of the Government, Trial
```

```
 1   Attorney Craig Lee and Jon Jacobs."
 2          "Good morning, Your Honor," and they presented
 3   themselves.
 4          "Good morning.  I opened the courtroom at 8:01;
 5   that's what the transcript reflects.  I waited, but I'm going
 6   to wait a little longer.  Traffic in Puerto Rico is sometimes
 7   bad."
 8          All right.  Then Mr. Joe Laws came in.  All right.
 9   So we're ready to go.
10          MR. LEE:  Thank you, Your Honor.
11          THE COURT:  Okay.  Please be seated.
12          MR. LEE:  The United States calls to the stand
13   Special Agent Byron Thompson.
14          THE COURT:  Okay.
15                       BYRON THOMPSON,
16   Called as a witness herein by the Government, having been
17   first duly sworn, was examined and testified as follows:
18
19          THE COURT:  You may proceed.
20                    DIRECT EXAMINATION
21   BY MR. LEE:
22   Q.   Good morning.
23          Agent Thompson, can you please state your full name
24   and spell your last name for the record.
25   A.   It's Byron Thompson; T-h-o-m-p-s-o-n.
```

1    Q.   Agent Thompson, how are you employed?

2    A.   I'm a special agent with the FBI in Columbia, South

3    Carolina.

4    Q.   How long have you been a special agent with the FBI?

5    A.   July will be 20 years.

6    Q.   As a special agent with the FBI, have you received any

7    training?

8    A.   Yes.

9    Q.   What types of training have you received?

10   A.   The basic training for special agents at Quantico,

11   Virginia at the beginning of my career.  And since that time,

12   numerous training courses in various fields from computer

13   forensics to interviewing, and so forth.

14   Q.   Have you received any training with respect to executing

15   search warrants?

16   A.   Yes.

17   Q.   What type of training?

18   A.   Every special agent is trained in executing search

19   warrants during their time in Quantico, and since that time

20   I've worked on too many searches to count.

21   Q.   That actually led to my next question.

22        Prior to April 17th, 2008, how many search warrants

23   were you involved in?

24   A.   I couldn't tell you.  It's -- it was probably 100 or

25   more.

1   Q.   In April of 2008, were you the lead case agent for an

2   investigation of antitrust violations in the Puerto Rico

3   shipping market?

4   A.   Yes.

5   Q.   In connection with that investigation, did you

6   participate and obtain search warrants?

7   A.   Yes.

8   Q.   Was one of those search warrants for Crowley Liner

9   Services?

10  A.   It was.

11  Q.   Was the office located in Jacksonville, Florida?

12  A.   Yes.

13  Q.   What did you do in connection with obtaining that

14  warrant?

15  A.   I wrote the affidavit to obtain the warrant, and then

16  also met with the U.S. magistrate judge to have the warrant

17  signed.

18            MR. LEE:  Your Honor, may I approach?

19            THE COURT:  Yes.

20  BY MR. LEE:

21  Q.   I'm showing you what's been marked as Government's

22  Exhibit A.

23            Do you recognize Government's Exhibit A?

24  A.   Yes.

25  Q.   What is Government's Exhibit A?

1    A.    This must be the search warrant for Crowley Liner

2    Services.

3    Q.    Does Government Exhibit A include the affidavit?

4    A.    Yes.

5    Q.    And is that your signature on the last page of the

6    affidavit?

7    A.    Yes, it is.

8    Q.    And why is your signature on the last page of that

9    affidavit?

10   A.    I was attesting to the content of the affidavit and what

11   I had put in it.

12          MR. LEE:   Your Honor, at this time we'd like to move

13   into evidence Government Exhibit A, the application affidavit

14   for the search warrant of Crowley Liner Services.

15          THE COURT:   There's no objection; right?

16          MR. REED:   No.

17          THE COURT:   All right.   Admitted.

18          MR. LEE:   May we publish?

19          THE COURT:   You may.   Better for all of us.

20          Go ahead.

21   BY MR. LEE:

22   Q.    While we publish, Agent Thompson, which magistrate signed

23   the warrant?

24   A.    Judge James R. Klindt.

25   Q.    Do you remember getting this warrant signed?

```
 1    A.    Yes, I do.

 2    Q.    What, if anything, do you remember about Magistrate

 3    Klindt?

 4    A.    That I had previously worked with him as Assistant United

 5    States Attorney in the middle district of Florida, and he had

 6    recently become a U.S. magistrate.  And during our meeting he

 7    told me that this was his first search warrant.

 8    Q.    Did the magistrate review the warrant and the affidavit

 9    prior to signing?

10    A.    Yes.

11    Q.    How do you know that?

12    A.    We were called into his office and he retired to review

13    the warrant and had us wait on him until he came back out.

14    Q.    Did he make any changes to the affidavit?

15    A.    Yes.

16    Q.    What kind of changes did he make?

17    A.    Mostly grammatical changes and suggestions to the

18    warrant.

19    Q.    Can you turn to page 3 of the affidavit.

20    A.    Yes, I have it.

21    Q.    Paragraph 10.

22    A.    I see that, thanks.

23    Q.    There are some handwritten changes there.

24    A.    Correct.

25    Q.    Can you tell us what those are?
```

1   A.    Those were his suggestions to me to make those changes to

2   make the tense agree, present tense and past tense.  He didn't

3   like seeing that.

4   Q.    Do you know what his occupation was prior to becoming an

5   AUSA?

6   A.    He was an English teacher.

7   Q.    How did you know that?

8   A.    From working with him over the years, I learned that he

9   had been an English teacher.

10  Q.    At any point prior to signing the affidavit and signing

11  the warrant, did Magistrate Klindt question the probable cause

12  for this warrant?

13  A.    Not at all.

14  Q.    Let me show you what's being marked as Government's

15  Exhibit B.

16          MR. LEE:  Your Honor, may I approach?

17          THE COURT:  Yes.

18  BY MR. LEE:

19  Q.    Agent Thompson, can you spell Magistrate Klindt's last

20  name for the record?

21  A.    K-l-i-n-d-t.

22  Q.    Is Government Exhibit B a copy of the search warrant with

23  the attachments?

24  A.    Yes, it is.

25          MR. LEE:  Your Honor, we'd like to move to admit

```
 1    Government Exhibit B into evidence.

 2             MR. REED:  No objection.

 3             THE COURT:  All right.  Any objection thereto?

 4             MS. MATOS:  No objection.

 5             THE COURT:  All right.  Thank you.

 6             MR. LEE:  May we publish?

 7             THE COURT:  Yes.

 8    BY MR. LEE:

 9    Q.    Is there an Attachment A to Government Exhibit B?

10    A.    Yes.

11    Q.    Can you please turn to Attachment A, which is the third

12    page of this document.

13    A.    I have it.  Thank you.

14    Q.    What is Attachment A?

15    A.    Attachment A was a description of the premises to be

16    searched.

17    Q.    What is your understanding of what type of information is

18    contained in Attachment A?

19    A.    We always complete an Attachment A to give enough

20    specific information as to where we're going to execute the

21    search warrant.

22    Q.    Can you turn to the second page of Attachment A.

23    A.    Yes.

24    Q.    Do you see the paragraph that starts, "In order to

25    minimize"?
```

**Doc. 20-13**

# EXHIBIT I

## to

# Declaration of Emily E. Garrison

## Garrison, Emily E.

**From:**          Garrison, Emily E.
**Sent:**          Thursday, December 06, 2012 11:59 AM
**To:**            'Michael P. Duffy'
**Cc:**            Shugrue, John D.; 'cmtrippe@mppkj.com'
**Subject:**       Crowley v. NU
**Attachments:**   Exhibit 49.pdf; Supplemental Invoice Production 2012-12-6.pdf


Mike-

On behalf of Crowley, attached please find a supplemental invoice production, and revised spreadsheet of defense costs payments (Exhibit 49).

Regards,


**Emily E. Garrison**
312.207.3917
egarrison@reedsmith.com

**Reed Smith** LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
Main: 312.207.1000
Fax: 312.207.6400

**Doc. 25**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CROWLEY MARITIME CORPORATION,

Plaintiff

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Defendant

C.A. NO. 3:16-cv-1011-J-32JBT

## REPLY MEMORANDUM OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. IN SUPPORT OF ITS MOTION TO DISMISS

The defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), respectfully submits this reply memorandum in support of its motion to dismiss all claims against it in this action pursuant to Fed.R.Civ.P.12(b)(6). Notwithstanding the arguments asserted by the plaintiff in its opposition, the Complaint in this action fails to state a claim upon which relief can be granted. As set forth herein, all claims by the plaintiff, Crowley Maritime Corporation ("Crowley"), are barred as a matter of law by the doctrine of *res judicata* and by the applicable statute of limitations.

### 1. THERE IS NO NEED TO CONVERT THIS MOTION TO A MOTION FOR SUMMARY JUDGMENT.

As an initial matter, the Court in its Order of November 16, 2016 requested that National Union address whether its motion to dismiss should be converted into a motion for summary judgment. For the reasons stated in this memorandum, National Union does not believe that the motion should be so converted.

Based on the authorities cited in National Union's initial memorandum of law, the Court can consider the January 13, 2013 Arbitration Award without converting this motion into a motion for summary judgment. See, *Jackson v. BellSouth Telecommunications, Inc.,* 181 F.Supp.2d 1345, 1353-54 (S.D.Fla. 2001) (court may consider documents central to plaintiff's claim and referred to in complaint without converting motion to dismiss to motion for summary judgment). The parties' prior arbitration and the resulting award are described in detail in the plaintiff's Complaint at Paragraphs 20 through 23. In Paragraph 23 of the Complaint, the plaintiff characterizes what it says the panel decided. The prior arbitration and the Arbitration Award are central to Crowley's claim that this action is timely filed and not barred by *res judicata* or by the statute of limitations. In these circumstances, where it was Crowley that injected the award into the pleadings, Crowley cannot object to consideration of the actual document. Significantly, Crowley does not raise any authenticity objection to the Arbitration Award as relied upon by National Union.

On the face of the pleadings, combined with the undisputed terms of the Arbitration Award, National Union is entitled to prevail as a matter of law. Because the issue is whether Crowley fails to state a viable claim based on the pleadings, the Court should ignore extraneous documents submitted with the opposition. *Leedom Management Group, Inc. v. Perlmutter*, 2012 WL 503904 at *2 (M.D.Fla. 2012). In addition, none of the additional materials submitted by Crowley would make any difference, even if they were considered.

## 2. THE PLAINTIFF'S CLAIMS IN THIS ACTION ARE BARRED AS A MATTER OF LAW BY THE DOCTRINE OF RES JUDICATA.

Crowley's opposition does not dispute the fundamental law upon which National Union's motion is based, nor does it dispute that a valid arbitration award is afforded the same *res*

*judicata* effect as a judgment entered by a court.  Under Florida law, a matter is *res judicata* if

the following conditions are met:

> (1) identity of the thing sued for; (2) identity of the cause of action;
> (3) identity of the parties and (4) identity in the person for or
> against whom the claim is made.

*AMEC Civil, LLC v. PTG Construction Services Company*, 106 So.3d 455, 456 (Fla. 1st DCA

2013).  Crowley does not dispute that the first, third and fourth identities required in order to

establish a *res judicata* defense are present in this case.  Rather, it asserts that, merely because it

has now found a new piece of evidence, it is not asserting the same cause of action that was the

subject of the prior arbitration.  Crowley's argument is without merit.

Under Florida law, "[c]laims are part of the same 'cause of action' when they 'arise out

of the same transaction or series of transactions.'"  *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d

1265, 1269-1270 (11th Cir. 2002); *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.

2001).  Because this action and the prior arbitration both involve Crowley's attempt to recover

the same legal fees under the same policy, there can be no question about the fact that they arise

out of the same transaction or series of transactions.  The Arbitration Award is *res judicata* in

this case because "the facts or evidence necessary to maintain the suit are the same in both

actions."  *Tyson v. Viacom, Inc.*, 890 So.2d 1205, 1209 (Fla. 4th DCA 2005).  In order the

prevail in the arbitration, Crowley had to prove that a Claim was made against Mr. Farmer in

April 2008 and timely reported to National Union.  That is *exactly* what it would have to prove in

order to prevail in this action.  The "facts or evidence necessary to maintain the suit" in this

action are exactly the same as they were in the arbitration.  Crowley is simply trying to re-litigate

the same cause of action based on different evidence.

Crowley argues in its opposition to this motion that this case asserts a different cause of

action because it now has found a new piece of evidence and the arbitration only involved the

3

sufficiency of the evidence presented at that time.  Of course, in *every* case in which there is an issue of fact the precise question decided by the trier of fact is whether the evidence offered by the plaintiff is sufficient to meet its burden of proof.  According to Crowley, this apparently means that a defense verdict can never give rise to a *res judicata* defense.  According to Crowley, every time the plaintiff finds a new piece of evidence this makes it an entirely new cause of action.  There is no legal support for such an argument.  The fact that the arbitration panel properly decided the case based on the evidence presented is irrelevant to the question of whether this case and the prior arbitration involve the same cause of action.

As set forth in National Union's original memorandum of law, a party can avoid *the res judicata* effect of prior litigation only where the second action is based on new facts which did not exist at the time of the first action.  *Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc.*, 210 S.2d 750 (Fla. 4th DCA 1968).  Crowley's opposition never really deals with the fundamental distinction between new facts which did not exist at the time of the first case and the mere, belated discovery of *old* facts.  The only "new fact" relied upon by Crowley is the "fact" that it was finally able to obtain a copy of an *old* affidavit, purportedly signed in April 2008.  This is insufficient as a matter of law, because *res judicata* is a bar to "all legal theories and claims arising out of the same operative nucleus of fact," *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356-1357 (11th Cir. 1998), "even though the plaintiff is prepared in the second action . . . [t]o present evidence or grounds or theories of the case not presented in the first action."  *Restatement of the Law of Judgments, Second*, Section 25. Finally, Crowley argues that, even if all of the elements of *res judicata* are present, application of the law in this case would be inequitable.  Crowley's argument on this point is without merit.  Other than asserting its self-interested desire to recover, Crowley never explains what would be so inequitable about

4

the result which would otherwise follow from application of clear Florida law on *res judicata*. It is worth noting here that, from January 2006 until in or about April 2008, Crowley admittedly engaged in a criminal conspiracy to fix prices charged for commercial freight shipping between Florida and Puerto Rico. Crowley only stopped when it got caught. While Crowley asserts in its opposition that its criminal conduct is irrelevant, it is very relevant when Crowley relies on purported pleas of fairness and equity.

There also is nothing equitable about serial litigation of the same cause of action. Crowley chose to file the arbitration in 2012 without the affidavit and it lost. It does not get a second bite at the apple. National Union has done nothing wrong here. The arbitration panel clearly determined in 2013 that National Union's initial denial of coverage was entirely correct. If Crowley is allowed to proceed with this action, it in effect will be seeking to create retroactive coverage for legal fees which were not covered at the time. There would be nothing remotely fair or equitable about forcing National Union, eight years after the fact, to retroactively cover fees that were not covered at the time and which National Union therefore had no opportunity to review or control as they were being incurred.

### 3.   THE PLAINTIFF'S CLAIMS IN THIS ACTION ARE BARRED AS A MATTER OF LAW BY THE STATUTE OF LIMITATIONS.

There is no dispute about the fact that a cause of action for breach of contract is subject to a five year statute of limitations. There also is no dispute about the fact that there is no discovery rule for breach contract actions in Florida. A cause of action accrues at the time of breach *even if the plaintiff, through no fault of its own, does not discover the breach until later*. Based on the undisputed law cited in National Union's initial memorandum, Crowley's action is untimely and should be dismissed. National Union denied coverage for the legal fees in dispute in May 2008, almost eight years before this action was filed.

5

In its opposition, Crowley advances several arguments in an attempt to avoid the effect of the statute of limitations.  First, Crowley argues that its cause of action only accrued in 2015, when it finally obtained the April 16, 2008 affidavit and submitted it to National Union under the Policy.  Crowley's argument is wrong because it is contrary to established Florida law indicating that the plaintiff's discovery of the breach is irrelevant to the question of when the cause of action accrues.  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (cause of action for breach of contract accrues "regardless of whether the plaintiff knew that it had a claim.")  Accordingly, Crowley's late discovery of the affidavit does not control when the statute of limitations began to run.

In addition, to the extent Crowley is now arguing that a Claim was made against Mr. Farmer on April 16, 2008 but not reported to National Union until 2015, Crowley should just lose for a different reason.  In order to recover under the Policy, Crowley must show two things: (i) that a Claim was made against an Insured within the six year period beginning November 1, 2007 and (ii) that the Claim was reported to National Union within the same six year period.  As alleged by Crowley in the Complaint which it filed in this action,

> Pursuant to Endorsement No. 14 of the Policy, the "Run-off Endorsement," the Policy provides coverage for Claims made against any Insured *and reported to National Union during the period from November 1, 2007 to November 1, 2013*.

*Complaint*, ¶6 and Ex. A (emphasis added).  Even accepting Crowley's position at face value,[1] Crowley's claim still fails as a matter of law because, by the time the affidavit was submitted to

---

[1] Although the issue is not raised by this motion, the Claim against Mr. Farmer was first made in or about March 2013, when he was offered a plea deal and then indicted.  National Union acknowledged the existence of a Claim at that time and paid Defense Costs incurred thereafter.  Crowley's argument that a Claim could have been made against Mr. Farmer on April 16, 2008 *even though no one knew it until 2015*, is plainly wrong.  The idea that a Claim can be deemed to be "made" against an Insured based on a secret document that the Insured never saw is preposterous and would place on the Insured the impossible burden of reporting things of which he is not aware.  Further, coverage under the Policy is only for Defense Costs incurred with the prior written consent of National Union.  *Complaint*, Ex. A, Section 8 at p. 10 ("only those . . . Defense Costs which have been consented to by the

6

National Union, the six year Discovery Period allowed for reporting Claims under the Policy had long since expired.  The last date on which a Claim could have been timely reported to National Union under the Policy was November 1, 2013.  Therefore, Crowley cannot avoid the statute of limitations merely by arguing that an alleged 2008 Claim was first reported to National Union in 2015.

Next, Crowley cites case law holding that a cause of action for breach of an insurer's duty to defend accrues when the underlying case is over.  On that basis, it argues that its cause of action did not accrue until the termination of criminal case against Mr. Farmer.  However, this argument has multiple defects.  First, this case is not about costs incurred in the defense of the criminal case.  Crowley admits that, when Mr. Farmer was given a plea offer and then indicted, National Union acknowledged the existence of a Claim at that time and paid for the cost of Mr. Farmer's ongoing defense in the criminal case.   Because this case is not about the cost of defending the criminal case, there is no reason why the pendency of the criminal action should have any effect on when Crowley's purported cause of action for pre-indictment legal fees accrued.

Further, the case law on which Crowley relies is inapposite. The statute is tolled only while the insurer is in breach of a duty to defend, and the National Union Policy does not provide a duty to defend.[2]  The Policy provides at Section 8 that "[t]he Insurer does not, however, under this policy, assume any duty to defend." *Complaint*, Ex. A at p. 10.  In addition, the Arbitration Award of January 2013 determined conclusively that National Union was not at that time in

---

Insurer shall be recoverable as Loss under the terms of this policy.")  There is no argument that National ever consented to Defense Costs incurred prior to March 2013.

[2] Crowley argues that a duty to advance Defense Costs and a duty to defend are the same thing.  However, the cases cited by Crowley on this point do not state that there are no differences between a duty to defend and a duty to advance Defense Costs incurred by the Insured.  Rather, they say only that the duties are "congruent," in the sense that the same allegations which trigger a duty to defend would also implicate a duty to advance. *Goldberg v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.Supp.3d 1283, 1293 (S.D.Fla. 2015).

breach of any duty either to defend or to advance Defense Costs, the same Defense Costs that Crowley now seeks in this action.  Therefore, the rationale of the cases on which Crowley relies is inapplicable. This case is not about an insurer's ongoing breach of any obligations owed to its insured.

In addition, the argument that Crowley's purported cause of action against National Union did not even accrue until the criminal case was over is inconsistent with the fact that Crowley initiated an arbitration proceeding against National Union in 2012 seeking to recover the same legal fees.  Crowley cannot have it both ways.  It cannot now maintain that it had no cause of action against National Union until Mr. Farmer was acquitted, when it is undisputed that it asserted a cause of action against National Union by filing the arbitration demand in 2012.  Crowley's present argument would mean that its own arbitration demand should have been dismissed as premature.  Judicial estoppel precludes a party from taking such inconsistent legal positions in successive judicial or quasi-judicial proceedings. *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1066 (Fla. 2001).

Next, Crowley cites to cases applying the so-called "continuous breach" rule.  Crowley argues that "National Union had a continuing obligation under the Policy to advance defense costs" and that "National Union's breach continued through at least its failure to pay invoices provided in December 2012 . . ." *Crowley Opposition Memorandum*, at p. 18.  The problem with this argument is that, as alleged in Paragraph 23 of the *Complaint*, the arbitration panel decided in January 2013 that National Union did not have a continuing duty to do anything with respect to defense costs.  Florida law on the "continuous breach" rule is completely irrelevant absent evidence that there was a continuous breach of duty to National Union.

8

Finally, Crowley argues that the applicable statute of limitations should be subject to equitable tolling.[3]  This argument also fails because, under Florida law, "equitable tolling is unavailable outside of the administrative context."  *Baez v. Root*, 2014 WL 1414433 at *3 (S.D.Fla. Apr. 11, 2014); *Socas v. Northwestern Mut. Life Ins. Co.*, 829 F.Supp.2d 1262, 1275 (S.D.Fla. 2001); *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So.2d 1094, 1098 (Fla. 2d DCA 2004).   Even if equitable tolling were allowed, moreover, Crowley's argument that the statute should be tolled until it discovered the affidavit is squarely in conflict with the established rule that there is no discovery rule applicable to breach of contract actions in Florida.  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).  In arguing for equitable tolling of the statute of limitations based on late discovery of the affidavit, Crowley really is asking this Court to imply a discovery rule which the Florida courts repeatedly have stated does not exist.

Crowley's argument that it was "lulled" into a false sense of security also is without merit.  In the first place, the argument is completely inconsistent with Crowley's claim that the affidavit on which it relies was not available until 2015.  Crowley alleges in the Complaint, and it continues to argue in its opposition, that it could not have obtained the affidavit until the conclusion of Mr. Farmer's criminal case in 2015.  Therefore, Crowley cannot plausibly suggest that its failure to submit the affidavit to National Union prior to 2015 was the result of any action by National Union.  By 2015, it was already too late.

In addition, none of the correspondence referenced by Crowley even remotely constitutes a promise to waive either the statute of limitations.   The mere continuation of discussions regarding potential settlement after 2015 does not toll the running of the statute of limitations.

---

[3] Crowley's claim of statutory tolling based on the pendency of the arbitration is equally wrong.  Statutory tolling under Florida Statutes, Sec. 95.051 (g) is only available where there was a prior arbitration involving the same dispute which is the subject of the second action.  As set forth above, Crowley can only avoid *res judicata* by arguing that the arbitration did not involve the same cause of action, in which case it does not get the benefit of tolling under the statute.

9

*Schultz v. Amica Mut. Ins. Co.*, 778 So.2d 402 (Fla. 4th DCA 2001). A party can be equitably estopped from asserting the statute of limitations only where there is proof of fraud, misrepresentation or other affirmative deception, *Rinker Materials Corp. v. Palmer First Nat'l. Bank and Trust Co.*, 361 So.2d 156 (Fla. 1978), and Crowley makes no such argument here.

## <u>CONCLUSION</u>

For the reasons herein and in its original memorandum of law, National Union again submits that its motion to dismiss should be allowed and that all claims against it in this action should be dismissed with prejudice.

Dated: December 9, 2016

Respectfully submitted,

LYDECKER | DIAZ
Attorneys for Defendants
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190

By: /s/ Stephen H. Johnson
    Stephen Hunter Johnson, Esq.
    Florida Bar Number: 12362
    shj@lydeckerdiaz.com

10

#

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on December 9, 2016. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF and via U.S. Mail on all counsel or parties of record on the Service List below.

/s/  Stephen Hunter Johnson

Stephen Hunter Johnson, Esq.

## SERVICE LIST

Charles B. Lembcke
Law Office of Charles B. Lembcke, PA
Suite 605
1300 Riverplace Blvd
Jacksonville, FL 32207
904/355-5467
Fax: 904/633-9328
Email: cbl@cbllaw.com

Emily E. Garrison
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-3917
Fax: 312-207-6400
Email: egarrison@reedsmith.com

John D. Shugrue
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
3l2-207 -2459
Fax: 312-207-6400
Email: jshugme@reedsmith.com

Thomas A. Marrinson
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
312-207-1000
Fax: 312-207-6400

11

# Doc. 35

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CROWLEY MARITIME CORPORATION,

Plaintiff

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Defendant

C.A. NO.  3:16-cv-1011-TJC-JBT

**ANSWER OF DEFENDANT NATIONAL UNION
FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

The defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") hereby responds to the Complaint of plaintiff, Crowley Maritime Corporation ("Crowley"), as follows:

**<u>NATURE OF CASE</u>**

1.      This paragraph purports to describe the nature of this lawsuit and, therefore, no response is required.  To the extent that this paragraph of the complaint contains allegations of fact, such allegations are denied.

**<u>THE PARTIES</u>**

2.      National Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

3.   National Union admits the allegations of this paragraph.

**JURISDICTION AND VENUE**

4.      The first sentence of this paragraph states a legal conclusion to which no response is required.  National Union admits the allegations contained in the second sentence of this paragraph.

5.      This paragraph states a legal conclusion to which no response is required.  To the extent that this paragraph contains allegations of fact, such allegations are denied.

**THE INSURANCE POLICY**

6.      National Union admits that it issued Policy No. 061-36-48.  As to the remaining allegations, National Union states that the terms of the Policy speak for themselves and otherwise denies the allegations of this paragraph.

7.      National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

8.      National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

9.      National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

10.      National Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

11.      National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

12.      National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

13.     National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

14.     National Union says that the Policy speaks for itself and otherwise denies the allegations of this paragraph.

### THE DEPARTMENT OF JUSTICE, ANTITRUST CRIMINAL INVESTIGATION

15.     National Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

16.     National Union says that the Search Warrant referenced in this paragraph speaks for itself and otherwise denies the allegations of this paragraph.

17.     National Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of this paragraph.  National Union admits that the Search Warrant Affidavit was unsealed in or about April 2015 and that it did not receive a copy until November 9, 2015.  National Union denies the remaining allegations of this paragraph.

18.     National Union admits that on or about April 25, 2008 it received notice of a Search Warrant and Subpoena dated April 17, 2008 and a copy of an email dated April 23, 2008 which stated that "The charges that may have lead (sic) to the subpoena and search warrant are sealed at this point in time and no indictments have been filed."  National Union otherwise denies the allegations of this paragraph.

19.     National Union admits that Crowley submitted certain invoices for attorney's fees and costs incurred by Thomas Farmer but it denies that such fees and costs were due and owing to Crowley under the Policy.  National Union otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

## THE PARTIES' ARBITRATION

20.     National Union admits that by correspondence dated May 27, 2008 it accepted the Search Warrant and Subpoena as a notice of circumstances under Section 7(c) of the Policy. National Union denies that Crowley advised it of the existence of the under-seal Search Warrant Affidavit.  National Union says that its coverage correspondence to Crowley speaks for itself and otherwise denies the remaining allegations of this paragraph.

21.     National Union admits that Crowley instituted an arbitration action against National Union on or about March 7, 2012, but it denies the remaining allegations of this paragraph.

22.     National Union is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of this paragraph.  National Union denies the remaining allegations of this paragraph.

23.     National Union admits that on January 29, 2013 the three-member arbitration panel issued an award against Crowley and in favor of National Union in which the panel found, *inter alia*, that "Given the facts in this case, the triggering event for a Claim by the Insured Persons under subparagraph 2(b)(3) for the DOJ's criminal investigation is when the DOJ identifies in writing an Insured Person as one against whom a criminal proceeding may be commenced.  This specified, objective triggering event has yet to occur."  National Union says that the Arbitration Award speaks for itself and otherwise denies the allegations of this paragraph.

## THOMAS FARMER'S INDICTMENT AND ACQUITTAL

24.     National Union admits the allegations of this paragraph.

25.     National Union admits that by correspondence dated March 5, 2013, it agreed subject to a full reservation of rights to advance Defense Costs incurred after February 18, 2013. National Union says that its coverage correspondence to Crowley speaks for itself and otherwise denies the remaining allegations of this paragraph.

26.     National Union admits the allegations of this paragraph.

**THE SEARCH WARRANT AFFIDAVIT IS MADE AVAILABLE AND NATIONAL UNION CONTINUES TO REFUSE TO REIMBURSE DEFENSE COSTS**

27.     National Union admits that Crowley provided it with a copy of the Search Warrant Affidavit on November 9, 2015.  National Union otherwise lacks sufficient knowledge to admit or deny the allegations of this paragraph.

28.     National Union denies the allegations of this paragraph.

29.     National Union denies the allegations of this paragraph.

**COUNT I
(BREACH OF CONTRACT)**

30.     National Union incorporates its responses to paragraphs 1 through 29 of the complaint as if fully set forth herein.

31.     National Union denies the allegations of this paragraph.

32.     National Union denies the allegations of this paragraph.

33.     National Union denies the allegations of this paragraph.

34.     National Union denies the allegations of this paragraph.

35.     National Union denies the allegations of this paragraph.

36.     National Union denies the allegations of this paragraph.

37.     National Union denies the allegations of this paragraph.

WHEREFORE, Crowley is entitled to no relief.

## **AFFIRMATIVE DEFENSES**

1.      The Complaint fails to state a claim upon which relief can be granted against

National Union.

2.      The Complaint is barred by the doctrines of *res judicata* and *collateral estoppel.*

3.      The Complaint is barred by the applicable statute of limitations.

4.      The Complaint is barred by the plaintiff's laches.

5.      The Complaint is barred in whole or in part by the terms and conditions of the

Policy, including the terms of the applicable Insuring Agreements.

6.      The Complaint is barred because the Affidavit and other materials submitted to

National Union do not establish the existence of a "Claim" made against Mr. Farmer prior to

February 18, 2013 as the term "Claim" is defined by the Policy.

7.      The Complaint is barred because the Affidavit was not submitted to National

Union until after end of the Discovery Period on November 1, 2013.

8.      The Complaint is barred in whole or in part to the extent that the amounts

Crowley seeks to recover in this action do not constitute reasonable and necessary "Defense

Costs" as that term is defined by the Policy.

9.      The Complaint is barred in whole or in part to the extent that the amounts

Crowley seeks to recover in this action do not constitute "Loss" as that term is defined by the

Policy.

10.      The Complaint is barred in whole or in part to the extent that the amounts which

Crowley seeks to recover are matters uninsurable under the law.

11.     The Complaint is barred in whole or in part by Crowley's guilty plea to criminal antitrust violations in the action captioned, *United States of America v. Crowley Liner Services, Inc.*, Case No. 3:12-cr-00590-DRD (D.P.R., June 5, 2012).

12.     The Complaint is barred in whole or in part by Exclusion 4(a) of the Policy, which precludes coverage for Claims arising out of, based upon or attributable to the gaining of any profit or advantage to which a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the Insured establishes the Insured was not legally entitled.

13.     The Complaint is barred in whole or in part by Exclusion 4(c) of the Policy, which precludes coverage for Claims arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the Insured if a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the Insured(s) establishes that such deliberate criminal or deliberate fraudulent act was committed.

14.     The Complaint is barred in whole or in part by the equitable doctrines of waiver, estoppel and unclean hands.

15.     The Complaint is barred in whole or in part by Crowley's failure to mitigate its alleged damages.

WHEREFORE, National Union respectfully requests that all claims against it in this action be dismissed with prejudice and that it be awarded its costs and attorney's fees of this action as provided by law.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

By its attorneys,

Dated: March 15, 2017

/s/Jason Bloom
Stephen Hunter Johnson, Esq.
Jason Bloom, Esq.
Lydecker Diaz
1221 Brickell Avenue
19th Floor
Miami, FL 33131
(305) 416-3180
shj@lydeckerdiaz.com
jbloom@lydeckerdiaz.com

Michael P. Duffy, Esq.
Scarlett M. Rajbanshi, Esq.
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
(617) 951-2004
mduffy@peabodyarnold.com
srajbanshi@peabodyarnold.com

**CERTIFICATE OF SERVICE**

I, Jason Bloom, do hereby certify that I have, this 15th day of March, 2017, served the foregoing document, by causing a copy thereof, to be sent electronically to the registered participants in this case, if any, as identified on the Notice of Electronic Filing (NEF):

Charles B. Lembcke
Law Offices of Charles B. Lembcke, P.A.
1300 Riverplace Blvd., Suite 605
Jacksonville, FL  32207

John D. Shugrue
Thomas A. Marrinson
Emily E. Garrison
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL

/s/Jason Bloom
Jason Bloom

8

1176761_1
9500-94066

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY service by UPS, postage prepaid of two (2) paper copies of the foregoing Appendix of Appellant (Volume I) upon the following clerk of court, this 30th day of May, 2018:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

I HERBY CERTIFY that a true and correct copy of the foregoing Appendix of Appellant (Volume I) was filed with the Clerk of Court using the CM/ECF system which will serve a Notice of Docket Activity on this 30th day of May, 2018 to the following:

Michael P. Duffy
Scarlett M. Rajbanshi
Peabody & Arnold, LLP, 6th Floor
600 Atlantic Ave.
Boston, MA 02210-2261
Email: mduffy@peabodyarnold.com
        srajbanshi@peabodyarnold.com

Stephen Hunter Johnson
Jason Benjamin Bloom
Lydecker Diaz
1221 Brickell Ave 19th Flr
Miami, FL 33131-3240
Email: shj@lydeckerdiaz.com
        jbloom@lydeckerdiaz.com

*/s/ Emily E. Garrison*
**Counsel for Appellant**