# United States Court of Appeals
## For the Eleventh Circuit

### No.  18-10953-A

---

### CROWLEY MARITIME CORPORATION

Plaintiff/Appellant

v.

### NATIONAL UNION FIRE INSURANCE COMPANY
### OF PITTSBURGH, PA.

Defendant/Appellant

---

On Appeal From A Judgment Of The
United States District Court For The Middle District of Florida
At Civil Action No. 3:16-cv-01011-TJC-JBT

---

### BRIEF OF THE DEFENDANT/APPELLEE
### NATIONAL UNION FIRE INSURANCE COMPANY
### OF PITTSBURGH, PA.

---

Michael P. Duffy, *admitted pro hac vice*
Scarlett M. Rajbanshi, *admitted pro hac vice*
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100
mduffy@peabodyarnold.com
srajbanshi@peabodyarnold.com

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

The defendant-appellee, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTBSURGH, PA., hereby makes the following statements pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1.

## Certificate Of Interested Persons

1. Bloom, Jason B., counsel for Appellee

2. Corrigan, Timothy J., the Honorable District Court Judge

3. Crowley Holdings, Inc., parent corporation of Appellant

4. Crowley Maritime Corporation, Appellant

5. Duffy, Michael P., counsel for Appellee

6. Garrison, Emily E., counsel for Appellant

7. Johnson, Stephen Hunter, counsel for Appellee

8. Law Office of Charles B. Lembcke, PA, counsel for Appellant

9. Lembcke, Charles B., counsel for Appellant

10. Marrinson, Thomas A., counsel for Appellant

11. National Union Fire Insurance Company of Pittsburgh, Pa., Appellee

12. Peabody & Arnold LLP, counsel for Appellee

13. Rajbanshi, Scarlett M., counsel for Appellee

14. Reed Smith LLP, counsel for Appellant

15. Shugrue, John D., counsel for Appellant

16. Toomey, Joel B., the Honorable District Court Magistrate Judge

## Corporate Disclosure Statement

National Union Fire Insurance Company of Pittsburgh, Pa., is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of AIUH LLC, which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ..........................................................................1

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE...............................................................................2

SUMMARY OF THE ARGUMENT .....................................................................8

ARGUMENT ........................................................................................................9

I.     CROWLEY'S ARGUMENT THAT A CLAIM AS DEFINED IN THE
NATIONAL UNION POLICY WAS REPORTED TO NATIONAL
UNION IN 2008 IS PRECLUDED BY THE 2013 ARBITRATION
AWARD. ....................................................................................................9

II.    IN ADDITION, CROWLEY'S ARGUMENT THAT A CLAIM AS
DEFINED IN THE NATIONAL UNION POLICY WAS REPORTED TO
NATIONAL UNION IN 2008 IS CONTRARY TO FLORIDA LAW AND
THE UNDISPUTED FACTS OF THIS MATTER. ...................................16

    A.  Crowley's Argument that a Claim was Made Against Mr. Farmer When
the Affidavit Was Signed on April 16, 2008 is Contrary to Law and
Should Be Rejected............................................................................16

    B.  No Claim as Defined in the Policy was Reported to National Union
until February 2013............................................................................21

III.   CROWLEY'S 2015 SUBMISSION OF THE AFFIDAVIT TO NATIONAL
UNION WAS UNTIMELY UNDER THE TERMS OF THE NATIONAL
UNION POLICY.....................................................................................24

IV.   IN THE ALTERNATIVE, CROWLEY'S ACTION AGAINST NATIONAL
UNION IS BARRED BY THE FIVE-YEAR STATUTE OF
LIMITATIONS UNDER FLORIDA LAW FOR BREACH OF
CONTRACT ACTIONS. .........................................................................28

CONCLUSION....................................................................................................31

CERTIFICATE OF COMPLIANCE.....................................................................33

CERTIFICATE OF SERVICE ...............................................................................34

# TABLE OF AUTHORITIES

**Cases**

*527 Orton LLC v. Continental Cas. Co.*
  2014 WL 11696697 at *4 (S.D.Fla. Sept. 22, 2014)............................................18

*AAA Life Ins. Co. v. Nicolas*
  603 So.2d 622, 624 (Fla. 3rd DCA 1992) ............................................................17

*AMEC Civil, LLC v. PTG Construction Services Company*,
  106 So.3d 455, 456 (Fla. 1st DCA 2013).................................................... 11, 15

*Amerisource Bergen Corp. v. ACE American Ins. Co.*
  100 A.3d 283 (Pa. Super. 2014) ..........................................................................20

*AS Management Services, Inc. v. Kendall Properties & Investments*
  2009 WL 1220346 at *6 (S.D.Fla., May 4, 2009)................................................29

*Auto-Owners Ins. Co. v. E.N.D. Services, Inc.*
  2011 WL 6319189 at *2 (M.D.Fla. Dec. 15, 2011) ............................................17

*Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n, Inc.*
  164 So. 3d 684, 687 (Fla. Dist. Ct. App. 2014)...................................................25

*Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*
  44 N.E.3d 1279, 1291 (Ct. App. Ind. 2015) ........................................................26

*Barry v. Barry*
  2011 WL 5358750 at *2 (M.D.Fla. Oct. 31, 2011)..............................................28

*Beck v. Lazard Freres & Co., LLC*
  175 F.3d 913, 914 (11th Cir. 1999).....................................................................29

*Community Bank of Florida v. Progressive Cas. Ins. Co.*
  2013 WL 12093842 at *4 (S.D.Fla. Feb. 25, 2013)................................ 28, 29, 31

*Country Manors Assoc., Inc. v. Master Antenna Systems, Inc.*
  534 So.2d 1187, 1194 (Fla. 4th DCA 1988) ........................................................19

*Doctors Co. v. Health Mgmt. Assocs., Inc.*
  943 So.2d 807, 809 (Fla. 2nd DCA 2006)............................................................17

i

*Empire Fire & Marine Ins. Co. v. J. Transp., Inc*.
880 F.2d 1291 (11th Cir. 1989) .............................................................................15

*Federal Ins. Co. v. Southwest Florida Retirement Center, Inc*.
707 So.22d 1119, 1122 (Fla. 1998) .........................................................................29

*Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co*.
254 F.3d 987, 1003 (11th Cir.2011) ........................................................................18

*Gulf Ins. Co. v. Dolan, Fertig & Curtis*
433 S.2d 512, 515 (Fla. 1983) ........................................................................ 16, 24

*HealthSmart Benefit Sols., Inc. v. Principia Underwriting*
2015 WL 339524 at *3 (W.D. La. Jan. 23, 2015) ..................................................20

*Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc.*,
210 S.2d 750 (Fla. 4th DCA 1968) .........................................................................13

*HR Acquistion I Corp. v. Twin City Fire Ins. Co*.
547 F.3d 1309, 1317-18 (11th Cir. 2008) (Alabama law) ......................................20

*In re Piper Aircraft Corp*.,
244 F.3d 1289, 1296 (11th Cir. 2001).....................................................................11

*Indian Harbor Citrus, Inc. v. Poppell*
658 So. 2d 605, 606 (Fla. Dist. Ct. App. 1995).....................................................26

*James v. Gulf Life Ins. Co*.
66 So.2d 62, 63 (1953) .............................................................................................17

*Jennings Construction Services Corp. v. ACE American Ins. Co*.
783 F.Supp.2d 1209, 1212-1213 (M.D.Fla. 2011)..................................................24

*Lion Life, LLC v. Regions Bank*
2013 WL 2367823 at *2 (S.D.Fla. May 29, 2013)..................................................29

*Lucas v. W.W. Grainger, Inc.*
257 Fed.3d 1249, 1256 (11th Cir. 2001) ................................................................18

*Medical Depot, Inc. v. RSUI Indem. Co*.
2016 WL 5539879 (Del.Super. Sept. 29, 2016)......................................................20

ii

*Office Depot, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa*.
    453 Fed.Appx. 871, 876 (11th Cir. 2011) .......................................... 22, 23, 27, 31

*Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co*.
    141 F.Supp.2d 1366, 1368-69 (S.D.Fla. 2001) ....................................18

*Pierson v. Orlando Regional Healthcare Systems*
    2010 WL 1408391 at *15 (M.D.Fla. April 6, 2010) ............................31

*Pleming v. Universal-Rundle Corp*.,
    142 F.3d 1354, 1356-1357 (11th Cir. 1998) ......................................13

*Poirier v. National Union Fire Ins. Co. of Pittsburgh, Pa*.
    517 So.2d 225, 227 (La.App. 1987) ....................................................19

*Potiker v. Gasiunasen Gallery*
    2010 WL 249943 at *2 (S.D.Fla. July 26, 2010) ................................29

*Razor Capital, LLC v. CMAX Finance, LLC*
    2017 WL 3481761 **3-4 (S.D.Fla. Aug. 11, 2017)............................31

*Roth v. State Farm Mut. Auto Ins. Co.*
    581 So.2d 981, 982 (Fla. 2nd DCA 1991)............................................28

*State Street Bank and Trust Co. v. Badra,*
    765 So.2d 251 (Fla. Dist. Ct. App. 2000)............................................14

*Trustmark Ins. Co. v. ESLU, Inc*.,
    299 F.3d 1265, 1269-1270 (11th Cir. 2002) ......................................11

*Tyson v. Viacom, Inc*.,
    890 So.2d 1205, 1209 (Fla. 4th DCA 2005) ................................. 12, 14

**Statutes**

15 U.S.C. §1 ...............................................................................................2

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1332(a) ...................................................................................1

Fla. Stat. 95.11(2)(b) ........................................................................ 28, 29

Fla. Stat. Ann. §95.051(g) .................................................................. 31

## Regulations

USAM, §9-11.151 .............................................................................. 17

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this case under 28 U.S.C. § 1291. The District Court entered a judgment for Appellee National Union[1] on February 9, 2018. Appellant Crowley appealed on March 8, 2018. The action is between citizens of different states, and the amount in controversy exceeds $75,000. The District Court had jurisdiction under 28 U.S.C. § 1332(a).

## STATEMENT OF THE ISSUES

1) Whether Crowley's argument that a Claim as defined in the National Union Policy was reported to National Union in 2008 is precluded by the 2013 Arbitration Award.

2) Whether Crowley's argument that a Claim as defined in the National Union Policy was reported to National Union in 2008 is contrary to Florida law and the undisputed facts of this matter.

3) Whether Crowley's 2015 submission of the Affidavit to National Union was untimely under the terms of the National Union Policy.

4) In the alternative, whether Crowley's action against National Union was barred by the five-year statute of limitations under Florida law for breach of contract actions.

---

[1] "National Union" as used herein refers to the Appellee, National Union Fire Insurance Company of Pittsburgh, Pa. "Crowley" refers to Appellant, Crowley Maritime Corporation.

## **STATEMENT OF THE CASE**

From January 2006 until in or about April 2008, Crowley's wholly owned subsidiary, Crowley Liner Services, Inc., ("Crowley Liner") participated with several other shipping companies in a criminal conspiracy to fix prices charged for commercial freight shipping between Florida and Puerto Rico. On June 5, 2012, Crowley Liner pleaded guilty in the United States District Court to one Count of conspiring to fix prices in violation of the Sherman Antitrust Act, 15 U.S.C. §1. *United States of America v. Crowley Liner Services, Inc.*, Case No. 3:12-cr-00590-DRD (D.P.R., June 5, 2012). Despite losing in a prior arbitration proceeding, Crowley now seeks for the second time to recover legal fees that it paid on behalf of one of its employees.

National Union issued Executive and Organization Liability Insurance Policy No. 061-36-48 (the "Policy") to Crowley with a Policy Period of November 1, 2007 to November 1, 2008. (Doc. 1 at 2). Endorsement No. 14 of the Policy, captioned "Run-Off Endorsement," provided that Crowley:

> … shall have the right to a period of [six] years following the **Effective Date** (herein referred to as the **Discovery Period**) in which to give written notice to the **Insurer** of any **Claim** first made against any **Insured** during said 6 year period for any **Wrongful Act** occurring on or prior to the **Effective Date** and otherwise covered by this policy.

(Doc. 1-1 at 59-60).  The six-year Discovery Period commenced on November 1, 2007 and expired on November 1, 2013.

Section 2(b) of the Policy defines a "Claim" as follows:

> (1) a written demand for monetary, non-monetary or injunctive relief;
>
> (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) return or filing of a notice of charges; or
>
> (3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:
>
> > (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or
> >
> > (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

(*Id.* at 8).

Section 7(a) of the Policy, as modified by Endorsement No. 17, provides as follows:

> An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** . . . as soon as practicable after

the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; . . . but in all events no later than either:

    (1) the end of the **Policy Period** or **the Discovery Period** (if applicable) or

    (2) within 45 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

(*Id*. at 14 and 64).

Section 7(c) of the Policy provides as follows:

If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

(Doc. 1-1 at 16).

On April 17, 2008, the FBI executed a search warrant at Crowley's headquarters in Jacksonville, Florida. (Doc. 1 at ¶ 15). The search warrant was

issued based on an affidavit (the "Search Warrant Affidavit" or "Affidavit"), which was sealed and not presented to Crowley at the time that the search warrant was executed. (*Id.* at ¶ 17).

On April 23, 2008, Crowley submitted copies of the April 16, 2008 search warrant and an April 17, 2008 grand jury document subpoena served upon Crowley Liner to National Union for potential coverage under the Policy. (Doc. 36-5). Crowley sought reimbursement from National Union under the Policy for legal fees incurred by four of its employees after service of the Search Warrant on Crowley. (Doc. 1 at ¶ 19).

On May 27, 2008, National Union denied coverage on the grounds that no Claim against an Insured Person, as defined by the Policy, had been reported to National Union. (Doc. 36-6 at 3). The Search Warrant and Subpoena served on Crowley did not identify any Insured Person as a person against whom a proceeding described in Section 2(b)(2) of the Policy may be commenced. (*Id.*) However, National Union advised Crowley in its May 27, 2008 letter that pursuant to Section 7(c) of the Policy it would accept the materials submitted "… as a notice of circumstances that may give rise to a Claim being made against an Insured[.]" (*Id.*).

On March 7, 2012, Crowley filed a demand for arbitration seeking reimbursement of attorney's fees advanced by Crowley to four of its employees,

including Thomas Farmer. (Doc 1 at ¶ 21). On January 29, 2013, after a full hearing on the merits, the arbitration panel issued a written decision (the "Arbitration Award") in which it rejected all of Crowley's arguments. The panel ruled that National Union's denial of coverage was correct because, based on the unambiguous terms of the Policy, no Claim as defined by the Policy had been reported to National Union as the date of the award. (Doc. 36-7 at 8-10). Therefore, the panel determined that National Union had no obligation to reimburse Crowley for the attorney's fees it had paid on behalf of its four employees, including the fees paid on behalf of Mr. Farmer. (*Id.*). It is those same attorney's fees paid on behalf of Mr. Farmer that Crowley seeks for a second time to recover in this action.

In February 2013, Crowley advised National Union that Mr. Farmer had received a written offer of a plea agreement from the Department of Justice. (Doc. 36-11). At that point, National Union acknowledged that a Claim had been made against Mr. Farmer and it agreed to advance Defense Costs incurred thereafter. (*Id.*). National Union ultimately paid approximately $2.965 million in Defense Costs incurred by Mr. Farmer from February 18, 2013 through the conclusion of his trial on May 6, 2015. (DOC. 36-31 at 5). Even though Crowley Liner had pleaded guilty to criminal antitrust violations, the jury at Mr. Farmer's individual trial returned a verdict of not guilty. (Doc. 1 at 7).

In July of 2015, more than a year and a half after the November 1, 2013 expiration of the Policy's six-year Discovery Period for reporting Claims and two and a half years after the arbitration panel issued its final award in favor of National Union, Crowley advised National Union that it had obtained the previously sealed 2008 search warrant affidavit. (Doc. 20-2). On November 17, 2015, Crowley for the first time submitted a copy of the April 16, 2008 Affidavit to National Union. (Doc. 37-1). On August 6, 2016, Crowley filed suit against National Union in the U.S. District Court for the Middle District of Florida in a second attempt to recover the legal fees incurred by Mr. Farmer from April 2008 through February 2013, which were the subject of the arbitration. (Doc. 1).

National Union moved to dismiss Crowley's complaint on October 14, 2016. (Doc. 16). On December 21, 2016, the District Court converted National Union's motion to dismiss into a motion for summary judgment. (Doc. 37 at 2). On February 8, 2018, after discovery and supplemental briefing by both National Union and Crowley, the District Court granted National Union's converted summary judgment motion. (Doc. 53). In doing so, the District Court ruled that the unsealing of the 2008 search warrant affidavit in 2015 constituted a new Claim that was not timely reported prior to the expiration of the Policy's six-year Discovery Period. (*Id.* at 19). The District Court also held that:

> Alternatively, if, contrary to the Court's decision, the
> Claim based on the Affidavit is deemed reported in 2008,

> Crowley is precluded from bringing this action because
> of the intervening arbitration decision.  Either way,
> Crowley cannot recover.

(*Id.* at 22).

## SUMMARY OF THE ARGUMENT

The District Court's ruling should be affirmed.  Crowley has already had one chance to litigate its alleged entitlement to recover legal fees incurred by Mr. Farmer between April 2008 and February 2013.  It filed an arbitration proceeding in 2012 and it lost.  Eight years after the initial denial of coverage, Crowley is not entitled to a second chance to litigate the exact same cause of action.

To the extent Crowley is still trying to argue that it reported a Claim against Mr. Farmer to National Union in 2008, the District Court properly held that Crowley's argument is precluded by the arbitration award issued in January 2013. Whether a Claim had been submitted to National Union at that point was precisely the issue that was submitted by the parties for a binding decision by the arbitration panel.  To the extent Crowley's 2015 submission of the Affidavit to National Union is construed to be a new notice of Claim, the District Court properly held that such notice was untimely under the plain language of the Run-Off Endorsement.  As the District Court correctly stated, "[e]ither way, Crowley cannot recover."

In addition, Crowley's argument that it reported a Claim against Mr. Farmer to National Union in 2008 is wrong both on the law and on the facts. Crowley's argument that a Claim was "made" against Mr. Farmer when the Affidavit was signed on April 16, 2008, even though no one knew it at the time, is contrary to Florida law because it depends on an unreasonable construction of the Policy.

Alternatively, Crowley's suit against National Union is barred by the five-year statute of limitations applicable to breach of contract actions under Florida law because it was filed more than eight years after National Union's May 27, 2008 denial of coverage for the materials submitted by Crowley on April 23, 2008.

## ARGUMENT

### I. CROWLEY'S ARGUMENT THAT A CLAIM AS DEFINED IN THE NATIONAL UNION POLICY WAS REPORTED TO NATIONAL UNION IN 2008 IS PRECLUDED BY THE 2013 ARBITRATION AWARD.

Crowley wrongly complains in its brief that the District Court failed to consider its argument that a Claim against Mr. Farmer was reported to National Union in 2008. In fact, the District Court correctly held that a Claim based on the Affidavit was not reported until 2015. The Court further held that the issue of whether a Claim had been reported to National Union in 2008, in any event, was precluded by the Arbitration Award, in which the panel determined that as of January 2013 no Claim had been reported to National Union. The District Court concluded that:

. . . Crowley cannot contend that the Affidavit was included in the 2008 Notice of Circumstance, making it timely under the Policy, but was not part of the 2008 materials for preclusion purposes. Compare (Doc. 36 at 10) (Crowley stating that the Affidavit was not included as part of the claim arbitrated because it was under seal until 2015) with (Doc. 36 at 18) (Crowley stating that the DOJ investigation was reported to National Union in 2008 and the Affidavit was part of that investigation). Crowley reported the Claim based on the Affidavit in 2015 – after the Discovery Period ended. If the Affidavit were to relate back to 2008 (even though the contents were unknown), then it would not be a change in circumstances or new evidence from that considered by the arbitrators- and the identity of the cause of action would be the same.

(Doc. 53 at 19-20) (emphasis added). The District Court thus rejected Crowley's argument that a Claim was reported in 2008 based on the undisputed fact that the Affidavit was not submitted to National Union until 2015.

The District Court found that issue preclusion was not a complete bar to this action only by construing Crowley's 2015 submission of the Affidavit to National Union as an entirely new notice of Claim. (*Id.* at 15). Rather than ignoring Crowley's argument that a Claim was reported in 2008, the District Court rejected Crowley's argument on the undisputed facts and then, in addition, correctly held that any such argument also was precluded by the Arbitration Award:

Alternatively, if, contrary to the Court's decision, the Claim based on the Affidavit is deemed reported in 2008, Crowley is precluded from bringing this action because of the intervening arbitration decision. Either way, Crowley cannot recover.

10

(*Id.* at 22).

The District Court's determination that Crowley's argument that a Claim was reported to National Union in 2008 was barred by issue preclusion plainly was correct. The elements of *res judicata* or issue preclusion are clearly established under Florida law. A matter is precluded if the following conditions are met:

> (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties and (4) identity in the person for or against whom the claim is made.

*AMEC Civil, LLC v. PTG Construction Services Company*, 106 So.3d 455, 456 (Fla. 1st DCA 2013). Crowley concedes that three out of the four necessary identities are present. (Doc. 53 at 9). Crowley is suing in this action for the same legal fees it unsuccessfully sought in the arbitration. The parties to this action and the arbitration are identical and both proceedings seek relief against National Union.

The fourth identity is present as well. "Claims are part of the same 'cause of action' when they 'arise out of the same transaction or series of transactions.'" *Trustmark Ins. Co. v. ESLU, Inc*., 299 F.3d 1265, 1269-1270 (11th Cir. 2002); *In re Piper Aircraft Corp*., 244 F.3d 1289, 1296 (11th Cir. 2001). Because this action and the prior arbitration both involve Crowley's attempt to recover the same legal fees under the same policy, there can be no question about the fact that they arise out of the same transaction or series of transactions.

11

The Arbitration Award is *res judicata* in this case because, to the extent Crowley is continuing to argue in this case that a Claim against Mr. Farmer was reported to National Union in 2008, that was the exact issue decided against Crowley by the arbitrators. The two proceedings involve the same cause of action because "the facts or evidence necessary to maintain the suit are the same in both actions." *Tyson v. Viacom, Inc*., 890 So.2d 1205, 1209 (Fla. 4th DCA 2005). In order the prevail in the arbitration, Crowley had to prove that a Claim was made against Mr. Farmer and timely reported to National Union in April 2008. Since that also is what Crowley would have to prove in this action, the "facts or evidence necessary to maintain the suit" in this action are exactly the same as they were in the arbitration. Therefore, the District Court correctly ruled that Crowley's contention that a Claim was made and reported to National Union in 2008 is barred by issue preclusion. The arbitrators have already determined that as of January 2013 no Claim had been submitted to National Union.

Crowley argues that this case asserts a different cause of action because it now has found a new piece of evidence and the arbitration only involved the sufficiency of the evidence presented at that time. Of course, in *every* case in which there is an issue of fact the precise question decided by the trier of fact is whether the evidence offered by the plaintiff is sufficient to meet its burden of proof. According to Crowley, this apparently means that no judgment entered in a

civil case can ever give rise to a *res judicata* defense. According to Crowley, every time the plaintiff finds a new piece of evidence this makes it an entirely new cause of action. There is no legal support for such an argument. The fact that the arbitration panel properly decided the case based on the evidence presented is irrelevant to the question of whether this case and the prior arbitration involve the same cause of action.

Under Florida law, a party can avoid the *res judicata* effect of prior litigation only where the second action is based on new facts which did not *exist* at the time of the first action. *Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc.*, 210 S.2d 750 (Fla. 4th DCA 1968). The only "new fact" relied upon by Crowley is the "fact" that it was finally able to obtain a copy of an *old* affidavit, purportedly signed in April 2008. This is insufficient as a matter of law, because *res judicata* is a bar to "all legal theories and claims arising out of the same operative nucleus of fact," *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356-1357 (11th Cir. 1998), "even though the plaintiff is prepared in the second action . . . [t]o present evidence or grounds or theories of the case not presented in the first action." *Restatement of the Law of Judgments, Second*, §25 (1982).

> [T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*AMEC Civil, LLC v. State Dept. of Transp.*, 41 So.3d 235, 239 (Fla. 1st DCA 2010), quoting *Restatement (Second) of Judgments*, § 24 at 196 (1982).[2]

The present situation therefore is fundamentally unlike the cases on which Crowley relies, in which a second cause of action was allowed to proceed based on new facts *which did not exist* at the time of the first case. See, e.g., *State Street Bank and Trust Co. v. Badra,* 765 So.2d 251 (Fla. 4th DCA 2000), where the court allowed a second foreclosure action to go forward based on a new notice of acceleration that was issued after the first case was over. *Id*. at 254.

Finally, Crowley argues that, even if all of the elements of *res judicata* are present, application of the law in this case would be inequitable. Crowley's argument on this point is without merit. Other than asserting its self-interested desire to recover, Crowley never explains what would be so inequitable about the result which would otherwise follow from application of clear Florida law on *res judicata*. It is worth noting here that, from January 2006 until in or about April 2008, Crowley admittedly engaged in a criminal conspiracy to fix prices charged for commercial freight shipping between Florida and Puerto Rico. Crowley only stopped when it got caught. While Crowley may assert that its criminal conduct is

---

[2] The same result would follow based on the Florida rule against claim-splitting, which requires that "all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all." *Tyson v. Viacom, Inc*., *supra*, 890 So.2d at 1210-1211.

irrelevant, it is very relevant when Crowley relies on purported pleas of fairness and equity.

There also is nothing equitable about serial litigation of the same cause of action. Crowley chose to file the arbitration in 2012 without the affidavit and it lost. It does not get a second bite at the apple. See, *AMEC Civil, LLC, supra*, 41 So.2d at 243 ("There is no injustice in the learned trial judge's decision not to give [plaintiff] two bites at the apple").

National Union has done nothing wrong here. The arbitration panel clearly determined in 2013 that National Union's initial denial of coverage was entirely correct. If Crowley is allowed to proceed with this action, it in effect will be seeking to create retroactive coverage for legal fees which were not covered at the time. There would be nothing remotely fair or equitable about forcing National Union, eight years after the fact, to retroactively cover fees that were not covered at the time and which National Union therefore had no opportunity to review or control as they were being incurred.[3]

---

[3] Crowley cites *Empire Fire & Marine Ins. Co. v. J. Transp., Inc*., 880 F.2d 1291 (11th Cir. 1989), for the proposition that *res judicata* is applied differently in a declaratory judgment action. However, the arbitration was not a mere declaratory judgment action. In the arbitration, Crowley asserted a breach of contract claim for money damages. What the panel actually decided was that as of January 2013 National Union had no obligation to pay anything because no Claim as defined in the Policy had been reported to National Union. There is nothing in the *Empire Fire* case which even remotely suggests that Crowley now gets a second chance to prove the same thing.

**II.**     **IN ADDITION, CROWLEY'S ARGUMENT THAT A CLAIM AS DEFINED IN THE NATIONAL UNION POLICY WAS REPORTED TO NATIONAL UNION IN 2008 IS CONTRARY TO FLORIDA LAW AND THE UNDISPUTED FACTS OF THIS MATTER.**

Even if there were no issue preclusion based on the Arbitration Award, Crowley's argument that a Claim was made against Mr. Farmer and reported to National Union in 2008 is contrary to the law and the evidence.

### A. Crowley's Argument that a Claim was Made Against Mr. Farmer When the Affidavit Was Signed on April 16, 2008 is Contrary to Law and Should Be Rejected.

Crowley's argument that a Claim was made against Mr. Farmer in 2008 depends entirely on its contention that a Claim was made against him on the day the Affidavit was signed, *i.e.*, on April 16, 2008, *even though at that time Mr. Farmer was completely unaware that there was either an investigation or affidavit*. (*See*, Doc. 1 at ¶ 28, p. 7, stating that "a Claim was made against Mr. Farmer as of April 16, 2008"). This is an absurd interpretation of the Policy, because under a claims made and reported policy the date on which the claim is deemed to have been "made" is what governs when the claim must be reported. No coverage is implicated if the claim is not reported to the insurer in the same policy period in which it was made (or within any grace period provided in the policy). *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 S.2d 512, 515 (Fla. 1983). Crowley's argument that a claim can be considered to have been "made" against an insured even though

the insured is completely unaware thus puts on the insured the impossible burden of reporting things that he or she doesn't know anything about. [4]

Under Florida law, "[i]nsurance contracts are to be interpreted and construed in a manner that is 'reasonable, practical, sensible, and just.'" *Auto-Owners Ins. Co. v. E.N.D. Services, Inc*., 2011 WL 6319189 at *2 (M.D.Fla. Dec. 15, 2011), citing, *Doctors Co. v. Health Mgmt. Assocs., Inc.*, 943 So.2d 807, 809 (Fla. 2nd DCA 2006). Thus, "[t]he law is clear that if one interpretation of an insurance policy, viewed with other provisions of the policy and its general object and scope, would lead to an absurd conclusion, that interpretation must be abandoned and one consistent with reason and probability adopted." *AAA Life Ins. Co. v. Nicolas*, 603 So.2d 622, 624 (Fla. 3rd DCA 1992); *James v. Gulf Life Ins. Co*., 66 So.2d 62, 63 (Fla. 1953).

Crowley's proposed interpretation of the National Union Policy would lead to just such an absurd result. It is settled under Florida law that when a claim is made in one policy period but not reported until the next policy period, the insured

---

[4] The Affidavit identified Mr. Farmer as a "Subject" of the investigation, but not as a "Target." (Doc. 53 at 3). As those terms are used by the Department of Justice, "a 'subject' of an investigation is a person whose conduct is within the scope of the grand jury's investigation." In contrast, "[a] 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." *USAM*, §9-11.151, https://www.justice.gov/usam/usam-9-11000-grand-jury#9-11.151.

is left with no coverage. *527 Orton LLC v. Continental Cas. Co.*, 2014 WL 11696697 at *4 (S.D.Fla. Sept. 22, 2014); *Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co*., 141 F.Supp.2d 1366, 1368-69 (S.D.Fla. 2001). Crowley's proposed interpretation would cause insureds to lose coverage if they fail to report things of which they are completely unaware.

Under Crowley's view, an insured would be deprived of coverage if a secret document was signed in one policy period but not discovered and reported until the next, even if the insured immediately notified the insurer as soon as he or she found out about it. This cannot be the correct interpretation of the policy. *See*, Expert Report of Thomas Newman, at ¶¶ 27-28, (Doc. 36-15).[5] It simply makes no sense to say that a Claim was "made" against Mr. Farmer on April 16, 2008, even though he didn't know it. Although this was not the specific rationale relied upon by the District Court, this Court may affirm based "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.*, 257 Fed.3d 1249, 1256 (11th Cir. 2001).

---

[5] Interpretation of the Policy is a question of law for the court. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co*., 254 F.3d 987, 1003 (11th Cir. 2011). To the extent industry practice is relevant, however, the evidence was entirely in support of National Union's position. Crowley's purported custom and practice expert conceded at his deposition that he was not aware of any case in which any insurer had ever taken the position advocated by Crowley. *See*, *Sagalow Deposition*, p. 105 (Doc. 40-2).

Crowley's unreasonable interpretation is neither required nor supported by the language of the Policy. Crowley's argument is unfounded because it focuses exclusively on the definition of Claim and it completely ignores the fact that in order for coverage to be implicated *two* things are required: (i) there must be something that meets the definition of "Claim" in the Policy and (ii) the Claim also must have been "made" against an Insured. (Doc. 1-1 at 6 [Insuring Agreement B(ii)] and 59 [Endorsement No. 14]). Under similar language, Florida courts recognize that "[a] claims-made policy is one where *coverage depends on the claim being discovered* and reported to the insurer during the policy period." *Country Manors Assoc., Inc. v. Master Antenna Systems, Inc*., 534 So.2d 1187, 1194 (Fla. 4th DCA 1988) (emphasis added). "The plain intent of the language in [the] policy is to restrict National Union's liability to those claims discovered and reported during the policy period." *Poirier v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 517 So.2d 225, 227 (La.App. 1987) (emphasis added). [6]

The cases cited on page 20 to 21 of Crowley's brief on this point do not support its position. *Medical Depot, Inc. v. RSUI Indem. Co*. 2016 WL 5539879

---

[6] Crowley also ignores the fact that Part (1) of the definition of Claim ["written demand for monetary, non-monetary or injunctive relief"] (Doc. 1-1 at 8) also does not contain an express reference to the insured's knowledge. Under Crowley's theory, therefore, a demand letter that was written *but never sent* would constitute a Claim "made" against the insured for purposes of coverage. Crowley's own expert conceded that no insurer would take such a position. *Sagalow Deposition*, p. 108-9 (Doc. 40-2).

(Del.Super. Sept. 29, 2016), held only that an unserved complaint could still constitute a written demand for relief. Critically, the insured in *Medical Depot* had in its possession a copy of the unserved complaint. It was undisputed that "Medical Depot obtained from its counsel a copy of the unserved Initial Complaint." *Id.*, at *1. Therefore, in no way does that case hold that a claim can be deemed to have been "made" against an insured in circumstances where the insured is completely unaware. *HR Acquistion I Corp. v. Twin City Fire Ins. Co.,* 547 F.3d 1309, 1317-18 (11th Cir. 2008) (Alabama law), and *Amerisource Bergen Corp. v. ACE American Ins. Co*., 100 A.3d 283 (Pa. Super. 2014), both addressed the separate question of whether a lawsuit was "pending" for purposes of a prior or pending litigation exclusion. Neither case has anything to do with when a claim can be said to have been "made" against an insured.

*HealthSmart Benefit Sols., Inc. v. Principia Underwriting,* 2015 WL 339524 at *3 (W.D. La. Jan. 23, 2015), is an unpublished decision in which a court did rule that a claim can be deemed made even when the insured knows nothing about it. However, the court in the *HealthSmart* case avoided the absurd result advocated by Crowley by interpreting the policy at issue there as allowing claims to be reported within 30 days after discovery. (*Id*., at *4). No such construction is possible in this case, as the National Union Policy allows reporting after the end of the Policy Period or Discovery Period only where the Claim is made in the last 30 days of the

Policy Period or Discovery Period. Section 7(a)(2) of the Policy provides that as a condition precedent to coverage Claims must be reported, "in all events," by no later than the end of the Policy Period or Discovery Period (or within 45 days thereafter if the claim is first made in the last 30 days of the Policy Period or Discovery Period). (Doc. 1-1 at 16). Therefore, a determination that a Claim can be "made" against an Insured under the National Union Policy without the Insured's knowledge, unlike in *HealthSmart*, necessarily would lead to the absurd result of requiring the Insured to report unknown events in order to avoid being deprived of coverage. The *HealthSmart* court did not address National Union's policy language on the reporting of Claims and it therefore did not hold that the result advocated by Crowley would be required here.

### B. No Claim as Defined in the Policy was Reported to National Union until February 2013.

In addition, even if a Court were to conclude that a Claim was "made" against Mr. Farmer on April 16, 2008 (even though no one knew it at the time), it is plain that no such Claim based on the undisclosed Affidavit was reported to National Union in 2008. Apart from the fact that this has already been determined by the Arbitration Award, Crowley's argument has no factual support in the summary judgment record. As the District Court correctly stated, "Crowley reported the Claim based on the Affidavit in 2015." (Doc. 53 at 19).

In its brief, Crowley now argues that an "Investigation" was reported to National Union in 2008. However, an "Investigation," without more, is not a Claim as defined in the Policy. Rather, an Investigation only rises to the level of a Claim after one or more Insured Persons have been identified in writing by the government as persons who may be the subject of further proceedings. This issue was addressed in *Office Depot, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa*., 453 Fed.Appx. 871, 876 (11th Cir. 2011) (under National Union policy, investigation does not constitute a Claim until triggering conditions specified in policy have been satisfied). Crowley's argument that the Search Warrant and the Subpoena submitted to National Union in effect identified four individuals (including Mr. Farmer) as persons who might be indicted was wrong on the facts and it was rejected by the arbitrators. Crowley again argues this point on appeal.

Crowley's current insistence that it told National Union "about" the Affidavit in 2008 (Crowley's Brief at 17) is misleading at best. All that Crowley reported about the Affidavit in 2008 was that, while there was some sort of an affidavit in existence, *no one knew what it said*, because it was still under seal. (Doc. 36-5 at 4). Crowley obviously did not report to National Union in 2008 that the Affidavit identified Mr. Farmer as a person who might be indicted. Therefore, the District Court correctly ruled, as did the arbitration panel, that a Claim based

on the Affidavit was not reported to National Union in 2008. It was not simply a matter of Crowley not having a copy of the Affidavit in its possession. Crowley did not know what the Affidavit said. It is undisputed that neither Crowley nor National Union knew the contents of the Affidavit until 2015, when Crowley finally notified National Union.

Based on the evidence, the first time an actual Claim against Mr. Farmer was reported to National Union was February 18, 2013, when Crowley submitted a written offer of a plea agreement from the DOJ. At that point, National Union properly acknowledged potential coverage and agreed to advance Mr. Farmer's Defense Costs. (Doc. 53 at 5, 21). Under *Office Depot*, however, potential coverage was only for Defense Costs incurred from February 2013 forward. Notwithstanding the prior Notice of Circumstances, no coverage was available for fees incurred prior to the actual assertion of a Claim:

> After analyzing the policy as a whole, it is clear that Section 7 does not cover the costs incurred between the filing of the initial notice of circumstances and the time a Claim is made against an Insured. . . . Therefore, the policy does not cover the Defense Costs associated with the SEC investigation – which did not constitute a Claim against Office Depot until events such as the issuance of subpoenas and Wells Notices occurred.

453 Fed.Appx. at 878. National Union's position has been consistent and correct at all times. When an actual Claim was reported in 2013, National Union properly acknowledged potential coverage for Defense Costs incurred from that point

forward. Based on the undisputed facts, there simply is no basis upon which Crowley can seek to recover fees incurred prior to February 2013.

## III.   CROWLEY'S 2015 SUBMISSION OF THE AFFIDAVIT TO NATIONAL UNION WAS UNTIMELY UNDER THE TERMS OF THE NATIONAL UNION POLICY.

The last date on which Crowley was allowed to report Claims to National Union under the terms of the Policy was November 1, 2013. (Doc. 1-1 at 59-60). By the time Crowley submitted the Affidavit to National Union in November 2015, the time allowed for the reporting of Claims had long since expired. Therefore, the District Court correctly held that Crowley's attempted notice of Claim in 2015 was two years too late.

As the District Court correctly ruled, under Florida law a failure to timely report Claims as required under a claims made policy precludes all possible coverage. *Jennings Construction Services Corp. v. ACE American Ins. Co.,* 783 F.Supp.2d 1209, 1212-1213 (M.D.Fla. 2011); *Gulf Ins. Co. v. Dolan, Fertig & Curtis,* 433 So. 2d 512, 514 (Fla. 1983) ("A claims-made policy is a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term"). "The essence, then, of a claims-made policy is notice to the carrier within the policy period." *Gulf Ins. Co., supra*, at 514. The terms of the National Union Run-Off Endorsement are not

ambiguous.  By its terms, Crowley's submission of the Affidavit to National Union in 2015 was simply untimely.

None of Crowley's arguments against application of the plain language of the Run-Off Endorsement have any merit.  The District Court properly rejected Crowley's argument that National Union waived the right to rely on the terms of the endorsement, stating as follows:

> [T]he Court converted National Union's motion to dismiss into a motion for summary judgment and allowed the parties to supplement their briefing.  National Union appropriately raised the Discovery Period timeliness issue in its supplement.  Thus, National Union did not waive it.  Further, both parties devoted additional briefing to the issue, and both parties addressed the issue during the hearing.  Therefore, neither party can claim to be surprised or prejudiced by the Court considering this issue.

(Doc. 53 at 6-7).  Crowley makes no argument that this was reversible error.  In any event, it is clear under Florida law that an insured cannot create coverage through waiver where none exists under the terms of the policy.  *Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n, Inc.*, 164 So. 3d 684, 687 (Fla. 2nd DCA 2014).

Crowley then argues that its proffered insurance expert, Ty Sagalow, thinks that it would be inconsistent with industry practice to enforce the terms of the Run-Off Endorsement limiting coverage.  However, while the Run-Off Endorsement clearly expands coverage by allowing a six-year Discovery Period for the reporting

of Claims, it also sets a firm outside date for such reporting. It is settled under Florida law that industry practice cannot be used to contradict clear policy language. *Indian Harbor Citrus, Inc. v. Poppell,* 658 So. 2d 605, 606 (Fla. 4th DCA 1995) ("custom and usage… 'cannot operate to contravene express instructions or to contradict an express contract to the contrary.'") Therefore, the District Court properly enforced the Run-Off Endorsement based on its plain language.

In addition, Mr. Sagalow never identified any factual basis for his assertion regarding so-called industry practice. (Doc. 36-14). As stated by another court in similar circumstances involving the same Mr. Sagalow:

> Although Sagalow claims that his opinions are derived from the insurance industry's custom and practice, nowhere in his affidavit does Sagalow clarify what these customs actually are or identify his sources therefor. Rather, the paragraphs touch immediately upon the heart of the matter and the issue this court is prevailed upon to answer, *i.e.* whether [the insured] is entitled to coverage under the Policy and, as such, the paragraphs propone a legal conclusion. A mere generalized statement of "based on the custom and practice of the professional liability insurance and underwriting industry" without any further clarification does not lift these paragraphs from the impermissible realm of legal conclusion into valid expert opinion.

*Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC,* 44 N.E.3d 1279, 1291 (Ct. App. Ind. 2015). For the same reasons, it plainly was not reversible error for the District Court to disregard the opinions of Mr. Sagalow in this case.

Finally, Crowley suggests that its 2015 submission of the Affidavit should relate back to the April 23, 2008 Notice of Circumstance. For two reasons, this argument is without merit. First, Crowley continues to insist that the Claim actually was made against Mr. Farmer when the Affidavit was signed on April 16, 2008. If Crowley's position were correct, then the concept of relation back would be irrelevant. Section 7(c) of the Policy provides for relation back only of Claims that are "subsequently made." In other words, relation back can only apply to Claims that are first made *after* April 23, 2008, when the Notice of Circumstances was submitted. If, as the District Court concluded, a Claim based on the Affidavit is deemed to have been first made in 2015, when the Affidavit was unsealed and submitted to National Union, then it is clear under *Office Depot* that, regardless of whether the Claim relates back to the Notice of Circumstances pursuant to Section 7(c), no coverage is provided for fees incurred prior to the date in 2015 on which the Claim actually was made. *Office Depot, supra,* 453 Fed.Appx. at 878. Either way, relation back under Section 7(c) does not aid Crowley in any way.

For the foregoing reasons, the District Court's holding that Crowley's notice of Claim in 2015 was untimely was correct and should be affirmed.

**IV.    IN THE ALTERNATIVE, CROWLEY'S ACTION AGAINST NATIONAL UNION IS BARRED BY THE FIVE-YEAR STATUTE OF LIMITATIONS UNDER FLORIDA LAW FOR BREACH OF CONTRACT ACTIONS.**

Although the District Court did not reach the issue, its decision also should be affirmed on the alternative grounds that Crowley's action against National Union was barred by the statute of limitations.  "In Florida, the statute of limitations for a breach of contract action is five years.  Fla. Stat. 95.11(2)(b)." *Barry v. Barry*, 2011 WL 5358750 at *2 (M.D.Fla. Oct. 31, 2011).  "In suits alleging a breach of insurance contract for failure to pay benefits under the policy, the statute of limitations begins to run when the insurer has denied the insured's claim."  *Community Bank of Florida v. Progressive Cas. Ins. Co*., 2013 WL 12093842 at *4 (S.D.Fla. Feb. 25, 2013); *Roth v. State Farm Mut. Auto Ins. Co.*, 581 So.2d 981, 982 (Fla. 2nd DCA 1991) ("In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running").

National Union's denial of coverage was issued on May 27, 2008 and this action was filed in 2016, more than eight years later.  Therefore, the suit was untimely on its face.  The fact that Crowley did not obtain the Affidavit until 2015 is of no consequence.  "The law in Florida is clear that the statute of limitations for breach of contract begins to run when the breach occurs *regardless of when it is discovered*."  *AS Management Services, Inc. v. Kendall Properties & Investments*,

2009 WL 1220346 at *6 (S.D.Fla., May 4, 2009) (emphasis added). "The Florida Supreme Court held that there is no discovery rule in section 95.11(2)(b) and that actions for breach of contract are barred five years after the cause of action accrued *regardless of whether the plaintiff knew that it had a claim*." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (emphasis added), citing *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc*., 707 So.22d 1119, 1122 (Fla. 1998); *Potiker v. Gasiunasen Gallery*, 2010 WL 249943 at *2 (S.D.Fla. July 26, 2010) (dismissing Florida breach of contract action filed more than five years after the breach occurred, despite plaintiff not becoming aware of the breach until 17 years later). "The plaintiff's awareness of the breach is immaterial." *Lion Life, LLC v. Regions Bank*, 2013 WL 2367823 at *2 (S.D.Fla. May 29, 2013).[7]

In response, Crowley argued below that its action was not time barred because, according to Crowley, the alleged breach of contract by National Union could not have occurred until the Affidavit was presented to National Union in 2015. Crowley's argument was as follows:

---

[7] The fact that National Union's 2008 correspondence invited Crowley to submit additional information was not a waiver of any coverage defenses. National Union's May 27, 2008 denial of coverage expressly stated that "National Union reserves any and all rights and defenses available under the Policy and applicable law." (Doc. 36-6 at 4). It is settled under Florida law that an insurer's mere request for additional information "cannot be reasonably viewed as misleading for the purposes of estopping the insurer's statute of limitations defense." *Community Bank of Florida, supra*, at *7.

> The Search Warrant Affidavit was not available to be presented to National Union until 2015 and National Union did not decline to cover Mr. Farmer's defense based on the Search Warrant Affidavit until 2015.
>
> * * *
>
> [T]he statute of limitations for the breach of contract alleged in the Complaint could not have begun to run before that triggering event for coverage (the search Warrant Affidavit) was presented to national Union.

(Doc. 20 at 16-17). By arguing that there was no breach of contract until 2015, however, Crowley is actually contending that no Claim based on the Affidavit was reported to National Union until "triggering event for coverage" was submitted to National Union in 2015. Crowley's argument in this regard is hopelessly inconsistent. In order to avoid the statute of limitations, Crowley says that the Claim was not reported to National Union until 2015. In its argument under the Run-Off Endorsement, however, Crowley insists that the Claim was reported to National Union in 2008.

Crowley cannot have it both ways. It cannot say for purposes of the Run-Off Endorsement that the Claim was reported in 2008 and then say for purposes of the statute of limitations that the Claim was not reported to National Union until 2015. Crowley has to take a consistent position and, either way, the decision of the District Court should be affirmed. If a Claim based on the Affidavit was reported to National Union in 2008, then the alleged breach would have been in 2008 and

Crowley's action is barred by the statute of limitations.[8]  If a Claim based on the Affidavit was not reported to National Union until 2015, then Crowley's action should be dismissed because the Discovery Period for reporting Claims expired on November 1, 2013.

## CONCLUSION

For the reasons stated herein, the judgment below should be AFFIRMED in its entirely.

---

[8] In the District Court, Crowley made several additional arguments against application of the statute of limitations, none of which had any merit.  For example, Crowley relied on cases stating that where an insurer is in continuous breach of a duty to defend the insured does not have to sue until the underlying case is concluded.  (Doc. 20 at 18).  The problem with this argument was that the arbitration panel conclusively established that as of January 2013 there had been no breach of contract by National Union.  Because there was no breach of contract, there could not possibly have been a "continuous" breach.  Crowley's argument that National Union should be equitably estopped from asserting the statute of limitations as a defense was without merit because there was no claim of any detrimental reliance on conduct by National Union.  *Community Bank of Florida v. Progressive Cas. Ins. Co.*, *supra*, at *7.  Equitable tolling of the statute of limitations also is unavailable under Florida law outside of the administrative law context.  *Razor Capital, LLC v. CMAX Finance, LLC*, 2017 WL 3481761 **3-4 (S.D.Fla. Aug. 11, 2017); *Pierson v. Orlando Regional Healthcare Systems*, 2010 WL 1408391 at *15 (M.D.Fla. April 6, 2010) ("Section 95.051(1), Florida Statutes, sets forth a list of events that toll a statute of limitations, and equitable tolling is not among them"), *aff'd,* 451 Fed.Appx. 862 (11th Cir. 2012).  Statutory tolling of the statute pursuant to Fla. Stat. Ann. §95.051(g) is available only where there was a prior arbitration proceeding "pertaining to the dispute that is the subject of the action."  Again, Crowley's position is inconsistent.  In seeking to avoid *res judicata*, Crowley insists that the prior arbitration did *not* involve the same dispute which is the subject of this action.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

By its attorneys,


/s/ Michael P. Duffy
Michael P. Duffy, (*admitted pro hac vice*)
Scarlett M. Rajbanshi, (*admitted pro hac vice*)
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100
mduffy@peabodyarnold.com
srajbanshi@peabodyarnold.com


Jason Bloom
LYDECKER DIAZ
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
(305) 416-3180
jbloom@lydeckerdiaz.com


Dated: July 20, 2018

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Michael P. Duffy, hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,012 words, according to the word count on Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman with 14-point font.

*/s/ Michael P. Duffy*
Michael P. Duffy
**Counsel for Appellee,**
**National Union Fire Insurance**
**Company of Pittsburgh, PA**

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael P. Duffy, do hereby certify service by Federal Express, postage prepaid, and CM/ECF a true and correct copy of the foregoing along with 6 copies upon the following clerk of court, this 20th day of July, 2018:

> Clerk of Court
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth Street, N.W.
> Atlanta, GA 30303

I hereby certify that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will serve a Notice of Docket Activity on this 20th day of July, 2018 to the following:

> John Shugrue
> Emily Garrison
> Reed Smith LLP
> 10 South Wacker Drive, 40th Floor
> Chicago, IL 60606

> Charles B. Lembcke
> 8550 Cathedral Oaks Place West
> Jacksonville, FL 32217

> */s/ Michael P. Duffy*
> Michael P. Duffy

1415422_2
9500-94066