No. 18-10953-A

**In The United States Court Of Appeals
For The Eleventh Circuit**

**CROWLEY MARITIME CORPORATION**

*Plaintiff-Appellant,*

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,**

*Defendant-Appellee.*

On Appeal From The Judgment Of The
United States District Court For The Middle District Of Florida
At Civil Action No. 3:16-cv-01011-TJC-JBT

**REPLY BRIEF OF APPELLANT
CROWLEY MARITIME CORPORATION**

John D. Shugrue
Thomas A. Marrinson
Emily E. Garrison
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jshugrue@reedsmith.com
tmarrinson@reedsmith.com
egarrison@reedsmith.com

*Counsel for Plaintiff-Appellant*

*Crowley Maritime Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*
**18-10953-A**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Crowley Maritime Corporation hereby makes the following statements pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1.

### Certificate of Interested Persons

The following persons and business entities have an interest in the outcome of this appeal:

1.  Bloom, Jason B., counsel for Appellee

2.  Corrigan, Timothy J., the Honorable District Court Judge

3.  Crowley Holdings, Inc., parent corporation of Appellant

4.  Crowley Maritime Corporation, Appellant

5.  Duffy, Michael P., counsel for Appellee

6.  Garrison, Emily E., counsel for Appellant

7.  Johnson, Stephen Hunter, counsel for Appellee

8.  Law Office of Charles B. Lembcke, PA, counsel for Appellant

9.  Lembcke, Charles B., counsel for Appellant

10. Marrinson, Thomas A., counsel for Appellant

11. National Union Fire Insurance Company of Pittsburgh, PA, Appellee

12. Peabody & Arnold LLP, counsel for Appellee

13.     Rajbanshi, Scarlett M., counsel for Appellee

14.     Reed Smith LLP, counsel for Appellant

15.     Shugrue, John D., counsel for Appellant

16.     Toomey, Joel B., the Honorable District Court Magistrate Judge

<u>**Corporate Disclosure Statement**</u>

Appellant Crowley Maritime Corporation is a privately held corporation and is not publicly traded.  Appellant Crowley Maritime Corporation is wholly owned by Crowley Holdings, Inc.  No publicly-held corporation owns 10% or more of Appellant Crowley Maritime Corporation.  No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.    A Claim Was First Made Against Mr. Farmer And Notice Of That Claim Was Given To National Union In 2008. ...............................................3

    A.    Under the Plain Meaning Of The Policy, A Claim Was First Made Against Mr. Farmer On April 16, 2008. ....................................6

    B.    Crowley Gave Notice Of A Claim To National Union In 2008 During The Policy Period. ...................................................................10

    C.    Notice Was Timely, Even Under The Irrelevant Run-Off Endorsement, Based On The District Court's Findings. ......................13

II.    *Res Judicata* Does Not Apply. ....................................................................15

    A.    There Is No Identity Of the Causes Of Action. ...................................15

    B.    *Res Judicata* Does Not Apply Because National Union Seeks An Inequitable Result. ........................................................................18

III.    Crowley's Action Is Not Barred By The Statute Of Limitations. .................22

CONCLUSION ..................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Ace American Ins. Co.*,
    100 A.3d 283 (Pa. Super. 2014) ......................................................................9

*Amerisure Mut. Ins. v. Summit Contractors, Inc.*,
    2012 WL 716884 (M.D. Fla. Feb. 29, 2012).................................................4

*Carroll v. TheStreet.com*,
    2014 WL 5474061 (S.D. Fla. July 07, 2014) .............................................25

*Doe v. Allied-Signal, Inc.*,
    985 F.2d 908 (7th Cir. 1993) ......................................................................17

*Empire Fire & Marine Ins. Co. v. J. Transp., Inc.*,
    880 F.2d 1291 (11th Cir. 1989) ..................................................................21

*Goldberg v. Nat'l Union Fire Ins. Co.*,
    143 F. Supp. 3d 1283 (S.D. Fla. 2015).......................................................24

*Grissom v. Commercial Union Ins. Co.*,
    610 So. 2d 1299 (Fla. 1st DCA 1992) ........................................................24

*Gulf Ins. Co. v. Dolan, Fertig & Curtis*,
    433 So. 2d 512 (Fla. 1983) .........................................................................12

*HealthSmart Benefit Solutions, Inc. v. Principia Underwriting*,
    2015 WL 339524 at * 3(W.D.La. Jan. 23, 2015) .........................................8

*Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n.*,
    210 So.2d 750 (Fla. 4th DCA 1968).....................................................16, 17

*Highwood Properties, Inc. v. Executive Risk Indem., Inc.*,
    407 F.3d 917 (8th Cir. 2005) ........................................................................4

*HR Acquisition I Corp. v. Twin City Fire Ins. Co.*,
    547 F.3d 1309 (11th Cir. 2008) ...........................................................5, 9, 10

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
    749 F.3d 962 (11th Cir. 2014) ....................................................................11

ii

*Jennings Construction Service Corp. v. ACE American Ins. Co.*,
  783 F.Supp.2d 1209 (M.D.Fla. 2011)..................................................................12

*Machules v. Dep't of Admin.*,
  523 So. 2d 1132 (Fla. 1988) ..............................................................................25

*MapleWood Partners, LP. v. Indian Harbor Ins. Co.*,
  295 F.R.D. 550 (S.D. Fla. 2013).........................................................................24

*Medical Depot, Inc. v. RSUI Indemnity Co.*,
  2016 WL 5539879 (Del. Super. Sept. 29, 2016) ............................................8, 9

*Millennium Labs, Inc. v. Allied World Assurance*,
  165 F. Supp. 3d 931 (S.D. Cal. 2016)..................................................................18

*Monahan v. Paine Webber Grp., Inc.*,
  724 F. Supp. 224 (S.D.N.Y. 1989) .....................................................................17

*Morales v. Zenith Ins. Co.*,
  2010 WL 2293199 (M.D. Fla. June 8, 2010) ......................................................24

*Office Depot, Inc. v. National Union Fire Inc. Co.*,
  453 Fed.Appx. 871 (11th Cir. 2011)....................................................................14

*Seff v. Broward County, Fla.*,
  691 F.3d 1221 (11th Cir. 2012) ..........................................................................22

*Starling v. R.J. Reynolds Tobacco Co.*,
  845 F. Supp. 2d 1215 (M.D. Fla. 2011)...............................................................25

*State St. Bank & Trust Co. v. Badra*,
  765 So.2d 251 (Fla. 4th DCA 2000).....................................................................18

*Tzung v. State Farm Fire & Cas.*,
  873 F.2d 1338 (9th Cir. 1989) ..............................................................................4

**Statutes**

Fla. Stat. Ann. § 95.051(f) ........................................................................................26

Fla. Stat. Ann. § 95.051(g)........................................................................................26

## **INTRODUCTION**

National Union, one of the largest and most sophisticated insurers in the nation, argues that this Court should ignore the plain meaning of its Policy language.[1] In so arguing, National Union cannot show that applying its Policy language as written would lead to an unreasonable result under the facts here. Rather, National Union concocts an irrelevant hypothetical involving an insured completely unaware that a Claim has been asserted, to argue that Crowley's policy interpretation would be unreasonable in *that* scenario. This Court should apply the Policy language that National Union drafted according to its plain meaning and based on the facts that actually are presented, and reverse the District Court.

The record here demonstrates that far from being unaware that any Claim had been asserted, Crowley knew (and told National Union) in April 2008 that a DOJ Investigation had been initiated, that a search warrant involving Mr. Farmer had issued in connection with the DOJ Investigation, and that a search warrant affidavit had been filed in connection with the warrant, but was judicially sealed and unavailable. National Union acknowledged in response to Crowley's April 2008 notice that Crowley had sent a notice of a Claim, but unilaterally decided to treat Crowley's correspondence as a "notice of circumstances."

---

[1] Unless otherwise noted, defined terms have the same meaning as set out in Crowley's Brief.

National Union also fails to reconcile, or even address, a fatal inconsistency in the District Court's opinion, which simultaneously held in one part of the ruling that no Claim had been made and reported to National Union before November 2013, but in another part of the ruling found that a Claim regarding the DOJ Investigation was made, reported, and accepted by National Union in February 2013. The District Court, based on its own findings, erred in concluding that a Claim was not made and reported until 2015, and its ruling should be reversed.

Unable to contest Crowley's contract interpretation arguments on their merits, National Union resorts to *res judicata* and the statute of limitations to avoid liability. *Res judicata* does not apply, however, because, as the District Court recognized, the facts fundamentally changed between the prior Arbitration and the initiation of this lawsuit in the District Court. *Res judicata* also does not apply for the independent reason that depriving Crowley of its bargained-for coverage under these facts would be inequitable. This Court also should decline National Union's invitation to take up National Union's statute of limitations defense because it was not even ruled on by the District Court and it raises disputed issues of fact that cannot, in the first instance, be resolved by this Court. Even were this Court inclined to resolve a limitations defense that was not examined by the District Court, that defense does not apply here for reasons explained below.

# ARGUMENT

## I. A Claim Was First Made Against Mr. Farmer And Notice Of That Claim Was Given To National Union In 2008.

The District Court erred in concluding that Crowley's notice of a Claim against Mr. Farmer was "untimely." National Union attempts to justify the District Court's error by spending much of its Brief attacking a straw man factual scenario, where the insured is "completely unaware" of a "secret document," and then loses coverage based on late-notice of such "secret document." (NU Br. at 17-18, 20.) The facts of this case bear no resemblance to National Union's hypothetical. Here, it is clear that: (1) Crowley, Mr. Farmer and National Union were aware of the existence of the Affidavit (although its contents were sealed) during the Policy Period; and (2) Crowley gave notice of the DOJ Investigation as a Claim to National Union during the Policy Period. (Doc. 36-5.) That is all the Policy requires.

National Union's observation that Crowley's interpretation of the Policy might "cause insureds to lose coverage if they fail to report things of which they are completely unaware" (NU Br. at 18) has no relevance here. Far from championing "reason" and "fairness," National Union's position seeks an unreasonable and unfair result by depriving an insured of coverage based on the unavailability of a sealed document in the face of a *known* DOJ Investigation, a *known* search warrant, and a *known* (albeit sealed) Affidavit. Indeed, by virtue of

the fact that the search warrant was executed in April 2008, it was also known at that time that the sealed Affidavit established probable cause to search Mr. Farmer's office and computer in connection with a criminal antitrust investigation. The facts here in no way resemble National Union's hypothetical, and there is nothing "unfair" or "unreasonable" about applying the Policy language according to its plain meaning.

National Union asks this Court to do what it cannot by interpreting policy language in a vacuum, without reference to the facts that are actually presented. *See, e.g., Amerisure Mut. Ins. v. Summit Contractors, Inc*., 2012 WL 716884, at *15 (M.D. Fla. Feb. 29, 2012) ("[a]lthough the construction of an insurance policy is a question of law for the Court, the Court cannot construe the insurance policies in a factual vacuum"). *See also Tzung v. State Farm Fire & Cas.*, 873 F.2d 1338, 1340 (9th Cir. 1989) (meaning of policy "is to be derived from the circumstances of the particular case and not in the abstract"); *Highwood Properties, Inc. v. Executive Risk Indem., Inc*., 407 F.3d 917, 923–24 (8th Cir. 2005) ("[c]ontext is often central to the way in which policy language is applied"). This Court should decline to interpret the Policy language at issue based on how it might apply to a "secret document" scenario that has nothing to do with the facts presented.

Moreover, National Union's reliance on the "secret document" scenario is entirely hypocritical. In its irrelevant scenario, National Union argues that it would

be unreasonable and unfair to blame its hypothetical insured for late notice of a claim where the insured, through no fault of its own, was totally unaware of the claim. Here, however, National Union wants to deprive coverage to an equally blameless insured, Crowley, because, through no fault of its own, Crowley was unable to provide National Union with a sealed and unavailable Affidavit that both Crowley and National Union knew existed. National Union's "fairness" arguments support coverage here.

Finally, National Union's argument is inconsistent with this Court's holding in *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309 (11th Cir. 2008). In *HR Acquisition*, this Court applied a prior or pending litigation exclusion to bar coverage to the insured, even though the insured was not served with the underlying complaint that gave rise to operation of the exclusion. *Id.* at 1317. Without even addressing whether the insured was aware of the complaint (presumably it was not), this Court enforced the exclusion based on the plain language of the policy, which did not include an express service requirement, in contrast to another part of the policy that did have such a requirement. *Id.* at 1318 ("the Policy drafters knew how to specify when service of a complaint was required"). The outcome in *HR Acquisition* makes clear that this Court will not read into a policy language that requires a document to be received by an insured if no such language actually appears in the policy, even if this causes a harsh result,

because that is the parties' bargain.  National Union cannot escape its bargain here based on the straw man it erects in its Brief.

**A.    Under the Plain Meaning Of The Policy, A Claim Was First Made Against Mr. Farmer On April 16, 2008.**

Under the plain meaning of the Policy, there is no requirement that the writing that evidences the "Claim" be received by the insured before it becomes a "Claim."  The Policy provides that a Claim is made and exists "once an Insured Person is identified in writing" by an investigating authority as a person against whom a criminal proceeding "may be commenced."  (Doc. 1-1 at 8.)  There is no requirement in this section of the Policy that an Insured be served with or receive a copy of the writing, even though such a requirement *is* imposed in other sections of the definition of Claim.  (*Id.*)  The availability to National Union of language that would have imposed such a requirement also is echoed in a clause contained in a companion policy that National Union sold to Crowley for the same time period, which states that "[a] Claim shall be considered to have been first made against an Insured when written notice of such Claim ***is received*** by any Insured…."  (Doc. 36-14 at 17-18 (emphasis added).)  The lack of any such requirement in the Policy at issue here is fatal to National Union's interpretation because it would require this Court to graft language into a clause where National Union chose not to include it.

6

Under the plain Policy language that applies here, a Claim was made when Mr. Farmer was identified in writing in the April 2008 Affidavit as an individual against whom a proceeding *may* be commenced (and a proceeding of course was commenced in February 2013). National Union, Crowley and Mr. Farmer were all aware of the existence of the Affidavit in 2008, and there is nothing in the Policy that required the April 2008 Affidavit to be provided to the Insured before it could constitute a Claim. That the Affidavit was judicially sealed and unavailable to Crowley does not change that it was filed with the Court in April 2008; nor does it alter the actual content of the Affidavit.

In an attempt to avoid the plain effect of its Policy language, National Union cites to irrelevant cases that merely stand for the general proposition that a claims-made policy is one where coverage depends on the claim being "discovered." (NU Br. at 19.) But there is no dispute here that Crowley, National Union and Mr. Farmer "discovered" the existence of the Affidavit in 2008 based on the service of the search warrant. The search warrant expressly referred to the Affidavit. (Doc. 36-21 at 7.) Even though the parties did not have access to the contents of the Affidavit, they most assuredly had "discovered" its existence.

Moreover, unlike the irrelevant cases cited by National Union, the cases cited by Crowley in its Brief support the conclusion that a Claim can be "made" against an Insured even if the Insured is unaware of or does not have a copy of the

writing evidencing the Claim, so long as the policy language, like that here, dictates such a result.  National Union fails to distinguish these cases.

The court in *HealthSmart Benefit Solutions, Inc. v. Principia Underwriting*, for example, expressly rejected the exact argument National Union makes here by refusing to hold that a Claim is not "made" until the insured is "aware" of the Claim:

> In essence, [the insured] argues that the Policy requires as a precondition, that the insured must be aware of a claim and "by its very nature" the making of a "Claim" involves some type of notice to the insured. [The Insured]'s argument, however, is not supported by the Policy language.

2015 WL 339524 at * 3 (W.D.La. Jan. 23, 2015).  National Union argues that *HealthSmart* is distinguishable because it involved a provision that allowed the insured to give notice after the policy period ended, but that has nothing to do with the policy interpretation issue on which its ruling is based.  Here, there was a Claim during the Policy Period because the Policy language, like that in *HealthSmart*, does not require the Insured to have received the Claim.  Moreover, the factual record here establishes that Crowley gave notice of the Claim – the DOJ Investigation – during the Policy Period.  (Crowley Br. at 26-29.)

Equally unavailing is National Union's attempt to distinguish the decision in *Medical Depot, Inc. v. RSUI Indemnity Co.*, 2016 WL 5539879 (Del. Super. Sept. 29, 2016).  National Union argues that *Medical Depot* can be ignored because the

insured in that case had a copy of the unserved complaint at issue and it thus does not hold that there is a "Claim" when the insured is completely unaware of the Claim. (NU Br. at 20.) National Union misses the import of the decision in *Medical Depot*. The salient point of *Medical Depot* is that the court must look to and enforce the relevant portions of the Claim definition in determining when a Claim has been made. In that case, the court held that an unserved complaint was a Claim because even though one subpart of the definition of "Claim" had a service requirement, another subpart did not have such a requirement. *Id.* at *9. The court thus enforced the plain language of the policy, which did "not exclude an unserved complaint for monetary damages from the definition of Claim." *Id.* Here, too, this Court should enforce the language of National Union's Policy, which did not require the sealed Affidavit to be received by the Insured to meet the definition of Claim.

Finally, National Union attempts to distinguish the decisions in *HR Acquisition* and *AmerisourceBergen Corp. v. Ace American Ins. Co.,* 100 A.3d 283 (Pa. Super. 2014) on the grounds that "[n]either case has anything to do with when a claim can be said to have been 'made'." (NU Br. at 20.) Once again, National Union misses the salient point of the cases, which is that courts must enforce insurance policy language as written, without inserting words or conditions that are not there. *See, e.g., AmerisourceBergen Corp.,* 100 A.3d at 288 ("[n]othing in the

ordinary meaning of" the policy's terms "required service of original process or unsealing of the complaint in order for an action to be 'filed' or 'commenced.'").

As discussed above, in *HR Acquisition*, this Court applied a prior or pending litigation exclusion based on the pendency of a lawsuit that had never been served on the insured. 547 F.3d at 1317. The Court reached this result by applying the plain language of the policy, noting that the prior or pending exclusion did not include any requirement that the insured be served with the prior or pending litigation, whereas another part of the policy did have such a requirement. *Id.* at 1318. *HR Acquisition* establishes that policy language gets construed as it is written. Here, the District Court erred by failing to apply the plain language of the Policy to the facts, and its ruling should be reversed.

### B. Crowley Gave Notice Of A Claim To National Union In 2008 During The Policy Period.

National Union's contention that Crowley did not "report" the Affidavit during the Policy Period is another attempt to impose on Crowley conditions beyond those set out in the plain language of the Policy. The relevant Policy clause provides that Crowley must give "written notice to the insurer of a Claim made against an Insured." (Crowley Br. at 26.) Unlike other clauses in the Policy, it does **not** say that Crowley is required to provide any specific particulars of the Claim; nor does it require that Crowley prove its entitlement to coverage as part of its notice. (*Id.*)

National Union's argument ignores the wording of the Policy and instead attempts to conflate the requirements of the notice clause with a requirement that Crowley prove that the Claim is covered under the Policy. No such requirement appears in the Policy. Under the plain language of the Policy, written notice of a Claim is all that is required. This language does not suggest that an Insured must provide the documents to prove that a covered Claim has been made to establish that it has provided "written notice." Indeed, insureds routinely give notice of a Claim without also having all of the documents to prove that the Claim is covered. As but one example, in the context of excess coverage, notice is not rendered invalid by virtue of the fact that an insured cannot prove that defense costs or damages will reach the attachment point of the excess policy, even though that is a condition of coverage.

Crowley provided the required written notice to National Union in April 2008 and, indeed, National Union admitted that the DOJ Investigation was "submitted to National Union as [a] Claim[] under the Policy." (Doc. 36-6 at 3.) Crowley cannot be held to a standard that requires it to forward specific documents or do anything beyond what it did here, given the absence of language that specifically required it to take further action. *See, e.g., Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) ("[C]ourts may not

rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.").

In this regard, the two notice cases cited by National Union actually support Crowley's position. In both cases, the courts held that the extent of the insured's obligation was to report the claim during the policy period, ***not*** to provide all of the documents supporting the claim during the policy period. *See Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515 (Fla. 1983) ("[i]f the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay"); *Jennings Construction Service Corp. v. ACE American Ins. Co.*, 783 F.Supp.2d 1209, 1213 (M.D.Fla. 2011) (same). As National Union points out, the court in *Gulf Insurance* explicitly stated that the claim need only be "brought to the attention of the insurer within the policy term." 433 So.2d at 514. That is precisely what happened here. The Claim was brought to National Union's attention by both Crowley and Mr. Farmer's counsel. (Docs. 36-5; 36-18; 36-21.)

Finally, National Union's position that Crowley did not satisfy its notice obligations by reporting only an "Investigation" during the Policy Period actually supports Crowley's argument. ***First,*** by making this argument National Union concedes that Crowley did give notice of the DOJ Investigation – the Claim at issue here – during the policy period. ***Second***, National Union's argument admits that "an Investigation … rises to the level of a Claim ***after one or more Insured***

12

*Persons have been identified in writing* by the government as persons who may be the subject of further proceedings." (NU Br. at 22 (emphasis added).) The undisputed evidence here shows that the Affidavit *did* identify Mr. Farmer in writing as a person who may be the subject of further proceedings on April 16, 2008. National Union's own argument demonstrates that notice of a Claim was given to National Union in 2008.

### C. Notice Was Timely, Even Under The Irrelevant Run-Off Endorsement, Based On The District Court's Findings.

Because the Claim was made against Mr. Farmer and notice of the Claim was given to National Union in 2008, how the Run-off Endorsement, which extends the time to provide notice of a Claim to November 2013, operates under these facts is irrelevant here. Even were this not the case, the District Court acknowledged that the DOJ Investigation was recognized and accepted by National Union as a Claim in February 2013, during the timeframe of the Run-Off Endorsement. (Crowley Br. at 25-26.) National Union does not even attempt to explain, let alone resolve, the critical inconsistency between the District Court's finding that notice was given and accepted in February 2013, and its ruling that notice was somehow untimely under a Run-Off Endorsement that allowed the insured until November 2013 to give notice.

Rather than meet this fatal inconsistency head-on, National Union erroneously argues, without citation to Crowley's Brief, that Crowley "suggests

that its 2015 submission of the Affidavit should relate back to the April 23, 2008 Notice of Circumstance." (NU Br. at 27.) As made clear in Crowley's Brief, this is not Crowley's argument. (Crowley Br. at 29-32.) National Union is attempting to rebut a "relation-back" argument that Crowley does not even make.

Because Crowley is not relying on "relation-back", National Union's reliance on *Office Depot, Inc. v. National Union Fire Inc. Co.*, 453 Fed.Appx. 871 (11th Cir. 2011) is misplaced. In *Office Depot*, the insured received letters from the SEC, none of which were a "claim" under its policy, but that Office Depot reported as a notice of circumstances. *Id.* at 876. Several months later, a lawsuit that constituted a "claim" was filed against Office Depot. The court held that Office Depot could not collect the defense costs it incurred between the notice of circumstances and the subsequent claim. *Id.* at 878. This case is not like *Office Depot*. Here, Crowley gave notice of a Claim, not notice of circumstances. Here, unlike in *Office Depot,* there was a Claim against the insured at the time of original notice, but Crowley did not have a copy of the Affidavit. Crowley is not seeking coverage for costs incurred in response to circumstances that later ripened into a Claim. It is seeking coverage for costs incurred in response to events that were a Claim all along. *Office Depot* does not apply.

## II. *Res Judicata* Does Not Apply.

### A. There Is No Identity Of the Causes Of Action.

National Union's assertion that there is an "identity of the cause of action" between this lawsuit and the Arbitration is directly contrary to the factual record and applicable law, as recognized by the District Court.

National Union's *res judicata* position is grounded in a gross overstatement of the scope of the Arbitration. Although National Union asserts that the issue decided in the Arbitration was whether a "Claim was made against Mr. Farmer and timely reported to National Union in April 2008" (NU Br. at 12), the Arbitration shows otherwise. The Arbitration *did not* involve whether notice was provided or whether a Claim was "reported," and in fact the Panel made numerous references to the fact that Crowley provided National Union with "notice of claim" in April 2008 and thereafter. (Doc. 36-7 at 3-4.)

Rather, the Arbitration involved only the issue of whether the contents of the documents available to the parties at the time of the Arbitration – which did not include the Affidavit – constituted a Claim. The Panel's Award was therefore narrowly limited to this specific issue: "The materials submitted to National Union did not constitute a Claim for Insured Persons as the term 'Claim' is defined in the Policy" and the "triggering event" for coverage had "not yet been presented to National Union." (Doc. 36-6 at 3, 4.) As the District Court recognized, "[a]s

Crowley was unable to submit the sealed Affidavit to National Union, it could not have been considered by the arbitration panel" and "National Union itself argued to the panel that the Affidavit should not be considered as part of the evidence." (Doc. 53 at 15.)  The Panel's decision, which was unquestionably limited to the documents before it, thus did not and could not address the post-Arbitration facts and conditions that are the basis for this action: the post-Arbitration unsealing of the Affidavit and National Union's rejection of Crowley's presentation of the Affidavit as establishing that a Claim was made in 2008.

In an apparent attempt to distance itself from the Arbitration that was – at National Union's insistence – limited in scope, National Union then argues that the doctrine of *res judicata* should apply here because the "new fact" in this case is an "*old* affidavit."  (NU Br. at 13 (emphasis in original).)  National Union's position is inconsistent with the law and the factual record.

National Union cites a single case, *Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n.*, 210 So.2d 750 (Fla. 4th DCA 1968), to support its statement that "[u]nder Florida law, a party can avoid the *res judicata* effect of prior litigation only where the second action is based on new facts which did not *exist* at the time of the first action."  (NU Br. at 13 (emphasis in original).)  But *Hialeah* does not actually stand for this proposition.  In *Hialeah*, holders of permits authorized to conduct horse racing sought to have a Florida statute declared

unconstitutional. *Id.* at 751. The court held that a prior Supreme Court decision adjudging the same statute constitutional was not *res judicata* of the later case because "[t]he allegations of the complaint sufficiently set forth changed conditions and new facts which did not exist at the time of the Supreme Court's decision." *Id.* at 754.

The court in *Hialeah* recognized that the applicability of *res judicata* in each case "turns on the particular facts alleged in each action and the particular disposition of the allegations in the first action." *Id.* Applying this fact-specific test, other federal courts have held that *res judicata* is not a bar to a second complaint, even if the relevant facts existed at the time of the initial suit, so long as the plaintiff was unaware of those facts through no fault of its own. *See Monahan v. Paine Webber Grp., Inc.*, 724 F. Supp. 224, 226 (S.D.N.Y. 1989) (*res judicata* is not a bar to second complaint based on facts that could not have been pleaded at the time of prior arbitration); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) (*res judicata* is not a bar to subsequent litigation if plaintiff is unaware of facts that were not discoverable through due diligence when original complaint was filed).

As importantly, National Union's description of this lawsuit as involving an "old" fact, because the Affidavit technically existed at the time of the Arbitration, is simply wrong. The District Court correctly recognized that National Union had

this wrong when it held that "the Affidavit is more like newly discovered evidence because neither party had a reasonable ability to discover its content." (Doc. 53 at 16.) Although the existence of the Affidavit was known, this misses the fundamental point that the facts within it were not available during the Arbitration and could not be considered due to its court-ordered unavailability.[2] In this regard, Crowley does not argue, as National Union tries to posit, that "every time the plaintiff finds a new piece of evidence this makes it an entirely new cause of action." (NU Br. at 13.) That is a canard. The judicial unsealing and availability of the Affidavit and its contents is a fundamentally important new and intervening fact that formed a critically important new basis for Crowley's claims in this litigation. *Res judicata* does not apply in these circumstances. *See State St. Bank & Trust Co. v. Badra,* 765 So.2d 251, 254 (Fla. 4th DCA 2000); *Millennium Labs, Inc. v. Allied World Assurance*, 165 F. Supp. 3d 931, 933 (S.D. Cal. 2016) (treating recently unsealed documents as "new evidence" meriting reconsideration of prior decision). National Union's *res judicata* defense fails.

**B.**     *Res Judicata* **Does Not Apply Because National Union Seeks An Inequitable Result.**

National Union's *res judicata* defense also fails for the independent reason

---

[2] National Union does not dispute the District Court's conclusion that "it is unlikely that a court would have been willing to jeopardize the ongoing investigation by unsealing the Affidavit just to help Crowley get insurance coverage." (Doc. 53 at 16.)

that applying the doctrine here – even if all of the elements are technically present (which they are not) – would "inflict pernicious results." (Crowley Br. at 40.) Crowley only seeks to have National Union do what its Policy was intended to do but for a circumstance out of Crowley's control: pay the reasonable defense costs of an Insured after he was identified by the prosecuting agency in writing as a person against whom a criminal proceeding may be brought. Applying *res judicata* would inequitably allow National Union to reverse course by: (1) first persuading the Arbitration Panel to base its decision only on documents that were available and presented at the time of the Arbitration; and (2) then persuading this Court to ignore the very document, unavailable during the Arbitration, that compels a different outcome and that National Union convinced the Panel not to consider. There is nothing equitable about such a result.

In trying to show that the result it seeks is somehow "equitable," National Union makes three meritless arguments.

**First**, National Union argues Crowley should be deprived of coverage because Crowley entered into a plea agreement in connection with the DOJ Investigation. (NU Br. at 14.) But the defense costs Crowley seeks have nothing to do with its own involvement in the DOJ Investigation. Rather, they are the costs of defending Mr. Farmer, who was ***acquitted*** of any wrongdoing. (36-32 at 2.) There is nothing inequitable about enforcing National Union's obligations under

these circumstances, particularly when the Policy expressly forbids National Union from asserting a defense it might have for covering a Claim against one Insured (Crowley) as a defense against paying amounts for a Claim made against another Insured (Mr. Farmer).[3]  Crowley was indemnifying its innocent insured as it was required to do, thus taking on a responsibility that National Union could have taken on in the first instance under the Policy coverage provided directly to Mr. Farmer. National Union cannot now rely on principles of "equity" to deny coverage when its Policy expressly prohibits it from denying coverage for one Insured based on the conduct of another Insured.

*Second*, National Union argues that the result it seeks is "equitable" because Crowley is seeking a "second bite at the apple."  (NU Br. at 15.)  National Union's argument is completely circular, suggesting that if other elements of *res judicata* are met, it is inequitable for a party to avoid *res judicata* based on the equities. This makes no sense and would effectively eliminate the "equities" prong of a *res judicata* defense wherever the other elements of the defense are met.  National Union's "second bite" argument also ignores the fact that the law has long recognized that *res judicata* has limited application to declaratory proceedings.

---

[3] The Policy accomplishes such severability in two different ways: (1) the exclusion that bars coverage for "criminal acts" explicitly states that it applies only if there is a final adjudication adverse to "***the*** insured," not one adverse to "***any*** insured"; and (2) the Policy has a "Severability of Exclusions" clause stating that "the facts pertaining to . . . any Insured shall not be imputed to any other Insured Person." (Doc. 1-1 at 54, 73.)

*See Empire Fire & Marine Ins. Co. v. J. Transp., Inc.,* 880 F.2d 1291 (11th Cir. 1989). The relief sought in the Arbitration was declaratory in nature insofar as the actual issue litigated in the Arbitration was whether the documents presented ***at that time***, not including the Affidavit, constituted a Claim. (Crowley Br. at 39-40.)

National Union attempts to distinguish *Empire Fire* by asserting (without citation) that the Arbitration panel "actually decided" that "as of January 2013 National Union had no obligation to pay anything because no Claim as defined in the Policy had been reported." (NU Br. at 15.) That is a mischaracterization of the Arbitration, which determined only that the documents presented to National Union did not constitute a Claim, not that Crowley had failed to provide notice of a Claim. The Award merely held that the "triggering event" establishing the existence of a Claim had "not yet" been presented to National Union (Doc. 36-6) – a holding that made a declaration as to the sufficiency of the materials presented to date, but that did not exclude Crowley's later submission of additional materials to prove the existence of a Claim.

***Finally***, National Union focuses narrowly on "fairness" to itself, misrepresenting the facts to argue that it would be "unfair" to require it to cover Mr. Farmer's defense costs because National Union had "no opportunity" to review or control them. This argument is belied by the facts. Crowley immediately notified National Union of the DOJ Investigation, and both Crowley

and Mr. Farmer's counsel provided National Union with updates and defense cost invoices on multiple occasions over several years, asked National Union to provide its litigation guidelines, and offered to discuss with National Union the details of the work done for Mr. Farmer. (Docs. 36-5, 36-18 to 25.)  National Union ignored these communications, even though the Policy expressly gave National Union the right to advance defense costs, while reserving its right to later deny coverage and to recoup all such advancements.  (Docs. 1-1 at 16, 36-28, 36-29.)  National Union is not being treated "unfairly" at all.   National Union chose to sit on its hands and provided no input.  The result it seeks is not equitable, and *res judicata* does not apply here.

## III.   Crowley's Action Is Not Barred By The Statute Of Limitations.

National Union's statute of limitations argument – which was not addressed by the District Court – should not even be reached by this Court because it involves disputed issues of fact, including whether National Union's conduct tolled the statute of limitations.  *See, e.g., Seff v. Broward County, Fla.,* 691 F.3d 1221, 1223 (11th Cir. 2012) ("If the record presents disputed issues of fact, the [appellate] court may not decide them.)   (citation omitted).   National Union's argument also fails as a matter of law for the following reasons.

*First,* Crowley does not argue that it did not "discover" National Union's breach of the Policy until 2015, as National Union suggests.   Rather, National

Union's breach is its 2015 refusal to accept the contents of the unsealed Affidavit after it first became available as establishing a Claim. Crowley's Complaint was filed within the five-year statute of limitations for this breach. National Union's argument is further undermined by its assertion that there was no "continuing breach" because "the arbitration panel decided in January 2013 that National Union did not have a continuing duty to do anything." (NU Br. at 31, fn. 8.) In so arguing, National Union concedes that the breach for which Crowley seeks recovery in this action occurred *after* the 2013 Arbitration, when Crowley presented the Affidavit to National Union in 2015.

Moreover, National Union's attempt to argue that its breach occurred in 2008 ignores the facts. National Union's 2008 coverage position was explicitly "based upon the materials submitted," and was subject to the caveat that National Union remained "willing to reevaluate coverage … at any time." (Doc. 36-26 at 2.) That is exactly what happened in 2015. National Union's argument is classic "heads I win, tails you lose." National Union asserts that because the Arbitration was completed before the Affidavit was unsealed, *res judicata* bars an action filed by Crowley after the unsealing; but if Crowley had waited for the unsealing before proceeding against National Union, it asserts that Crowley's claim would be barred because of the running of the statute of limitations.

*Second*, where, as here, an insurer breaches its defense obligation, the statute

of limitations does not begin to run until the insured's "liabilities or rights have been finally and fully adjudicated" in the underlying matter. *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1309–10 (Fla. 1st DCA 1992) (citation omitted); *Morales v. Zenith Ins. Co.*, 2010 WL 2293199, at *2 (M.D. Fla. June 8, 2010). It makes no difference that these cases were decided with reference to "duty to defend" principles, because such principles apply equally when, as here, an insurer is required to advance defense costs. *See, e.g., Goldberg v. Nat'l Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1293 (S.D. Fla. 2015); *MapleWood Partners, LP. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 601 (S.D. Fla. 2013).

Mr. Farmer's rights in connection with the DOJ Investigation were not fully and finally adjudicated until his 2015 acquittal. The Policy makes clear that there could be no such adjudication until after Mr. Farmer's trial ended insofar as it contains a provision that would have allowed National Union to seek repayment of advanced defense costs if Mr. Farmer had been convicted of a crime. (Doc. 1-1 at 16.) Because National Union might have been able to claw-back Mr. Farmer's defense costs after his trial, there cannot have been a final adjudication for coverage purposes until the end of his trial.

**Third**, even if National Union is correct that the statute of limitations should be calculated from its May 27, 2008 correspondence, the facts show that the statute of limitations should be equitably and statutorily tolled for the entire 1,169 days

between May 27, 2013 and August 8, 2016. Florida courts recognize equitable tolling, including in the civil context, where a plaintiff either: (1) "has in some extraordinary way been prevented from asserting his rights;" or (2) has been "misled or lulled into inaction." *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988); *Starling v. R.J. Reynolds Tobacco Co.*, 845 F. Supp. 2d 1215, 1236-40 (M.D. Fla. 2011); *see also Carroll v. TheStreet.com*, 2014 WL 5474061, *6 (S.D. Fla. July 07, 2014) (rejecting argument that equitable tolling applies only in administrative proceedings).

Both of these circumstances exist here. The judicial sealing and unavailability of the Affidavit for seven years, through no fault of Crowley, constitutes an "extraordinary circumstance" warranting the application of equitable tolling. *Id*. Moreover, National Union cannot credibly argue the logically inconsistent positions that there is no Claim until an insured has access to and can present its insurer with the contents of the Claim, but that the statute of limitations still runs against the insured during the period that the insured cannot obtain such access. The concept of equitable tolling was designed to avoid precisely such an unfair result.

Likewise, National Union's invitations to Crowley to submit material for further consideration "at any time" lulled Crowley into believing that it did not need to file any action against National Union based on the Affidavit until after it

became available.  National Union and its counsel explicitly invited Crowley to submit additional documents, telling Crowley if "you have additional information you would like to provide, we continue to welcome you to do so at any time." (Doc. 36-26 at 2.)

Moreover, Florida statutes tolled the statute of limitations here for 1,307 days.  Pursuant to Fla. Stat. Ann. § 95.051(g), which tolls the statute during the "pendency of … [an] arbitral proceeding," the statute was tolled for 328 days, from March 7, 2012 (Arbitration commenced), to January 29, 2013 (Award issued). Pursuant to Fla. Stat. Ann. § 95.051(f), which tolls the statute during the "payment of any part of … liability founded on a written instrument," the statute was tolled for a further 979 days, from February 18, 2013, when National Union first agreed to pay Mr. Farmer's post-indictment defense costs, until October 24, 2015, the last date on which National Union paid any of Mr. Farmer's defense costs.  (Docs. 36-11, 36-30, 36-31.)

Because the statute of limitations was equitably and statutorily tolled, National Union's statute of limitations defense should be rejected.

## CONCLUSION

For the foregoing reasons and the reasons discussed in Crowley's Appellant's Brief, Crowley respectfully requests that the Court reverse the District Court's summary judgment in favor of National Union and remand the case.

Dated: August 3, 2018                    Respectfully Submitted,


                                         /s/ John D. Shugrue
                                         John D. Shugrue
                                         Thomas A. Marrinson
                                         Emily E. Garrison
                                         REED SMITH LLP
                                         10 South Wacker Drive, 40th Floor
                                         Chicago, IL  60606-7507
                                         Telephone:  (312) 207-1000
                                         Facsimile:  (312) 207-6400
                                         jshugrue@reedsmith.com
                                         tmarrinson@reedsmith.com
                                         egarrison@reedsmith.com

                                         *Attorneys for Plaintiff-Appellant Crowley*
                                         *Maritime Corporation*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,471 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman with 14 point type for text and 12 point type for footnotes.

/s/ John D. Shugrue
**Counsel for Appellant,**
**Crowley Maritime Corporation**

Dated: August 3, 2018

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY service by UPS, postage prepaid, and CM/ECF a true and correct copy of the foregoing along with 6 copies upon the following clerk of court, this 3rd day of August, 2018:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

I HERBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will serve a Notice of Docket Activity on this 3rd day of August, 2018 to the following:

Michael P. Duffy
Scarlett M. Rajbanshi
Peabody & Arnold, LLP, 6th Floor
600 Atlantic Ave.
Boston, MA 02210-2261
Email: mduffy@peabodyarnold.com
        srajbanshi@peabodyarnold.com

Stephen Hunter Johnson
Jason Benjamin Bloom
Lydecker Diaz
1221 Brickell Ave 19th Flr
Miami, FL 33131-3240
Email: shj@lydeckerdiaz.com
        jbloom@lydeckerdiaz.com

/s/ Emily E. Garrison
**Counsel for Appellant,**
**Crowley Maritime Corporation**