# EXHIBIT A

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10953
_____

D.C. Docket No. 3:16-cv-01011-TJC-JBT

CROWLEY MARITIME CORPORATION,

Plaintiff-Appellant,

versus

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 23, 2019)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This case involves an unusual and factually complex insurance coverage dispute between two sophisticated parties.  It requires us to consider the coverage and reporting requirements in a claims-made executive and organization liability insurance policy that provides, <u>inter alia</u>, defense costs coverage for certain directors, officers, and employees of the insured.  After obtaining an unfavorable result in an arbitration proceeding, Plaintiff-Appellant Crowley Maritime Corporation ("Crowley Maritime") sued its insurer Defendant-Appellee National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") in federal court seeking reimbursement of over $2.5 million in legal defense fees paid on behalf of Thomas Farmer ("Farmer"), an employee of Crowley Liner Services, Inc. ("Crowley Liner" and, together with Crowley Maritime, "Crowley").  Jurisdiction is based on diversity.

Relying in part on the res judicata effect of the arbitration proceeding, the district court granted National Union's converted motion for summary judgment on grounds that Crowley failed to timely report the Claim[1] at issue in this appeal to National Union as required by the relevant insurance policy.  Crowley insists it timely reported the Claim even though an affidavit evidencing the Claim was under seal until after the relevant Claim reporting periods expired.  Although our

---

[1] Any capitalized term that is not otherwise defined in this opinion shall have the meaning, if any, given to such term in the Policy.

reasoning differs somewhat from the reasoning adopted by the district court, we affirm the district court's grant of National Union's converted motion for summary judgment.

## I.  BACKGROUND

A.  Factual Background.

*1.  Crowley purchases executive and organization liability insurance policy from National Union.*

Crowley Liner is a Jacksonville-based water freight carrier that carries freight between the United States and Puerto Rico.  It is a wholly owned subsidiary of Crowley Maritime.  National Union is among the largest providers of directors and officers insurance policies.  As it relates to this case, Crowley Maritime purchased liability insurance from National Union pursuant to Executive and Organization Liability Insurance Policy No. 061-36-48 (the "Policy"), which provided coverage for an initial Policy Period running from November 1, 2007 through November 1, 2008 and an extended Discovery Period running through November 1, 2013.  The Policy provided coverage on a "claims made" basis, meaning that National Union insured Crowley "solely with respect to Claims[2] first

---

[2] We note at the outset that in claims-made policies there are two separate "claims" that matter: the first is the "claim" brought by a third party against an insured during the policy period, and the second is the "insurance claim" submitted by the insured to the insurer for payment under the policy.  Both concepts are relevant here, and it is important to maintain a distinction between the "Claim" made against an Insured and the "insurance claim" reported to National Union when applying the facts presented in this appeal to the Policy.

3

made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of [the P]olicy." As relevant to the issues in this case, the Policy covered Defense Costs resulting from the investigation, adjustment, and defense of a Claim against an Insured (Farmer in this case).

> ### 2. Sealed search warrant Affidavit leads to execution of search warrant at Crowley Liner headquarters.

During the initial Policy Period, Crowley Liner and Farmer, Crowley Liner's then-Vice President of Price and Yield Management, attracted the attention of federal law enforcement officers. On April 17, 2008, a search warrant was executed at Crowley Liner's Jacksonville headquarters. The search warrant ordered that certain property be seized from Crowley Liner management, pricing, or sales personnel—including Farmer and three other individuals specifically named in the search warrant—in connection with a joint investigation by the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") of an alleged price-fixing conspiracy in the Puerto Rican trade lane.

On April 16, 2008, the day before federal law enforcement officers executed the search warrant, an FBI special agent signed and delivered an affidavit supporting the search warrant (the "Affidavit") to a federal magistrate judge in the Middle District of Florida. The Affidavit—which spans forty-eight pages and describes in great detail an ongoing FBI/DOJ antitrust investigation involving

4

several water freight carriers—asserted that Farmer and others had been involved in communications and agreements to allocate customers and coordinate pricing in violation of the Sherman Act.[3]  To protect the ongoing FBI/DOJ investigation, the Affidavit was sealed by court order the day it was presented to the magistrate judge.  The search warrant itself noted generally the existence of an affidavit supporting probable cause, but it did not specifically identify the Affidavit, reveal its content, or note that it had been placed under seal.  The detailed descriptions of Farmer's alleged conduct in the sealed Affidavit were not apparent from the face of the search warrant itself.  Crowley and Farmer also received subpoenas to appear before a grand jury, but Farmer never testified.

   *3. National Union accepts Crowley's notice of Claim as a notice of circumstances under section 7(c) of the Policy.*

   A little over a week later, in a letter dated April 25, 2008 (the "April 2008 Notice"), Crowley's insurance broker sent National Union a notice it characterized as a notice of a Claim.  An email attached to the April 2008 Notice provided the initial "details of a DOJ/FBI investigation," including a statement that "[t]he charges that may have [led] to the subpoena and search warrant are sealed at this point in time and no indictments have been filed."  Crowley also asked National

---

[3] Farmer eventually went to trial and a federal jury in Puerto Rico found him not guilty. See J. of Acquittal, United States v. Farmer, No. 13-0162 (D.P.R. May 8, 2015), ECF No. 460.

Union to consent to the retention of defense counsel and the expenditure of Defense Costs by Crowley and Farmer.

National Union responded to the April 2008 Notice in a letter dated May 27, 2008.  Although it acknowledged that Crowley had submitted the April 2008 Notice and other related information "as Claims under the Policy," National Union concluded that the Policy did not provide coverage because, in part, no one had been identified in writing as a target of the investigation as required by the Policy. National Union noted that its determination was "preliminary, as it [was] based solely upon the documentation currently available."  National Union did, however, accept the April 2008 Notice "as a notice of circumstances that may give rise to a Claim being made against an Insured, pursuant to Clause 7(c) of the Policy."  It then invited Crowley to submit additional information in the future that might be relevant to a coverage determination.

Crowley and National Union continued to correspond over roughly the next four years.  For its part, Crowley asserted that a Claim existed and had been reported to National Union in April 2008.  It also informed National Union of Farmer's mounting legal expenses.  National Union acknowledged the existence of circumstances that might eventually result in a Claim against an Insured Person, but it persisted in its denial of coverage.  Subject to customary reservation of rights

language, National Union also encouraged Crowley to send additional information that might be relevant to its coverage determination.

### 4. Arbitration panel enters decision favoring National Union's position.

Crowley eventually initiated arbitration, and the arbitrators held a hearing in December 2012. The proceeding addressed whether, based on the information provided to National Union at the time of the arbitration hearing, the FBI/DOJ investigation constituted a Claim under the Policy. The arbitration order noted that the evidence of a Claim presented to National Union at that time included only: the search warrant, the Farmer and Crowley subpoenas, several documents relating to a plea agreement entered into by Crowley, and the investigation relating to those documents. National Union encouraged the arbitrators to ignore the Affidavit,[4] and the arbitration order observed that "[t]he [A]ffidavit has remained sealed; therefore, its specific allegations have never been made known to Crowley or its

---

[4] See Hr'g Tr., ECF No. 36-9, at 25, 29, 37 ("The search warrant and the subpoena identified [Farmer and others] as people who may have relevant information, but on the face of the document, that is all it says . . . . Now, we know that there must have been an affidavit of some sort issued in order to get the search warrant issued, but we don't have the [A]ffidavit. Nobody here knows what it says. To the extent that [Crowley's expert] is testifying about what he thinks . . . the [A]ffidavit says, he's speculating. He's never seen the [A]ffidavit, and he doesn't know what it says. . . . The issue is whether these specific documents that were submitted to National Union in 2008 qualified. And the answer to that, consistently from National Union, has always been that they do not, because they don't identify . . . a person who may be charged. . . . The problem here is that nobody has seen the [A]ffidavit, and nobody knows what it says. And everybody is guessing what they think it says, but nobody knows what it says. That's the big problem here.").

employees." The Affidavit does not appear in the list of documents considered by the arbitrators as evidence of the FBI/DOJ investigation.

A majority of the arbitration panel entered a decision in favor of National Union on January 29, 2013. The arbitration order observed that "the triggering event for a Claim . . . is when the DOJ identifies in writing an Insured Person as one against whom a criminal proceeding may be commenced." It continued, ultimately concluding that "[t]he materials Crowley submitted to National Union did not constitute a Claim for Insured Persons as the term 'Claim' is defined in the Policy. The triggering event specified in the Policy has not yet been presented to National Union."

5. *Farmer receives and rejects Plea Offer, is acquitted at trial.*

In a letter dated February 11, 2013, the government offered to enter into a plea agreement with Farmer on certain terms and conditions, including acceptance of a recommended sentence (the "Plea Offer"). Crowley notified National Union of the Plea Offer in a letter dated February 15, 2013 (the "February 2013 Notice"). In response to the February 2013 Notice, National Union agreed to treat the FBI/DOJ investigation as a Claim under the Policy as of February 18, 2013 (the date it received the February 2013 Notice). In making this new coverage determination, National Union acknowledged that Crowley submitted the February 2013 Notice within the six-year Discovery Period and that it also "appear[ed] to be

8

related to prior correspondence [i.e., the April 2008 Notice] which was

acknowledged by [National Union] as a notice of circumstances under Section 7(c)

of the Policy."  National Union agreed to provide coverage for future Defense

Costs relating to the investigation (i.e., those incurred on or after February 18,

2013), but took the position that Crowley was not entitled to reimbursement of its

earlier Defense Costs (i.e., those incurred between April 25, 2008 and February 18,

2013 before National Union received notice of Farmer's Plea Offer).

      Farmer rejected the Plea Offer and went to trial.  Shortly before the end of

his trial, on April 24, 2015, the Affidavit was unsealed.  A federal jury in Puerto

Rico found Farmer not guilty and the United States District Court for the District

of Puerto Rico entered a judgment of acquittal on May 8, 2015.[5]  In a letter dated

July 22, 2015 (the "July 2015 Notice"), Crowley notified National Union that

Farmer had been acquitted and that it had received and reviewed a copy of the

unsealed Affidavit, which Crowley said made "clear" that a Claim had been

"asserted with respect to Mr. Farmer as of the date of filing of the search warrant

affidavit in April 2008."  It demanded reimbursement of $2,541,346.34 in legal

fees Crowley paid on Farmer's behalf (net of the Policy deductible) between the

date of the April 2008 Notice and the date of the February 2013 Notice.  National

Union refused, insisting it was not "obligated under the terms of the Policy to

---

[5] See note 3, supra.

reimburse Crowley for the fees." We note that National Union did cover almost $3 million in Defense Costs incurred in connection with Farmer's defense after it received Crowley's February 2013 Notice. These post-Plea Offer Defense Costs are not at issue in this appeal. Rather, the issue in this case involves Farmer's Defense Costs from April 2008 to February 2013.

B.  Procedural Background.

Crowley brought a diversity action for breach of contract against National Union in the United States District Court for the Middle District of Florida, claiming it was entitled to be reimbursed for its payment of Farmer's pre-February 2013 (pre-Plea Offer) Defense Costs. Crowley argued that the Claim based on the previously sealed Affidavit (hereafter referred to as the "Claim based on the Affidavit") not only existed all along but also was reported to National Union pursuant to the terms of the Policy. National Union moved to dismiss the complaint on grounds that the prior arbitration was res judicata to Crowley's breach of contract action and that it was also barred by the applicable statute of limitations. The district court converted National Union's motion to dismiss to a motion for summary judgment. The parties conducted discovery, filed supplemental briefing, and participated in a motion hearing before the district court.

In supplemental briefing, National Union repeated its res judicata and statute of limitations arguments, but it also raised a third argument: that Crowley's claim for coverage based on the Affidavit was untimely under the Policy because it was not reported to National Union until July 22, 2015, well after the extended six-year Discovery Period expired on November 1, 2013.  In response, Crowley argued that the arbitration was not res judicata to its claim for coverage based on the Affidavit because the arbitration was limited in scope and did not consider the unsealed Affidavit, and that the application of res judicata principles would be inequitable in any event.  It also argued that the statute of limitations did not accrue until 2015 when National Union denied coverage after receiving the unsealed Affidavit. Finally, Crowley also argued that it had timely reported the Claim in its April 2008 Notice, and in the alternative, that its July 2015 Notice was timely because it should relate back to the April 2008 Notice under section 7(c) of the Policy.

The district court granted National Union's converted motion for summary judgment and ordered that judgment be entered in favor of National Union. Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 307 F. Supp. 3d 1286, 1297 (M.D. Fla. 2018).  It found that Crowley did not notify National Union of the existence of the unsealed Affidavit until 2015.  Id. at 1291.  As a result, the district court concluded that the December 2012 arbitration proceeding was not res judicata to Crowley's claim for coverage based on the Affidavit because the

unsealed Affidavit was "like newly discovered evidence." Id. at 1291–95 (citation omitted). Framing the issues as a "catch-22 for Crowley," the district court went on to conclude that, even though the limited-scope arbitration did not preclude consideration of the unsealed Affidavit in Crowley's federal lawsuit, Crowley's reporting of the Claim based on the Affidavit in 2015 was still untimely under the Policy because the Discovery Period ended on November 1, 2013. Id. at 1291, 1295–97. In the alternative, the district court concluded that if a Claim based on the Affidavit was deemed reported in 2008 (as a result of the relation back provisions in section 7(c) of the Policy or otherwise), then the 2012 arbitration would preclude Crowley from bringing its federal lawsuit on res judicata grounds. Id. at 1296–97. In other words, Crowley lost either way. Id. The district court expressly declined to address National Union's statute of limitations arguments. Id. at 1295.

Crowley appealed to this Court, and we now consider whether the district court erred when it granted National Union's converted motion for summary judgment. Following a close review of the parties' briefs, the Policy, other relevant parts of the record, and applicable law—and with the benefit of oral argument—we affirm the judgment of the district court, albeit on somewhat different grounds.

## II.  ISSUE

As noted above, the issue in this case involves only whether Crowley is entitled to coverage, and thus reimbursement from National Union, of its pre-February 2013 (pre-Plea Offer) Defense Costs, on behalf of the Insured, Farmer. The only relevant new facts revealed after the arbitration are the government's February 2013 Plea Offer and the 2015 unsealing of the Affidavit.  On appeal, Crowley relies solely upon the Affidavit.  Crowley's challenge to the judgment of the district court relies solely upon the Claim based on the Affidavit.  Thus, the issue is: Does Crowley establish that the Claim based on the Affidavit not only existed as of its April 2008 Notice to National Union, but also was reported to National Union as required by the terms of the Policy so as to provide the coverage sought by Crowley?[6]

## III.  STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews <u>de novo</u> a district court's grant of summary judgment. <u>Sierra Club, Inc. v. Leavitt</u>, 488 F.3d 904, 911 (11th Cir. 2007).  We also review <u>de</u>

---

[6] Although Crowley does argue on appeal that its February 2013 Notice also constitutes a qualifying Claim, and that this notice was given to National Union before the expiration of the Discovery Period (November 1, 2013), Crowley does not explain how that fact supports its claim for coverage of pre-February 2013 (pre-Plea Offer) Defense Costs.  As noted above, National Union did recognize a Claim against Farmer pursuant to Crowley's February 2013 Notice, and did provide coverage of Defense Costs for Farmer from and after February 2013, but not before. On appeal, Crowley does not challenge National Union's refusal to provide such retroactive coverage, does not make any argument that its February 2013 Notice should relate back to its April 2008 Notice under the relation back provisions of section 7 of the Policy, and makes no other argument that might warrant coverage of pre-February 2013 (pre-Plea Offer) Defense

novo decisions applying res judicata rules, Lobo v. Celebrity Cruises, Inc., 704

F.3d 882, 892 (11th Cir. 2013), and decisions interpreting insurance contracts,

Tech. Coating Applicators, Inc. v. U.S. Fid. and Guar. Co., 157 F.3d 843, 844

(11th Cir. 1998).  Summary judgment is appropriate when, viewing the record in

the light most favorable to the non-moving party, there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.

Leavitt, 488 F.3d at 911; see also Fed. R. Civ. P. 56(a).

"[I]n a diversity case, a federal court applies the substantive law of the

forum state, unless federal constitutional or statutory law is contrary." HR

Acquisition I Corp. v. Twin City Fire Ins. Co., 547 F.3d 1309, 1314 (11th Cir.

2008) (citation omitted).  In this case, the forum state is Florida.  The parties'

arguments below,[7] the district court's order, and the parties' arguments before this

Court focus exclusively on the application of Florida law to the substantive

contract interpretation and res judicata issues raised by Crowley's federal lawsuit.

We agree and also apply Florida law.

---

Costs on the basis of its February 2013 Notice.  Indeed, Crowley has affirmatively waived
reliance on any relation back theory.  See infra, part IV.B.3.c.

[7] See Mot. Hr'g Tr., ECF No. 49, at 28 ("So we have the usual law that we have a
contract issued to an insured in Florida.  And the usual rules of Florida law would govern that
kind of contract.  So that's been [National Union's] position here.  And I think it's been the
position of both parties.").

## IV.  ANALYSIS

Our analysis proceeds in two main parts.  First, we briefly consider the essence of a claims-made insurance policy.  Second, we consider whether the Policy provisions limiting coverage to Claims that are "first made against an Insured" during the Policy Period or the Discovery Period[8] and that also are "reported to the Insurer" pursuant to the terms of the Policy[9] were satisfied in this case.  We do not adopt the "catch-22" analysis set forth by the district court.  However, for the reasons explained in some detail below, we ultimately affirm the district court's order granting National Union's converted motion for summary judgment because the record supports the conclusion that Crowley failed to timely report the Claim based on the Affidavit as required by the Policy.  See Aaron Private Clinic Mgmt. LLC v. Berry, 912 F.3d 1330, 1335 (11th Cir. 2019) (noting that "[w]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below" (alteration in original) (citation omitted)).  With respect to the reporting period between April 16, 2008 and December 31, 2012, Crowley is bound by the arbitration panel's finding that Crowley had not reported a Claim to National Union as required by the Policy at that time.[10]  With respect to the reporting period beginning immediately

---

[8] See infra, part IV.B.1–2.
[9] See infra, part IV.B.3.
[10] See infra, part IV.B.3.a.

15

after December 31, 2012 and running through the end of the Discovery Period on

November 1, 2013, Crowley failed to report the Claim based on the Affidavit as

required by section 7(a) of the Policy because it did not report any new information

about the Claim based on the Affidavit until after both the Policy Period and the

Discovery Period had expired.[11]  Also, as discussed in greater detail below,

Crowley has waived any arguments that either its February 2013 Notice or its July

2015 Notice should relate back to the April 2008 Notice under section 7 of the

Policy.[12]

### A.  The Essence of a Claims-Made Policy.

Claims-made policies are common in the professional liability insurance

market.  See Eric M. Holmes, Appleman on Insurance Law & Practice Archive

§ 146.4, LEXIS (database updated 2011).  They "differ from traditional

'occurrence'-based policies primarily based upon the scope of the risk against

which they insure."  Steven Plitt et al., 1 Couch on Insurance § 1:5, Westlaw

(database updated December 2018).  With claims-made policies, coverage is

provided only where the act giving rise to coverage "is discovered and brought to

the attention of the insurance company during the period of the policy."  Id.  In

contrast, coverage is provided under an occurrence-based policy if the act giving

---

[11] See infra, part IV.B.3.b.
[12] See infra, part IV.B.3.c.

rise to coverage "occurred during the period of the policy, regardless of the date a claim is actually made against the insured." Id.  "The essence, then, of a claims-made policy is notice to the carrier within the policy period."  Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So. 2d 512, 514 (Fla. 1983).  See also Holmes, supra, § 130.3 ("Claims-made or discovery policies are essentially reporting policies.  If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches.").

Insurance companies favor claims-made policies because they allow for a more precise calculation of risks and premiums.  Id.  "This theoretically results in lower premiums for an insured since there is no open-ended 'tail' after the expiration date of the policy."  Gulf Ins. Co., 433 So. 2d at 516.  With these general principles in mind, we turn our attention to the actual language of the particular insurance contract at issue in this appeal.

B.  The Policy expressly limits coverage to Claims that are "first made against an Insured" during the Policy Period or the Discovery Period and that also are "reported to the Insurer" pursuant to the terms of the Policy.

In applying Florida law to the interpretation of an insurance contract, "we begin with the language of the coverage section."  Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1188 (11th Cir. 2002) (citation omitted).  As it relates to this case, section 1 of the Policy (the coverage statement) provides that:

17

> solely with respect to Claims first made against an Insured during the
> Policy Period or the Discovery Period (if applicable) and reported to the
> Insurer pursuant to the terms of this [P]olicy, and subject to the other
> terms, conditions and limitations of this [P]olicy, this [P]olicy affords
> the following coverage:[13]
>
> . . . .
>
> . . . This [P]olicy shall pay the Loss of an Organization arising from a
> Claim made against an Insured Person . . . for any Wrongful Act of
> such Insured Person, but only to the extent that such Organization has
> indemnified such Insured Person.

The initial Policy Period ran from November 1, 2007 to November 1, 2008, and the

Discovery Period extended the Claims reporting timeline through November 1,

2013 because National Union issued a run-off endorsement providing that:

> The Named Entity shall have the right to a period of [6] years
> following the Effective Date (herein referred to as the Discovery
> Period) in which to give written notice to the Insurer of any Claim first
> made against any Insured during said 6 year period for any Wrongful
> Act occurring on or prior to the Effective Date and otherwise covered
> by this [P]olicy.

The parties do not dispute that Farmer was an Insured Person under the Policy; that

the allegations against Farmer raised in the Affidavit qualified as Wrongful Acts

under the Policy; that the Policy Period ended on November 1, 2008; that the

---

[13] The preamble to the Policy, which appears in emphasized text on the first page of the
Policy, clearly announces similar limitations: "**THE COVERAGE OF THIS POLICY IS
GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE
AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY
PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE
TERMS HEREIN.**"

Discovery Period ended on November 1, 2013; or that Crowley had indemnified Farmer with respect to his Defense Costs.

Accordingly, in resolving whether National Union has breached any contractual obligation to reimburse Crowley for Farmer's pre-February 2013 (pre-Plea Offer) Defense Costs, it is necessary to consider (1) whether the substantive content of the Affidavit—regardless of when it became known to Crowley or National Union—qualified as a Claim under the Policy; (2) whether the sealed Affidavit constituted a Claim that was "first made against" an Insured Person during the Policy Period or the Discovery Period; and (3) if the Affidavit was a Claim that was first made against an Insured Person during the Policy Period or the Discovery Period, whether a Claim based on the Affidavit was timely "reported to the Insurer pursuant to the terms of this [P]olicy."  We consider each of these questions in turn, ultimately concluding that, even assuming the Affidavit constituted a Claim that was first made against Farmer during the Policy Period or the Discovery Period, such Claim was not timely reported to National Union as required by the Policy.

1. *Did the substantive contents of the Affidavit give rise to a Claim against an Insured Person under the Policy?*

In pertinent part, section 2(b) of the Policy defines a Claim as (1) a written demand for relief; (2) a criminal proceeding commenced by return of an indictment, information, or similar charging document or receipt or filing of a

19

notice of charges; or (3) a criminal investigation of an Insured Person "once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding [described in section 2(b)(2)] may be commenced."[14] Crowley argues that, under subpart three of the definition of Claim, the substantive content of the Affidavit clearly identifies Farmer in writing as a person against whom a criminal proceeding may be commenced. National Union's arguments before this Court do not clearly focus on whether the substantive contents of the Affidavit, once known, qualified as Claim under the Policy. And even though National Union denied Crowley's request for admission on this very question in discovery, we note that it also informed the district court during the summary judgment hearing that it was not relying on this argument as the basis for its motion.

---

[14] The full text of section 2(b) of the Policy defines a Claim as:
(1)  a written demand for monetary, non-monetary or injunctive relief;
(2)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or
(3)  a civil, criminal, administrative or regulatory investigation of an Insured Person:
(i)  once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding described in [section 2](b)(2) may be commenced; or
(ii)  in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such Insured Person.
The term "Claim" shall include any Securities Claim and any Employment Practices Claim.

In any event, under the language of this particular insurance contract, the substantive content of the Affidavit clearly did constitute a Claim. That said, we think it unnecessary to recount the factual details of the Affidavit here because Farmer was eventually acquitted at trial.[15] Instead, it is sufficient to say that the forty-eight-page Affidavit identified Farmer by name more than fifty times, noted that he held a "position of pricing authority" at Crowley Liner, and otherwise made it clear to us that the Affidavit identified Farmer as a person against whom a criminal proceeding may be commenced.

### 2. When was a Claim based on the Affidavit "first made against" Farmer?

Having established the substantive content of the Affidavit constituted a Claim under the Policy, we must next consider when that Claim was "first made against" Farmer. We again start with the coverage grant. Hyman, 304 F.3d at 1188. With respect to this question—which under this Policy is related to but separate from the question whether the Claim was timely reported to National Union—section 1 of the Policy limits coverage to "Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable)." Subpart three of the definition of Claim defines Claim to include a criminal investigation of an Insured Person "once such Insured Person is identified in writing" as a person

---

[15] See note 3, supra.

against whom a criminal proceeding may be commenced.  The Policy does not define the phrase "first made against" or the phrase "identified in writing."

Crowley argues that the mere existence of the Affidavit means a Claim was first made against Farmer in April 2008.  It points out that the Policy does not require the Insured Person (or anyone else) to have knowledge of the Claim or receive a copy of the writing identifying the Insured Person as a person against whom a criminal proceeding may be brought.

National Union responds that Crowley's "unreasonable interpretation" is neither required nor supported by the Policy language.  It also argues that Crowley's interpretation would lead to an "absurd result" because it would potentially place on insureds the impossible burden of reporting existing Claims of which they are completely unaware.  National Union argues that the very nature of a claims-made policy assumes that a claim is not made against the insured until the insured is aware thereof and thus capable of reporting the claim to the insurer. Because Crowley was not aware of the content of the Affidavit until it was unsealed in 2015, National Union's position is that the Claim based on the Affidavit was first made against Farmer in 2015.  Of course, as National Union

points out, Crowley's 2015 report to National Union was after the expiration of the Discovery Period and thus untimely.[16]

The parties suggest only two dates as possible dates on which the Claim based on the Affidavit might first have been made against Farmer: either April 2008 or 2015. Crowley suggests April 2008 when the Affidavit was signed and presented to the magistrate judge; National Union suggests 2015 when the content of the Affidavit was unsealed and first became known. We too see no other feasible alternatives for the date on which the Claim based on the Affidavit might reasonably be deemed to have been first made against Farmer. We need not—and expressly do not—resolve this dispute between the parties for the following reason. Even assuming, arguendo, that the Claim was first made against Farmer in April 2008, as Crowley urges, we would still find in favor of National Union because Crowley did not timely report the Claim based on the Affidavit to National Union in the manner required by the Policy, as explained below.

### 3. Did Crowley timely report a Claim based on the Affidavit as required by the Policy?

Having assumed arguendo, and thus determined for purposes of this appeal, that the Claim based on the Affidavit was first made against Crowley in April

---

[16] We also note that, if the Claim based on the Affidavit were first made against Farmer in 2015, it would not fall within the coverage. Section 1 of the Policy covers only "Claims first made against an Insured during the Policy Period or the Discovery Period," the latter of which expired on November 1, 2013.

2008, we turn to the separate issue of whether Crowley timely reported the Claim to National Union in the manner required by the Policy.  As noted above, section 1 of the Policy limits coverage not only to Claims that are first made against an Insured during the Policy Period or the Discovery Period, but also to Claims that are "reported to the Insurer pursuant to the terms of [the Policy]."  The reporting provisions of the Policy, at least as they relate to this appeal, are found in section 7 of the Policy.[17]  Section 7 provides three different methods pursuant to which an

---

[17] Section 7 (the "Notice/Claim Reporting Provisions" of the Policy) provides as follows: Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations . . . .

(a)  An Organization or an Insured shall, as a condition precedent to the obligations of the Insurer under this [P]olicy, give written notice to the Insurer of a Claim made against an Insured or a Crisis as soon as practicable: (i) after the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim; or (ii) the Crisis commences, but in all events no later than either:

(1)  the end of the Policy Period or the Discovery Period (if applicable); or

(2)  within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim was first made against an Insured within the final 30 days of the Policy Period or the Discovery Period (if applicable).

(b)  If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then a Claim which is subsequently made against an Insured and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered related to the first Claim and made at the time such notice was given.

(c)  If during the Policy Period or during the Discovery Period (if applicable) an Organization or an Insured shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against an Insured and shall give written notice to the Insurer of the circumstances, the Wrongful Act allegations anticipated and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against such Insured and

Insured may properly report a Claim to the Insurer under the Policy. The first method involves the direct reporting of an existing Claim to the Insurer under section 7(a). This is the focus of Crowley's arguments on appeal. The second method, set forth in section 7(b), involves the reporting of a subsequent Claim that relates to an earlier Claim that was previously reported to the Insurer. Crowley does not argue on appeal that its reporting of the Claim based on the Affidavit could be timely under section 7(b) relation back so as to provide coverage of Defense Costs beginning in April 2008. Section 7(c) provides the third method, which involves the reporting of a Claim that relates to an earlier set of circumstances—circumstances which at the time of reporting had not yet produced a Claim—previously reported to the Insurer. Again, Crowley does not argue on appeal that its reporting of the Claim based on the Affidavit could be timely under section 7(c) relation back. Both section 7(b) and section 7(c) involve what the parties refer to as "relation back" theories or arguments, and we adopt their useful terminology here. Although Crowley presented relation back arguments to the district court, it has waived any relation back argument before this Court.[18]

---

reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

[18] See infra, part IV.B.3.c (concluding that Crowley has waived any relation back argument under section 7 with respect either to the Claim based on the Affidavit or the February 2013 Plea Offer Claim).

Accordingly, Crowley must prevail, if at all, on the basis of its argument that it did timely report the Claim based on the Affidavit pursuant to section 7(a).

For the reasons described in greater detail below, we conclude that Crowley did not timely report a Claim based on the Affidavit as required by the Policy. Crowley's efforts to establish that it properly notified National Union of a Claim under section 7 must fail for three reasons. First, as we describe in the following subpart (a), Crowley is bound by the arbitration panel's determination that it had not reported a Claim to National Union as of December 31, 2012. Second, in subpart (b), we demonstrate why Crowley's July 2015 Notice describing the unsealed Affidavit was untimely because it came after the November 1, 2013 expiration of the extended Discovery Period. Finally, in subpart (c), we conclude that Crowley has expressly waived any argument that either its February 2013 Notice or its July 2015 Notice should relate back to the April 2008 Notice under section 7 of the Policy.

> (a)  The arbitration order precludes Crowley from arguing that it reported a Claim to National Union at any time prior to December 31, 2012.

We begin by considering whether Crowley timely reported a Claim based on the Affidavit under section 7(a) of the Policy, which provides in relevant part that

> An Organization or an Insured shall, as a condition precedent to the obligations of the Insurer under this [P]olicy, give written notice to the Insurer of a Claim made against an Insured . . . as soon as practicable . . . after the Named Entity's Risk Manager or General

> Counsel (or equivalent position) first becomes aware of the
> Claim . . . but in all events no later than . . . the end of the Policy
> Period or the Discovery Period (if applicable) . . . .

Thus, as a condition precedent to coverage based on notice under section 7(a),

Crowley was required to give National Union written notice of a Claim made

against an Insured before November 1, 2008 (the end of the Policy Period) or

before November 1, 2013 (the end of the Discovery Period set forth in the run-off

endorsement).  Crowley argues that it reported a Claim based on the Affidavit in its

April 2008 Notice by simply pointing to the sealed Affidavit, even if it could not

provide National Union with any details regarding the substantive content of the

Affidavit at that time.  For its part, National Union argues that Crowley did not

report the Claim based on the Affidavit in the April 2008 Notice because no one

knew what the Affidavit said until 2015.  National Union also argues that the

arbitration order is res judicata in this case because the arbitration panel concluded

that Crowley had failed to report a Claim to National Union.

National Union's res judicata argument is persuasive, at least with respect to

the materials that were before the arbitration panel when it closed the hearing

record on December 31, 2012.  We are careful to note, as we have before, that res

judicata is a term that "has more than one meaning."  Brown v. R.J. Reynolds

Tobacco Co., 611 F.3d 1324, 1331 (11th Cir. 2010).  As Florida's Fourth District

Court of Appeal recently observed:

> Res judicata is a term applied to various forms of preclusion. It is also a term that is applied inconsistently.
>
> In modern times, the preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata. More specifically, res judicata is now recognized as a general term for various different forms of preclusion including claim preclusion, and a separate category of defenses commonly referred to as issue preclusion, collateral estoppel, estoppel by judgment, and direct estoppel.

Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc., 227 So. 3d 612, 617 (Fla. 4th DCA 2017) (citations and internal quotation marks omitted). This Court sorted through some of these subtleties in Florida preclusion law in Brown, raising several important distinctions between the two primary subcategories of res judicata: claim preclusion and issue preclusion. See Brown, 611 F.3d at 1331–36. The parties here address the preclusion issues associated with the arbitration order under the general rubric of res judicata, but the district court noted that it preferred to "use the more precise terminology adopted by the Supreme Court: claim preclusion." Crowley, 307 F. Supp. 3d at 1290 n.3 (citation omitted). We agree with National Union and the district court that the arbitration proceeding is entitled to some res judicata effect in these proceedings. At the risk of splitting hairs, however, we think the arbitration order in this case properly presents a question of issue preclusion (and not claim preclusion) because the

arbitration was limited in scope and decided "factual issues and not causes of action."[19] Brown, 611 F.3d at 1333.

Generally speaking, issue preclusion operates more narrowly than claim preclusion "to prevent re-litigation of issues that have already been decided between the parties in an earlier lawsuit." Id. at 1332 (citation omitted). For issue preclusion to apply under Florida law, "an identical issue must be presented in a prior proceeding; the issue must have been a critical and necessary part of the prior determination; there must have been a full and fair opportunity to litigate that issue; the parties in the two proceedings must be identical; and the issues must have been actually litigated." Id. at 1333 (quoting Holt v. Brown's Repair Serv., Inc., 780 So. 2d 180, 182 (Fla. 2d DCA 2001)). Issue preclusion may be asserted offensively by a plaintiff or defensively by a defendant, in either case for the purpose of preventing the other party from re-litigating an identical issue previously decided against the other party. Id. Under Florida law, an arbitration

---

[19] In reaching this conclusion, we acknowledge some tension in the Florida cases regarding the proper application of claim preclusion and issue preclusion rules within the broader context of current res judicata doctrine. See, e.g., Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 436–39 (Fla. 2013) (Canady, J., dissenting) (insisting that majority's application of claim preclusion rules instead of issue preclusion rules was "exactly backward"). Even so, this is neither the right court nor the right case for ironing out any wrinkles in Florida preclusion law, and it is plain enough to us that the Florida courts would give some form of "res judicata effect" to matters that were, as here, raised and actually determined in an earlier proceeding involving the same parties. Douglas, 110 So. 3d at 432–36. Whether it is properly classified as claim preclusion or issue preclusion, or collateral estoppel or direct estoppel, the arbitration proceeding already answered a common question in a prior proceeding involving the same parties, and we therefore afford that answer "res judicata effect" under Florida law in this case.

29

proceeding may serve as the foundation for the assertion of issue preclusion.[20]  See

Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co., 945 So. 2d 1216, 1235–

36 (Fla. 2006) (answering certified question); see also Dadeland Depot, Inc. v. St.

Paul Fire and Marine Ins. Co., 483 F.3d 1265, 1279–80 (11th Cir. 2007) (holding,

in light of response to certified question from the Florida Supreme Court, that

insurer was "collaterally estopped from raising . . . the same defenses that were

raised and rejected in [an] earlier arbitration proceeding").

       In this case, the arbitration order precludes Crowley from re-litigating the

issue of whether it reported a Claim to National Union on or before December 31,

2012.  Crowley and National Union were the only parties to the arbitration

proceeding, and they are the only parties to this action.  The arbitrators received

numerous exhibits and also held a hearing over a period of three days.  Excerpts of

what appears to be a thorough and robust hearing appear in the record before this

Court, and it is not apparent to us (nor have the parties argued) that either party

was not afforded a full and fair opportunity to litigate the issue that was then before

the arbitrators.

---

[20] In neither the district court nor on appeal has Crowley challenged the application of preclusion principles on the basis that the prior litigation was in an arbitral forum, or on any other basis except Crowley's arguments that the subsequent revelation of the content of the Affidavit is a new fact which was not considered by the arbitration panel and/or that application of preclusion principles would be inequitable.  Thus, we decline to consider any other argument against the application of preclusion principles.

The arbitrators defined the issue as whether the joint FBI/DOJ investigation, as evidenced by the materials provided to National Union on or before December 31, 2012, was sufficient to constitute a Claim under the Policy. In this appeal, we are called upon to answer an identical question with respect to a slightly broader time period. After defining the issue, the arbitrators went on to conclude that the April 2008 Notice and other materials submitted to National Union on or before December 31, 2012 "did not constitute a Claim for Insured Persons as the term 'Claim' is defined in the Policy" and that "[t]he triggering event specified in the Policy ha[d] not yet been presented to National Union." We construe this to mean the arbitrators found that Crowley had not, based on the information in the hearing record as of December 31, 2012, reported a Claim to National Union as required by the Policy. In making this determination, the arbitrators clearly were aware of the existence of the sealed Affidavit—it was referenced generally in Crowley's April 2008 Notice and discussed at length during the arbitration hearing—but all parties freely admit that no one knew what the Affidavit actually said at the time of the arbitration.

Given this, it is clear that, even if the arbitration panel did not (or really could not) consider the substantive contents of the unsealed Affidavit because they were still under seal and thus unavailable in December 2012, it did consider and reject the idea that Crowley had somehow reported a Claim to National Union by

merely pointing to the existence of the sealed Affidavit. <u>See</u> Arb. Decision and Award, ECF No. 16-1, at 7 (observing that the search warrant, which only noted generally the existence of an affidavit supporting probable cause, was "devoid of any identification by the DOJ (or FBI) of any individual as a person against whom a covered proceeding may be commenced" and that the potential of any such proceeding against any individual named in the search warrant arose "only by inference derived from context beyond the four corners of the search warrant"). Thus, we conclude that the question whether Crowley reported a Claim to National Union at any time between April 16, 2008 (the earliest date as of which we could assume the Claim based on the Affidavit was first made against Farmer) and December 31, 2012 (when the arbitration hearing record closed) was both "actually litigated" in and a "critical and necessary part" of the arbitration proceeding. Indeed, that issue appears to have been the sole and limited focus of the arbitration.[21]

Because all requirements for issue preclusion have been satisfied, as explained above, we conclude that Crowley is precluded from challenging the fact

---

[21] As discussed in greater detail below, we also conclude that the arbitration order necessarily was limited to the materials before the arbitrators at that time and that the question whether Crowley reported a Claim to National Union at any time after December 31, 2012 was not "actually litigated" by the arbitration proceeding. The district court was correct when it observed that "[t]he arbitration panel only determined whether the documentation that Crowley had submitted to National Union at that point in time constituted a Claim under the Policy." <u>Crowley</u>, 307 F. Supp. 3d at 1294.

finding of the arbitrators that the materials submitted by Crowley to National

Union on or before December 31, 2012—which materials revealed the existence of

a sealed Affidavit but not the content thereof—did not satisfy the requirements of

section 7(a) of the Policy for reporting a Claim to the Insurer.  The identical issue

is now before us (although we also have before us a similar issue with respect to

the additional time period after December 31, 2012 up to the November 1, 2013

expiration of the Discovery Period).  Crowley has adduced no additional

evidence—over and above the evidence before the arbitrators—which is relevant

to what was reported to National Union as of December 31, 2012.  Although we

now know the content of the then-sealed Affidavit, and we now know that the

content did satisfy the Policy's requirements for a Claim, there is still no more

evidence with respect to a report to National Union as of December 31, 2012 than

was presented to the arbitrators.

We also summarily reject Crowley's argument that application of preclusion

principles in this case would be inequitable.  To conclude otherwise would require

us to ignore not only the contractual language of this particular Policy, but also the

customary nature of claims-made insurance policies, in which "coverage depends

on the claim being discovered and reported to the insurer during the policy period."

Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc., 534 So. 2d 1187, 1194

(Fla. 4th DCA 1988).  We add only that parties worried about the difficulties

associated with timely discovering or reporting claims under a claims-made policy—as a result of the judicial sealing of a probable cause affidavit or otherwise—could conceivably negotiate special terms or enter into a more costly but less predictable occurrence-based insurance policy, under which coverage would be effective "regardless of the date of discovery or the date the claim is made or asserted."  Gulf Ins. Co., 433 So. 2d at 514 (citations omitted).

We conclude that the Florida courts would give preclusive effect to the ruling of the arbitrators.  We thus conclude on the basis of issue preclusion that—even though we assume arguendo that the Claim based on the Affidavit was first made against Farmer in April 2008—that Claim was not reported to the Insurer on or before December 31, 2012.[22]  We turn now to consider whether Crowley reported to National Union the Claim based on the Affidavit at any time after December 31, 2012 and before November 1, 2013—when a report to the Insurer under section 7(a) could have been timely.  On appeal, Crowley relies in this regard only upon the Claim based on the Affidavit which, as discussed immediately below, was not reported to National Union until July 2015.

---

[22] Because we rely on issue preclusion, we do not address the merits of this issue.  We also note that Crowley's counsel confirmed at oral argument that Crowley does not dispute the correctness of the arbitration panel's ruling on this question.

(b)  Crowley's July 2015 Notice did not provide timely notice of a Claim based on the Affidavit under section 7(a) because the Discovery Period expired on November 1, 2013.

In relying on its July 2015 Notice to National Union of the Claim based on the Affidavit, Crowley challenges National Union's argument that the arbitration proceeding should preclude consideration of the unsealed Affidavit altogether.  In particular, Crowley asserts that the unsealing of the Affidavit in 2015 is a new fact that was not presented to or considered by the arbitration panel, and therefore res judicata principles should not bar its consideration in Crowley's federal lawsuit. We agree.

Under Florida law, issue preclusion extends only to issues that were "actually adjudicated."  Brown, 611 F.3d at 1334 (citation omitted).  We have previously observed that the Florida courts enforce this requirement "with rigor." Id.  In fact, "if there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation."  Id. (quoting Hittel v. Rosenhagen, 492 So. 2d 1086, 1089–90 (Fla. 4th DCA 1986)).  In this light, it is obvious that the question whether Crowley reported a Claim to National Union in its July 2015 Notice was not—and indeed could not have been—actually adjudicated during the arbitration proceeding.  The arbitration panel closed the hearing record on December 31, 2012 and issued its decision on January 29, 2013, more than two years before Crowley

35

delivered its July 2015 Notice to National Union.  And by observing that "[t]he triggering event specified in the Policy has not yet been presented to National Union," the arbitration order itself clearly contemplated that it was not intended to be dispositive of all issues relating to Crowley's breach of contract cause of action against National Union.  In other words, the arbitrators left open the possibility that circumstances might develop in such a way that Crowley could eventually report a Claim based on the Affidavit to National Union as required by the Policy, even if it had not done so as of December 31, 2012.  We find further support for this conclusion in the fact that the arbitrators were clearly aware of the sealed Affidavit but, at National Union's urging, declined to speculate about what it might say.[23] Because the arbitration findings "may be given effect to the full extent of, but no farther than, what the [arbitrators] found," we find that the arbitration order does not preclude consideration of Crowley's delivery of the July 2015 Notice in this case.  Id.

But that does not mean that Crowley can prevail.  Returning again to section 7(a) of the Policy, we conclude that Crowley failed to timely report the Claim based on the Affidavit at any time after the arbitration.  That is, Crowley failed to report the Claim based on the Affidavit before the November 1, 2013 expiration of

---

[23] See Hr'g Tr., ECF No. 36-9, at 30 ("The regrettable thing, in part, about this case is, the damn thing is under seal.  If that thing were not under seal, we would be having a very interesting discussion about what it shows, or doesn't show.").

the Discovery Period.  In relevant part, section 7(a) required Crowley to give

written notice of a Claim to National Union "in all events no later than . . . the end

of the Policy Period or the Discovery Period."  The Policy Period ended on

November 1, 2008, and the Discovery Period ended on November 1, 2013.  Thus,

to comply with the reporting requirements of section 7(a) for the Claim based on

the Affidavit under subpart three of the Policy definition of Claim, Crowley was

required to show, on or before November 1, 2013, that Farmer had been identified

in writing as a person against whom a criminal proceeding may be commenced.

Put another way, Crowley had to do more than simply point to the sealed Affidavit

and ask National Union to take its word for it that a Claim in fact existed.[24]

Additionally, because of the preclusive nature of the intervening arbitration

proceeding, we are concerned in this analysis only with materials submitted to

National Union during the period between December 31, 2012 (the day the

arbitration hearing record closed) and November 1, 2013 (the end of the Discovery

Period).  Although Crowley did report Farmer's Plea Offer to National Union

---

[24] Because the question is not squarely presented by this case, we decline to say exactly how much substantive information Crowley was required to provide National Union to satisfy the reporting requirements of section 7(a) for a Claim based on the Affidavit under subpart three of the Policy definition of Claim.  This is partly because the arbitration already answered the question and partly because any later information Crowley provided regarding the substantive content of the Affidavit was untimely in any event.  We believe it is enough to say that the substantive information relating to the Affidavit that Crowley provided to National Union between December 31, 2012 and November 1, 2013—which really amounted to no new information at all about the Affidavit—was insufficient to timely report a Claim based on the Affidavit to National Union under section 7(a) of the Policy.

during this time period (thus triggering undisputed coverage based on that Claim against Farmer as of February 18, 2013),[25] the record does not reveal that Crowley reported any helpful information relating to the substantive contents of the Affidavit before the November 1, 2013 expiration of the Discovery Period.  As we now know, Crowley did not—and really could not—do this because the Affidavit did not become available until April 24, 2015.  Crowley did not notify National Union that the Affidavit had been unsealed until July 22, 2015, and it would not be able to provide National Union with a copy of the unsealed Affidavit until November 10, 2015.  In either case, Crowley's reporting of a Claim based on the Affidavit under section 7(a) of the Policy was more than a year-and-a-half too late.

Finally, the judicial unsealing of the Affidavit in 2015 does nothing to call into question the arbitration panel's conclusion that Crowley had not, based on the information then before the arbitration panel, reported a Claim to National Union. At best, the act of unsealing the Affidavit in 2015 confirmed that a Claim might have been "first made against" Farmer on April 16, 2008; it did nothing to change the fact, as determined by the arbitrators, that Crowley had not reported a Claim to National Union as of December 31, 2012.

---

[25] See note 6, supra; see also infra, part IV.B.3.c (discussing Crowley's waiver of relation back arguments).

(c)  Crowley has expressly waived any argument that either its February 2013 Notice or its July 2015 Notice should relate back to the April 2008 Notice under section 7 of the Policy.

Crowley has expressly waived any argument under Section 7 of the Policy that either of its later notices (either the February 2013 Notice regarding Farmer's Plea Offer or the July 2015 Notice regarding the unsealed Affidavit) should relate back to Crowley's initial April 2008 Notice in a way that would require National Union to reimburse Crowley for Farmer's pre-February 2013 (pre-Plea Offer) Defense Costs.  See United States v. Doyle, 693 F.3d 769, 771 (7th Cir. 2012) ("Waiver occurs when a defendant or his attorney manifests an intention, or expressly declines, to assert a right."); see also United States v. Willis, 649 F.3d 1248, 1254 (11th Cir. 2011) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate.  This common-sense rule seeks to avoid confusion as to the issues that are in play and those that are not.  Where a party fails to abide by this simple requirement, he has waived his right to have the court consider that argument." (alteration in original) (citations and internal quotation marks omitted)); Cont'l Tech. Servs., Inc. v. Rockwell Intern. Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (noting that "[a]n argument not made is waived" and holding that appellant waived its right to argue that California (rather than Georgia) law should apply because it failed to present reasoned arguments

supported by citations to relevant law and instead only perfunctorily suggested
California law applied).

The case for waiver against Crowley is strong here because Crowley
affirmatively manifested an intention to waive its relation back arguments. <u>See</u>
Appellant's Reply Br. 14 ("As made clear in Crowley's Brief, this is not Crowley's
argument. National Union is attempting to rebut a 'relation back' argument that
Crowley does not even make. . . . Crowley is not relying on 'relation back' . . . .");
Oral Argument at 5:13, 6:10 (confirming that Crowley was not relying on a notice
of circumstances and relation back argument under section 7 and that it was instead
relying on the April 2008 Notice to establish that notice of a Claim had been given
at that time).[26]  Because Crowley has waived reliance on a relation back argument,
we express no opinion on whether any such argument might have resulted in
coverage for Crowley's pre-February 2013 (pre-Plea Offer) Defense Costs.
However, we do conclude that the arguments Crowley does make—especially
when paired with the preclusive effect of the arbitration proceeding—fail to

---

[26] Crowley's initial brief on appeal did not make a straightforward relation back argument
supported by citation of authority and provided no discussion or analysis of Policy language in
an effort to show that the language might support relation back in this case, but that initial brief
probably did not rise to the level of a clear and affirmative waiver of a relation back argument.
In other words, there was a waiver for failure to fairly raise and support a relation back
argument, <u>see</u> <u>Cont'l Tech. Servs., Inc.</u>, 927 F.2d at 1199, although probably not an affirmative
waiver. This is true, both with respect to the Claim based on the Affidavit, and Crowley's casual
mention of the February 2013 (Plea Offer) Claim. However, in both Crowley's reply brief on
appeal and its oral argument, Crowley did clearly and affirmatively waive any reliance on
relation back.

establish that Crowley reported the Claim based on the Affidavit to National Union as required by the language of this particular claims-made insurance policy.

## V. CONCLUSION

In sum, we conclude that the district court did not err when it granted National Union's converted motion for summary judgment. Even assuming that the Claim based on the Affidavit was "first made against" Farmer during the Policy Period or the Discovery Period, Crowley failed to timely report that Claim to National Union as required by section 7(a) of the Policy. With respect to the reporting period between April 16, 2008 and December 31, 2012, Crowley is bound by the arbitration panel's finding that Crowley had not reported a Claim to National Union as required by the Policy at that time. With respect to the reporting period beginning immediately after December 31, 2012 and running through the end of the Discovery Period on November 1, 2013, we conclude that Crowley failed to report the Claim based on the Affidavit as required by section 7(a) of the Policy because it did not report any new information relating to the Affidavit until after both the Policy Period and the Discovery Period had expired. We also conclude that Crowley has waived any arguments that either its February 2013 Notice or its July 2015 Notice should relate back to the April 2008 Notice under section 7, and we therefore decline to consider whether a relation back theory

might have afforded coverage for the pre-February 2013 (pre-Plea Offer) Defense Costs which Crowley seeks.

The judgment of the district court is therefore

**AFFIRMED.**